# EXHIBIT A

# EXHIBIT A

1 | ACOM
Robert B. Gerard, Esq. (Nevada State Bar #005323)
2 | Ricardo R. Ehmann, Esq. (Nevada State Bar #010576)
GERARD & ASSOCIATES
3 | 2840 South Jones Boulevard
Building D, Suite #4
4 | Las Vegas, Nevada 89146
Telephone:    (702) 251-0093
5 | Facsimile:    (702) 251-0094

6 | Norman Blumenthal, Esq. (California State Bar #068687)
BLUMENTHAL & NORDREHAUG
7 | 2255 Calle Clara
La Jolla, California 92037
8 | Telephone:    (858) 551-1223
Facsimile:    (858) 551-1232
9 |

10 | Robert Fellmeth, Esq. (California State Bar #49897)
University of San Diego School of Law
11 | 5998 Alcala Park
San Diego, California 92110
12 | Telephone:    (619) 260-4806
Facsimile:    (619) 260-4753
13 |
Attorneys for Plaintiffs

14 |

15 | **EIGHTH JUDICIAL DISTRICT COURT**

16 | **CLARK COUNTY, NEVADA**

FILED

MAY 7 4 3⁶ ᶠᵐ '08

| | | |
|---|---|---|
| 17 | MARY ANN SUSSEX; MITCHELL PAE; | CASE NO.: A557730 |
| 18 | MALCOLM NICHOLL and SANDY | |
| | SCALISE; ERNESTO VALDEZ, SR. and | DEPT NO.: IX |
| 19 | ERNESTO VALDEZ, JR.; JOHN HANSON | |
| 20 | and ELIZABETH HANSON; | FIRST AMENDED CLASS ACTION |
| | Plaintiffs, | COMPLAINT FOR: |
| 21 | vs. | |
| 22 | TURNBERRY/MGM GRAND TOWERS, | (1) VIOLATION OF N.R.S. 90.460 (Unlawful Sale of Unregistered Security) |
| 23 | LLC; MGM GRAND, INC., doing business as MGM MIRAGE; TURNBERRY/HARMON | (2) VIOLATION OF N.R.S. 90.570 (Unlawful Sale of Security by Means of Scheme to |
| 24 | AVE., LLC; TURNBERRY ASSOCIATES; | Defraud) |
| 25 | and DOES 1 through 100, Inclusive, Defendants. | |
| 26 | | (3) VIOLATION OF N.R.S. 598, *et seq.* (Nevada Deceptive Trade Practices Act) |
| 27 | | |
| 28 | | |

1

1    )  (4) FRAUDULENT
2    )  MISREPRESENTATION;
    )
3    )  (5) NEGLIGENT MISREPRESENTATION;
    )
4    )  (6) FRAUD IN THE INDUCEMENT; and
5    )
    )  (7) FRAUDULENT CONCEALMENT
6    )
7    )  **ARBITRATION EXEMPTION**
    )  **CLAIMED:**
8    )
    )  1. DAMAGES IN EXCESS OF $50,000
9    )  PER PLAINTIFF
    )
10  2. ACTION PRESENTS SIGNIFICANT
11  ISSUES OF PUBLIC POLICY
12  3. CLASS ACTION

### FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW, Plaintiffs Mary Ann Sussex; Mitchell Pae; Malcolm Nicholl and Sandy Scalise; Ernesto Valdez, Sr. and Ernesto Valdez, Jr.; John Hanson and Elizabeth Hanson, who bring this action on behalf of themselves, and on behalf of all similarly situated persons (collectively "PLAINTIFFS"), against Defendants TURNBERRY/MGM GRAND TOWERS, LLC, MGM GRAND, INC., doing business as MGM MIRAGE, TURNBERRY/HARMON AVE., LLC and TURNBERRY ASSOCIATES, and DOES 1 through 100, inclusive (hereinafter collectively referred to as "DEFENDANTS"), and allege, based upon information and belief, except where otherwise stated, as follows:

### NATURE OF THE ACTION

1. The instant Complaint involves a scheme among the DEFENDANTS through which PLAINTIFFS were illegally and fraudulently induced into purchasing the air rights to condominium-hotel room units as investment securities at the Signature at the MGM Grand Hotel/Casino in 2006 & 2007.

2

2.      On December 20, 2003, MGM Mirage and Turnberry Associates announced the formation of a partnership to build a luxury condo hotel, stating that they would build up to six towers each rising up to forty stories. The first phase of this project involved the taking of deposits for the sales of the air rights to condominium hotel room units as investment securities with the promise of an MGM Grand Rental Program. During this phase, the project was variously referred to as The Residences, The Residences at MGM Grand and/or The Residences: A Condo Hotel by Turnberry. The name was subsequently changed prior to any closings and is currently operated under the brand name of THE SIGNATURE AT MGM GRAND ("MGM GRAND").

3.      The second phase involved the closing of the sale of the air rights to condominium hotel room units as investment securities, which were sold by the DEFENDANTS to PLAINTIFFS and each of them, as an investment security in the air space of the condominium hotel room units (the "SECURITIES"). The PLAINTIFFS all first acquired these SECURITIES beginning in 2006 with the transfer of the title of the SECURITIES from DEFENDANTS to PLAINTIFFS, without first registering the certificate of sale of the SECURITIES as a security as required by law and without being exempt therefrom. The reason the air rights to the hotel condominium units are securities is because:

    a.    the value of the units are all dependent upon the success or failure of the MGM GRAND branded enterprise;

    b.    DEFENDANTS' sales promotions of the investment in the hotel room gave rise to a reasonable understanding that a valuable benefit, over and above the entire amount paid for the physical air rights to the hotel room, would accrue to the PLAINTIFFS as a result of the operation of the enterprise as an MGM GRAND branded enterprise pursuant to the MGM Grand Rental Program; and

    c.    the PLAINTIFFS, as owners of shares in the enterprise, by signing on with the MGM Grand Rental Program, did not receive and did not intend to receive the right to exercise any practical or actual control over the managerial decisions of the MGM GRAND enterprise. Each sale was consummated when each Plaintiff furnished the

3

1                entire amount paid for the condominium hotel units at the MGM GRAND and closed

2                the purchase as a purchase in the MGM GRAND branded enterprise with the transfer

3                of title to the SECURITIES from DEFENDANTS to PLAINTIFFS.

4        4.       DEFENDANTS used both inside and outside sales teams ("SALES TEAMS") to sell

5 the SECURITIES.

