**ACOM**
Robert B. Gerard, Esq. (Nevada State Bar #005323)
Ricardo R. Ehmann, Esq. (Nevada State Bar #010576)
GERARD & ASSOCIATES
2840 South Jones Boulevard
Building D, Suite #4
Las Vegas, Nevada 89146
Telephone:    (702) 251-0093
Facsimile:    (702) 251-0094

Norman Blumenthal, Esq. (California State Bar #068687)
BLUMENTHAL & NORDREHAUG
2255 Calle Clara
La Jolla, California 92037
Telephone:    (858) 551-1223
Facsimile:    (858) 551-1232

Robert Fellmeth, Esq. (California State Bar #49897)
5998 Alcala Park
San Diego, California 92110
Telephone:    (619) 260-4806
Facsimile:    (619) 260-4753

Attorneys for Plaintiffs
Additional counsel listed on signature page

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN SUSSEX; MITCHELL PAE; MALCOLM NICHOLL and SANDY SCALISE; ERNESTO VALDEZ, SR. and ERNESTO VALDEZ, JR.; JOHN HANSON and ELIZABETH HANSON;<br><br>   Plaintiffs,<br><br>  vs.<br><br>TURNBERRY/MGM GRAND TOWERS, LLC, a Nevada LLC; MGM GRAND CONDOMINIUMS LLC, a Nevada LLC; THE SIGNATURE CONDOMINIUMS, LLC a Nevada LLC;  MGM MIRAGE, a Delaware Corporation; TURNBERRY/HARMON AVE., LLC., a Nevada LLC; and TURNBERRY WEST REALTY, INC., a Nevada Corporation;<br>    Defendants. | CASE NO.: **2: 08-cv-00773** - RLH - PAL<br><br>**AMENDED FEDERAL CLASS ACTION COMPLAINT FOR:**<br><br>(1) VIOLATION OF THE SECURITIES ACT OF 1933<br><br>(2) VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934<br><br>(3) VIOLATION OF N.R.S. 90.460<br><br>(4) VIOLATION OF N.R.S. 90.570<br><br>(5) VIOLATION OF N.R.S. 598, *et seq.* |

1

| | |
|---|---|
| 1 | ) (6) FRAUDULENT |
| 2 | ) MISREPRESENTATION; |
| | ) |
| 3 | ) (7) NEGLIGENT MISREPRESENTATION; |
| | ) |
| 4 | ) (8) FRAUD IN THE INDUCEMENT; and |
| 5 | ) |
| | ) (9) FRAUDULENT CONCEALMENT |
| 6 | ) |
| 7 | ) **ARBITRATION EXEMPTION** |
| | ) **CLAIMED:** |
| 8 | ) |
| 9 | ) **1. DAMAGES IN EXCESS OF $50,000** |
| | ) **PER PLAINTIFF** |
| 10 | ) |
| 11 | ) **2. ACTION PRESENTS SIGNIFICANT** |
| | ) **ISSUES OF PUBLIC POLICY** |
| 12 | ) |
| | ) **3. CLASS ACTION** |
| 13 | ) |
| | ) **4. ARBITRATION PROVISION** |
| 14 | ) **UNCONSCIONABLE** |

## AMENDED FEDERAL CLASS ACTION COMPLAINT

COMES NOW, Plaintiffs Mary Ann Sussex; Mitchell Pae; Malcolm Nicholl and Sandy Scalise; Ernesto Valdez, Sr. and Ernesto Valdez, Jr.; John Hanson and Elizabeth Hanson, who bring this action on behalf of themselves, and on behalf of all similarly situated persons (collectively "Plaintiffs"), against Defendants TURNBERRY/MGM GRAND TOWERS, LLC, a Nevada LLC; MGM GRAND CONDOMINIUMS LLC, a Nevada LLC; THE SIGNATURE CONDOMINIUMS, LLC a Nevada LLC;  MGM MIRAGE, a Delaware Corporation; TURNBERRY/HARMON AVE., LLC., a Nevada LLC; and TURNBERRY WEST REALTY, INC., a Nevada Corporation (hereinafter collectively referred to as "Defendants"), and allege, based upon information and belief, except where otherwise stated, as follows:

## NATURE OF THE ACTION

1.      The instant Complaint involves a scheme among the Defendants through which

1    Plaintiffs were illegally and fraudulently induced into purchasing the air rights to condominium-hotel
2    room units as investment securities (the "Securities") at the Signature at the MGM Grand
3    Hotel/Casino in 2006 & 2007.

4        2.    The project was variously referred to as The Residences, The Residences at MGM
5    Grand and/or The Residences: A Condo Hotel by Turnberry. The name was subsequently changed
6    prior to any closings and is currently operated under the brand name of the Signature at MGM Grand.

7        3.    The Plaintiffs all first acquired these Securities beginning in 2006 with the transfer
8    of the title of the Securities from Defendants to Plaintiffs without first registering the certificate of
9    sale of the Securities as a security as required by law and without being exempt therefrom. The
10   reason the air rights to the hotel condominium units are securities is because:

11       (a)    the value of the units are all dependent upon the success or failure of the MGM
12           GRAND branded enterprise;

13       (b)    Defendants' sales promotions of the investment in the hotel room gave rise to a
14           reasonable understanding that a valuable benefit, over and above the entire amount
15           paid for the physical air rights to the hotel room, would accrue to the Plaintiffs as a
16           result of the operation of the enterprise as an MGM Grand branded enterprise
17           pursuant to the MGM Grand Rental Program; and

18       (c)    the Plaintiffs, as owners of shares in the enterprise, by signing on with the MGM
19           Grand Rental Program, did not receive and did not intend to receive the right to
20           exercise any practical or actual control over the managerial decisions of the MGM
21           Grand enterprise.

22       4.    Each sale was consummated when each Plaintiff furnished the entire amount paid for
23   the condominium hotel units at the Signature at MGM Grand and closed the purchase as a purchase
24   in the MGM Grand branded enterprise with the transfer of title to the Securities from Defendants to
25   Plaintiffs. Defendants used both inside and outside sales teams to sell the Securities.

26       5.    Central to the Defendants' marketing of the Securities were the omission of material
27   facts and the representations that the Securities would generate substantial amounts of revenue to
28

3

the purchaser. Defendants' sales teams induced the sale of the Securities through sales presentations that raised the Plaintiffs' expectations of the economic benefits of the net rental income to be obtained from the Securities branded as MGM Hotel rooms through the MGM Rental Program. The sales presentations included the use of written materials and discussions that represented, *inter alia*,:

(a)     on one page the price list for the units along with the maintenance fees, rental fees, revenue split and payment schedule;

(b)     a forecast of the anticipated rental rates of the Securities as MGM branded rooms;

(c)     comparisons of the projected net rental income of the Securities branded as MGM Hotel rooms to other similar hotel rental rates in the area; and

(d)     projections of future occupancy rates of the Securities branded as MGM Hotel rooms. The representations made by Defendants were not restricted to mentioning only the availability of a rental program as part of the MGM GRAND enterprise. Rather, Defendants' marketing strategy overtly emphasized the revenue split and the amount of revenue the Plaintiffs would receive from the rental of the Securities, branded as MGM Hotel rooms with the MGM Grand enterprise and intentionally omitted material facts.

6.      The portions of Defendants' marketing scheme that emphasized the economic benefit from the rental of the Securities as represented by the MGM branded hotel rooms as part of the MGM Grand enterprise went above and beyond simply mentioning that a rental program was offered by Defendants. These discussions along with written representations were the centerpiece of the sales presentation and took place as part of the offering and sale. The Plaintiffs' decision to enter into the MGM branded hotel room rental program was not reached independently of the decision to purchase the Securities as the MGM branded hotel room rental program was an integral part of the purchase of the Securities as an MGM branded hotel room as part of the MGM Grand enterprise and was represented as such by the Defendants.

7.      In order to purchase the Securities, the Plaintiffs individually entered into investment contracts with the Defendants whereby Plaintiffs agreed to pay to Defendants a sum certain for the Securities at the closing, at which point the Securities were transferred to Plaintiffs.

4

1  8.  The amounts Plaintiffs paid for the purchase of their Securities were subjected to the
2  risks of the MGM GRAND enterprise to rent the rooms at a projected rate for projected days each
3  year. The enterprise of the MGM GRAND consists of, *inter alia*: (a) the rental program, (b) the
4  MGM Grand Hotel, (c) the MGM Casino, and (d) the other MGM Branded amenities such as
5  specialty restaurants, casual dining, entertainment, nightclubs, lounges, bars, grand spa, salon, grand
6  pool complex, wedding chapel, retail, the lion habitat, CBS television city and the monorail. The
7  rental program places the Plaintiffs' Securities into the hotel's room inventory to be used as luxury
8  suites by Defendants. As a result of the rental program, Plaintiffs have no mechanism by which to
9  control the rental process.

10  9.  The sales teams falsely represented to Plaintiffs and each of them that the rental
11  program that would be used to arrange for the rental of the Plaintiffs' units would be one whereby
12  the owner of the unit would receive 60% of the revenue of such rental and Defendants would receive
13  the remaining 40%. The true facts were completely the opposite as the amount of rental revenue
14  allocated to Defendants exceeded 60% and the actual amount of rental revenue received by Plaintiffs
15  did not amount to 40%. As part of this scheme, Defendants charged the Plaintiffs fees which
16  reduced Plaintiffs' share of revenues. Defendants also failed to share with Plaintiffs 100% of the
17  revenue which was produced as a result of the rental of the Plaintiffs' units. For example, the
18  revenues produced from the pay per view television, room service, internet fees, cabana rentals,
19  income from the mini-bar, and other common and unit elements of the MGM Grand which were
20  used by the renter were not shared with the Plaintiffs. The only fee charged before the revenue is
21  divided between the Defendants and the Plaintiffs is a management fee, amounting to either 10% of
22  the daily rental rate for a standard booking or 13% of the daily rental rate for any group booking
23  which is paid 100% to Defendants. In addition, solely out of Plaintiffs' remaining share of revenues,
24  Plaintiffs pay 100% of all other additional expenses not revealed until the rental agreement was
25  signed. These additional charges include a $10 per night furniture, fixture and equipment fee, a $7-
26  $10 per night Unit Maintenance Fee, a $20 monthly Digital Television and Internet fee, a fixed
27  Monthly Transient Fee that can range from $200 to $500 depending on the particular unit size, and
28

5

1  an Association Fee that ranges from more than $350 per month for a studio unit to over $800 per
2  month for a unit with one or more bedrooms. The Defendants receives in whole or in part these fees.
3  These additional fees reduce Plaintiffs' share of revenues to below 40% even when the unit is fully
4  occupied. During the sales presentations, Defendants touted the amount of profits that Plaintiffs
5  would receive from the revenue generated by the rental of the Securities through Defendants' rental
6  program. Defendants, however, failed to mention the double dip resulting from the front end fees
7  and charges paid by Plaintiffs only reducing the Plaintiffs' share of the rental revenue and the back
8  end revenue split again reducing Plaintiffs' share of revenues. As a result, Plaintiffs receive no
9  more than 40% of the revenues before payment of taxes and loan charges rather than the 60% as
10 represented by Defendants. Since the fees are assessed monthly regardless of whether there is any
11 revenue, the actual percentage received by Plaintiffs after payment of fees can drop substantially as
12 gross revenues decline as the result of reduced occupancy and/or room rates.

