MORRIS PICKERING & PETERSON
Steve Morris, No. 1543
Akke Levin, No. 9102
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone:  (702) 474-9400
Facsimile:   (702) 474-9422

WOOD, SMITH, HENNING & BERMAN LLP
Janice Michaels, No. 6060
7670 West lake Mead Boulevard, Suite 250
Las Vegas, Nevada 89128-6652
Telephone:  (702) 222-0625
Facsimile:   (702) 253-6225

Attorneys for Defendants
Turnberry/MGM Grand Towers, LLC,
MGM Grand, Inc., Turnberry/Harmon
Ave., LLC., and Turnberry Associates

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN SUSSEX; MITCHELL PAE; MALCOLM NICHOLL and SANDY SCALISE; ERNESTO VALDEZ, SR. and ERNESTO VALDEZ, JR; JOHN HANSON and ELIZABETH HANSON, <br><br> Plaintiffs, <br><br> v. <br><br> TURNBERRY/MGM GRAND TOWERS, LLC; MGM GRAND, INC., doing business as MGM MIRAGE; TURNBERRY/ HARMON AVE., LLC; TURNBERRY ASSOCIATES; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO:  2:08-cv-00773-RLH-PAL <br><br> **MOTION TO COMPEL ARBITRATION** |

Defendants Turnberry/MGM Grand Towers, LLC, MGM Grand, Inc., Turnberry/Harmon Ave., LLC, and Turnberry Associates ("Defendants")

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

hereby move the Court for an order to compel arbitration and for a stay of these judicial proceedings.  The Motion is based on NRS 38.206, NRS 38.219, NRS 38.221, 9 U.S.C. §§ 2-4, the papers and pleadings on file, the attached exhibits, and the points and authorities that follow.

I.     **INTRODUCTION**

The Court should compel the *Sussex* Plaintiffs to arbitrate their claims.  The *Sussex* Plaintiffs each purchased luxury condominiums pursuant to Purchase and Sale Agreements ("PSAs") which contained arbitration provisions.  As described below, their purported claims arise out of these PSAs, which they seek to rescind.  Their claims therefore must be arbitrated.

Notably, this is not the first such lawsuit by the same attorneys, and must be recognized for what it is: An effort to avoid what the Nevada state court previously ordered — arbitration pursuant to the arbitration provision in the PSAs.  Plaintiffs' First Amended Class Action Complaint is the second of three actions filed by the same attorneys in violation of the express arbitration agreement in the PSAs, which requires Plaintiffs to submit "*any* dispute" related to the PSAs to binding arbitration.  The Eighth Judicial District Court of Nevada, the Honorable Mark Denton, earlier compelled the first group of 46 plaintiffs to submit to arbitration and stayed the court action pending completion of arbitration.  Ignoring and seeking to evade complying with this order, Plaintiffs' attorneys filed two additional lawsuits — (1) this putative class action complaint; and (2) another "group" complaint on behalf of an additional 54 plaintiffs.

Consistent with the the policy of the Federal Arbitration Act to enforce arbitration agreements like any other contracts, the court's role is limited to determining whether (1) the arbitration agreement exists; (2) the claims fall within the scope of the arbitration clause; and (3) the clause is valid.  *Lifescan, Inc.*

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

*v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *see also* NRS 38.219 (1)-(2) (court shall decide whether arbitration agreement exists and whether controversy is subject to it); 9 U.S.C. § 4 (court must order arbitration in accordance with the terms of the arbitration agreement if the clause is valid and the "making of [it] . . . is not in issue").  "If the answer is yes to [these] questions, the court must enforce the [arbitration] agreement." *Lifescan, Inc.*, 363 F.3d at 1012 (citing to *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis added).

Here, the arbitration provision in the PSAs is broad, providing that "[t]he parties agree to submit to arbitration *any dispute related to this agreement . . .* including, but not limited to, *any dispute related to the . . . enforceability of this agreement . . .*" PSA, § 24.10 (emphasis added).  All of Plaintiffs' claims, including their purported statutory securities claims, "touch" upon the PSAs.  More than that, Plaintiffs' claims are directly related to the PSAs because Plaintiffs: (1) allege that the PSAs are unenforceable under federal and state security statutes; (2) seek to rescind the PSAs; and (3) claim that they relied on alleged oral misrepresentations as to the economic benefits of the units despite the express written disclaimers to the contrary in the PSA.  *See* Sussex Compl. II, Dkt. No. # 14, ¶¶ 42, 44-46, 49-50, 54-55, 60-62, 68-72, 83-88, 91-94, 98-107, and 109-115.