6        5.       Central to the DEFENDANTS' marketing of the SECURITIES were the

7 representations that the SECURITIES would generate substantial amounts of revenue to the

8 purchaser. DEFENDANTS' SALES TEAMS induced the sale of the SECURITIES through sales

9 presentations that raised the PLAINTIFFS' expectations of the economic benefits of the net rental

10 income to be obtained from the SECURITIES branded as MGM Hotel rooms through the MGM

11 Rental Program. The sales presentations included the use of written materials and discussions that

12 represented, *inter alia,*:

13        (a)       a forecast of the anticipated rental rates of the SECURITIES as MGM branded

14                rooms;

15        (b)       comparisons of the projected net rental income of the SECURITIES branded as

16                MGM Hotel rooms to other similar hotel rental rates in the area; and

17        (c)       projections of future occupancy rates of the SECURITIES branded as MGM Hotel

18                rooms.

19 The representations made by DEFENDANTS were not restricted to mentioning only the availability

20 of a rental program as part of the MGM GRAND enterprise. Rather, DEFENDANTS' marketing

21 strategy overtly emphasized the amount of revenue the PLAINTIFFS would receive from the rental

22 of the SECURITIES, branded as MGM Hotel rooms with the MGM Grand enterprise.

23        6.       The portions of DEFENDANTS' marketing scheme that emphasized the economic

24 benefit from the rental of the SECURITIES as represented by the MGM branded hotel rooms as part

25 of the MGM Grand enterprise went above and beyond simply mentioning that a rental program was

26 offered by MGM GRAND. These discussions were the centerpiece of the sales program and took

27 place before, during and after the agreement to purchase the SECURITIES was closed with the

28

1  transfer of title to the SECURITIES. The PLAINTIFFS' decision to enter into the MGM branded
2  hotel room rental program was not reached independently of the decision to purchase the
3  SECURITIES as the MGM branded hotel room rental program was an integral part of the purchase
4  of the SECURITIES as an MGM branded hotel room as part of the MGM Grand enterprise.

5       7.      In order to purchase the SECURITIES, the PLAINTIFFS individually entered into
6  investment contracts with the DEFENDANTS whereby PLAINTIFFS agreed to pay to
7  DEFENDANTS a sum certain for the SECURITIES at the closing.

8       8.      The amounts PLAINTIFFS paid for the purchase of their SECURITIES were
9  subjected to the risks of the MGM GRAND enterprise to rent the rooms at a projected rate for
10  projected days each year. The enterprise of the MGM GRAND consists of, *inter alia*: (a) the rental
11  program, (b) the MGM Grand Hotel, which provides seamless occupancy of PLAINTIFFS' rooms,
12  thereby increasing the value of the SECURITY, (c) the MGM Casino, which attracts renters to stay
13  at the MGM Grand Hotel and the PLAINTIFFS' rooms as represented by the SECURITIES, and (d)
14  the MGM Brand as a whole. The rental program places the PLAINTIFFS' SECURITIES into the
15  hotel's room inventory to be used as luxury suites by DEFENDANTS. As a result of the rental
16  program, PLAINTIFFS have no mechanism by which to control the rental process.

17      9.      The SALES TEAMS falsely represented to PLAINTIFFS and each of them that the
18  rental program that would be used to arrange for the rental of the PLAINTIFFS' units and would be
19  one whereby the owner of the unit would receive 60% of the revenue of such rental and
20  DEFENDANTS would receive the remaining 40%. The true facts were that the amount of rental
21  revenue retained by DEFENDANTS exceeded 40% and the actual amount of rental revenue received
22  from the Plaintiffs did not amount to 60%. Additionally, DEFENDANTS also charged the
23  PLAINTIFFS fees which further reduced PLAINTIFFS' share of revenues and failed to share 100%
24  of the revenues produced as a result of the rental of the PLAINTIFFS' units. For example, the
25  revenues produced from the pay per view television and movie service, room service, internet fees,
26  cabana rentals, hotel room tax, income from the mini-bar, and other common and unit elements of
27  the MGM Grand which were used by the renter, were not shared with the PLAINTIFFS. Among the
28

5

fees charged to the PLAINTIFFS was a "Management" or "Sales and Marketing" fee, which is deducted before the revenue is divided between the DEFENDANTS and the PLAINTIFFS, amounting to either 10% of the daily rental rate for a standard booking or 13% of the daily rental rate for any group booking. After the Management fee is deducted, the amount of revenue remaining that is included in the revenue split represents the "Rental Income" to be split with 60% going to the PLAINTIFFS, but subject to further deductions. These further deductions include a $10 per night FF&E Reserve fee, a $7-$10 per night Subject Unit Maintenance Fee, a $20 monthly Digital Television and Internet fee, and a Monthly Transient Fee that can range from $200 to $500 depending on the particular unit. The PLAINTIFFS are also charged a Shared Component Budget Fee that ranges from more than $350 per month for a studio unit to over $800 per month for a unit with one or more bedrooms. In addition, PLAINTIFFS also pay a Shared Component Budget Fee, which in turn pays for services that generate revenues. These other revenues, however, are not shared with the PLAINTIFFS. To add insult to injury, DEFENDANTS have failed to produce the required accounting. During the sales presentations, DEFENDANTS lauded the amount of profits that PLAINTIFFS would receive from the revenue generated by the rental of the SECURITIES through DEFENDANTS' rental program. DEFENDANTS, however, failed to mention the fees and charges that would reduce the PLAINTIFFS' share of the rental revenue and the revenues that would not be included in the income, as set forth herein.

10.    At all relevant times, DEFENDANTS operated the MGM GRAND in Nevada and sold the SECURITIES to purchasers in Nevada. All offers to purchase or sell any of the SECURITIES described herein were made in Nevada and the closing and transfer of titles to the SECURITIES between PLAINTIFFS and DEFENDANTS took place in Las Vegas, Nevada and were governed by Nevada law.

11.    All of the SECURITIES sold to PLAINTIFFS by DEFENDANTS were sold pursuant to substantially the same marketing strategy of fraudulently raising the potential buyer's expectation of substantial economic benefits from the purchase and ownership of the SECURITIES branded as part of the MGM enterprise. In every sale that was made of SECURITIES to the PLAINTIFFS,

6

DEFENDANTS uniformly misrepresented the extent of the economic benefit that would be generated from the ownership of the SECURITIES, as MGM branded SECURITIES.

12.     In this suit, PLAINTIFFS seek rescission as well as equitable relief, including declaratory, injunctive, restitutionary and other equitable monetary relief, and economic damages as set forth more fully below.