13    10.    At all relevant times, Defendants operated the MGM GRAND in Nevada and sold
14 the Securities to purchasers in Nevada. All offers to purchase or sell any of the Securities described
15 herein were made in Nevada and the closing and transfer of titles to the Securities between Plaintiffs
16 and Defendants took place in Las Vegas, Nevada and were governed by Nevada law.

17    11.    All of the Securities sold to Plaintiffs by Defendants were sold pursuant to
18 substantially the same marketing strategy of fraudulently raising the potential buyer's expectation
19 of substantial economic benefits from the purchase and ownership of the Securities branded as part
20 of the MGM enterprise and at the same time concealing the true facts. In every sale that was made
21 of Securities to the Plaintiffs, Defendants uniformly misrepresented the extent of the economic
22 benefit that would be generated from the ownership of the Securities, as MGM branded Securities,
23 and uniformly concealed material facts.

24    12.    In this suit, Plaintiffs seek rescission as well as equitable relief, including declaratory,
25 injunctive, restitutionary and other equitable monetary relief, and damages as set forth more fully
26 below.

27    13.    As more particularly described herein, the Securities were sold and offered in
28

6

conjunction with one or more of the following three factors:

(a) emphasis on economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units;

(b) the offering of participation in a rental management program; or

(c) the offering of a rental or similar arrangement whereby the owner must hold his unit available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit.

14. For each and every one of the Plaintiffs, the sales process was comprised of the sale of the Securities coupled with Plaintiffs' participation in the Defendants' rental program, which constituted a scheme involving the investment of Plaintiffs' money in a common enterprise with profits to come solely from the efforts of others. The Plaintiffs did not consider the purchase of the Securities for anything other than an economic investment. The purchase of the Securities by Plaintiffs was induced by Defendants' concealment of material facts and promises of economic benefits to be derived from the entrepreneurial or managerial efforts of others.

## THE PARTIES

15. Plaintiff Mary Ann Sussex is a resident of Nevada, who purchased Security number 1811-C on June 26, 2007 for $630,000. The certification pursuant to the federal securities laws for Plaintiff Sussex is attached hereto as part of Exhibit #1.

16. Plaintiffs Malcolm J. Nicholl and Sandy Scalise (husband and wife) are residents of California, who purchased Security number 1707-C on May 2, 2007 for $610,000. The certification pursuant to the federal securities laws for Plaintiffs Nicholl and Scalise are attached hereto as part of Exhibit #1.

17. Plaintiff Mitchell Pae is a resident of Virginia, who purchased Security number 605-C on May 21, 2007 for $560,000. The certification pursuant to the federal securities laws for

7

Plaintiff Pae is attached hereto as part of Exhibit #1.

18.     Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr. are residents of California, who purchased Security number 3611-B on November 29, 2006 for $745,000.  The certification pursuant to the federal securities laws for Plaintiff Valdez, Sr. and Valdez, Jr. are attached hereto as part of Exhibit #1.

19.     Plaintiffs John Hanson and Elizabeth Hanson are residents of Nevada, who purchased Security number 204-C on May 15, 2007 for $425,000.  The certification pursuant to the federal securities laws for Plaintiffs John and Elizabeth Hanson are attached hereto as part of Exhibit #1.

20.     Defendant Turnberry/MGM Grand Towers, LLC., a Nevada LLC, did business as the The Residences, The Residences at MGM Grand and/or The Residences: A Condo Hotel by Turnberry.  The condominium hotel is currently operated under the brand of THE SIGNATURE AT MGM GRAND.  Defendant Turnberry/MGM Grand Towers, LLC is, and at all relevant times mentioned herein was, a Nevada limited liability corporation.  At all relevant times, Defendant Turnberry/MGM Grand Towers, LLC conducted and conducts substantial business in the State of Nevada and substantially availed and avails itself of the Las Vegas economic market in Nevada.

21.     Defendant MGM Grand Condominiums, LLC a Nevada LLC and the Signature Condominiums, LLC, a Nevada LLC. are the entities doing business as members and/or managers of Turnberry/MGM Grand Towers, LLC, operating the Signature at MGM Grand enterprise. Defendants Turnberry/Harmon Ave., LLC, a Nevada LLC and Turnberry West Realty, Inc., a Nevada Corporation Associates are the entities that comprise the Turnberry enterprise which is a member and/or manager of Turnberry/MGM Grand Towers, LLC, operating the Signature at MGM Grand enterprise and/or employed the sales agents that sold units in the Signature at MGM Grand. Defendant MGM Mirage is a Delaware Corporation which is the controlling entity for MGM Grand Condominiums, LLC a Nevada LLC and the Signature Condominiums, LLC, a Nevada LLC. and Turnberry/MGM Grand Towers, LLC. Each of these Defendants not only knew about the existence of the fraud and illegal conduct herein alleged, but also knowingly participated in the creation,

1   design, direction and implementation of the illegal and fraudulent scheme to sell the Securities, the
2   training of the sales personnel, the marketing structure, and the material misrepresentations and
3   omissions of material facts, and therefore knew that they were participating as principals as part of
4   the control group in the fraudulent scheme for which they had the power and control to continue or
5   discontinue. The commission of this fraud and illegal sales of the Securities could not have occurred
6   without the clear and precise directions from the Defendants MGM Mirage and Turnberry/Harmon
7   Ave., LLC as to how and in what way to accomplish the fraudulent mission to victimize investors
8   with the fraudulent and illegal sale of the Securities. These Defendants completely controlled,
9   dominated, managed and operated the Signature at MGM Grand enterprise through Turnberry/MGM
10  Grand Towers, LLC, MGM Grand Condominiums, LLC, The Signature Condominiums, LLC, and
11  Turnberry West Realty, Inc. to perpetrate the fraud as herein alleged and thereby fraudulently
12  allowed the Defendants to profit from the fraud. As a result of their joint and several participation
13  in the fraudulent investment scheme set forth herein, these Defendants are jointly and severally liable
14  for the losses of Plaintiffs and the Class. But for their knowing and intentional participation in this
15  fraud, the Defendants could not have successfully defrauded the Plaintiffs and the Class. By means
16  of their actual power, influence, ability to control and control over Turnberry/MGM Grand Towers,
17  LLC entity, MGM Mirage and Turnberry/Harmon Ave., LLC induced a violation of the securities
18  laws through their participation in and influence over the operations of Turnberry/MGM Grand
19  Towers, LLC, that led to the material misrepresentations and omissions of materially adverse facts
20  necessary to prevent statements from being misleading, employment of devices, schemes and
21  artifices designed to defraud, and participation in business practices that operated as fraud or deceit,
22  in connection with the sale and marketing of the Securities with the full knowledge of the existence
23  of the facts for which liability of Turnberry/MGM Grand Towers, LLC is being sought. As a result
24  of the above, MGM Grand Condominiums, LLC, The Signature Condominiums, LLC, and
25  Turnberry West Realty, Inc. were mere agencies and instrumentalities of Defendants MGM Mirage
26  and, Turnberry/Harmon Ave., LLC, and each of them, pursuant to which the single business
27  enterprise of the the fraudulent sale of the unregistered Securities was conducted. As a result of the
28

9

1  above, Defendants MGM Mirage and Turnberry/Harmon Ave., LLC and the other Defendants all
2  functioned as a single business enterprise with regard to the Securities.

3      22.     Various persons and entities, whose identities are at this time unknown to Plaintiffs,
4  participated as co-participants, principals and/or agents in the violations alleged herein and
5  performed acts and made statements in furtherance thereof. These co-participants, principals and/or
6  agents were knowing and willful participants in a scheme to promote, market, sell, advertise, or
7  otherwise benefit from the fraudulent sale of the Securities offered by Defendants. When Plaintiffs
8  learn the identities of such persons or entities, Plaintiffs will seek leave to amend this complaint to
9  add them as Defendants.

10
11     23.     The acts charged in this Complaint have been done by some or all of Defendants and
12  their co-participants, or were authorized, ordered or done by their respective officers, agents,
13  employees or representatives while actively engaged in the management of each Defendants'
14  business or affairs. Each of the Defendants named herein acted as the agent, principal or co-
15  participant of or for the other Defendants with respect to the acts, violations and common course of
16  conduct alleged herein.

17                          **JURISDICTION AND VENUE**

18     24.     The federal law claims asserted arise under Section 10(b) of the Securities Exchange
19  Act of 1934 ("1934 Act"), Rule 10-b5 promulgated thereunder, Section 12 of the Securities Act of
20  1933 Act ("1933 Act").   Jurisdiction is conferred by Section 27 of the 1934 Act  and Section 22 of
21  the 1933 Act.  Venue  is proper under Section 27 of the 1934 Act and Section of the 1933 Act.