Finally, none of Plaintiffs' arguments to resist arbitration have merit.  These self-proclaimed investors are not unsophisticated consumers victimized by adhesion contracts.  Each plaintiff purchased one or more luxury hotel condominium units at prices ranging between $400,000 and $900,000 per unit.  *Two years* after expressly agreeing that "no representations [had been] made concerning the economic benefits" from the unit and that "oral representations cannot be relied on," these speculators now want out of the contract and the

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 3 of 22

arbitration clause they signed, "read, approved, and accepted," claiming that they were fraudulently induced to enter into the PSAs by alleged oral representations.  If there is any "significant public policy involved" here, as Plaintiffs claim, it is the policy that Plaintiffs should be bound by the arbitration provision to which they agreed.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-21 (1985) (FAA's primary policy is to hold parties to the arbitration contract to which they agreed).

## II.    FACTS

The Signature at MGM Grand ("Signature") is a luxury condominium hotel project developed and sold by defendant Turnberry/MGM Grand Towers, LLC ("Turnberry").  Declaration of Violet Duff (exhibit omitted), Exhibit A hereto, ¶ 2; Declaration of Dan Riordan, Exhibit B hereto, ¶ 2; *see also* Class Action Complaint ("Compl."), Exh. A to Notice of Removal (Dkt. No. #1), at 2.[1]  Signature was developed under an approved Public Offering Statement, subject to a Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for the Condominium.  *See*, *e.g.*, Condominium Unit Purchase and Sale Agreement ("PSA") for Unit 1811-C, Exhibit C hereto.[2]

Between January 2004 and October 2005 Turnberry marketed and sold Signature condominium units under the PSAs.  *See*, *e.g.*, PSA, Exh. C.  Each PSA "contains identical terms and conditions," Duff Decl., Exh. A, ¶ 3, although some buyers, such as Plaintiff Mary Ann Sussex, negotiated amendments to their

---

[1] The declarations of Dan Riordan and Violet Duff bear the caption of, and were submitted in, *KJH & RDA Investor Group, LLC et al v. Turnberry/MGM Grand Towers, LLC et al*, Case No. A547024, the first Signature case filed by Plaintiffs' attorneys in the Eighth Judicial District Court of Nevada.

[2] The Signature at MGM Grand was formerly known as The Residences at MGM Grand.

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

PSA.  *See* Riordan Decl., Exh.B, ¶ 3; Assignment and Assumption Agreement, Exhibit D hereto.

By entering into the PSAs, the purchasers expressly acknowledged that the Signature unit was not being offered or purchased as an investment. Section 23.1 of the PSA states:

> **BUYER ACKNOWLEDGES THAT NEITHER SELLER NOR ANY OF ITS EMPLOYEES, AGENTS, BROKERS OR SALES AGENTS HAVE REPRESENTED OR OFFERED THE UNIT AS AN INVESTMENT OPPORTUNITY OR APPRECIATION OF VALUE OR AS A MEANS OF OBTAINING INCOME FROM THE RENTAL THEREOF.  BUYER FURTHER ACKNOWLEDGES THAT NEITHER THE SELLER NOR ANY OF ITS EMPLOYEES, AGENTS, BROKERS OR SALES AGENTS HAVE MADE ANY REPRESENTATIONS AS TO THE RENTAL OR OTHER INCOME FROM THE UNIT OR AS TO ANY OTHER ECONOMIC BENEFIT, INCLUDING POSSIBLE ADVANTAGES FROM THE OWNERSHIP OF THE UNIT UNDER FEDERAL OR STATE TAX LAWS, TO BE DERIVED FROM THE PURCHASE OF THE UNIT.**

Exh. C, section 23.1 (caps and emphasis in the original).

Every purchaser and these Plaintiffs affirmed that "no representations have been or are made concerning the economic benefits to be derived from the rental or resale of the Unit" and that their "primary inducement" for purchasing the condominium unit was "the unit itself . . . ," not its investment or earnings potential.  PSA, §§ 32, 36.  The purchasers expressly agreed that they could not rely on oral representations to the contrary:

> **ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE SELLER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS AGREEMENT AND THE DOCUMENTS REQUIRED BY NEVADA REVISED STATUTES CHAPTER 116 . . . .**

*Id.* (caps and emphasis in the original); *see also id.*, § 329 ("No broker, salesperson, or other person has been authorized to . . . make any representations other than those contained in writing . . . [and ] if given or made, such . . . representations must not be relied upon as having been authorized by Seller . . . ."); *id.*, § 48

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 5 of 22

(integration clause declaring "any and all previous and current understandings and agreements between the Buyer and Seller . . ." are not part of the contract).