13.     As more particularly described herein, the SECURITIES were sold and offered in conjunction with one or more of the following three factors:

(i) emphasis on economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units;

(ii) the offering of participation in a rental management program; or

(iii) the offering of a rental or similar arrangement whereby the owner must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit.

14.     For each and every one of the PLAINTIFFS, the sales process was comprised of the sale of the SECURITIES coupled with PLAINTIFFS' participation in the DEFENDANTS' rental program, which constituted a scheme involving the investment of PLAINTIFFS' money in a common enterprise with profits to come solely from the efforts of others. The PLAINTIFFS did not consider the purchase of the SECURITIES for anything other than an economic investment. The purchase of the SECURITIES by PLAINTIFFS was induced by DEFENDANTS' promises of economic benefits to be derived from the entrepreneurial or managerial efforts of others.

## THE PARTIES

15.     Plaintiff. Mary Ann Sussex is a resident of Nevada, who purchased SECURITY number 1811-C.

16.     Plaintiffs Malcolm J. Nicholl and Sandy Scalise (husband and wife) are residents

1    of California, who purchased SECURITY number 1707-C.

2

3        17.      Plaintiff Mitchell Pae is a resident of Virginia, who purchased SECURITY number 605-C.

4

5        18.      Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr. are residents of California,

6    who purchased SECURITY number 3611-B.

7        19.      Plaintiffs John Hanson and Elizabeth Hanson are residents of Nevada, who purchased

8    SECURITY number 204-C.

9

10        20.      Defendant Turnberry/MGM Grand Towers, LLC., has done business as the The

11    Residences, The Residences at MGM Grand and/or The Residences: A Condo Hotel by Turnberry.

12    The condominium hotel is currently operated under the brand of THE SIGNATURE AT MGM

13    GRAND. Defendant Turnberry/MGM Grand Towers, LLC is, and at all relevant times mentioned

14    herein was, a Nevada limited liability corporation. At all relevant times, Defendant Turnberry/MGM

15    Grand Towers conducted and conducts substantial business in the State of Nevada and substantially

16    availed and avails itself of the Las Vegas economic market in Nevada.

17        21.      Defendant MGM Grand, Inc. is the entity doing business as MGM Mirage ("MGM

18    Mirage"), and is/was a member and partner in Turnberry/MGM Grand Towers, LLC, operating THE

19    SIGNATURE AT MGM GRAND enterprise. Defendants Turnberry/Harmon Ave., LLC and

20    Turnberry Associates are the entities that comprise the Turnberry enterprise which is/was a member

21    and partner in Turnberry/MGM Grand Towers, LLC, operating THE SIGNATURE AT MGM

22    GRAND enterprise. Defendants MGM Mirage, Turnberry/Harmon Ave., LLC and Turnberry

23    Associates not only knew about the existence of the fraud and illegal conduct herein alleged, but also

24    knowingly participated in the creation, design, direction and implementation of the illegal and

25    fraudulent scheme to sell the SECURITIES, the training of the sales personnel, the marketing

26    structure, and the material misrepresentations and omissions of material facts, and therefore knew

27    that they were participating as principals in the fraudulent scheme for which they had the power and

28

control to continue or discontinue. The commission of this fraud and illegal sales of the SECURITIES could not have occurred without the clear and precise directions from the Defendants MGM Mirage, Turnberry/Harmon Ave., LLC and Turnberry Associates as to how and in what way to accomplish the fraudulent mission to victimize investors with the fraudulent and illegal sale of the SECURITIES. These Defendants completely controlled, dominated, managed and operated THE SIGNATURE AT MGM GRAND enterprise through Turnberry/MGM Grand Towers, LLC, to perpetuate the fraud as herein alleged and thereby fraudulently allowed the Defendants to profit from the fraud. As a result of their joint and several participation in the fraudulent investment scheme set forth herein, these Defendants are jointly and severally liable for the losses of Plaintiffs and the Class. But for their knowing and intentional participation in this fraud, the DEFENDANTS could not have successfully defrauded the Plaintiffs and the Class. By means of their actual power, influence, ability to control and control over Turnberry/MGM Grand Towers, LLC. entity, MGM Mirage, Turnberry/Harmon Ave., LLC and Turnberry Associates induced a violation of the securities laws through their participation in and influence over the operations of    Turnberry/MGM Grand Towers, LLC, that led to the material misrepresentations and omissions of materially adverse facts necessary to prevent statements from being misleading, employment of devices, schemes and artifices designed to defraud, and participation in business practices that operated as fraud or deceit, in connection with the sale and marketing of the SECURITIES with the full knowledge of the existence of the facts for which liability of Turnberry/MGM Grand Towers, LLC is being sought. As a result of the above, Turnberry/MGM Grand Towers, LLC was a mere agency and instrumentality of Defendants MGM Mirage, Turnberry/Harmon Ave., LLC and Turnberry Associates, and each of them, pursuant to which the single business enterprise of the SECURITIES was being conducted. As a result of the above, Defendants MGM Mirage, Turnberry/Harmon Ave., LLC and Turnberry Associates functioned as a single business enterprise with regard to the SECURITIES.

22.    PLAINTIFFS are ignorant of the true names and capacities of the Defendants sued

9

1  herein as DOES 1 through 100, inclusive, and therefore sued these Defendants by fictitious names.

2  Plaintiffs will amend further this Complaint to allege the true names and capacities of these

3  Defendants if and when they are ascertained. Each of these Defendants, sued by the fictitious DOE

4  designation, was in some manner responsible for the acts, omissions, misrepresentations, non-

5  disclosures, breach of warranties, fraud, unjust enrichment, deceptive business practices, violation

6  of statutes, aiding and abetting the scheme, and other wrongdoing as alleged herein, all of which

7  directly and proximately caused damage to Plaintiffs. Plaintiffs are further informed and believe that

8  said Defendants, some of them, each of them and/or all or them were the knowing and willful

9  participants in a scheme to promote, market, sell, advertise, or otherwise benefit from the fraudulent

10  sale of the SECURITIES offered by DEFENDANTS.