22                              **THE SCHEME**
23
24     25.     This action involves a scheme by the Defendants independently and acting in concert
25  as a single business enterprise to develop, control and operate a massive hotel project through funds
26  derived from the sale of investment contract Securities to passive public investors and thereby reap
27  enormous profits through the development and operation of the hotel, as well as the satisfaction of
28  MGM's goal of creating a vast hotel complex to provide gamblers and customers for MGM's

10

1 casinos, restaurants and other commercial and entertainment businesses without incurring any cost
2 to own and operate the Signature at MGM Grand. In order to avoid disclosing facts that would have
3 exposed the negative aspects of the investment, Defendants intentionally and knowingly disguised
4 their sale of these investment contract Securities as a simple real estate transaction, for the purpose
5 of avoiding the requirement of both state and federal laws and regulations that require (a) honest and
6 complete disclosure to investors; (b) just and honorable conduct by those who sell investments;
7 (c) registration of the securities being sold and the incumbent disclosure involved therewith; as well
8 as (d) the registration and qualification of the entities and individuals selling investment contract
9 Securities.

10       26.     As a result of this scheme to cheat and defraud Plaintiffs and similarly situated
11 investors, Defendants were able to reap hundreds of millions of illegal profits, by concealing from
12 the unsuspecting investors the true nature of the investment scheme they had been lured into and at
13 the same time distribute compensation and proceeds of that scheme to themselves and their
14 confederates without disclosure. Through this scheme Defendants were able to conceal from their
15 investors the material facts relating to their investments including, *inter alia*, the profits Defendants
16 derive from the sales to Plaintiffs; the use of the proceeds of Plaintiffs' investments; the transactions
17 occurring between Defendants and their confederates in this scheme as they shared and divided their
18 spoils; the true economics of the investments and reasonable expectation of returns; the conflicts of
19 interest between the investors and Defendants and their confederates in this scheme; and the nature
20 and level of risks being undertaken by those who purchased these Securities that should have been
21 disclosed.

23       27.     As part of their  scheme to cheat and defraud, Defendants  made the conscious
24 decision in connection with the development of the Signature at MGM Grand and the sale and
25 distribution of the investment contract Securities used to finance the venture to conceal the economic
26 realities of the transactions and to design the presentation and documentation of the transactions in
27 such a way as to hide the true nature of the transactions and conceal material facts regarding their

28

ongoing scheme to distribute unregistered investment contract Securities to public investors. As part of this scheme to distribute these unregistered Securities without an offering circular,  Defendants intentionally omitted from disclosure a vast array of material information that should have been provided to investors and potential investors as part of a lawful distribution of these Securities. The material matters that were intentionally and knowingly omitted and concealed included, *inter alia*:

(a)    a description of the business of the hotel project and the promoters of the development such that Plaintiffs could know and understand that the rooms at the Signature at MGM Grand were overflow rooms that would not be rented unless and until all of Defendants' other rooms were rented;

(b)    a description of the plan of operation of the venture, including budget information, sources of cash and anticipated expenditures such that Plaintiffs could know and understand that the represented 60% revenue share to Plaintiffs was actually no more than approximately 33% before Plaintiffs' taxes and loan payments, and included a double dip;

(c)    the number and nature of employees to be involved in the venture such that Plaintiffs could know and understand that these employees would be paid for exclusively by Plaintiffs;

(d)    the market research and competitive information including the number of competitors and the position of the venture among competitors such that Plaintiffs could understand the rental risks and know that they would be paying monthly fixed overhead fees even when there were no rentals;

(e)    the financial information about the business of the venture, its promoters and each segment of their business such that Plaintiffs could know and understand that Defendants had no financial stake in the lack of rentals of the units at The Signature at MGM Grand because if the units were unoccupied, the event  cost Defendants nothing for the empty room;

(f) a description of the venture including revenues and expenses for similar products and services offered by the promoters of the venture during the prior three years such that Plaintiffs could know and understand the track record of the Defendants in the market in which Signature at MGM Grand was competing;

(g) the information relating to compliance with state and local laws and regulations such that Plaintiffs could know and understand that they were purchasing unregistered Securities;

(h) any pending or threatened legal proceedings or the absence thereof such that Plaintiffs could know and understand the problems facing Defendants;

(i) information with respect to any resale market for the Securities being sold and the potential for any resale market to develop such that Plaintiffs could know and understand that there would be no ready market for resale of these Securities at prices greater than or equal to the prices paid by Plaintiffs;

(j) a description of all material risks of the investment such that Plaintiffs could know and understand that they risked losing their entire investment and were extremely unlikely to realize any profit or even recoup their original capital as the price of the Securities bore no reasonable relationship to the cash flow;

(k) the transactions with related parties including the developers and their affiliates and relatives such that Plaintiffs could know and understand that Defendants were making a profit on each sale and the amount thereof, and that Defendants were going to withdraw at least $ 104 million of the money Plaintiffs invested as a fee;

(l) the method and plan of the distribution of the investment contract Securities such that Plaintiffs could know and understand the amounts that were being paid as sales commissions;

(m) the use of the proceeds and the approximate amount of such proceeds dedicated to each use such that Plaintiffs could know and understand that Plaintiffs were paying

13

100% of the ongoing costs of the Signature at MGM Grand and receiving approximately 33% or less of the operating income to pay their mortgages and taxes;

(n)     the identity of any agreements, arrangements or understandings with all brokers participating in the sales of the investment contract Securities including the compensation received by such persons such that Plaintiffs could know and understand the remuneration paid to the sales agent selling them the Securities;

(o)     the identity, background and compensation of all executive officers and other persons serving in similar capacities as part of the management team such that Plaintiffs could know and understand the relationship between the members of management and others;

(p)     all material contracts relating to the venture including contracts with indemnities or promoters of the venture such that Plaintiffs could know and understand these risks; and

(q)     a description of the investment contract security including the rights and liabilities of the investors and the promoters such that Plaintiffs could analyze these rights and liabilities individually and with a representative.

28.     Each and every one of these omissions are material to an investor or prospective investor and each was intentionally omitted from disclosures made in connection with sale of the investment contract Securities by the Defendants.

29.     Plaintiff Mary Ann Sussex, on or about June 26, 2007, closed the purchase of Unit 1811-C, one of the Securities, for $630,000.00. Prior thereto, Ms. Sussex met with Richard Bognar, one of Defendants' sales representatives. Although omitting all of the material facts set forth in Paragraph 27 hereinabove, Mr. Bognar did discuss various scripted financial and economic benefits that would result from participation in Defendants' rental program. Specifically, Mr. Bognar stated MGM Signature would be much more upscale than the MGM Grand and compared the projected room rental rates to those of the Four Seasons, Venetian, Bellagio, and Wynn hotels. Mr. Bognar provided an anticipated occupancy rate of no less than 80% and an estimate of $300 per night as the

14

1  lowest average room rental rate and $400 and above on weekends and special events or holidays.

2  Mr. Bognar also stated that participation in the rental program would be a great investment

3  opportunity because the MGM Convention Center was fully booked for the next three years and

4  plans for expansion were already in place. He stated that convention attendees would no longer have

5  to stay at other hotels on the Las Vegas Strip because they could now stay at an upscale version of

6  the MGM Grand. In addition, Mr. Bognar stated the attractiveness of the rental program would

7  increase after future plans to connect the airport tram to the MGM are realized. Defendants also

8  uniformly represented in paragraph 23.1 of their purchase contract that the sale was not the sale of

9  an investment opportunity. The Security was purchased by Plaintiff Sussex in reliance upon

10  Defendants' material omissions and  false and fraudulent statements, all made within the last three

11  (3) years from the filing of this action.  Simply stated, as a result of these omissions and

12  misrepresentations,  Plaintiff Sussex was convinced by Defendants that as a result of MGM Grand

13  branding, hotel reservations, casino operations, room rates, occupancy rates, rental program, and the

14  other amenities being delivered by the MGM enterprise, that the investment in the Security would

15  be profitable and the value of the Security would appreciate, without Plaintiff Mary Ann Sussex

16  having to provide any services or oversight of the Defendants and that the transaction was not a

17  securities investment. Plaintiff Sussex's reliance was induced by Defendants' fraud. Defendants

18  knew at the time of the sale that material information was being withheld and intentionally concealed

19  this material information in order to close the sale. Defendants knew at the time these statements

20  were made that these statements, and each of them, were false, but made them to defraud Plaintiff

21  Mary Ann Sussex. Plaintiff Mary Ann Sussex, at all times, up until January 2008, was unaware of

22  Defendants' material omissions and believed these statements were true and had no reason to believe

23  the statements to be false because Defendants' representations were dependent on concealed facts

24  peculiarly within the Defendants' knowledge and control that did not become apparent until January

25  2008. Only after the Security failed to appreciate and produced rental income far below the amounts

26  forecasted by Defendants, could Plaintiff Mary Ann Sussex  foresee the continued loss of money by

27  reason of the purchase of the Security.  But for Defendants' material omissions and false and

28

15

1   fraudulent statements, Plaintiff Mary Ann Sussex would not have purchased the Security that was

2   not registered, and is not exempt from registration. As a result of these facts, Plaintiff Mary Ann

3   Sussex is entitled to and hereby seek to rescind the transaction and be restored all money paid to

4   Defendants plus interest thereon from the date of purchase, plus all damages resulting therefrom.

5       30.     Plaintiffs Malcolm Nicholl and Sandy Scalise (husband and wife), on or about May

6   2, 2007, closed the purchase of unit 1707-C, one of the Securities, for $610,000.00. Prior thereto,

7   Plaintiffs Nicholl and Scalise met with Jason Baratta, one of Defendants' sales representatives.

8   Although omitting all of the material facts set forth in Paragraph 27 hereinabove, Mr. Baratta did

9   discuss various scripted financial and economic benefits that would result from participation in

10  Defendants' rental program. Specifically, Mr. Baratta stated that the MGM Signature was a high end

11  project comparable to the Four Seasons, Bellagio, and "The Hotel" at Mandalay Bay. He stated

12  room rental rates would be $400-$600 during the week and $500-$700 on weekends with a 60/40

13  split in favor of the Plaintiffs. In addition, Mr. Baratta emphasized that the MGM Signature could

14  expect a room rental occupancy rate of 95%. Defendants also uniformly represented in Paragraph

15  23.1 of their purchase contract that the sale was not the sale of an investment opportunity. The

16  Security was purchased by Plaintiffs Nicholl and Scalise in reliance upon Defendants' material

17  omissions and false and fraudulent statements, all made within the last three (3) years from the filing

18  of this action. Simply stated, as a result of these omissions and misrepresentations, Plaintiffs were

19  convinced by Defendants that as a result of MGM Grand branding, hotel reservations, casino

20  operations, room rates, occupancy rates and the other amenities being delivered by the MGM

21  enterprise, that the investment in the Security would be profitable and the value of the Security

22  would appreciate, without Plaintiffs Malcolm Nicholl and Sandy Scalise having to provide any

23  services or oversight of the Defendants and that the transaction was not a securities investment.