The purchasers also "received, read, approved, and accepted" section 24.10, which requires the Plaintiffs to submit "*any* dispute relating to th[e] Agreement" to arbitration. *Id.*, § 24.10 (emphasis added); § 4. The arbitration terms appears in the main body of the PSA, in the same font style and size as the other terms printed on page 9, and reads in full:

> 24.10 Arbitration. The parties agree to submit to arbitration any dispute related to this Agreement (including, but not limited to, any dispute related to the interpretation or enforceability of this Agreement) and agree that the arbitration process shall be the exclusive means for resolving disputes which the parties cannot resolve. The laws of the State of Nevada shall apply to this Agreement. Any arbitration hereunder shall be conducted under the Dispute Resolution Rules of the American Arbitration Association ("AAA") as modified herein. Arbitration proceedings shall take place in Las Vegas, Nevada before a single arbitrator who shall be a lawyer. The prevailing party shall be reimbursed for all expenses of arbitration, including arbitration fees and attorneys' fees and costs. All arbitration proceedings shall be confidential. Neither party shall disclose any information about the evidence produced by the other party in the arbitration proceedings, except in the course of judicial, regulatory, or arbitration proceeding, or as may be demanded by government authority. Before making any disclosure permitted by the preceding sentence, a party shall give the other party reasonable advance written notice of the intended disclosure and an opportunity to prevent disclosure. In connection with any arbitration provisions hereunder, each party shall have the right to take the deposition of two (2) individuals and any expert witness retained by the other party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. Only evidence that is directly relevant to the issues may be obtained in discovery. Each party bears the burden of persuasion of any claim or counterclaim raised by that party. The arbitration provisions of this Agreement shall not prevent any party from obtaining injunctive relief from a court of competent jurisdiction to enforce the obligations for which such party may obtain provisional relief pending a decision on the merits by the arbitrator. Each of the parties hereby consents to the jurisdiction of Nevada courts for such purpose. The arbitrator shall have authority to award any remedy or relief that a court of the State of Nevada could grant in conformity to applicable law except that the arbitrator shall have no authority to award punitive damages. Any arbitration award shall be accompanied by a written statement containing a summary of the issues in controversy, a description of the award and an explanation

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

of the reasons for the award.  The arbitrator's award shall be final and judgment may be entered upon such award by any court.

*Id.*, § 24.10.  Plaintiffs initialed page 9 to signify their agreement to arbitrate "any dispute" and forego their right to a trial by the court or a jury trial.  *Id.*; *see also* § 46 (buyers should seek legal advice if they fail to understand any of the terms).

### 1.    The KJH Action.

On August 27, 2007, Plaintiffs' attorneys filed the first of three actions in the Eighth Judicial District Court of Nevada, notwithstanding the arbitration provision in the PSA.  *See KJH & RDA Investor Group, LLC et al v. Turnberry/MGM Grand Towers, LLC et al*, Case No. A547024 ("*KJH* Compl."), Exhibit E, ¶ 1.  The *KJH* Complaint alleges that all 46 plaintiffs were "fraudulently induced" into purchasing "the air rights" to condominium hotel units as "investment securities" at the Signature at MGM Grand based on alleged oral or extemporaneous written representations by certain sales representatives to particular plaintiffs.  *Id.* at 2. The *KJH* Complaint sets forth claims for: (1) violation of NRS 90.460 (unlawful sale of unregistered security); (2) violation of NRS 90.570 (unlawful sale of unregistered security by means of scheme to defraud); (3) Fraudulent Misrepresentation; (4) Negligent Misrepresentation; (5) Fraud in the Inducement; and (6) Fraudulent Concealment.  *See id.*

Turnberry successfully moved to compel arbitration and to stay the *KJH* court action.  *See* Decision filed December 20, 2008 ("Decision"), Exhibit F hereto; *see also* February 13, 2008 Order Staying Action and Compelling Arbitration"), Exhibit G.  The *KJH* court found no procedural or substantive unconscionability and noted:

> Clearly, the genesis of this dispute concerns purchase agreements entered into by the parties which contain agreements to arbitrate.  The fact that plaintiffs seek, in part, to plead themselves out of such agreements does not mean that the Court can disregard them as a threshold matter.  That issue of the merits and how they relate to arbitrability should come before the arbitrator.

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Decision, Exh. F, at 4:3-10.

The *KJH* Plaintiffs did not submit their claims to arbitration, but filed a petition for writ of mandamus with the Nevada Supreme Court to challenge the Order Compelling Arbitration, which remains to be decided.

### 2.    *The Sussex Class Action Complaint*.

On February 22, 2008 Plaintiffs' attorneys filed the second of three actions, *Mary Ann Sussex et al v. Turnberry/MGM Grand Towers et al.*, Case No. A557730. *See* Exhibit E to Notice of Removal (Dkt. No. #1).  The initial complaint was not styled as a class action complaint, *see id.,* nor was the First Amendment to Complaint ("Amendment") filed on April 15, 2008, which merely substituted three Roe corporations with named defendants.  *See* Exhibit F to Notice of Removal.  On May 7, 2008, the Plaintiffs filed a "First Amended Class Action Complaint." *See* Exhibit A to Notice Of Removal.[3]  Defendants were simultaneously served with the initial complaint, the Amendment, and the First Amended Class Action Complaint ("*Sussex* Complaint I") on May 14, 2008.  *See* Exhibits B, C, and D to Notice of Removal.