11

12

13  **JURISDICTION AND VENUE**

14  23.     This Court has jurisdiction over this action, and venue is proper in Clark County,

15  Nevada, because the DEFENDANTS have at all relevant times maintained their offices in Clark

16  County, Nevada and committed the wrongful conduct against each Plaintiff named herein in Clark

17  County, Nevada.

18

19

20  **THE SCHEME TO DEFRAUD AS PERPETRATED ON EACH PLAINTIFF**

21  24.     DEFENDANTS knowingly sold each named Plaintiff a SECURITY as evidenced by

22  the following representative facts of each of the named Plaintiffs:

23  25.     Plaintiff Mary Ann Sussex, on or about November 9, 2005, purchased Unit 1811-C,

24  one of the SECURITIES, for $630,000.00.   Plaintiff met with Richard Bognar, one of

25  DEFENDANTS' sales representatives. Mr. Bognar discussed the various financial or economic

26  benefits that would result from Plaintiffs' participation in DEFENDANTS' rental program.

27  Specifically, Mr. Bognar stated MGM Signature would be much more upscale than the MGM Grand

28

1    and compared the projected room rental rates to those of the Four Seasons, Venetian, Bellagio, and

2    Wynn hotels.  Mr. Bognar provided an anticipated occupancy rate of no less than 80% and an

3    estimate of $300 per night as the lowest average room rental rate and $400 and above on weekends

4    and special events or holidays. Mr. Bognar also stated that participation in the rental program would

5    be a great investment opportunity because the MGM Convention Center was fully booked for the

6    next three years and plans for expansion were already in place.  He stated that convention attendees

7    would no longer have to stay at other hotels on the Las Vegas Strip because they could now stay at

8    an upscale version of the MGM Grand.  In addition, Mr. Bognar stated the attractiveness of the rental

9    program would increase after future plans to connect the airport tram to the MGM are realized.  The

10   SECURITIES were purchased in reliance upon DEFENDANTS' false and fraudulent statements,

11   all made within the last three (3) years, that as a result of MGM Grand branding, hotel reservations,

12   casino operations, room rates, occupancy rates, rental program, and the other amenities being

13   delivered by the MGM enterprise, that the investment in the SECURITIES would be profitable and

14   the value of the SECURITIES would appreciate, without Plaintiff Mary Ann Sussex having to

15   provide any services or oversight of the DEFENDANTS.  These statements were all false and

16   DEFENDANTS either knew at the time these statements were made that these statements, and each

17   of them, were false or made these utterances with conscious or reckless disregard for the truth of

18   these statements, but made them to defraud Plaintiff Mary Ann Sussex . Plaintiff Mary Ann Sussex,

19   at all times, up until January 2008, believed these statements were true and had no reason to believe

20   the statements to be false because DEFENDANTS' representations were dependent on facts

21   peculiarly within the DEFENDANTS' knowledge and control that did not become apparent until

22   January 2008.  Only after the SECURITIES failed to appreciate and produced rental income far

23   below the amounts forecasted by DEFENDANTS, could Plaintiff Mary Ann Sussex  foresee the

24   continued loss of money by reason of the purchase of the SECURITIES.  But for DEFENDANTS'

25   false and fraudulent statements, Plaintiff Mary Ann Sussex would not have purchased the

26   SECURITIES that were not registered, and are not exempt from registration.  As a result of these

27   facts, Plaintiff Mary Ann Sussex is entitled to and hereby seek to rescind the transaction and be

28

11

1   restored all money paid to DEFENDANTS plus interest thereon from the date of purchase, plus

2   consequential damages.

3          26.     Plaintiffs Malcolm Nicholl and Sandy Scalise (husband and wife), on or about June

4   27, 2005, purchased unit 1707-C, one of the SECURITIES, for $610,000.00. Plaintiffs met with

5   Jason Baratta, one of DEFENDANTS' sales representatives. Mr. Baratta discussed the various

6   financial or economic benefits that would result from Plaintiffs' participation in DEFENDANTS'

7   rental program. Specifically, Mr. Baratta stated that the MGM Signature was a high end project

8   comparable to the Four Seasons, Bellagio, and "The Hotel" at Mandalay Bay. He stated room rental

9   rates would be $400-$600 during the week and $500-$700 on weekends with a 60/40 split in favor

10  of the Plaintiffs. In addition, Mr. Baratta emphasized that the MGM Signature could expect a room

11  rental occupancy rate of 95%. The SECURITY was purchased in reliance upon DEFENDANTS'

12  false and fraudulent statements, all made within the last three (3) years, that as a result of MGM

13  Grand branding, hotel reservations, casino operations, room rates, occupancy rates and the other

14  amenities being delivered by the MGM enterprise, that the investment in the SECURITIES would

15  be profitable and the value of the SECURITIES would appreciate, without Plaintiffs Malcolm

16  Nicholl and Sandy Scalise having to provide any services or oversight of the DEFENDANTS. These

17  statements were all false and DEFENDANTS either knew at the time these statements were made

18  that these statements, and each of them, were false or made these utterances with conscious or

19  reckless disregard for the truth of these statements, but made them to defraud Plaintiffs Malcolm

20  Nicholl and Sandy Scalise. Plaintiffs, at all times, up until January 2008, believed these statements

21  were true and had no reason to believe the statements to be false because DEFENDANTS'

22  representations were dependent on facts peculiarly within the DEFENDANTS' knowledge and

23  control that did not become apparent until January 2008.   Only after the SECURITIES failed to

24  appreciate and produced rental income far below the amounts forecasted by DEFENDANTS, could

25  Plaintiffs Malcolm Nicholl and Sandy Scalise foresee the continued loss of money by reason of the

26  purchase of the SECURITIES. But for DEFENDANTS' false and fraudulent statements, Plaintiffs

27  Malcolm Nicholl and Sandy Scalise would not have purchased the SECURITIES that were not

28

12

1  registered, and are not exempt from registration. As a result of these facts, Plaintiffs Malcolm
2  Nicholl and Sandy Scalise are entitled to and hereby seek to rescind the transaction and be restored
3  all money paid to DEFENDANTS plus interest thereon from the date of purchase, plus consequential
4  damages.