24  Plaintiffs' reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that

25  material information was being withheld and intentionally concealed this material information in

26  order to close the sale.   Defendants knew at the time these statements were made that these

27  statements, and each of them, were false, but made them to defraud Plaintiffs Nicholl and Scalise.

28

16

1  Plaintiffs, at all times, up until January 2008, was unaware of Defendants' material omissions and
2  believed these statements were true and had no reason to believe the statements to be false because
3  Defendants' representations were dependent on concealed facts peculiarly within the Defendants'
4  knowledge and control that did not become apparent until January 2008. Only after the Security
5  failed to appreciate and produced rental income far below the amounts forecasted by Defendants,
6  could Plaintiffs Malcolm Nicholl and Sandy Scalise foresee the continued loss of money by reason
7  of the purchase of the Security. But for Defendants' material omissions and false and fraudulent
8  statements, Plaintiffs Malcolm Nicholl and Sandy Scalise would not have purchased the Security that
9  was not registered, and is not exempt from registration. As a result of these facts, Plaintiffs Malcolm
10 Nicholl and Sandy Scalise are entitled to and hereby seek to rescind the transaction and be restored
11 all money paid to Defendants plus interest thereon from the date of purchase, plus all damages
12 resulting therefrom.

13      31.    Plaintiff Mitchell Pae, on or about May 21, 2007, closed the purchase of unit 605-C,
14 one of the Securities, for $560,000.00. Prior thereto, Mr. Pae met with Richard Bognar, one of
15 Defendants' sales representatives. Although omitting all of the material facts set forth in Paragraph
16 27 hereinabove, Mr. Bognar did discuss various scripted financial and economic benefits that would
17 result from participation in Defendants' rental program. Mr. Bognar provided details of the rental
18 program to Plaintiff Mitchell Pae via email which stated that unit owners were to receive 54% of the
19 rental revenue (60% less the 10% management fee) and that the MGM would be marketing the
20 rooms as luxury hotel rooms priced in line with upscale hotel properties such as the Venetian, Four
21 Seasons, Bellagio, and the Wynn. Further, Mr. Bognar commented at length regarding the increasing
22 land value on the Las Vegas Strip and made specific projections regarding the monthly net income
23 to be derived from participation in the rental program. Mr. Bognar stated Plaintiff Pae would "net
24 $3,000 per month" based on current MGM room occupancy rates and projected rental figures. Mr.
25 Bognar also stated that room occupancy rates during "difficult" weekdays would be increased by the
26 close proximity of Signature to the MGM Convention Center. Defendants also uniformly
27 represented in paragraph 23.1 of their purchase contract that the sale was not the sale of an

28

17

1   investment opportunity. The Security was purchased by Plaintiff Pae in reliance upon Defendants'
2   material omissions and false and fraudulent statements, all made within the last three (3) years from
3   the filing of this action. Simply stated, as a result of these omissions and misrepresentations,
4   Plaintiff Pae was convinced by Defendants that as a result of MGM Grand branding, hotel
5   reservations, casino operations, room rates, occupancy rates and the other amenities being delivered
6   by the MGM enterprise, that the investment in the Security would be profitable and the value of the
7   Security would appreciate, without Plaintiff Mitchell Pae having to provide any services or oversight
8   of the Defendants and that the transaction was not a securities investment. Plaintiff Pae's reliance
9   was induced by Defendants' fraud. Defendants knew at the time of the sale that material information
10  was being withheld and intentionally concealed this material information in order to close the sale.
11  Defendants knew at the time these statements were made that these statements, and each of them,
12  were false, but made them to defraud Plaintiff Mitchell Pae. Plaintiff, at all times, up until January
13  2008, was unaware of Defendants' material omissions and believed these statements were true and
14  had no reason to believe the statements to be false because Defendants' representations were
15  dependent on concealed facts peculiarly within the Defendants' knowledge and control that did not
16  become apparent until January 2008. Only after the Security failed to appreciate and produced
17  rental income far below the amounts forecasted by Defendants, could Plaintiff Mitchell Pae foresee
18  the continued loss of money by reason of the purchase of the Securities. But for Defendants'
19  material omissions and false and fraudulent statements, Plaintiff Mitchell Pae would not have
20  purchased the Security that was not registered, and is not exempt from registration. As a result of
21  these facts, Plaintiff Mitchell Pae is entitled to and hereby seek to rescind the transaction and be
22  restored all money paid to Defendants plus interest thereon from the date of purchase, plus all
23  damages resulting therefrom.

24      32.     Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr., on or about November 29,
25  2006, closed the purchase of unit 3611-B, one of the Securities, for $745,000.00. Prior thereto, the
26  Valdez Plaintiffs met with Jeff Schoor, one of Defendants' sales representatives. Although omitting
27  all of the material facts set forth in Paragraph 27 hereinabove, Mr. Schoor did discuss various
28

1   scripted financial and economic benefits that would result from participation in Defendants' rental
2   program. Specifically, Mr. Schoor stated that MGM Signature could be compared to five star hotels
3   in the area including Bellagio and The Four Seasons. Mr. Schoor stated that room rental rates would
4   be similar to these five star hotels and be priced at $300-$400 per night on weekdays and increase
5   on weekends and holidays. In addition, Mr. Schoor stated that occupancy rates would be over 90%
6   and unit owners could expect a "generous" 60/40 revenue split favoring the Plaintiffs. These details
7   regarding the rental program were memorialized by Mr. Schoor on handwritten notes on MGM
8   stationary before the purchase agreement was executed. Defendants uniformly represented in
9   paragraph 23.1 of their purchase contract that the sale was not the sale of an investment opportunity.
10  The Security was purchased by the Valdez Plaintiffs in reliance upon Defendants' material omissions
11  and false and fraudulent statements, all made within the last three (3) years from the filing of this
12  action, that as a result of MGM Grand branding, hotel reservations, casino operations, room rates,
13  occupancy rates and the other amenities being delivered by the MGM enterprise. Simply stated, as
14  a result of these omissions and misrepresentations, Plaintiffs were convinced by Defendants that
15  the investment in the Security would be profitable and the value of the Security would appreciate,
16  without Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr. having to provide any services or
17  oversight of the Defendants and that the transaction was not a securities investment. The Valdez
18  Plaintiffs' reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that
19  material information was being withheld and intentionally concealed this material information in
20  order to close the sale. Defendants knew at the time these statements were made that these
21  statements, and each of them, were false, but made them to defraud Plaintiffs Ernesto Valdez, Sr.
22  and Ernesto Valdez, Jr. Plaintiffs, at all times, up until January 2008, was unaware of Defendants'
23  material omissions and believed these statements were true and had no reason to believe the
24  statements to be false because Defendants' representations were dependent on concealed facts
25  peculiarly within the Defendants' knowledge and control that did not become apparent until January
26  2008. Only after the Security failed to appreciate and produced rental income far below the
27  amounts forecasted by Defendants, could Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr.
28

19

1  foresee the continued loss of money by reason of the purchase of the Security. But for Defendants'
2  material omissions and false and fraudulent statements, Plaintiffs Ernesto Valdez, Sr. and Ernesto
3  Valdez, Jr. would not have purchased the Security that was not registered, and is not exempt from
4  registration. As a result of these facts, Plaintiffs Ernesto Valdez, Sr. and Ernesto Valdez, Jr. are
5  entitled to and hereby seek to rescind the transaction and be restored all money paid to Defendants
6  plus interest thereon from the date of purchase, plus all damages resulting therefrom.

7       33.    Plaintiffs John and Elizabeth Hanson, on or about May 15, 2007, closed the purchase
8  of unit 204-C, one of the Securities, for $425,000.00. The Hanson Plaintiffs met with Richard
9  Bognar, one of Defendants' sales representatives. Although omitting all of the material facts set
10 forth in Paragraph 27 hereinabove, Mr. Bognar did discuss various scripted financial and economic
11 benefits that would result from participation in Defendants' rental program. Specifically, Mr.
12 Bognar stated MGM Signature was going to be a five star hotel and cater to high end clientele
13 similar to the Four Seasons. He stated that the MGM Grand catered to lower and middle class
14 markets which created the necessity of a high end sister property that could accommodate "high
15 rollers" willing to pay a much higher price for rooms. In addition, Mr. Bognar emphasized the future
16 expansion of the MGM convention center which would drive the need for available rooms at MGM
17 Signature. Mr. Bognar stated that the minimum room rental rate would be $300 and that rate would
18 soar above $400 and $500 per night on weekends and special events such as concerts or boxing
19 matches. Defendants also uniformly represented in paragraph 23.1 of their purchase contract that
20 the sale was not the sale of an investment opportunity. The Security was purchased in reliance upon
21 Defendants' material omissions and false and fraudulent statements, all made within the last three
22 (3) years from the filing of this action, that as a result of MGM Grand branding, hotel reservations,
23 casino operations, room rates, occupancy rates and the other amenities being delivered by the MGM
24 enterprise. Simply stated, as a result of these omissions and misrepresentations, the Hanson
25 Plaintiffs were convinced by Defendants , that the investment in the Security would be profitable
26 and the value of the Security would appreciate, without Plaintiffs John and Elizabeth Hanson having
27 to provide any services or oversight of the Defendants and that the transaction was not a securities
28

1    investment. The Hanson Plaintiffs' reliance was induced by Defendants' fraud. Defendants knew
2    at the time of the sale that material information was being withheld and intentionally concealed this
3    material information in order to close the sale. Defendants knew at the time these statements were
4    made that these statements, and each of them, were false, but made them to defraud Plaintiffs John
5    and Elizabeth Hanson. Plaintiffs, at all times, up until January 2008, was unaware of Defendants'
6    material omissions and believed these statements were true and had no reason to believe the
7    statements to be false because Defendants' representations were dependent on concealed facts
8    peculiarly within the Defendants' knowledge and control that did not become apparent until January
9    2008. Only after the Security failed to appreciate and produced rental income far below the amounts
10   forecasted by Defendants, could Plaintiffs John and Elizabeth Hanson foresee the continued loss of
11   money by reason of the purchase of the Security. But for Defendants' material omissions and false
12   and fraudulent statements, Plaintiffs John and Elizabeth Hanson would not have purchased the
13   Security that was not registered, and is not exempt from registration. As a result of these facts,
14   Plaintiffs John and Elizabeth Hanson are entitled to and hereby seek to rescind the transaction and
15   be restored all money paid to Defendants plus interest thereon from the date of purchase, plus all
16   damages resulting therefrom.