The *Sussex* Complaint traces the general allegations of the *KJH* Complaint verbatim and, with one exception, makes the same claims as the *KJH* Complaint.  *Compare KJH* Compl., Exh. E, ¶¶ 1-14, and 61-71, *with Sussex* Compl. I, Exhibit A to Notice Of Removal, ¶¶ 1-14, and 20-31.[4]  The *Sussex* Plaintiffs allege that they are bringing the action not only on behalf of themselves, but also on

---

[3] The name of the *Sussex* Class Action Complaint suggests Plaintiffs previously filed a class action, which they amended on May 7, 2008.  Defendants are not aware of, nor were they served with, a class action complaint other than the one served on them on May 14, 2008.

[4] The *Sussex* Plaintiffs also make a claim for violation of NRS Chapter 598 *et seq.* (deceptive trade practices).  *See Sussex* Compl., at 24.

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 8 of 22

behalf of "hundreds" of similarly situated persons "spread throughout the United States." *Sussex* Compl. I, at 2, and ¶ 34(a), at 17.  On June 13, 2008, Turnberry/MGM removed the *Sussex* action to this court pursuant to the Class Action Fairness Act of 2005 ("CAFA").  Notice Of Removal, Dkt. No. # 1.

### 3.       The Berkeley Action.

A week after Turnberry/MGM removed the *Sussex* action to this court, Plaintiffs' attorneys filed a third group action on behalf of 54 plaintiffs.  *See Ross Berkeley et al. v. Turnberry/MGM Grand Towers, LLC et al.,* Case No. A565873 ("*Berkeley* Complaint"), Exhibit H hereto.  They did so despite the fact that (1) the PSA contains an arbitration clause; (2) the district court had already compelled the *KJH* Plaintiffs to arbitration; *and* (3) these 54 plaintiffs were already included among the proposed class members in the *Sussex* Class Action who were "geographically spread throughout the United States.  Like the *Sussex* Complaint, the *Berkeley* Complaint is near identical to the *KJH* Complaint, making the same general allegations and legal claims.  *Compare Berkeley* Compl., Exh. H, *with KJH* Compl. Exh E.

### 4.       The Sussex  Amended Federal Class Action Complaint

On July 2, 2008, the *Sussex* Plaintiffs once more amended their Complaint.  *See* Amended Federal Class Action Complaint ("*Sussex* Compl. II"), Dkt. No. # 14.  Plaintiffs added one claim under the Securities Act of 1933 and one under the Securities Exchange Act of 1934 to their seven state law claims, *id.* at 1-2, ¶¶ 41-52, and restated their class allegations, *id.* ¶¶ 37-40.  They allege in this complaint that "Defendants cannot compel arbitration" because: (1) the case is a class action; (2) each plaintiff's damages are in excess of $50,000; (3) the terms of the PSA are unenforceable under NRS 90.480(1); (4) the contract is illegal in Nevada; (5) "[t]he sale of unregistered SECURITIES renders the entire contract unenforceable as a matter of law and public policy"; (6) the arbitration provision

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 9 of 22

is procedurally and substantively unconscionable.  *Id*. at 1-2, ¶¶ 34-36.  For the reasons that follow, Plaintiffs are incorrect, and the Court should compel the *Sussex* plaintiffs to arbitrate their claims.

III.    ARGUMENT

        A.    **The Court's Jurisdiction Under the FAA and UAA.**

            The Court has jurisdiction to compel arbitration under both Nevada's Uniform Arbitration Act of 2000 ("UAA") and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.  The UAA is applicable to all arbitration agreements made after October 1, 2001, NRS 38.216(1), and permits a party to file a motion to compel in the court where the "proceeding involving a claim referable to arbitration under an alleged agreement to arbitrate is pending" or "in *any* court as provided in NRS 38.246."  NRS 38.221(5) (emphasis added).

            The FAA applies to arbitration clauses that are part of a written contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  The words "involving commerce" are to be broadly construed and cover all transactions that in fact affect interstate commerce "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 282 (1995).  There is no doubt that the hundreds of purchase and sale agreements for the sale of hotel condominium units — each priced between $400,000 and $900,000 — by purchasers "geographically spread throughout the United States" in fact affect interstate commerce, in fact Plaintiffs admit this. *See Sussex* Compl II, ¶43 (alleging defendants made use of "instruments. . . in interstate commerce. . . "); *compare, e.g., Wolff v. Westwood Management, LLC*, 503 F. Supp. 2d 274, 280 (D. D.C. 2007) (court had "no trouble concluding that the investment in a multi-million dollar office building located in the District of Columbia while owned by entities in Maryland involves interstate commerce").