5      27.   Plaintiff Mitchell Pae, on or about May 14, 2007, purchased unit 605-C, one of
6  the SECURITIES, for $560,000.00. Plaintiff met with Richard Bognar, one of DEFENDANTS'
7  sales representatives. Mr. Bognar discussed the various financial or economic benefits that would
8  result from Plaintiff's participation in DEFENDANTS' rental program. In July of 2005, Mr. Bognar
9  provided details of the rental program to Plaintiff Mitchell Pae via email which stated that unit
10  owners were to receive 54% of the rental revenue and that the MGM would be marketing the rooms
11  as luxury hotel rooms priced in line with upscale hotel properties such as the Venetian, Four
12  Seasons, Bellagio, and the Wynn. Further, Mr. Bognar commented at length regarding the increasing
13  land value on the Las Vegas Strip and made specific projections regarding the monthly net income
14  to be derived from participation in the rental program. Mr. Bognar stated Plaintiff Pae would "net
15  $3,000 per month" based on current MGM room occupancy rates and projected rental figures. Mr.
16  Bognar also stated that room occupancy rates during "difficult" weekdays would be increased by the
17  close proximity of Signature to the MGM Convention Center. The SECURITY was purchased in
18  reliance upon DEFENDANTS' false and fraudulent statements, all made within the last three (3)
19  years, that as a result of MGM Grand branding, hotel reservations, casino operations, room rates,
20  occupancy rates and the other amenities being delivered by the MGM enterprise, that the investment
21  in the SECURITIES would be profitable and the value of the SECURITIES would appreciate,
22  without Plaintiff Mitchell Pae having to provide any services or oversight of the DEFENDANTS.
23  These statements were all false and DEFENDANTS either knew at the time these statements were
24  made that these statements, and each of them, were false or made these utterances with conscious
25  or reckless disregard for the truth of these statements, but made them to defraud Plaintiff Mitchell
26  Pae. Plaintiff, at all times, up until January 2008, believed these statements were true and had no
27
28

13

1   reason to believe the statements to be false because DEFENDANTS' representations were dependent

2   on facts peculiarly within the DEFENDANTS' knowledge and control that did not become apparent

3   until January 2008.   Only after the SECURITIES failed to appreciate and produced rental income

4   far below the amounts forecasted by DEFENDANTS, could Plaintiff Mitchell Pae foresee the

5   continued loss of money by reason of the purchase of the SECURITIES.  But for DEFENDANTS'

6   false and fraudulent statements, Plaintiff Mitchell Pae would not have purchased the SECURITIES

7   that were not registered, and are not exempt from registration.  As a result of these facts, Plaintiff

8   Mitchell Pae is entitled to and hereby seek to rescind the transaction and be restored all money paid

9   to DEFENDANTS plus interest thereon from the date of purchase, plus consequential damages.

10        28.     Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr., on or about July 19, 2005,

11   purchased unit 3611-B, one of the SECURITIES, for $745,000.00.  Plaintiffs met with Jeff Schoor,

12   one of DEFENDANTS' sales representatives.   Mr. Schoor discussed the various financial or

13   economic benefits that would result from Plaintiffs' participation in DEFENDANTS' rental

14   program. Specifically, Mr. Schoor stated that MGM Signature could be compared to five star hotels

15   in the area including Bellagio and The Four Seasons.  Mr. Schoor stated that room rental rates would

16   be similar to these five star hotels and be priced at $300-$400 per night on weekdays and increase

17   on weekends and holidays.  In addition, Mr. Schoor stated that occupancy rates would be over 90%

18   and unit owners could expect a "generous" 60/40 revenue split favoring the Plaintiffs.  These details

19   regarding the rental program were memorialized by Mr. Schoor on handwritten notes on MGM

20   stationary before the purchase agreement was executed. The SECURITY was purchased in reliance

21   upon DEFENDANTS' false and fraudulent statements, all made within the last three (3) years, that

22   as a result of MGM Grand branding, hotel reservations, casino operations, room rates, occupancy

23   rates and the other amenities being delivered by the MGM enterprise, that the investment in the

24   SECURITIES would be profitable and the value of the SECURITIES would appreciate, without

25   Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr. having to provide any services or oversight of

26   the DEFENDANTS.  These statements were all false and DEFENDANTS either knew at the time

27

28

14

1    these statements were made that these statements, and each of them, were false or made these

2    utterances with conscious or reckless disregard for the truth of these statements, but made them to

3    defraud Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr. Plaintiffs, at all times, up until January

4    2008, believed these statements were true and had no reason to believe the statements to be false

5    because DEFENDANTS' representations were dependent on facts peculiarly within the

6    DEFENDANTS' knowledge and control that did not become apparent until January 2008. Only

7    after the SECURITIES failed to appreciate and produced rental income far below the amounts

8    forecasted by DEFENDANTS, could Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr. foresee

9    the continued loss of money by reason of the purchase of the SECURITIES. But for

10   DEFENDANTS' false and fraudulent statements, Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez,

11   Jr. would not have purchased the SECURITIES that were not registered, and are not exempt from

12   registration. As a result of these facts, Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr. are

13   entitled to and hereby seek to rescind the transaction and be restored all money paid to

14   DEFENDANTS plus interest thereon from the date of purchase, plus consequential damages.

15        29.    Plaintiffs John and Elizabeth Hanson, on or about April 11, 2005, purchased unit

16   204-C, one of the SECURITIES, for $425,000.00. Plaintiffs met with Richard Bognar, one of

17   DEFENDANTS' sales representatives. Mr. Bognar discussed the various financial or economic

18   benefits that would result from Plaintiff's participation in DEFENDANTS' rental program.

19   Specifically, Mr. Bognar stated MGM Signature was going to be a five star hotel and cater to high

20   end clientele similar to the Four Seasons. He stated that the MGM Grand catered to lower and

21   middle class markets which created the necessity of a high end sister property that could

22   accommodate "high rollers" willing to pay a much higher price for rooms. In addition, Mr. Bognar

23   emphasized the future expansion of the MGM convention center which would drive the need for

24   available rooms at MGM Signature. Mr. Bognar stated that the minimum room rental rate would

25   be $300 and that rate would soar above $400 and $500 per night on weekends and special events

26   

27   such as concerts or boxing matches. The SECURITY was purchased in reliance upon

28

15

1  DEFENDANTS' false and fraudulent statements, all made within the last three (3) years, that as a

2  result of MGM Grand branding, hotel reservations, casino operations, room rates, occupancy rates

3  and the other amenities being delivered by the MGM enterprise, that the investment in the

4  SECURITIES would be profitable and the value of the SECURITIES would appreciate, without

5  Plaintiffs John and Elizabeth Hanson having to provide any services or oversight of the

6  DEFENDANTS. These statements were all false and DEFENDANTS either knew at the time these

7  statements were made that these statements, and each of them, were false or made these utterances

8  with conscious or reckless disregard for the truth of these statements, but made them to defraud

9  Plaintiffs John and Elizabeth Hanson. Plaintiffs, at all times, up until January 2008, believed these

10  statements were true and had no reason to believe the statements to be false because

11  DEFENDANTS' representations were dependent on facts peculiarly within the DEFENDANTS'

12  knowledge and control that did not become apparent until January 2008.   Only after the

13  SECURITIES failed to appreciate and produced rental income far below the amounts forecasted by

14  DEFENDANTS, could Plaintiffs John and Elizabeth Hanson foresee the continued loss of money

15  by reason of the purchase of the SECURITIES.   But for DEFENDANTS' false and fraudulent

16  statements, Plaintiffs John and Elizabeth Hanson would not have purchased the SECURITIES that

17  were not registered, and are not exempt from registration. As a result of these facts, Plaintiffs John

18  and Elizabeth Hanson are entitled to and hereby seek to rescind the transaction and be restored all

19  money paid to DEFENDANTS plus interest thereon from the date of purchase, plus consequential

20  damages.