## ARBITRATION EXEMPTION CLAIMED

19   34.    Pursuant to Rule 3 of the Nevada Arbitration Rules, this matter should not be subject
20   to arbitration because (1) damages for each Plaintiff are in excess of $50,000.00  (2) significant
21   issues of public policy are involved (3) this is a class action complaint and (4) the arbitration
22   provision is unconscionable.

23   35.    Public policy concerns dictate that Defendants cannot compel arbitration because
24   terms of the Purchase Agreement, which include an arbitration provision, are unenforceable under
25   NRS 90.840, subsection 1, as a matter of law because the contract is an illegal contract in the State
26   of Nevada. The sale of unregistered Securities renders the entire contract unenforceable as a matter
27   of law and public policy.

28

21

1    36.    Public Policy concerns dictate that Defendants cannot compel arbitration because the

2  arbitration provision in the Purchase Agreement is both procedurally and substantively

3  unconscionable under the facts of this case.

4

5                                **CLASS ALLEGATIONS**

6    37.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure

7  as a class action on their own and on behalf of a class defined as:

8           ALL INDIVIDUALS WHO PURCHASED ONE OR MORE OF
           THE SECURITIES IN THE SIGNATURE AT THE MGM GRAND
9           HOTEL/CASINO FROM DEFENDANTS.

10          Excluded from the Class are Defendants, any parent, subsidiary of
           affiliate of Defendants, and their officers, directors, and employees,
11          who are or have been employed by Defendants during the above-
           defined Class Period, and any judicial officer who may preside over
12          this cause of action.

13    38.    The requirements for maintaining this action as a class action under Rule 23 of the

14  Federal Rules of Civil procedure are satisfied in that:

15          a.      It is impracticable to bring all members of the Class before the Court.

16  Plaintiffs estimate that there are hundreds of Class Members, geographically spread throughout the

17  United States, and that their identities can be ascertained from Defendants' books and records.

18  Attempting to join and name each Class member as a Co-Plaintiff would be unreasonable and

19  impracticable.

20          b.      There are questions of law and fact common to the Class, which are identical

21  for each member of the Class and which predominate over the questions affecting the individual

22  Class members, if any.  Among these common questions of law and fact are:

23                  (i)     Whether Defendants sold securities within the meaning of

24  N.R.S. § 90.460, the Securities Act of 1933 and/or the Securities Exchange Act of 1934

25                  (ii)    Whether Defendants registered their Securities;

26                  (iii)   Whether Defendants' conduct violated N.R.S. § 90.460;

27                  (iv)    Whether Defendants' conduct violated Rule 10b(5);

28

                                         22

(v)     Whether Defendants' conduct violated  Section 12(a)(1);

(vi)    Whether Defendants' conduct violated  Section 12(a)(2);

(vii)   Whether Defendants' conduct violated N.R.S. § 90.570;

(viii)   Whether Defendants represented that the investments in the MGM Grand Hotel/Casino  would earn a rate of return and/or was guaranteed, secured or protected, which Defendants knew or had reason to know was false and/or misleading;

(ix)    Whether Defendants concealed material facts and/or omitted to state material facts about the investment in the Signature at the MGM Grand Hotel/Casino;

(x)     Whether Defendants  made untrue statements of material facts about the investment in the Signature at the MGM Grand Hotel/Casino;

(xi)    Whether Defendants failed to comply with applicable laws and regulations concerning the marketing and sale of investment securities; and,

(xii)   Whether Defendants conducted the offering and sale of investment Securities in the form of the condominium-hotel room units at the Signature at the MGM Grand Hotel/Casino without all the required licensing and regulatory approvals.

c.      The scripted sales representations and practices here uniformly made to the class representatives and to each member of the class were part of a common scheme applicable to each of them.  As to each member of the class the material omissions were the same, the representations of branding and association with the MGM name were the same, the dependency upon the success or failure of the MGM GRAND branded enterprise was the same, the promotion of the investment that a valuable benefit was critical for all, the lack of any right to exercise any practical or actual control over the managerial decisions of the MGM GRAND enterprise was the same for all Plaintiffs and the other representations herein alleged were similarly presented by Defendants to the members of the Class and the named Plaintiffs.  The material omissions and the sales techniques used by Defendants were part of a coordinated scheme involving common sales materials, instructions, training and practice review.  The scripted sales pitches being made to each purchaser member of the Class included the same material omissions and representations and the

23

1 same elements of deception described for the named Plaintiffs. Each of the members of the Class
2 justifiably relied on those material omissions and representations of fact in making their investment
3 purchase decisions, and each has been similarly damaged by the falsity of the statements so relied
4 upon.

5        d.     The claims of the representative Plaintiffs are typical of the claims of
6 the Class in that each Plaintiff purchased one or more of the Securities in the Signature at the MGM
7 Grand Hotel/Casino offered by Defendants.

8        e.     The claims of the representative Plaintiffs will fairly and adequately protect
9 the interests of the Class. The Class interests are coincident with, and not antagonistic to, those of
10 the Plaintiffs. Furthermore, Plaintiffs are represented by experienced class action counsel.

11      39.    In this action, Plaintiffs and the Class seek all equitable, compensatory, special and
12 punitive damages authorized under Nevada law for which class-wide relief is available,
13 disgorgement, restitution and reasonable attorneys' fees and costs incurred in the prosecution of this
14 action. There are no manageability problems due to variations in state laws or choice of law
15 provisions, because Nevada law applies to the claims of all the members of the Class asserted herein.
16 Class wide litigation of the predominating common issues is superior to any other form of litigation,
17 including individual litigation.

18      40.    The conduct of the Defendants in the offering and sale of the Securities
19 to the other members of the Class followed substantially the same pattern and involved substantially
20 the same conduct. The Securities sold to the Class were securities within the meaning of Nevada
21 law for the same reasons set forth in Paragraph 3 above. The offering and sale of the Securities to
22 the members of the Class was fraudulent, illegal and a deceptive trade practice for the same reasons
23 the offering and sale of the Securities to the Plaintiffs was fraudulent, illegal and a deceptive trade
24 practice.

25

26

27

28

### FIRST CAUSE OF ACTION
**(Violation of Section 12(a)(1) of the 1933 Act by All Defendants)**

41.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.   Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

42.     No registration statement was filed or in effect with the SEC pursuant to the Securities Act and no exemption from registration existed with respect to the Securities and transactions described in this Complaint.

43.     Defendants, directly and indirectly, have: (a) made use of the means or instruments of transportation or communications in interstate commerce or of the mails to sell the Securities as described herein, through the use or medium of oral representations and written materials; (b) caused the Securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell the securities as described herein through the use or medium of oral representations and written materials, as described in this Complaint, without a registration statement having been filed or being in effect with the Commission as to the Securities or qualification  for an exemption therefrom.

44.     Defendants, directly and indirectly, offered to sell, and indeed sold these Securities to Plaintiffs without a registration statement having been filed or being in effect with the SEC or qualify for an exemption therefrom.  By reason of the foregoing, Defendants have violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e (c).

45.     By reason of the conduct alleged herein, Defendants violated Section 12(a)(1) of the 1933 Act.  Plaintiffs demand rescission of these sales of unregistered Securities.

46.     Defendants affirmatively and actively concealed their unlawful conduct from Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid

25

1  detection. Defendants' investment contract included the following language specifically designed

2  to conceal the fact that Defendants were selling unregistered Securities:

3       23.1.   No Representation Regarding Certain Economic Benefits. BUYER
                ACKNOWLEDGES THAT NEITHER SELLER NOR ANY OF ITS
4               EMPLOYEES, AGENTS, BROKERS OR SALES AGENTS HAVE
                REPRESENTED OR OFFERED THE UNIT AS AN INVESTMENT
5               OPPORTUNITY FOR THE APPRECIATION OF VALUE OR AS A
                MEANS OF OBTAINING INCOME FROM THE RENTAL THEREOF.
6               BUYER FURTHER ACKNOWLEDGES THAT NEITHER SELLER NOR
                ANY OF ITS EMPLOYEES, AGENTS, BROKERS OR SALES AGENTS
7               HAVE MADE ANY REPRESENTATIONS AS TO THE RENTAL OR
                OTHER INCOME FRM THE UNIT OR AS TO ANY OTHER ECONOMIC
8               BENEFIT, INCLUDING POSSIBLE ADVANTAGES FROM THE
                OWNERSHIP OF THE UNIT UNDER FEDERAL OR STATE TAX LAWS,
9               TO BE DERIVED FROM THE PURCHASE OF THE UNIT.

10  Plaintiffs did not discover, and could not have discovered through the exercise of reasonable

11  diligence, that Defendants were violating the securities  laws as alleged herein until shortly before

12  this class action litigation was commenced. As a result of the active concealment of the unlawful

13  conduct  by Defendants, any and all applicable statutes of limitations otherwise applicable to the

14  allegations herein have been tolled.

15

16                              **SECOND CAUSE OF ACTION**
17            **(Violation of  Section 12(a)(2) of the 1933 Act by All Defendants)**

18       47.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the

19  preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.  Plaintiffs

20  bring this cause of action on behalf of themselves and the Class of similarly situated persons as

21  herein defined.

22       48.     Under Section 12(a)(2) of the Securities Act of 1933, Defendants were sellers,

23  offerors, and/or solicitors of the Securities. Defendants solicited the sale of the Securities to each

24  of the Class Members for Defendants' own financial benefit.