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Although the FAA "does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331. . .," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983), this Court has subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA").  The *Sussex* Plaintiffs filed a class action on behalf of "hundreds" of "similarly situated persons" spread across the United States.  *Sussex* Compl. I, ¶ 34(a).  The $5,000,000 amount in controversy is met because each plaintiff alleges damages *in excess* of $50,000.  *Sussex* Compl. I, Caption, at 2, and ¶ 30.  There is minimal diversity in that at least one plaintiff is diverse from one defendant.  Plaintiffs allege that plaintiffs Malcom J. Nichol and Sandy Scalise are citizens of California.  *Sussex* Compl. I, ¶ 16.  Defendant Turnberry/MGM is, and is alleged to be, a Nevada limited liability company.  *See Sussex* Compl. I, ¶ 20.[5]

**B.    The *Sussex* Plaintiffs Should Be Compelled to Arbitrate Their Claims**.

"Contracts to arbitrate are not to be avoided by allowing [Plaintiffs] to ignore the contract and to resort to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984); *accord, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-21 (1985) (noting that the principal purpose of the FAA is to hold parties to their private agreements they have made).  Where, as here, the plaintiffs refuse to submit a dispute to arbitration, the defendants may "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4; NRS 38.221(1) (party may

---

[5] Although none exist, Plaintiffs would bear the burden of proof on the applicability of an exception under 28 U.S.C. § 1332(d). *E.g., Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); *Hart v. FedEx Ground Package System Inc.*, 457 F.3d 675, 680 (7th Cir. 2006).

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

move the court to compel arbitration by "showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement . . .").

Consistent with the FAA's policy to enforce arbitration agreements like any other contracts, the court's role is limited to determining whether (1) the arbitration agreement exists; (2) the claims fall within the scope of the arbitration clause; and (3) the clause is valid. *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *see also* NRS 38.219 (1)-(2) (court shall decide whether arbitration agreement exists and whether controversy is subject to it); 9 U.S.C. § 4 (court must order arbitration in accordance with the terms of the arbitration agreement if the clause is valid and the "making of [it] . . . is not in issue"). "If the answer is yes to [these] questions, the court *must* enforce the [arbitration] agreement." *Lifescan, Inc.*, 363 F.3d at 1012 (citing to *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis added).[6]

---

[6] The fact that the *KJH* action is before the Supreme Court on the *KJH* Plaintiffs' petition for writ of mandamus, and another, similar lawsuit is also pending in state court does not justify a stay of the instant proceedings pending the resolution of the state litigation. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22-23 (1983) (district court's stay of the federal proceeding held "plainly erroneous in view of Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible"); *accord, e.g., Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991) (district court erroneously believed that it lacked jurisdiction to determine the arbitrability of the second action in federal court based on a similar state court action); *cf. Southland Corp. v. Keating*, 465 U. S. 1, 11-12 (1984) ("to delay review of a state judicial decision denying enforcement of an arbitration contract until the state litigation has run its course would defeat the core purpose of a contract to arbitrate").

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1   This means that courts are *not* to engage in an analysis of whether

2   the *contract* in which the arbitration clause appears is enforceable, which is an

3   issue for the arbitrator.  NRS. 38.219(3) ("*arbitrator* shall decide . . . whether the

4   contract that contains a valid arbitration clause is enforceable"); *Buckeye Check*

5   *Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-45 (2006) (the issue of whether the

6   "contract as a whole" is enforceable is exclusively the province of the arbitrator);

7   *Whiteside*, 940 F.2d at 102 (distinguishing the issue of whether a dispute is

8   covered by a written arbitration agreement from issues "presented when

9   resolving the dispute on the merits").  Yet this is precisely what Plaintiffs ask the

10  Court to do when they claim that arbitration is foreclosed because the terms of the

11  *PSA* are "unenforceable under NRS 90.840, section 1." Compl., ¶ 35.

12          **1.      *Securities Claims are Arbitrable.***

13          Plaintiffs allege that arbitration of their claims is precluded under

14  NRS 90. 840(1), *see Sussex* Compl. I, ¶ 31; *Sussex* Compl. II, ¶ 35, but they overlook

15  the fact that the FAA preempts any state statute that purports to invalidate

16  arbitration clauses.  *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265,

17  265-66 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 11-12 (1984).  NRS 90.840(1),

18  moreover, does not address the validity of arbitration clauses but merely states

19  that a party cannot obtain relief on a *contract* made in violation of the Securities

20  Act.  Enforcement of an arbitration *clause* is not granting relief *on the contract*:  "By

21  agreeing to arbitrate a statutory claim, a party [merely] . . . submits to their

22  resolution in an arbitral, rather than a judicial, forum . . . . " *Mitsubishi Motors*

23  *Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

24          Amending their complaint to state federal securities law claims, as

25  the Plaintiffs did on July 2, 2008, does not immunize their claims from arbitration.

26  Agreements to submit disputes arising under the federal securities acts to

27  arbitration are enforceable under the FAA.  *Rodriguez de Quijas v.*

28

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

*Shearson/American Express, Inc.*, 490 U.S. 477, 486 (1989) ("resort to the arbitration process does not inherently undermine any of the substantive rights afforded to petitioners under the Securities Act [of 1933]"); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 233 (1987) ("agreements to arbitrate [Securities] Exchange Act [of 1934] claims [are] 'enforce[able] . . . in accord with the explicit provisions of the Arbitration Act' ").