21                          <u>**ARBITRATION EXEMPTION CLAIMED**</u>

22

23          30.     Pursuant to Rule 3 of the Nevada Arbitration Rules, this matter should not be subject

24  to arbitration because (1) damages for each Plaintiff are in excess of $50,000.00, (2) significant

25  issues of public policy are involved and (3) this is a class action complaint.

26          31.     Public policy concerns dictate that Defendants cannot compel arbitration because

27  terms of the Purchase Agreement, which include an arbitration provision, are unenforceable under

28

                                                    16

NRS 90.840, subsection 1, as a matter of law because the contract is an illegal contract in the State of Nevada. The sale of unregistered SECURITIES renders the entire contract unenforceable as a matter of law and public policy.

32.    Public Policy concerns dictate that Defendants cannot compel arbitration because the arbitration provision in the Purchase Agreement is both procedurally and substantively unconscionable under the facts of this case.

## CLASS ALLEGATIONS

33.    PLAINTIFFS bring this action pursuant to Rule 23 of the Nevada Rules of Civil Procedure as a class action on their own and on behalf of a class defined as:

> ALL INDIVIDUALS WHO PURCHASED ONE OR MORE OF
> THE SECURITIES IN THE SIGNATURE AT THE MGM GRAND
> HOTEL/CASINO.

> Excluded from the Class are Defendants, any parent, subsidiary of
> affiliate of Defendants, and their officers, directors, and employees,
> who are or have been employed by Defendants during the above-
> defined Class Period, and any judicial officer who may preside over
> this cause of action.

34.    The requirements for maintaining this action as a class action under Rule 23 of the Nevada Rules of Civil procedure are satisfied in that:

a.    It is impracticable to bring all members of the Class before the Court. Plaintiffs estimate that there are hundreds of Class Members, geographically spread throughout the United States, and that their identities can be ascertained from DEFENDANTS' books and records. Attempting to join and name each Class member as a Co-Plaintiff would be unreasonable and impracticable.

b.    There are questions of law and fact common to the Class, which are identical for each member of the Class and which predominate over the questions affecting the individual Class members, if any. Among these common questions of law and fact are:

17

(I)     Whether DEFENDANTS sold securities within the meaning of N.R.S. § 90.460;

(ii)    Whether DEFENDANTS registered their SECURITIES;

(iii)   Whether DEFENDANTS' conduct violated N.R.S. § 90.460;

(iv)    Whether DEFENDANTS' conduct violated N.R.S. § 90.570;

(v)     Whether DEFENDANTS represented that the investments in the MGM Grand Hotel/Casino would earn a rate of return and/or was guaranteed, secured or protected, which DEFENDANTS knew or had reason to know was false and/or misleading;

(vi)    Whether DEFENDANTS made untrue statements of material facts and/or omitted to state material facts about the investment in the Signature at the MGM Grand Hotel/Casino;

(vii)   Whether DEFENDANTS failed to comply with applicable laws and regulations concerning the marketing and sale of investment securities; and,

(viii)  Whether DEFENDANTS conducted the offering and sale of investment securities in the form of the condominium-hotel room units at the Signature at the MGM Grand Hotel/Casino without all the required licensing and regulatory approvals.

c.      The sales representations and practices here made to the class representatives and to each member of the class were part of a common scheme applicable similarly to each of them. As to each member of the class, representations of branding and association with the MGM name, the dependency upon the success or failure of the MGM GRAND branded enterprise, the promotion of the investment that a valuable benefit, over and above the entire amount paid for the physical air rights to the hotel room, would accrue to the PLAINTIFFS, the lack of any right to exercise any practical or actual control over the managerial decisions of the MGM GRAND enterprise, and the other promises herein alleged were similarly presented by DEFENDANTS to the members of the Class and the named Plaintiffs.  The sales techniques used by DEFENDANTS were part of a

18

1  coordinated scheme involving common sales materials, instructions, training and practice review.
2  The sales pitches being made to each purchaser member of the Class included the same
3  representations and the same elements of deception described for the named Plaintiffs. Each of the
4  members of the Class justifiably relied on those representations of fact in making their investment
5  purchase decisions, and each has been similarly damaged by the falsity of the statements so relied
6  upon.

7        d.    The claims of the representative PLAINTIFFS are typical of the claims of
8  the Class in that each PLAINTIFF purchased one or more of the SECURITIES in the Signature at
9  the MGM Grand Hotel/Casino offered by DEFENDANTS.
10

11        e.    The claims of the representative PLAINTIFFS will fairly and adequately
12  protect the interests of the Class. The Class interests are coincident with, and not antagonistic to,
13  those of the PLAINTIFFS. Furthermore, PLAINTIFFS are represented by experienced class action
14  counsel.

15      35.    In this action, PLAINTIFFS and the Class seek all equitable, compensatory, special
16  and punitive damages authorized under Nevada law for which class-wide relief is available,
17  disgorgement, restitution and reasonable attorneys' fees and costs incurred in the prosecution of this
18  action.   There are no manageability problems due to variations in state laws or choice of law
19  provisions, because Nevada law applies to the claims of all the members of the CLASS asserted
20  herein. Class wide litigation of the predominating common issues is superior to any other form of
21  litigation, including individual litigation.

22      36.    The conduct of the DEFENDANTS in the offering and sale of the SECURITIES
23  to the other members of the Class followed substantially the same pattern and involved substantially
24  the same conduct. The SECURITIES sold to the Class were securities within the meaning of Nevada
25  law for the same reasons set forth in Paragraph 3 above. The offering and sale of the SECURITIES
26  to the members of the Class was fraudulent, illegal and a deceptive trade practice for the same
27  reasons the offering and sale of the SECURITIES to the PLAINTIFFS was fraudulent, illegal and
28

19

1  a deceptive trade practice.