25       49.     The statements referred to hereinabove were made in scripted oral representations and

26  other materials made by Defendants  to the Class Members. The scripted oral representations to the

27  Class Members contained untrue statements of material facts, omitted other facts necessary to make

28

                                            26

1   the statements made not misleading and failed to disclose material facts. Defendants acted to sell

2   the Securities by way of the scripted oral representations. Defendants' actions included preparing

3   the scripted oral presentations and other material used in the sale of the Securities which were false

4   and misleading because they did not disclose the material adverse facts set forth above.

5       50.    Plaintiffs and the other members of the Class purchased the Securities pursuant to

6   the Defendants' scripted oral representations. Plaintiffs and the other members of the Class did not

7   know, and in the exercise of reasonable diligence could not have known, of the untruths and

8   omissions contained in or made in connection with Defendants' scripted oral representations.

9       51.    By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of the

10  1933 Act. As a proximate result of Defendants' violations Plaintiffs and each of the Class Members

11  have been damaged.

12      52.    Defendants affirmatively and actively concealed their unlawful conduct from

13  Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in furtherance

14  thereof, and actively concealed their activities through various other means and methods to avoid

15  detection. Plaintiffs did not discover, and could not have discovered through the exercise of

16  reasonable diligence, that Defendants were violating the securities laws as alleged herein until

17  shortly before this class action litigation was commenced. As a result of the active concealment of

18  the unlawful conduct by Defendants, any and all applicable statutes of limitations otherwise

19  applicable to the allegations herein have been tolled.

20

21  **THIRD CAUSE OF ACTION**

22  **(Violation of Section 10(b) of the 1934 Act and Rule 10b-5 by All Defendants)**

23      53.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the

24  preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs

25  bring this cause of action on behalf of themselves and the Class of similarly situated persons as

26  herein defined. Plaintiffs incorporate by reference the allegations set forth above.

27

28

1    54.    During the Class Period, Defendants disseminated or approved the statements

2    specified above, which they knew were materially false and misleading in that they concealed and

3    failed to disclose material facts necessary in order to make the statements made, in light of the

4    circumstances under which they were made, not misleading.

5    55.    Defendants violated § 10(b) of the 1934 Act and Rule l0b-5 in that they:

6        (a)    Employed devices, schemes, and artifices to defraud;

7        (b)    Omitted to state material facts necessary in order to make statements made, in

8    light of the circumstances under which they were made, not misleading; and/or,

9        (c)    Engaged in acts, practices, and a course of business that operated as a fraud or

10   deceit upon Plaintiffs and others similarly situated in connection with the purchases of Securities

11   during the Class Period.

12   56.    Plaintiffs and the Class have suffered damages in that, as a result of Defendants'

13   concealment of material facts, they purchased Securities with a value far less than the amount paid.

14   Plaintiffs and the Class would not have bought these Securities if they had been aware of the true

15   facts that were concealed and not disclosed by Defendants.

16   57.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the

17   other members of the Class suffered damages in connection with their purchases of Securities during

18   the Class Period.

19

20

21

**FOURTH CAUSE OF ACTION**
**(Violation of N.R.S. 90.460 by All Defendants)**

22   58.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the

23   preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.  Plaintiffs

24   bring this cause of action on behalf of themselves and the Class of similarly situated persons as

25   herein defined.

26   59.    The entire amounts paid by each and every Plaintiff was subjected to the risk of the

27   MGM Grand enterprise to rent the Securities, branded as MGM Grand Hotel rooms, at a projected

28

1   rate for a projected range of days within each year. All of the economic benefits to be derived from

2   the Security were inextricably bound to the success of the entire MGM Hotel branded enterprise as

3   a whole. The occupancy rates of the Security, from which Plaintiffs sought to derive rental profits,

4   were dependent upon the success of the MGM brand.

5           60.     The furnishing of the amounts paid by each and every Plaintiff for the Securities

6   purchased were induced by Defendants' omissions of material fact set forth in Paragraph 27

7   hereinabove and representations which gave rise to a reasonable understanding among the Plaintiffs

8   that a valuable benefit in the form of prospective economic benefits would accrue to Plaintiffs from

9   the entrepreneurial or managerial efforts of others managing the MGM Grand Hotel, the MGM

10  Grand Casino, the Signature at MGM Grand and the Rental Program at the Signature at MGM

11  Grand, induced Plaintiff to purchase the Securities. The economic benefit, over and above the

12  amounts paid for the purchase of the Securities, that Defendants' sales team promised would flow

13  to Plaintiffs from the purchase of the Securities were the primary motivation behind Plaintiffs'

14  purchase of the Securities. Residency was never discussed as a significant motivation for purchase

15  between any member of Defendants' sales or rental representatives and any of the Plaintiffs.

16          61.     Plaintiffs did not intend to receive any right to exercise practical and/or actual control

17  over the managerial decisions of the MGM enterprise. Furthermore, Plaintiffs did not exercise any

18  power to influence the utilization of the capital invested in the Securities. Instead, the economic

19  benefits that Plaintiffs were told by Defendants would flow from the purchase of the Securities

20  would result from name recognition of the MGM Grand brand, the strength of the rental program

21  management, and the ability of the reservation system of the rental program to yield income after the

22  purchase.

23          62.     Defendants issued the Securities, which were not exempt from registration, to

24  Plaintiffs without abiding by the registration requirements of Nevada, did not have any preemption

25  therefrom, and therefore Plaintiffs, under N.R.S. 90.660, may recover the consideration paid for the

26  Securities  and interest at the legal rate of this State from the date of payment, costs and reasonable

27  attorney's fees, less the amount of income received on the Securities.

28

29

63.     Plaintiffs who no longer own the Securities may recover damages. Damages are the amount that would be recoverable upon a tender less the value of the Securities when the purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only notice of willingness to exchange the Securities for the amount specified.

64.     Plaintiffs are also entitled to all remedies available under N.R.S. 90.640, including a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus; the imposition of a civil penalty of not more than $2,500 for a single violation or $100,000 for multiple violations in a single proceeding or a series of related proceedings; declaratory judgment; restitution; the appointment of a receiver or conservator for the Defendants' assets; an order of payment of the divisions investigative costs; or an order of such other relief as the court deems just.

### FIFTH CAUSE OF ACTION
#### (Violation of N.R.S. 90.570 by all Defendants)

65.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

66.     In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:

      1.     Employ any device, scheme or artifice to defraud;

      2.     Make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they are made; or

      3.     Engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

N.R.S. § 90.570.

30

67.     Defendants, through the sales and rental management presentations of the unregistered Securities have employed a device, scheme or artifice to defraud described in specificity above in this Complaint and incorporated by reference herein, by making material omissions of fact as set forth in Paragraph 27 above and false representations as set forth herein.

68.     Defendants, further through the sales and rental management presentations of the unregistered Securities, as described with specificity above in this Complaint and incorporated by reference herein, made several untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made not misleading in the true circumstances concerning the Defendants' actual ability to forecast or predict the profitability of participating in Defendants' rental management program and the minimum rental rates, the minimum occupancy rates, and the anticipated appreciation rates of the Securities.

69.     Defendants, through the intentional omission of material facts and false and fraudulent sales and rental presentations described with specificity above, engaged in acts, practices and/or a course of business which operated as a fraud or deceit upon the Plaintiffs by inducing Plaintiffs to purchase the Securities and enter the Defendants' rental management program based on dubious predictions of economic expectations that the Defendants knew to be false at the time such predictions were made. Moreover, the Defendants knew that these statements were untrue and the omissions were material and misleading, but made them to defraud Plaintiffs.

70.     Plaintiffs did not know that the statements of material facts made to them by Defendants during the sales presentations were untrue or that there was an omission of a statement of material facts.

71.     Plaintiffs did not receive any written offer, including financial and other information necessary to correct all material misstatements or omissions in the information required to be furnished to Plaintiffs, as of the time of the sale of the Securities.

72.     Defendants, pursuant to the fraudulent scheme, business practice, and on the basis of untrue material facts and omissions, issued the Securities, which were not exempt from

31

1  registration, to Plaintiffs without abiding by the registration requirements of Nevada and

2  therefore Plaintiffs, under N.R.S. 90.660, may recover the consideration paid for the Securities

3  and interest at the legal rate of this State from the date of payment, costs and reasonable

4  attorney's fees, less the amount of income received on the Securities.

5       73.     Plaintiffs who no longer own the Securities may recover damages. Damages are the

6  amount that would be recoverable upon a tender less the value of the Securities when the

7  purchaser disposed of it, plus interest at the legal rate of this State from the date of disposition of

8  the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only

9  notice of willingness to exchange the Securities for the amount specified.

10      74.     Plaintiffs are also entitled to all remedies available under N.R.S. 90.640, including

11  a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a

12  writ of prohibition or mandamus; the imposition of a civil penalty of not more than $2,500 for a

13  single violation or $100,000 for multiple violations in a single proceeding or a series of related

14  proceedings; declaratory judgment; restitution; the appointment of a receiver or conservator for

15  the Defendants' assets; an order of payment of the divisions investigative costs; or an order of

16  such other relief as the court deems just.

17

18                            **SIXTH CAUSE OF ACTION**
19              **(Violation of N.R.S. Chapter 598, et seq.  by all Defendants)**

20      75.     Plaintiffs reallege and incorporate herein by reference the allegations contained in

21  the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

22  Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated

23  persons as herein defined.

24      76.     Plaintiffs bring this claim under Nevada consumer fraud laws, particularly NRS

25  Sections 41.600 and 598.0903, *et seq.*, on behalf of themselves and the Class who purchased the

26  air rights to condominium hotel room units from Defendants, and who were thus subject to

27  Defendants' above-described deceptive, unlawful and fraudulent conduct.

28

                                      32

77.   The air rights to condominium hotel room units, as described above, were purchased by the Plaintiffs and by other consumers similarly situated primarily for investment purposes.

78.   The Defendants violated their statutory duty under the Nevada Deceptive Trade Practices Act by advertising, offering and selling the air rights to condominium-hotel room units as investment securities at the Signature at the MGM Grand as described herein above.

79.   The Defendants violated their duty under the aforementioned statutes, including but not limited to, § 598.092 (5)(a), (b), (c), (f) and § 598.0923(1), by, among other things, (a) representing that the investment Securities in the form of the condominium-hotel room units at the Signature at the MGM Grand Hotel/Casino would earn a rate of return and/or was guaranteed, secured or protected, which Defendants knew or had reason to know was false and/or misleading; (b) making untrue statements of material facts and/or omitting to state material facts about the investment Securities in the form of the condominium-hotel room units at the Signature at the MGM Grand Hotel/Casino; (c) failing to comply with applicable laws and regulations concerning the marketing and sale of investment Securities; and/or (d) conducting the offering and sale of investment Securities in the form of the condominium-hotel room units at the Signature at the MGM Grand Hotel/Casino without all the required licensing and regulatory approvals.