As discussed below, there is no doubt that the arbitration agreement exists, that Plaintiffs' claims are directly related to the purchase and sale agreements they signed and agreed to, and that the arbitration clause is valid. Because Plaintiffs' unsupported allegations concerning the illegality of the PSAs are immaterial to this motion, and nothing precludes the arbitration of Plaintiffs' putative class action, Plaintiffs should be compelled to arbitration.

    2.    **The Existence of an Arbitration Provision (Section 24.10) is Undisputed.**

Plaintiffs cite a number of grounds to claim exemption from arbitration, but the "making of the arbitration agreement" is not one of them.  For example, they do not claim that they did not sign the PSAs or that the signatories had no authority to accept the contract terms on their behalf.  *Cf. Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1138-42 (9th Cir. 1991) (ordering evidentiary hearing where plaintiffs contended that they never gave authority to the individual who had signed the contracts on their behalf).  Plaintiffs admit that the arbitration clause was included in the PSA they signed.  *Sussex* Compl. II, ¶ 35.  Thus the Court need not "proceed summarily to the trial" of this non-issue.  *Cf.* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof").

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 14 of 22

3. ***Plaintiffs' Fraud and Securities Claims Are Subject to Arbitration.***

Arbitration clauses are to be construed liberally in favor of arbitration. *Mikohn Gaming Corp. v. McCrea*, 120 Nev. 248, 252, 89 P.3d 36, 39 (2004). All doubts concerning the arbitrability of the subject matter of a dispute should be construed in favor of arbitration. *International Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 104 Nev. 615, 618-619, 764 P.2d 478, 480 (1988). Where arbitration clauses purport "to cover all disputes arising in connection with the agreement, factual allegations need only 'touch matters covered by the contract containing the arbitration clause . . . .' " *Law Offices of Bradley J. Hofland, P.C. v. McFarling*, 2007 WL 1074096 at *4 (D. Nev. April 1, 2007). Clauses providing for arbitration of " '[a]ny controversy or claim arising out of or relating to this Agreement . . . ' [are] broad enough to encompass [claims] that . . . the . . . agreement . . . [was] procured by fraud." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (quoting the arbitration clause at issue).

The arbitration clause in the PSA, section 24.10, is broad, providing that "[t]he parties agree to submit to arbitration *any dispute related to this agreement* . . . including, but not limited to, *any dispute related to the . . . enforceability* of this agreement . . . (emphasis added). *All* Plaintiffs' claims, including their statutory securities claims, "touch" upon the PSAs. More than that, Plaintiffs' claims are directly related to the PSA because Plaintiffs: (1) allege that the PSAs are unenforceable under federal and state security statutes, *e.g.*, *Sussex* Compl. II, ¶¶ 44, 42, 45, and 62; (2) seek to rescind the PSAs, *e.g.*, *id.*, ¶¶ 45, 88, and 116; and (3) claim that they relied on alleged oral misrepresentations as to the economic benefits of the units *despite* the express written disclaimers to the contrary in the PSA, *e.g.*, *id.*, ¶¶ 46, 49-50, 54-55, 60-61, 68-72, 83-87, 91-94, 98-107, and 109-115.

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 15 of 22

a.     *Plaintiffs' Putative Class Action Allegations Do Not Affect Arbitrability.[7]*

There is no support for Plaintiffs' assertion that arbitration is foreclosed "because . . . this is a class action complaint . . . ." *Sussex* Compl II, ¶ 34. Nothing in the FAA or UAA prohibits the arbitration of Plaintiffs' putative class action. *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 990-91 (9th Cir. 2007) (party offered "no authority or support for. . . its argument that. . .the Federal Arbitration Act. . . disfavor[s] class arbitration. . . class arbitrations further the FAA's purpose of encouraging alternative dispute resolution"). The question of whether an arbitration provision permits class arbitration is a matter of construction of the arbitration provision. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003). It is for the arbitrator to decide in the first instance. Unlike "gateway" matters for the court to decide (such as the existence or validity of the arbitration agreement or its scope), the determination of whether class arbitration is available (only) concerns "what *kind of arbitration proceeding* the parties agreed to." *Id.* at 452 (emphasis in the original).

### 4.     Section 24.10 is Not Unconscionable.

Under both the FAA and the UAA, there is a presumption that the arbitration clause is valid. *See* 9 U.S.C. § 2 (arbitration agreements "*shall be valid, irrevocable, and enforceable*" except where grounds exist to revoke the arbitration provision) (emphasis added); NRS 38.219(1) (to same effect). This presumption expresses a strong public federal policy in favor of arbitration agreements. *Perry v. Thomas*, 482 U.S. 483, 489 (1987) ("Section 2 is a congressional

---

[7] In making this argument, Defendants do not acknowledge that the *Sussex* Plaintiffs have properly pleaded a class action complaint or that the action may be properly maintained as a class action. It is Defendants' position that the Plaintiffs have not properly stated a class action and that the action could not be properly maintained as a class action.