2                          FIRST CAUSE OF ACTION

3          (Violation of N.R.S. 90.460 for the Unlawful Sale of an Unregistered Security)

4          37.    PLAINTIFFS reallege and incorporate herein by reference the allegations contained

5   in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

6   PLAINTIFFS bring this cause of action on behalf of themselves and the Class of similarly situated

7   persons as herein defined.

8
9          38.    The entire amounts paid by each and every PLAINTIFF was subjected to the risk of

10  the MGM Grand enterprise to rent the SECURITIES, branded as MGM Grand Hotel rooms, at a

11  projected rate for a projected range of days within each year.  All of the economic benefits to be

12  derived from the SECURITY were inextricably bound to the success of the entire MGM Hotel

13  branded enterprise as a whole.  The occupancy rates of the SECURITY, from which PLAINTIFFS

14  sought to derive rental profits, were dependent upon the success of the MGM brand.

15         39.    The furnishing of the amounts paid by each and every PLAINTIFF for every

16  respective SECURITY purchased were induced by DEFENDANTS' promises or representations

17  which gave rise to a reasonable understanding among the PLAINTIFFS that a valuable benefit in the

18  form of prospective economic benefits would accrue to PLAINTIFFS from the entrepreneurial or

19  managerial efforts of others managing the MGM Grand Hotel, the MGM Grand Casino, the

20  Signature at MGM Grand and the Rental Program at the Signature at MGM Grand, induced Plaintiff

21  to purchase the SECURITY.  The economic benefit, over and above the amounts paid for the

22  purchase of the SECURITIES, that DEFENDANTS' sales team promised would flow to

23  PLAINTIFFS from the purchase of the SECURITIES were the primary motivation behind

24  PLAINTIFFS' purchase of the SECURITIES.  Residency was never discussed as a significant

25  motivation for purchase between any member of DEFENDANTS' sales or rental representatives and

26  any of the PLAINTIFFS.

27         40.    PLAINTIFFS did not intend to receive any right to exercise practical and/or actual

28
                                              20

control over the managerial decisions of the MGM enterprise. Furthermore, PLAINTIFFS did not exercise any power to influence the utilization of the capital invested in the SECURITY. Instead, the economic benefits that PLAINTIFFS were told by DEFENDANTS would flow from the purchase of the SECURITY would result from name recognition of the MGM Grand brand, the strength of the rental program management, and the ability of the reservation system of the rental program to yield income after the purchase.

41.     DEFENDANTS issued the SECURITIES, which were not exempt from registration, to PLAINTIFFS without abiding by the registration requirements of Nevada, did not have any preemption therefrom, and therefore PLAINTIFFS, under N.R.S. 90.660, may recover the consideration paid for the security and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the security.

42.     PLAINTIFFS who no longer own the security may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the security, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the security for the amount specified.

43.     PLAINTIFFS are also entitled to all remedies available under N.R.S. 90.640, including a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus; the imposition of a civil penalty of not more than $2,500 for a single violation or $100,000 for multiple violations in a single proceeding or a series of related proceedings; declaratory judgment; restitution; the appointment of a receiver or conservator for the DEFENDANTS' assets; an order of payment of the divisions investigative costs; or an order of such other relief as the court deems just.


### SECOND CAUSE OF ACTION

(Violation of N.R.S. 90.570 for the Unlawful Sale of a Security by Means of a Scheme to Defraud)

44.     PLAINTIFFS reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. PLAINTIFFS bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

45.     In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:

1. Employ any device, scheme or artifice to defraud;

2. Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or

3. Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

N.R.S. § 90.570.

46.     DEFENDANTS, through the sales and rental management presentations of the unregistered SECURITIES have employed a device, scheme or artifice to defraud described in specificity above in this Complaint and incorporated by reference herein, by making false representations as the amount of revenue that would be generated from the investment in the SECURITIES based on fraudulent projections concerning the minimum rental rates and the minimum occupancy rates of the SECURITIES.  Further fraudulent representations made by DEFENDANTS consisted of false and fraudulent projections of the appreciation rate of the SECURITIES in property value, both before and after the closing of the investment sales contract.

47.     DEFENDANTS, further through the sales and rental management presentations of the unregistered SECURITIES, as described with specificity above in this Complaint and incorporated by reference herein, made several untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made not misleading in the true circumstances concerning the DEFENDANTS' actual ability to forecast or predict the profitability of participating in DEFENDANTS' rental management program and the minimum rental rates, the minimum occupancy rates, and the anticipated appreciation rates of the SECURITIES.

22

48.    DEFENDANTS, through the false and fraudulent sales and rental presentations described with specificity above in this Complaint and incorporated by reference herein, engaged in acts, practices and/or a course of business which operated as a fraud or deceit upon the PLAINTIFFS by inducing PLAINTIFFS to purchase the SECURITIES and enter the DEFENDANTS' rental management program based on dubious predictions of economic expectations that the DEFENDANTS knew to be false at the time such predictions were made. Moreover, the DEFENDANTS either knew and in the exercise of reasonable care should have known of the nature of the untrue statements and misleading omissions, or made these utterances with conscious or reckless disregard for the truth of these statements, but made them to defraud PLAINTIFFS.

49.    The PLAINTIFFS did not know that the statements of material facts made to them by DEFENDANTS during the sales presentations were untrue or that there was an omission of a statement of material facts.

50.    PLAINTIFFS did not receive any written offer, including financial and other information necessary to correct all material misstatements or omissions in the information required to be furnished to PLAINTIFFS, as of the time of the sale of the SECURITIES.

51.    DEFENDANTS, pursuant to the fraudulent scheme, business practice, and on the basis of untrue material facts and omissions, issued the SECURITIES, which were not exempt from registration, to PLAINTIFFS without abiding by the registration requirements of Nevada and therefore PLAINTIFFS, under N.R.S. 90.660, may recover the consideration paid for the security and interest at the legal rate of this State from the date of payment, costs and reasonable attorney's fees, less the amount of income received on the security.

52.    PLAINTIFFS who no longer own the security may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the security, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the security for the amount specified.

23

53.    PLAINTIFFS are also entitled to all remedies available under N.R.S. 90.640, including a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus; the imposition of a civil penalty of not more than $2,500 for a single violation or $100,000 for multiple violations in a single proceeding or a series of related proceedings; declaratory judgment; restitution; the appointment of a receiver or conservator for the DEFENDANTS' assets; an order of payment of the divisions investigative costs; or an order of such other relief as the court deems just.