80.   The Defendants' actions as alleged herein were materially deceptive and constituted fraud, false pretense, misrepresentation and the concealment, suppression and omission of material facts with the intent that Plaintiffs and the Class would rely upon the fraudulent misrepresentation, concealment, suppression and omission of such material facts, all in violation of the Nevada Consumer Fraud and Deceptive Business Practices Acts.

81.   Plaintiffs and the other members of the Class were injured by the many violations of the Nevada Deceptive Trade Practices Act, and Plaintiffs and the Class have thereby been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Fraudulent Misrepresentation by All Defendants )

82.  Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

83.  Defendants made false and fraudulent misrepresentations, as described with specificity above and incorporated by reference herein, that, inter alia, as a result of MGM Grand branding, hotel reservations, casino operations, room rates, occupancy rates, Defendants' rental program, and the other amenities being delivered by the MGM enterprise, the investment in the Securities would be profitable and the value of the Securities would appreciate, without Plaintiffs, having to provide any services or oversight of the Defendants.

84.  Defendants, and each of them, made these representations with the knowledge or belief that the representations were false or with an insufficient basis of information for making the representations.

85.  Defendants intended to induce Plaintiffs to act upon the misrepresentations by entering into the sales agreement to purchase the Securities and also entering into the rental management agreement.

86.  Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants.

87.  As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

88.  As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

89.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damage.

## EIGHTH CAUSE OF ACTION
### (Negligent Misrepresentation)

90.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

91.     Defendants supplied false guidance in discussions relating to the sale of Defendants' condominium hotel units at the MGM GRAND as described with specificity above and incorporated by reference herein. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information which consisted of misrepresentations, not only concerning the property value of the condominium hotel units, but also concerning the anticipated rental value and occupancy rate of the units, and the profitability of participating in Defendants' rental management program. Such misrepresentations were made in the course of Defendants' business, profession or employment, and/or in any such transaction in which Defendants had a pecuniary interest.

92.     The misrepresentations made to Plaintiffs included, inter alia, the false and fraudulent statements described above with specificity in this Complaint and incorporated by reference herein.

93.     Defendants, and each of them, made these representations negligently, and without any reasonable basis for believing them to be true.

35

94. Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants and each of them.

95. As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

96. As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

## NINTH CAUSE OF ACTION
### (Fraud in the Inducement)

97. Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

98. Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of condominium hotel units at the MGM GRAND. Defendants utilized an inside and outside sales team in order to make false representations to the Plaintiffs in order to induce their consent to enter into the purchase agreement and the rental management agreement. Both Defendants' inside and outside sales team had knowledge or belief that the representations were false (or knowledge that it had an insufficient basis for making the representations).

99. The material omissions and false representations made to Plaintiffs included, *inter alia*, the fraudulent statements described with specificity above and incorporated by reference herein.

36

1    100.   Defendants presented numerous false representations regarding the true economic

2    value of such investment from Plaintiffs, despite knowing and concealing the true and correct

3    facts of the rental values, expected rental occupancy rate of the Securities, and the amount of

4    profits Plaintiffs would receive from participating in Defendants' rental management program.

5    101.   Defendants, and each of them, had a duty to disclose the true nature of all known

6    material facts and circumstances surrounding the economic value of the Securities.  Defendants

7    had exclusive knowledge of all such material facts and such material facts were not known or

8    reasonably accessible to Plaintiffs.

9    102.   The concealment of the true facts from Plaintiffs was done with the intent to

10   induce their consent to enter into the purchase agreement and the rental management agreement.

11   103.   Plaintiffs justifiable reliance on statements made by Defendants was justified as

12   Defendants purported to have professional expertise concerning the economic value of the

13   condominium hotel units.

14   104.   As a result of Defendants' false representations regarding the true economic  value

15   of the condominium hotel units complained of in this complaint, Plaintiffs were unaware of the

16   true nature of the facts concerning the true value of the condominium hotel units as economic

17   investments.

18   105.   As a result of the false representations, Plaintiffs entered into a written agreement

19   for the purchase of the condominium hotel unit, entered into a written agreement to participate in

20   the Defendants' rental management program, and suffered damages as more fully set forth herein

21   above and in an amount to be proved at trial.

22   106.   As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an

23   accounting, and the return of any and all money or property given, plus interest and expenses.

24   107.   Defendants had actual knowledge of the fact that the representations were in fact

25   false, and for these reasons, and because the conduct by these Defendants was malicious,

26   oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an

27   example of and to punish these Defendants in addition to actual damages.

28

37

1
2

### TENTH CAUSE OF ACTION
### (Fraudulent Concealment)

3   108.   Plaintiffs reallege and incorporate herein by reference the allegations contained in
4   the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.
5   Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated
6   persons as herein defined.

7   109.   Plaintiffs contracted with Defendants and relied upon Defendants to provide their
8   professional expertise and judgment with respect to the purchase of Securities at the MGM
9   GRAND.  Defendants utilized an inside and outside sales team in order to sell these units.  The
10  teams employed by Defendants concealed and/or suppressed materials facts relating to the true
11  economic value of the condominium units.

12  110.   The material facts concealed from Plaintiffs included, inter alia, the fraudulent
13  statements described with specificity above and incorporated by reference herein.

14  111.   Defendants concealed and suppressed the material facts regarding the true
15  economic value of such investment from Plaintiffs, despite knowing the true and correct facts
16  regarding the Securities.  The misrepresentations were made and the true and correct facts
17  concealed by Defendants in order to intentionally induce the Plaintiffs' consent to purchase the
18  condominium unit and enter into the rental management agreement with Defendants.

19  112.   Defendants, and each of them, had a duty to disclose the true nature of all known
20  material facts and circumstances surrounding the rental values, expected rental occupancy rate,
21  and relevant material facts described above and incorporated by reference herein.  Defendants
22  had exclusive knowledge of all such material facts and such material facts were not known or
23  reasonably accessible to Plaintiffs.

24  113.   Plaintiffs' reliance on statements made by Defendants, and each of them, was
25  justified as Defendants purported to have professional expertise concerning the economic value
26  of the condominium hotel units.

27
28

38

114.   As a result of Defendants' intentional misrepresentation of material facts regarding the true economic value of the condominium hotel units complained of in this complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments.  Had Plaintiffs been aware of the material facts concealed by Defendants, Plaintiffs would not have entered into any agreements with the Defendants.

115.   As a result of the concealment alleged, Plaintiffs entered into a written agreement for the purchase of the Securities, entered into a written agreement to participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

116.   As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

117.   Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

## REQUEST AND PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

## PRAYER FOR RELIEF

Plaintiffs pray for judgment and relief on behalf of themselves, and on behalf of the Class, and against Defendants as follows:

1.   For damages according to proof;

2.   For interest on all damages as allowed by the laws of the State of Nevada according to proof at time of trial;

1    3.  For a temporary restraining order, permanent or temporary prohibitory or

2 mandatory injunction or a writ of prohibition or mandamus;

3    4.  For the imposition of a civil penalty of not more than $2,500 for a single

4 violation or $100,000 for multiple violations in a single proceeding or a series of related

5 proceedings;

6    5.  For the issuance of a declaratory judgment;

7    6.  For an order of rescission and restitution to investors;

8    7.  For an order for an accounting;

9    8.  For an order of punitive damages.

10    9.  For the appointment of a receiver or conservator for the Defendants' assets;

11    10.  For an order of payment of the divisions investigative costs;

12    11.  For an order of such other relief as the court deems just;

13    12.  For consideration paid for the Securities and interest at the legal rate of

14 Nevada  from the date of payment plus all expenses incurred, costs and reasonable attorney's

15 fees, less the amount of income received on the Securities;

16    13.  For damages for each Plaintiff who no longer owns the Securities in the

17 amount that would be recoverable upon a tender less the value of the Securities when the

18 Plaintiff disposed of it, plus interest at the legal rate of this State from the date of disposition of

19 the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only

20 notice of willingness to exchange the Securities for the amount specified; and,

21    14.  For an order for costs and attorneys' fees as allowed by law.

22

23    Dated: July _V_, 2008      GERARD & ASSOCIATES

24            By: _Ricardo E._____

                 Robert B. Gerard, Esq

25                Nevada State Bar #005323

                Ricardo R. Ehmann, Esq.

26                Nevada State Bar #010576

                Gerard & Associates

27                2840 South Jones Blvd.

                Building D, Unit 4

28

Las Vegas, Nevada 89146
Telephone:     (702) 251-0093
Facsimile:     (702) 251-0094

Norman Blumenthal, Esq.
California State Bar #068687
Blumenthal & Nordrehaug
2255 Calle Clara
La Jolla, California 92037
Telephone:     (858) 551-1223
Facsimile:     (858) 551-1232

Robert Fellmeth, Esq.
California State Bar #49897
University of San Diego School of
Law
5998 Alcala Park
San Diego, California 92110
Telephone:     (619) 260-4806
Facsimile:     (619) 260-4753

Burton Wiand, Esq.
Fowler White Boggs Banker, P.A.
501 East Kennedy Blvd.
Tampa, FL 33602
Telephone:     (813) 228-7411
Facsimile:     (813) 229-8313

*Attorneys For The Plaintiffs*

41

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs demand jury trial on issues triable to a jury.

3

Dated: July $\mathcal{V}$, 2008
GERARD & ASSOCIATES

4

By: _Ricardo Er_____

5

Robert B. Gerard, Esq
Nevada State Bar #005323

6

Ricardo R. Ehmann, Esq.
Nevada State Bar #010576

7

Gerard & Associates
2840 South Jones Blvd.

8

Building D, Unit 4
Las Vegas, Nevada 89146

9

Telephone:    (702) 251-0093
Facsimile:    (702) 251-0094

10

Norman Blumenthal, Esq.