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 16 of 22

declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (federal courts are to 'rigorously' enforce arbitration agreements); *see also, e.g., Mikohn Gaming Corp. v. McCrea*, 120 Nev. 248, 252, 89 P.3d 36, 39 (2004) ("Nevada's version of the Uniform Arbitration Act . . . *clearly* favors arbitration") (emphasis added); *Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. Adv. Op. No. 28 (May 15, 2008) at 12 (to same effect).

State contract law determines whether an arbitration agreement is unconscionable. *See Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 686-687 (1996). Under Nevada law, an arbitration clause is procedurally unconscionable "when a party lacks a meaningful opportunity to agree to the clause terms either [a] because of unequal bargaining power, as in an adhesion contract, or [b] because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton v. Green*, 120 Nev. 549, 554, 96 P.3d 1159, 1162 (2004). An arbitration clause is substantively unconscionable if it would unfairly favor one party over the other. *See id.* at 554, 96 P.3d at 162–63 (arbitration agreement is unconscionable where the remedy lacks a "modicum of bilaterality") (quoting *Ting v. AT & T*, 319 F.3d 1126, 1149 (9th Cir. 2003), *cert. denied*, 540 U.S. 811 (2003)). An arbitration clause should not be rejected unless it is *both* procedurally *and* substantively unconscionable. *D.R. Horton*, 120 Nev. at 553, 96 P.3d at 1162 (citing to *Burch v. District Court*, 118 Nev. 438, 442, 49 P.3d 647, 650 (2000)). Although substantial evidence of procedural unconscionability can make up for scarce evidence of substantive unconscionability, if there is *no* evidence to support one *or* the other in this case, so the arbitration clause must be upheld. *See D.R. Horton,* 120 Nev. at 553-54, 96 P.2d at 1162.

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

a.      *The Arbitration Clause is not Procedurally Unconscionable.*

i.      The PSAs are Not Adhesion Contracts.

Adhesion contracts are standardized contract forms offered on a 'take it or leave it' basis to customers of *consumer goods* and services without affording the consumer a realistic opportunity to bargain.  *Kindred v. District Court*, 116 Nev. 405, 414, 996 P.2d 903, 909 (2000).  Adhesion contracts are marked by unequal bargaining power.  *D.R. Horton*, 120 Nev. at 554, 96 P.3d at 1162.

The PSAs for the Signature luxury hotel condominium units are not adhesion contracts for 'consumer goods' presented to these purchasers on a 'take it or leave it' basis.  The PSA gave Plaintiffs the opportunity to confer with counsel, *see* Section 40, and permitted amendments, so long as they were in writing.  *See* Section 4; *see also* Riordan Decl., Exh. B, ¶ 3.  Plaintiff Mary Ann Sussex was one of the Plaintiffs who successfully negotiated an assignment and assumption amendment to her PSA, despite the non-assignability clause in the PSA.  *See* Assignment and Assumption Agreement, Exh. D (adding Soledad Martinez as additional purchaser); *Compare* PSA, Exh. C, Section 19.

ii.      Section 24.10 is Conspicuous.

Procedurally unconscionable arbitration clauses often appear in "fine print," and/or are placed in an inconspicuous portion of the contract.  For example, in *D.R. Horton* the arbitration clause was hidden on the back page of a two-page contract, whereas the signature lines appeared on the front page.  120 Nev. at 556, 96 P.3d at 1164.  In *Burch* — apart from the fact that the buyers did not receive a copy of the terms until four months *after* they closed escrow on their house — "[t]he arbitration clause was located on page six of the . . . booklet, after five pages of material only relevant to persons residing outside of Nevada." 118 Nev. at 443, 49 P.3d at 650.  Holding that the clause was procedurally unconscionable, the *Burch* Court remarked: "The Burches were not sophisticated

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 18 of 22

consumers, they did not understand the . . . terms, and the . . . disclaimers were not conspicuous." *Id*. at 444, 49 P.2d at 650.

Here, by contrast, section 24.10 of the PSA appears in the text of the contract, is in the same font as adjacent text, and is titled and underlined "Arbitration." PSA, Exh. C, section 24.10.  The page on which it appears contains a signature line and was initialed by each plaintiff to acknowledge and accept the terms set out on that page.  *See id*. at 9.

    iii.  The Arbitration Clause Adequately Informs the Purchasers of its Consequences.