## THIRD CAUSE OF ACTION

### (Violation of N.R.S. Chapter 598, et seq. for Deceptive Trade Practices)

54.    PLAINTIFFS reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. PLAINTIFFS bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

55.    PLAINTIFFS bring this claim under Nevada consumer fraud laws, particularly NRS Sections 41.600 and 598.0903, et seq., on behalf of themselves and the Class who purchased the air rights to condominium hotel room units from DEFENDANTS, and who were thus subject to DEFENDANTS' above-described deceptive, unlawful and fraudulent conduct.

56.    The air rights to condominium hotel room units, as described above, were purchased by the PLAINTIFFS and by other consumers similarly situated primarily for investment purposes.

57.    The DEFENDANTS violated their statutory duty under the Nevada Deceptive Trade Practices Act by advertising, offering and selling the air rights to condominium-hotel room units as investment securities at the Signature at the MGM Grand Hotel/Casino as described herein above.

58.    The DEFENDANTS violated their duty under the aforementioned statutes, including but not limited to, § 598.092 (5)(a), (b), (c), (f) and § 598.0923(1), by, among other things, (I)

24

1  representing that the investment securities in the form of the condominium-hotel room units at the

2  Signature at the MGM Grand Hotel/Casino would earn a rate of return and/or was guaranteed,

3  secured or protected, which DEFENDANTS knew or had reason to know was false and/or

4  misleading; (ii) making untrue statements of material facts and/or omitting to state material facts

5  about the investment securities in the form of the condominium-hotel room units at the Signature

6  at the MGM Grand Hotel/Casino; (iii) failing to comply with applicable laws and regulations

7  concerning the marketing and sale of investment securities; and/or (iv) conducting the offering and

8  sale of investment securities in the form of the condominium-hotel room units at the Signature at the

9  MGM Grand Hotel/Casino without all the required licensing and regulatory approvals.

10      59.    The Defendants actions as alleged herein were materially deceptive and constituted

11  fraud, false pretense, misrepresentation and the concealment, suppression and omission of material

12  facts with the intent that Plaintiffs and the Class would rely upon the fraudulent misrepresentation,

13  concealment, suppression and omission of such material facts, all in violation of the Nevada

14  Consumer Fraud and Deceptive Business Practices Acts.

15

16      60.    PLAINTIFFS and the other members of the Class were injured by the many violations

17  of the Nevada Deceptive Trade Practices Act, and PLAINTIFFS and the Class have thereby been

18  damaged in an amount to be proven at trial.

19

20                      **FOURTH CAUSE OF ACTION**

21                        **(Fraudulent Misrepresentation)**

22      61.    PLAINTIFFS reallege and incorporate herein by reference the allegations contained

23  in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

24  PLAINTIFFS bring this cause of action on behalf of themselves and the Class of similarly situated

25  persons as herein defined.

26      62.    DEFENDANTS made false and fraudulent misrepresentations, as described with

27  specificity above and incorporated by reference herein, that, inter alia, as a result of MGM Grand

28

25

branding, hotel reservations, casino operations, room rates, occupancy rates, DEFENDANTS' rental program, and the other amenities being delivered by the MGM enterprise, the investment in the SECURITIES would be profitable and the value of the SECURITIES would appreciate, without PLAINTIFFS, having to provide any services or oversight of the DEFENDANTS.

63.    DEFENDANTS, and each of them, made these representations with the knowledge or belief that the representations were false or with an insufficient basis of information for making the representations.

64.    DEFENDANTS intended to induce PLAINTIFFS to act upon the misrepresentations by entering into the sales agreement to purchase the SECURITIES and also entering into the rental management agreement.

65.    PLAINTIFFS were ignorant of the truth of the misrepresentations and concealments made by DEFENDANTS and in fact justifiably relied on the misrepresentations made by DEFENDANTS.

66.    As a direct and proximate result of DEFENDANTS' misstatements and misrepresentations of material facts,   PLAINTIFFS entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the DEFENDANTS' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

67.    As a result, PLAINTIFFS are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

68.    DEFENDANTS had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these defendants was malicious, oppressive and/or fraudulent, PLAINTIFFS are, therefore, entitled to punitive damages to make an example of and to punish these DEFENDANTS in addition to actual damage.

26

## FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

69.    PLAINTIFFS reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. PLAINTIFFS bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

70.    DEFENDANTS supplied false guidance in discussions relating to the sale of DEFENDANTS' condominium hotel units at the MGM GRAND as described with specificity above and incorporated by reference herein.   DEFENDANTS failed to exercise reasonable care or competence in obtaining or communicating the information which consisted of misrepresentations, not only concerning the property value of the condominium hotel units, but also concerning the anticipated rental value and occupancy rate of the units, and the profitability of participating in DEFENDANTS' rental management program.   Such misrepresentations were made in the course of DEFENDANTS' business, profession or employment, and/or in any such transaction in which DEFENDANTS had a pecuniary interest.

71.    The misrepresentations made to PLAINTIFFS included, inter alia, the false and fraudulent statements described above with specificity in this Complaint and incorporated by reference herein.

72.    DEFENDANTS, and each of them, made these representations negligently, and without any reasonable basis for believing them to be true.

73.    PLAINTIFFS were ignorant of the truth of the misrepresentations and concealments made by DEFENDANTS and in fact justifiably relied on the misrepresentations made by DEFENDANTS and each of them.

74.    As a direct and proximate result of DEFENDANTS' misstatements and misrepresentations of material facts, PLAINTIFFS entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the DEFENDANTS'

rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

75.     As a result, PLAINTIFFS are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

## SIXTH CAUSE OF ACTION
### (Fraud in the Inducement)

76.     PLAINTIFFS reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. PLAINTIFFS bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

77.     PLAINTIFFS contracted with DEFENDANTS and relied upon DEFENDANTS to provide their professional expertise and judgment with respect to the purchase of condominium hotel units at the MGM GRAND. DEFENDANTS utilized an inside and outside sales team in order to make false representations to the PLAINTIFFS in order to induce their consent to enter into the purchase agreement and the rental management agreement. Both DEFENDANTS' inside and outside sales team had knowledge or belief that the representations were false (or knowledge that it had an insufficient basis for making the representations).

78.     The false representations made to PLAINTIFFS included, inter alia, the fraudulent statements described with specificity above and incorporated by reference herein.

79.     DEFENDANTS presented numerous false representations regarding the true economic value of such investment from PLAINTIFFS, despite knowing the true and correct facts of the rental values, expected rental occupancy rate of the SECURITIES, and the amount of profits PLAINTIFFS would receive from participating in DEFENDANTS' rental management program.

80.     DEFENDANTS, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the economic value of the SECURITIES.