11

California State Bar #068687
Blumenthal & Nordrehaug

12

2255 Calle Clara
La Jolla, California 92037

13

Telephone:    (858) 551-1223
Facsimile:    (858) 551-1232

14

Robert Fellmeth, Esq.

15

California State Bar #49897
5998 Alcala Park

16

San Diego, California 92110
Telephone:    (619) 260-4806

17

Facsimile:    (619) 260-4753

18

Burton Wiand, Esq.
Fowler White Boggs Banker, P.A.

19

501 East Kennedy Blvd.
Tampa, FL 33602

20

Telephone:    (813) 228-7411
Facsimile:    (813) 229-8313

21

*Attorneys For The Plaintiffs*

22

23

24

25

P:\data\MGM Towers\p-AMD2- Complaint MGM-final.wpd.FINAL

26

27

28

42

# EXHIBIT "1"

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Mary Ann Sussex, ("Plaintiff") declare, as to the claims asserted under federal securities laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing

2.    Plaintiff did not purchase the security that is the subject matter of the complaint at the direction of Plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    On July 1, 2008, Plaintiff still owned a MGM condominium-hotel room unit investment security, and before July 1, 2008, Plaintiff executed the following transaction(s) with respect to this investment:

| MGM condominium-hotel room unit investment security | Date of Investment | Amount Invested |
|---|---|---|
| 1811-C | June 26, 2007 | $630,000 |
| | | $ |

6.    In the past three years, Plaintiff has not sought to serve as a class representative party on behalf of a class in the following action filed under federal securities laws.

7.    Plaintiff will not accept any payment for serving as a class representative party on behalf of a class beyond Plaintiff's pro-rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and current statements.

Executed this __1st__ day of __JULY__, 2008    _____
                                                Plaintiff signature

                                                __MARY ANN SUSSEY__
                                                Print name

__8584 OCOTILLO SPRINGS__ ct    __L V, NV 89147__
Address                          City, State, Zip

__(702) 378 6696__               __MASUSSEX @ COX.NET__
Telephone number                 E-mail Address

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, , Malcolm Nicholl, ("Plaintiff") declare, as to the claims asserted under federal securities laws, that:

1.      Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing

2.      Plaintiff did not purchase the security that is the subject matter of the complaint at the direction of Plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      On July 1, 2008, Plaintiff still owned a MGM condominium-hotel room unit investment security, and before July 1, 2008, Plaintiff executed the following transaction(s) with respect to this investment:

| MGM condominium-hotel room unit investment security | Date of Investment | Amount Invested |
|---|---|---|
| 1707-C | May 2, 2007 | $ 610,000 |
|  |  | $ |

6.      In the past three years, Plaintiff has not sought to serve as a class representative party on behalf of a class in the following action filed under federal securities laws.

7.      Plaintiff will not accept any payment for serving as a class representative party on behalf of a class beyond Plaintiff's pro-rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Executed this _____1ᶜᵀ_____ day of ____Jᵁᴸʸ____, 2008      _____
                                                                    Plaintiff signature

                                                                    MALCOLM J. NICHOLL
                                                                    Print name

P.O. Box 2155 - 17015 REPOSO ALT₆    RANCHO SANTA FE  CA 92067
          Address                              City, State, Zip

(858) 354.2262                         MALCOLM JNICHOLL @ MSN. COM
Telephone number                       E-mail Address

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, , Sandy Scalise, ("Plaintiff") declare, as to the claims asserted under federal securities laws, that:

1.      Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing

2.      Plaintiff did not purchase the security that is the subject matter of the complaint at the direction of Plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary,

4.      On July 1, 2008, Plaintiff still owned a MGM condominium-hotel room unit investment security, and before July 1, 2008, Plaintiff executed the following transaction(s) with respect to this investment:

| MGM condominium-hotel room unit investment security | Date of investment | Amount Invested |
|---|---|---|
| 1707-C | May 2, 2007 | $ 618,000 |
|  |  | $ |

6.      In the past three years, Plaintiff has not sought to serve as a class representative party on behalf of a class in the following action filed under federal securities laws.

7.      Plaintiff will not accept any payment for serving as a class representative party on behalf of a class beyond Plaintiff's pro-rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Executed this ___ 1<1 ___ day of ___ JULY ___ , 2008

Plaintiff signature

SANDY SCALISE
Print name

P.O. Box 2155- 17015 REPOSI ALTO       RANCHO SANTA FE, CA 92067
Address                                City, State, Zip

(619) 980. 7471                        SSCALISE@MSN.COM
Telephone number                       E-mail Address

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, , Mitchell Pae , ("Plaintiff") declare, as to the claims asserted under federal securities laws, that:

1.      Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing

2.      Plaintiff did not purchase the security that is the subject matter of the complaint at the direction of Plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      On July 1, 2008, Plaintiff still owned a MGM condominium-hotel room unit investment security, and before July 1, 2008, Plaintiff executed the following transaction(s) with respect to this investment:

| MGM condominium-hotel room unit investment security | Date of Investment | Amount Invested |
|---|---|---|
| 605-C | May 21, 2007 | $ 560,000 |
|  |  | $ |

6.      In the past three years, Plaintiff has not sought to serve as a class representative party on behalf of a class in the following action filed under federal securities laws.

7.      Plaintiff will not accept any payment for serving as a class representative party on behalf of a class beyond Plaintiff's pro-rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Executed this __1st__ day of __July__ , 2008    _Mitchell Pae_
                                                 Plaintiff signature

                                                 _Mitchell Pae_
                                                 Print name

_519 Winterwater CT_                             _Chesapeake, VA  23320_
Address                                          City, State, Zip

_(757) 407-0357_                                 _mpae@yahoo.com_
Telephone number                                 E-mail Address

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, , Ernesto Valdez, Sr. , ("Plaintiff") declare, as to the claims asserted under federal securities laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing

2.    Plaintiff did not purchase the security that is the subject matter of the complaint at the direction of Plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    On July 1, 2008, Plaintiff still owned a MGM condominium-hotel room unit investment security, and before July 1, 2008, Plaintiff executed the following transaction(s) with respect to this investment:

| MGM condominium-hotel room unit investment security | Date of Investment | Amount Invested |
|---|---|---|
| 3611-B | November 29, 2006 | $ 745,000 |
|  |  | $ |

6.    In the past three years, Plaintiff has not sought to serve as a class representative party on behalf of a class in the following action filed under federal securities laws.

7.    Plaintiff will not accept any payment for serving as a class representative party on behalf of a class beyond Plaintiff's pro-rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Executed this  1st  day of  JULY  , 2008

_Ek Valdez_
Plaintiff signature

ERNESTO A. VALDEZ, SR
Print name

44358  KINGSTON  DR.
Address

TEMECULA, CA   92592
City, State, Zip

(951 ) 303 - 2807
Telephone number

PRIVATE FUNDERS @ HOTMAIL .COM
E-mail Address

# CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, , Ernesto Valdez, Jr. , ("Plaintiff") declare, as to the claims asserted under federal securities laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing

2.    Plaintiff did not purchase the security that is the subject matter of the complaint at the direction of Plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    On July 1, 2008, Plaintiff still owned a MGM condominium-hotel room unit investment security, and before July 1, 2008, Plaintiff executed the following transaction(s) with respect to this investment:

| MGM condominium-hotel room unit investment security | Date of Investment | Amount Invested |
|---|---|---|
| 3611-B | November 29, 2006 | $ 745,000 |
|  |  | $ |

6.    In the past three years, Plaintiff has not sought to serve as a class representative party on behalf of a class in the following action filed under federal securities laws:

7.    Plaintiff will not accept any payment for serving as a class representative party on behalf of a class beyond Plaintiff's pro-rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Executed this 1ST day of JULY , 2008    _____
                                        Plaintiff signature

                                        ERNESTO A. VALDEZ SR. / ERNESTO A.VALDEZ,JR
                                        Print name

13415 APRICOT TREE LN                   CORONA, CA 92880
Address                                 City, State, Zip

(909) 851-8977                          PREMIEGR-ESTATES @ CHARTER.NET
Telephone number                        E-mail Address

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, , John Hanson, ("Plaintiff") declare, as to the claims asserted under federal securities laws, that:

1.      Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing

2.      Plaintiff did not purchase the security that is the subject matter of the complaint at the direction of Plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      On July 1, 2008, Plaintiff still owned a MGM condominium-hotel room unit investment security, and before July 1, 2008, Plaintiff executed the following transaction(s) with respect to this investment:

| MGM condominium-hotel room unit investment security | Date of Investment | Amount Invested |
|---|---|---|
| 204-C | May 15, 2007 | $425,000 |
| | | $ |

6.      In the past three years, Plaintiff has not sought to serve as a class representative party on behalf of a class in the following action filed under federal securities laws.

7.      Plaintiff will not accept any payment for serving as a class representative party on behalf of a class beyond Plaintiff's pro-rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Executed this __1st__ day of __July__, 2008

_____
Plaintiff signature

JOHN R. HANSON
Print name

7595 Coryloft Drive
Address

Las Vegas, NV 89123
City, State, Zip

(702) 897-8440
Telephone number

Cirfly@cox.net
E-mail Address

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, , Elizabeth Hanson, ("Plaintiff") declare, as to the claims asserted under federal securities laws, that:

1.  Plaintiff has reviewed the complaint prepared by counsel and has authorized its filing

2.  Plaintiff did not purchase the security that is the subject matter of the complaint at the direction of Plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  On July 1, 2008, Plaintiff still owned a MGM condominium-hotel room unit investment security, and before July 1, 2008, Plaintiff executed the following transaction(s) with respect to this investment:

| MGM condominium-hotel room unit investment security | Date of Investment | Amount Invested |
|---|---|---|
| 204-C | May 15, 2007 | $425,000 |
|  |  | $ |

6.  In the past three years, Plaintiff has not sought to serve as a class representative party on behalf of a class in the following action filed under federal securities laws.

7.  Plaintiff will not accept any payment for serving as a class representative party on behalf of a class beyond Plaintiff's pro-rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

Executed this 1st day of July, 2008

Elizabeth Hanson
Plaintiff signature

Elizabeth Hanson
Print name

7595 Coryloft Drive
Address

Les Vegas, NV 89123
City, State, Zip

(702) 524-6679
Telephone number

elizabeth19@cox.net
E-mail Address