An arbitration clause need not "explain in detail each and every right that the [petitioners] would be waiving . . ." so long as the provision is "conspicuous and clearly put[s] a purchaser *on notice* that he or she is waiving important rights under Nevada law." *D.R. Horton*, 120 Nev. at 556-57, 96 P.3d at 1166 (emphasis added).  Here, section 24.10 puts the purchasers on notice that disputes cannot be submitted to a jury in the court by providing that: (1) arbitration is the "exclusive means" for the resolution of "any dispute related to the agreement"; (2) a single arbitrator — not "a court of the State of Nevada" — has the authority to award "any remedy or relief"; and (3) "[t]he arbitrator's award shall be final and judgment may be entered upon such award by any court." PSA, section 24.10, at 9.  Thus there is no procedural unconscionability: "The [Plaintiffs] were . . . sophisticated [investors], they did . . . understand the . . . terms, and the . . . disclaimers were . . . conspicuous." *Burch*, 118 Nev. at 444, 49 P.2d at 650.  Without procedural unconscionability, Plaintiffs must be compelled to arbitrate their claims.  *D.R. Horton*, 120 Nev. at 553, 96 P.3d at 1162; Burch, 118 Nev. at 442, 49 P.3d at 650.

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 19 of 22

b.      *The Arbitration Clause Is Not Substantively Unconscionable.*

Substantive unconscionability may be present when the terms of the contract oppressively favor one party over the other. *D.R. Horton*, 120 Nev. at 554, 96 P.3d at 162–63 (quoting *Ting v. AT & T*, 319 F.3d 1126, 1149 (9th Cir. 2003), *cert. denied*, 540 U.S. 811 (2003) ("substantive unconscionability focuses on the one-sidedness of the contract terms").  Here, however, section 24.10 puts Plaintiffs and Turnberry on equal footing.  For example,

(1) Both parties are to submit "any dispute" to arbitration; not just Plaintiffs.  *Compare, e.g., Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 694 (Cal. 2000) (arbitration agreement was limited in scope to *employee* claims regarding wrongful termination);

(2) The clause does not bar class actions.  *Compare, e.g., Ting*, 319 F.3d at 1150 (prohibiting the consumers from bringing class action suits);

(3) The clause permits the prevailing party to recover its, her, or his expenses of arbitration, including arbitration fees, attorneys' fees and costs. *Compare, e.g.,  Ting*, 319 F.3d at 1150 (attorneys' fees only permitted pursuant to statute and consumers required at all times to share arbitration fees).

The *Sussex* Plaintiffs and the proposed class members they represent purchased luxury hotel condominium units at prices ranging between $400,000 and $900,000 per unit.  *See* Exhibit 1 to *Sussex* Compl. II.  These real estate speculators cannot be compared to the consumers of telephone services in *Ting*, or the employee that was terminated in *Armendariz* for whom the arbitration "fees would be prohibitively expensive." *Armendariz*, 6 P.3d at 686.  *But see Ting*, 319 F.3d at 1151 ("the majority of complainants would be handled satisfactorily either by customer service representatives *or subsidized arbitration*") (emphasis added); *see also* AAA Consumer-Related Disputes Supplementary Procedures (providing that a consumer whose claim does not exceed $10,000 is not responsible for more

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Page 20 of 22

than $125 of the arbitrator's fees).[8]  Because it does not "shock the conscience" that purchasers of half million dollar luxury condominiums are required to arbitrate disputes with the seller of such units, *24 Hour Fitness, Inc. v. Superior Court*, 78 Cal. Rptr. 533, 541 (Cal. Ct. App. 1998), the arbitration clause is not otherwise unconscionable, and none of Plaintiffs' arguments to resist arbitration have merit, this motion should be granted.

### III.    CONCLUSION

For the reasons stated above, the Court should compel the *Sussex* Plaintiffs to arbitration and stay these judicial proceedings.

MORRIS PICKERING & PETERSON

By:_____
Steve Morris, No. 1543
Akke Levin, No. 9102
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101

Janice Michaels, No. 6060
Wood, Smith, Henning & Berman LLP
7670 West lake Mead Blvd., Suite 250
Las Vegas, Nevada 89128-6652

Attorneys for Defendants
Turnberry/MGM Grand Towers, LLC,
MGM Grand, Inc., Turnberry/Harmon
Ave., LLC., and Turnberry Associates

---

[8]  These rules apply to disputes between consumer and businesses, where the terms and conditions of purchase are non-negotiable, and where the product or service is for personal or household use.  *See id.*

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS PICKERING & PETERSON, and that the following documents were served via electronic service: **MOTION  TO COMPEL ARBITRATION** TO:

| | |
|---|---|
| Robert B. Gerard | Norman Blumenthal |
| Ricardo R. Ehmann | Blumenthal & Nordrehaug |
| Gerard & Associates | 2255 Calle Clara |
| 2840 So, Jones Blvd. - Bldg. D, Suite 4 | La Jolla, California  92037 |
| Las Vegas, Nevada  89146 | |
| | |
| Attorneys for Plaintiff | Attorneys for Plaintiff |

I further certify that I am familiar with the firm's practice of collection and processing documents for mailing; that in accordance therewith, I caused the above-named document to be deposited with the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first class postage prepaid, on the date and to the addressee(s) shown below:

Robert Fellmeth
University of San Diego Law School
5998 Alcala Park
San Diego, California  92110

Attorneys for Plaintiff

Dated this _17th_ day of _July_, 2008.

BY: _____

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422