MORRIS PICKERING & PETERSON
Steve Morris, No. 1543
Akke Levin, No. 9102
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone:   (702) 474-9400
Facsimile:   (702) 474-9422

WOOD, SMITH, HENNING & BERMAN LLP
Janice Michaels, No. 6060
7670 West lake Mead Boulevard, Suite 250
Las Vegas, Nevada 89128-6652
Telephone: (702) 222-0625
Facsimile:   (702) 253-6225

Attorneys for Defendants
Turnberry/MGM Grand Towers, LLC,
MGM Grand, Inc., Turnberry/Harmon
Ave., LLC., and Turnberry Associates

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN SUSSEX; MITCHELL PAE; MALCOLM NICHOLL and SANDY SCALISE; ERNESTO VALDEZ, SR. and ERNESTO VALDEZ, JR; JOHN HANSON and ELIZABETH HANSON,<br><br>Plaintiffs,<br>v.<br><br>TURNBERRY/MGM GRAND TOWERS, LLC; MGM GRAND, INC., doing business as MGM MIRAGE; TURNBERRY/ HARMON AVE., LLC; TURNBERRY ASSOCIATES; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO: 2:08-cv-00773-RLH-PAL<br><br><br><br><br><br><br>**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

## I. INTRODUCTION

As Defendants demonstrated in their moving papers, the Court's role is limited to determining whether (1) the arbitration agreement exists; (2) the claims fall within the scope of the arbitration clause; and (3) the clause is valid. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *see also* NRS 38.219 (1)-(2) (court shall decide whether arbitration agreement exists and whether controversy is subject to it); 9 U.S.C. § 4 (court must order arbitration in accordance with the terms of the arbitration agreement if the clause is valid and the "making of [it] . . . is not in issue"). "If the answer is yes to [these] questions, the court must enforce the [arbitration] agreement." *Lifescan, Inc.*, 363 F.3d at 1012 (citing to *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis added).

In response to Defendants' motion to compel, the Plaintiffs say that to hold them to their promise to arbitrate "any dispute related to this Agreement" would be "unconscionable" when the law says otherwise. Moreover, the Plaintiffs say they have trumped Section 24.10 by suing Defendants who are not signatories to the PSAs and cannot, as Defendants, demand arbitration, thus rendering Section 24.10 inoperative. This, too, is a contention the law rejects. *See, e.g.*, *24 Hour Fitness, Inc. v. Superior Court*, 78 Cal. Rptr. 2d, 533, 539 (Ct. App. 1998) (alleged agents of parties to an arbitration agreement are entitled to its benefits.

What is "unconscionable" in this case is not the arbitration clause but the fact that Plaintiffs are asking the Court to ignore *all* the representations and promises they made in their PSAs and accept instead their defective declarations that directly contradict their contract just because their investments did not turn out as expected. In considering this point, the Court should take judicial notice of an order issued last week in the United States District Court for the Southern District of Florida which declined a similar invitation by disappointed condominium buyers and dismissed 29 lawsuits filed by them, holding that they could not rely on prior oral representations "expressly

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

contradicted by a subsequent written agreement" they had accepted and signed. A copy of the decision in *Weaver v. Opera Tower, LLC*, Case No. 1:08-cv-20241-PAS is attached as Exhibit A hereto.

## II. ARGUMENT

### A. Plaintiffs' Opposition is Based on Unsupported Allegations, Deceptively Presented as "Facts."

Plaintiffs cannot prove their legal arguments by testifying to legal conclusions: "[B]are assertions or unsupported conclusions are not facts . . ." *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1279 (9th Cir. 1993). Their claim that the PSAs are "illegal" because they are "unregistered investment securities," Opp'n, at 12, is not a *fact*. It is a legal conclusion that the arbitrator will determine. Plaintiffs must prove by facts that they purchased a "security" rather than real estate. Their declarations that they were not "aware of the illegality and fraudulent nature of the transaction," *id*. at 14, does not help them because this device *presupposes* illegality and fraud without proving it. Indeed, the first paragraph of Plaintiffs' "Statement of Facts" is composed of conclusory allegations and should be discarded.

The same goes for their statements that they were unaware they "would be bound by a *lopsided* arbitration provision that *unfairly favors* Defendants and *violates federal and state public policy*." *Id*. (emphasis added). How can Plaintiffs testify (*e.g.*, Sussex, Pae, & Nicholl declarations) to a "public policy of the State of Nevada in prosecution of [Plaintiffs'] claims for securities laws violations" that cannot be found anywhere? This effort at fabricating facts fails because "[a] man cannot make evidence for himself by writing the statements that he wishes to prove." *A.B. Leach & Co. v. Peirson*, 275 U.S. 120, 128 (1927).

### B. The Arbitrator Must Decide Plaintiffs' Claim That the PSAs Are Illegal and Were Presented on a "Take it or Leave It" Basis.

If the "crux of the complaint" is a challenge "not to the arbitration provision itself but, rather, to the *validity of the entire contract*, then the issue of the

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

contract's validity should be considered by an *arbitrator* in the first instance." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1277 (9th Cir. 2006) (citing to *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, 126 S. Ct. 1204, 1208-09 (2006)) (emphasis added); *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (same); *accord* NRS 38.219(3) ("*arbitrator* shall decide . . . whether the contract that contains a valid arbitration clause is enforceable") (emphasis added). Unless the claim is fraud in the inducement of the arbitration clause, claims of fraud in the inducement of the contract must be submitted to arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403-04 (1967); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

Not one plaintiff has submitted facts to support fraudulent inducement of the arbitration agreement in Section 24.10.

### 1. *Plaintiffs Seek to Rescind the PSA.*

Plaintiffs' main claim is that they were fraudulently induced into entering the PSAs based on defendants' alleged misrepresentations concerning the economic benefits that would be derived from the rental program, which is the subject of an independent contract not in issue here. Compl., Dkt. No. 14, ¶¶ 1-11; Declarations, ¶ 4. "Plaintiffs seek *rescission*" of their PSAs by alleging that "[b]ut for Defendants' material omissions and false statements, [they] would not have purchased the Security that was not registered. Compl., ¶¶ 12, 25, 29-33. Put another way, the Plaintiffs want out of the completed PSA they "read, approved, and accepted" on every page and their $400,000+ purchase price back.

### 2. *Plaintiffs' Attack on the Validity of the PSA.*

Plaintiffs' contend "[the] **terms of the Purchase Agreement**, which include an arbitration provision, **are unenforceable under NRS 90.480** subsection 1, as a matter of law **because the contract is an illegal contract in the state of Nevada. The sale of unregistered securities renders the entire contract unenforceable as a matter of law and public policy**." *Id.*, ¶ 35 (emphasis added). Although they also claim the arbitration

clause itself is procedurally and substantively unconscionable, *id.*, ¶ 36, they do not assert *any* claim to invalidate only Section 24.10. They are after the whole enchilada: *All* ten claims for relief seek to void the PSA as a whole without reference to the arbitration clause. *See, e.g., id.* ¶ 45 (seeking rescission of the *PSAs* based on alleged violation of Securities Act of 1933); ¶¶ 97-107 (claiming fraudulent inducement of the *purchase* agreements); Prayer for Relief (6) (seeking an order of "rescission and restitution to investors").

      3.      *Plaintiffs' "Take It Or Leave It" Argument Addresses the Whole PSA.*

Is there any lack of clarity here: "the undisputed evidence shows that *the purchase agreement* was presented on a 'take it or leave it basis' "? Opp'n, at 19 (citing to Plaintiffs' Declarations, ¶ 3)(emphasis added); *see also id.* at 14 ("the *purchase agreement* was a standard form . . . presented to each Plaintiff on a 'take it or leave it basis") (emphasis added). No facts are alleged to suggest the *arbitration agreement* was presented to them on a "take it or leave it basis." They make the ridiculous suggestion that "none of them" was aware of the arbitration clause in the contract they read and signed on every page, *id.* at 20, which includes page 9 where Section 24.10 appears. *But see* Mansour and Hirji Decls., ¶ 3 (suggesting they reviewed the clause but did not object to it).

All but two of the plaintiffs speak only about the "take-it or leave-it" basis of the *purchase and sale agreement*. *See, e.g.,* Pae, Nicholl, and Scalise Decls., ¶ 3, at 2.[1] Because *all* plaintiffs challenge the entire PSA under a claim of fraudulent inducement, this contract validity claim goes to the arbitrator. *Buckeye*, 546 U.S. at 444; *see also, e.g.,*

---

[1] Plaintiff Sussex does not, nor could she, maintain that the PSA was non-negotiable. She was one of the plaintiffs who successfully negotiated one of the alleged nonnegotiable "form" provisions of the PSA — the non-assignment clause. *See* Motion to Compel Arbitration, Exh. D. How does this *fact* fall "woefully short of negating" Plaintiffs' declarations that the purchase agreement was presented on a "take it or leave it basis?"

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

*Campaniello Imps., Ltd. v. Saporiti Italia S.P.A.*, 117 F.3d 655, 667 (2d Cir. 1997), (there being "no fraud or misrepresentation that relates directly to the arbitration clause," the district court properly sent the case to arbitration).

### C. The Validity of the Arbitration Agreement Is Not a Fact-bound Issue.

"The FAA provides for discovery and a full trial in connection with a motion to compel arbitration *only* if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.' " *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4) (emphasis added); *compare* NRS 38. 221(1)(b) (court shall proceed "*summarily*" to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate") (emphasis added). Where, as here, Plaintiffs are not disputing that the arbitration agreement exists and that their claims fall within it, the court's review is limited to determining whether the clause is valid on its face. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (same).[2]

The validity of the arbitration agreement is not a fact-bound "evidentiary" issue that requires an evidentiary hearing, as Plaintiffs contend. *E.g.*, Opp'n, at 12, 16; *see also id.* at 36 ("unconscionability is a *fact-bound* issue"). The "Ninth Circuit" cases Plaintiffs cite as support for their fanciful position — *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007), and *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003) — do not say a *word* about the issue or otherwise support their reckless and wrong allegation. In fact, *Ting v. AT&T* holds the opposite. 319 F.3d at 1135 ("The district court's conclusion that the CSA was unconscionable raises a question of law subject to de novo review"); *accord, e.g., Al-Safin*

---

[2] Plaintiffs also do not dispute that this Court has jurisdiction to compel arbitration under *both* Nevada's Uniform Arbitration Act of 2000 ("UAA") *and* the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

*v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1259 (9th Cir. 2005) ("Whether a contract is substantively unconscionable is a question of *law*") (emphasis added).[3]

### D. The Arbitration Agreement is Not Procedurally Unconscionable.

An arbitration clause is procedurally unconscionable "when a party lacks a meaningful opportunity to agree to the clause terms either [a] because of unequal bargaining power, as in an adhesion contract, or [b] because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton v. Green*, 120 Nev. 549, 554, 96 P.3d 1159, 1162 (2004). Neither ground is present here.

#### 1. *The Arbitration Agreement in Section 24.10 is not an Adhesion Contract.*

An adhesion contract is "a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Obstetrics & Gynecologists v. Pepper*, 101 Nev. 105, 107, 693 P.2d 1259, 1260-61 (1985), *cited in Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, 116 Nev. 405, 410-11, 996 P.2d 903, 907 (2000). The adhesion argument fails here because:

(1) Plaintiffs' claim that "none of them were advised of or otherwise became aware of the existence of the arbitration provision," Opp'n, at 12, *contradicts* the claim that the arbitration agreement was one of adhesion. A person who claims to be unaware of an arbitration provision because he did not *read* it cannot be "oppressed"

---

[3] Contrary to Plaintiffs' unsupported accusation, Defendants never argued "that this Court is without authority to review the evidence," Opp'n, at 8, only that the Court's review is *limited*. Unlike Plaintiffs' "evidentiary hearing" and "discovery hearing" arguments, this proposition of limited review is squarely supported by binding authority. *Lifescan, Inc.*, 363 F.3d at 1012 (9th Cir. 2004); *Simula, Inc.*, 175 F.3d at 726.

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

and complain of a lack of bargaining power in agreeing to the provision of which he was ignorant.

(2)  *Not one* plaintiff argues that the arbitration clause — as distinguished from the PSA — was presented to him/her on a 'take it or leave it' basis. All Plaintiffs, including Mansour and Hirji, argue that the entire "*purchase agreement* was presented on a take it or leave it basis." Opp'n, at 12; Mansour Decl., ¶ 3 ("the contract in general was very one-sided . . ."); Hirji Decl., ¶ 3 ("the Purchase Agreement including the arbitration provision was presented on a take it or leave it basis . . .").

(3)  Even assuming that the arbitration provision — as distinguished from the PSA — was offered to Plaintiffs without affording them a realistic opportunity to bargain, the mere inequality of bargaining power "is not a sufficient reason to hold that arbitration agreements are never enforceable . . ." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 22 (1991), not even in employment relationships, but *especially* not in what Plaintiffs claim (incorrectly) here — "[r]elationships between securities dealers and investors . . ." *Id.* (citing to *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) and *McMahon*, 482 U.S. at 230); *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 726-27 (9th Cir. 2007) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 22 (1991)).[4] In *Nagrampa*, where the franchisor was found to have "substantial" superior bargaining power over the franchisee, "the evidence of procedural unconscionability appear[ed] *minimal*." 469 F.3d at 1280-81 (emphasis added).

(4)  Although the availability of comparable investments "*alone*" and the sophistication of a party "*alone*" cannot defeat a claim for procedural unconscionability, *Nagrampa*, 469 F.3d at 1283, taken together these are important considerations that go

---

[4] Defendants are not claiming to be securities dealers, nor do *Defendants* claim that Plaintiffs are investors. *Plaintiffs*, however, claim to be "investors" who "invested" in "securities" sold by the defendants. Based on *Plaintiffs*' allegations, therefore, the relationship is akin to a securities dealer and an investor.

Page 8 of 20

against a finding of "adhesion." *See id.* at 1280-81; *see also D.R. Horton*, 120 Nev. at 555, 96 P.3d at 1163 (finding no unequal bargaining power, and "agree[ing] with Horton's arguments," which included that the home buyers "could have chosen another developer in the same area"); *compare Burch*, 118 Nev. at 443, 49 P.3d at 650 ("The Burches were *not* sophisticated consumers . . ."). Here, Plaintiffs "were 'not vulnerable consumers or helpless workers,' but rather '[self-proclaimed investors] who bought a [luxury condominium priced between $400,000 and $900,000]." *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 843 (7th Cir. 1999). The Signature was just one of many condominium projects in Las Vegas.[5] There is no evidence "or indication that [Plaintiffs] . . . w[ere] coerced or defrauded into agreeing to the *arbitration clause*," so it is enforceable. *Gilmer*, 500 U.S. at 22 (emphasis added).

### 2. *Plaintiffs Were Alerted to the Arbitration Clause.*

To assert repeatedly (and incorrectly) that the arbitration clause in Section 24.10 was "buried to the fullest extent possible" does not make it so. This thoughtless allegation is contradicted by the contract every plaintiff read and signed. Moreover, pleading " '[i]gnorance . . . will not relieve a party from his contract obligations,' " *Campanelli v. Conservas Altamira, S.A.*, 86 Nev. 838, 841, 477 P.2d 870, 872 (1970), because " 'He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contends [sic] and to assent to them, and there can be no evidence for the jury as to his understanding of its terms.' " *Id.* (Internal citation omitted). The arbitration agreement appears on page 9 of the PSA, which, unlike in *D.R. Horton*, is prominent. Every plaintiff saw, read, and signed page 9.

Plaintiffs rely on *Tandy Computer Leasing v. Terina's Pizza* as "indistinguishable" from this case, but *Tandy* involved a forum selection "clause . . . in

---

[5] Plaintiff Mansour knows this: he purchased three other condominium units, including one in Sky, another Las Vegas condominium development. *See* Exhibit B.

very small print, on the back of a one page lease agreement, in the second sentence of the last paragraph . . . labelled 'MISCELLANEOUS.' " 105 Nev. 841, 842, 784 P.2d 7, 7 (1989). Here Section 24.10 is in the *same* print as all other clauses in the *body* of the contract and is labeled and underlined "Arbitration."

That plaintiffs such as Sussex *chose* to sign the PSA in 15 minutes, and that others relied on alleged statements by sales representatives that the contract was all "standard" is irrelevant. The PSAs not only encouraged the buyers to confer with an attorney if needed, Section 40, but the PSA warns on the first page that "ORAL REPRESENTATIONS CANNOT BE RELIED ON AS CORRECTLY STATING THE REPRESENTATIONS OF THE SELLER." Defendants cannot be held responsible for Plaintiffs' decision not to read the contracts they said in writing they did read. *Campanelli*, 86 Nev. at 841, 477 P.2d at 872. *See* Exhibit A hereto, *Weaver v. Opera Tower, LLC*, Case No. 1:08-cv-20241-PAS, dismissing similar claims of oral representations in the face of written disclaimers.

### 3. The Arbitration Clause Is Clear and Does not Waive Plaintiffs' Rights.

An arbitration clause need not "explain in detail *each and every* right that the [petitioners] would be waiving . . ." *D.R. Horton*, 120 Nev. at 556-57, 96 P.3d at 1166 (emphasis added). It is enough that the provision is "conspicuous and clearly put[s] a purchaser *on notice* that he or she is waiving important rights under Nevada law." *Id.* (emphasis added). Here, Section 24.10 tells the purchasers that arbitration is the "*exclusive* means" for the resolution of "*any* dispute related to the agreement" (emphasis added). A single arbitrator — not a court or jury — has the authority to award "any remedy or relief," and that award "*shall be final* . . ." *Id.* (emphasis added). The clause is also clear that punitive damages cannot be recovered.

The clause need not address Plaintiffs' alleged rights under NRS 41.600 and NRS 90.660 because Plaintiffs are not waiving *any* rights under these statutes by

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

accepting arbitration. Like NRS 41.600 and NRS 90.660, Section 24.10 provides that the prevailing party shall be entitled to its attorneys' fees and costs: *Compare D.R. Horton*, 120 Nev. at 556, 96 P.3d at 1164 (arbitration clause provided that each party was to bear its own attorneys' fees and expenses). Section 24.10 says the arbitrator has the authority "to award *any remedy or relief that a court of the State of Nevada could grant in conformity to applicable law except . . . punitive damages*" (emphasis added).

Section 24.10 also leaves intact each party's burden of proof by providing that "[e]ach party bears the burden of persuasion of any claim or counterclaim raised by that party." Section 24.10 does not say a word about, much less change, the general principle that a party claiming an exception has the burden of proof on that claim! Nor does Section 24.10 alter Plaintiffs' burden of proof on their "claim" that the PSA for the condominium unit they purchased is a security to under NRS 90.295.

Finally, Plaintiffs have not provided *any* legal support for their claim that "the public policy protections afforded to Plaintiffs under the securities statutes . . . would be lost as a result of the MGM arbitration provision" or that NRS 41.600 and NRS 90.660 would be impaired or disregarded by honoring the agreement to arbitrate in Section 24.10. Section 24.10 simply, and as a matter of law, is not procedurally unconscionable.

E.   **The Arbitration Clause Is Not Substantively Unconscionable**.

To find an arbitration agreement unconscionable, it must be "*unfairly*" one-sided. *Nagrampa*, 469 F.3d at 1280-81 (quoting from and citing to *Armendariz v. Found. Health Psychcare Svc., Inc.*, 24 Cal. 4th 83, 118, 6 P.3d 669, 692 (2000)). There need not be exact bilaterality — just a "*modicum* of bilaterality." *D.R. Horton*, 120 Nev. at 558, 96 P.3d at 1164 (quoting *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003)) (emphasis added).

Here, Section 24.10 contains more than a modicum of bilaterality. Plaintiffs do not dispute that: (1) *both* parties are to submit their disputes to arbitration; not just Plaintiffs. *Compare, e.g., Armendariz*, 6 P.3d at 694 (arbitration agreement only

covered *employee* claims regarding wrongful termination); and (2) the arbitration clause does not purport to bar a particular form of action, as in *Ting*, 319 F.3d at 1150 (expressly prohibiting consumers from bringing class action suits to aggregate numerous small claims).

Plaintiffs' claim of substantive unconscionability also fails because Section 24.10 *mandates* that Plaintiffs recover all their costs and fees if they prevail. *Compare, e.g., Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1177-78 (9th Cir. 2003) (arbitrator had discretion whether to award fees and costs) and *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000) (plaintiffs must show that arbitration costs are prohibitive). Contrary to their contention, Plaintiffs have no statutory right to punitive damages, *e.g., Hatrock v. Edward D. Jones & Co.*, 750 F.2d 767, 771 (9th Cir. 1984), nor have they shown that the arbitrator will deny them discovery they need.[6] The confidentiality provision permits Plaintiffs to freely share and discuss their *own* evidence, the pleadings, papers, and the award itself. *Compare, e.g., Davis*, 485 F.3d at 1079 (parties not even permitted to mention the *content* of their papers, the *existence* of a controversy, and the *fact* of an arbitration proceeding).

These facts derived from reading Section 24.10 do not render the arbitration agreement therein "unconscionable."

### 1. The Arbitration Agreement Is Not Unconscionable with Respect to Fees.

Although it is hard to unravel, Plaintiffs' arguments on the cost of arbitration appear to address: (1) the alleged "fee-shifting" provision of the arbitration clause; (2) the alleged high costs involved with arbitration; and (3) the alleged individual filing fee requirement for a "collective" or "class" litigation." Opp'n, at 22-27.

---

[6] The Plaintiffs only dealt with one Signature sales representative, but the arbitration clause allows two depositions. How does this deny them needed discovery?

      A.    *Section 24.10 Does not "Shift" Fees and Is Fair and Consistent with the Statutes that Plaintiffs claim Apply.*

Fee *splitting* provisions requiring an employee to pay not only her side of the arbitration fees, but giving arbitrators discretion "to require [the losing party] to pay. . ." have been held unconscionable. *Ingle,* 328 F.3d at 1177-78; *see also Ting,* 319 F.3d at 1151 (discussing a fee-splitting provision); *Delta Funding Corp. v. Harris,* 912 A.2d 104, 111-12 (N.J. 2006) (arbitrator had *discretion* to decide who would be responsible for payment of the "fees in connection with the arbitration). These would be good authorities if we did not have Section 24.10 of the PSA, which is *not a fee-splitting provision.* It does not leave the arbitrator discretion with respect to an award for attorneys' fees and costs: the clause says the prevailing party shall be entitled to all its costs and fees. Section 24.10 does not *shift* fees, it imposes fees — it mandates what the alleged applicable statutory provisions in NRS 90.660 and in NRS 41.600 already provide — that the prevailing party *shall* recover his or her fees. *Delta Funding* — a New Jersey state court case — does not help Plaintiffs because there the award of fees and costs was left to the arbitrator's discretion. 912 A.2d at 111-12.

      There is nothing in NRS 90.660 or NRS 41.600 that precludes defendants from bargaining, whether it be in an arbitration agreement or in any other agreement, for *their* attorneys' fees and costs if they prevail. Plaintiffs assert some unspecified contrary "policy" and "legislative intent" of these statutes but fail to substantiate this dictum. That Plaintiffs gain nothing more than what the statutes already provide is, of course, only true IF Plaintiffs state a claim under the security statutes and IF plaintiffs state a claim for fraud. **But for** Section 24.10, Plaintiffs would not have any legal basis to recover their attorneys' fees for a breach of contract claim, which is the crux of this lawsuit that should be arbitrated.

> B. *Plaintiffs Have Not Met Their Burden of Proof on the Alleged Excessiveness of the Arbitration Fees.*

Although high arbitration costs can preclude a litigant from effectively vindicating his statutory rights, *D.R. Horton*, 120 Nev. at 558, 96 P.3d at 1165, Plaintiffs have the burden to demonstrate beyond mere speculation that the expense of arbitration would *in fact* be prohibitive. *See Green Tree Fin. Corp.*, 531 U.S. at 90-91. This means that Plaintiffs must submit specific evidence with respect to the costs they will incur and their ability to pay. *E.g., Baugher v. Dekko Heating Techs.*, 202 F. Supp. 2d 847, 851 (N.D. Ind. 2002). "Surprise and shock" at alleged (but unspecified) high arbitration costs are not proof. *See id.; cf., e.g.,* Sussex Decl. ("I am also surprised and shocked by the high cost of arbitration fees I will have to pay just to have my case adjudicated").

Here, "Plaintiffs, purchasers of luxury condominium units ranging in price from [$400,000 to $900,000] have failed to demonstrate that the costs of arbitration are so prohibitive [*to them*] as to render the . . . arbitration clause unenforceable. *Contawe v. Crescent Heights of Am., Inc.*, 2005 WL 1400383, *3 (E.D. Pa. 2005). Plaintiffs' unsupported argument that the high arbitration fees are "simply an affordable cost of doing business for Defendants and a legal risk of anyone unlawfully issuing securities" is legally irrelevant. *Randolph*, 531 U.S. at 90-91.

Plaintiffs cannot plead around the contract to avoid arbitration fees, as they appear to have done. Opp'n, at 16 n. 17. *All* claims relating to the PSA are subject to arbitration. *See* PSA, Section 24.10. Any inconsistencies between Sections 39 and 24.10 of the PSA are for the arbitrator to consider, as a contract interpretation question.

> C. *Section 24.10 Does Not Unfairly Prohibit "Collective Litigation."*

Plaintiffs imply that the arbitrator will deny them depositions (in excess of two) for which they show "substantial need" and, on the basis of that presumption, conclude that the arbitration provision is unenforceable. This is an exercise in question-begging. Similarly, Plaintiffs claim they are required to pay the same filing fee if they

submit to arbitration alone or as a group or as a proposed class, but they offer no support for this claim. Opp'n, at 24. Besides, they have it backwards: *court* proceedings are "prolonged and complex," not arbitration.

        2.       *Nevada Law Does Not Prohibit a Waiver of Punitive Damages.*

"[P]unitive damages are not awarded as a matter of right to an injured litigant . . . ." *Siggelkow v. Phoenix Ins. Co.*, 109 Nev. 42, 44-45, 846 P.2d 303, 304-05 (1993). Neither NRS Chapter 90, the Securities Exchange Act of 1934, or the Securities Act of 1933, under which Plaintiffs claim, provide for an award of punitive damages. *Hatrock*, 750 F.2d at 771. Nor would Plaintiffs be entitled, as a matter of right, to punitive damages under NRS 42.005 or NRS 41.600 in the event they were to prove their common-law fraud claims. Moreover, punitive damages are not awarded on claims arising out of contract. NRS § 42.005; *Clark v. Lubritz*, 113 Nev. 1089, 1096-97, 944 P.2d 861, 865-66 (1997).

*Siggelkow* does not hold, much less *hint*, that "it is unconscionable to require waiver of the opportunity to seek punitive damages." Opp'n, at 21. *Siggelkow* did not involve an arbitration clause or a waiver. *Siggelkow* merely held that an innocent injured party cannot seek punitive damages from his own insurer, because this would shift responsibility for punitive damages from the "deserving tortfeasors to undeserving insured owners of vehicles in the form of higher insurance premiums." *Siggelkow*, 109 Nev. at 45, 846 P.2d at 305. Nothing prevents parties from agreeing to exclude punitive damages that are *not* imposed by statute. Compare, e.g., *Ingle*, 328 F.3d at 1178-79 (restricting punitive damages permitted by civil rights statutes); *Armendariz*, 99 Cal. Rptr. at 759-60, 6 P.3d at 682-83 (restricting punitive damages permitted by FEHA).

3. *Confidentiality Is Limited to the Proceedings and Evidence Produced by the Opposing Party.*

Confidentiality provisions in an arbitration agreement are not *per se* unconscionable. *Davis*, 485 F.3d at 1078. "The concern is . . . with the scope of the language of the [clause]." *Id.* at 1079 (internal citation omitted). Unlike in *Davis*, where the confidentiality clause precluded the parties from mentioning the *content* of the papers, pleadings, order and awards, the *existence* of a controversy, and the *fact* of an arbitration proceeding, *Id.* at 1078, Section 24.10 only makes the actual "*proceedings*" confidential and only precludes the parties from disclosing "the *evidence produced by the other party* in the proceedings. . . ." Section 24.10. This provision says nothing about confidentiality of pleadings, motions, or awards, nor does it prevent Plaintiffs from sharing their *own* evidence with others.[7]

Plaintiffs' reliance on consumer case *Ting v. AT&T* is thus misplaced because the arbitration clause in *Ting* not only imposed broad confidentiality, 319 F.3d at 1151, it also expressly foreclosed a telephone customer with a $7.00 claim from joining a $7.00 class action, *id.*, at 1150, thereby *effectively* precluding prospective plaintiffs from organizing and sharing their evidence. *Id.*, at 1152. Here, by contrast, Plaintiffs have created a website to share information with each other and the world. Section 24.10 is not a "gag" order.

4. **Discovery Restrictions Have no Unfair Effect.**

Limitations on discovery serve one of the main purposes of arbitration — to avoid the unnecessary expense and delay of litigation in which parties discover each other endlessly. *Burch*, 118 Nev. at 442, 49 P.3d at 650. An important counterpoint to

---

[7] It appears that one purpose, if not the primary purpose, of these proceedings is to afford Plaintiffs an opportunity to publicize their claims, both to facilitate the solicitation of additional Plaintiffs and to bring pressure to bear upon the Defendants to settle before the merits are reached. *See, e.g.*, the Plaintiffs' website, www.signaturecondohotellitigation.com.

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

reduced discovery in arbitration is relaxation of the rules of evidence. *Gilmer*, 500 U.S. at 31.

Section 24.10 does not put any limits on written discovery. It gives each party "the right to take the deposition of two (2) individuals and any expert witness retained by the other party . . ." The parties may obtain an order for additional discovery "upon a showing of substantial need." *Id*. Plaintiffs' reliance on cases in which clauses limiting depositions were invalidated is misplaced. First, from Plaintiffs' declarations and their overblown complaint, it appears that they know who their sales representatives were who made the alleged misrepresentations, on which this lawsuit is based. That person's deposition could be taken, leaving one more deposition as a matter of right. Second, Plaintiffs' assumption that the arbitrator will deny them additional depositions even upon a showing of substantial need, as pointed out earlier, begs the question: Does Section 24.10 deny them discovery? No. Have they shown a need for more than two depositions and been denied leave to take them? No.

The Plaintiffs have neither demonstrated a need for more than one deposition or the unavailability of adequate discovery under Section 24.10.

F.   **NRS 90.840 Permits Arbitration of Securities Claims.**

Plaintiffs' alternative argument that NRS 90.840 prohibits arbitration of their securities claims "as a matter of law" is *wrong* "as a matter of law." The statute says:

> 1. *No person subject to this chapter who makes . . . a contract in violation of this chapter . . . may obtain relief on the contract.*
>
> 2. A ***provision in a contract*** entered into or effective in this State, binding a person acquiring a security *to **waive compliance*** with this chapter . . . ***is nonenforceable***.
>
> 3. ***A provision in a contract containing an agreement to arbitrate*** or a provision for choice of law in a contract between persons all of whom are engaged in the securities business *is **not a provision waiving compliance with this chapter and is enforceable in accordance with its terms.***

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

NRS 90.840 (emphasis added).

There is no need for a Latin proverb to distort the plain meaning of the statute: NRS 90.840(2) declares that a contract provision waiving compliance with chapter 90 is unenforceable; NRS 90.840(3) says an arbitration agreement "is *not* a provision waiving compliance with" chapter 90. This reading of NRS 90.840(3) was expressly recognized and adopted in *Shearson/Am. Express, Inc.*, in which the United States Supreme Court considered Section 14 of the Securities Act of 1933. 490 U.S. at 481-82. Section 14, like NRS 90.840(2), invalidates any "condition, stipulation, or provision . . . to waive compliance with any provision" of the Act. 15 U.S.C.A. § 77n. Because an agreement to arbitrate does not "undermine any of the *substantive rights afforded* . . . under the Securities Act [of 1933]," it is *not* an agreement waiving compliance with the Securities Act. *Shearson/Am. Express, Inc*, 490 U.S. at 482. NRS 90.840(3) mirrors this holding precisely, stating "A provision in a contract containing an agreement to arbitrate . . . is not a provision waiving compliance with this chapter . . ."

Even assuming for a moment NRS 90.840 prohibits arbitration of claims or conditions the validity of arbitration agreements on the requirement that "all parties are in the securities business," as Plaintiffs suggest, "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions. *Casarotto*, 517 U.S. at 687; *accord*, *Preston v. Ferrer*, 128 S. Ct. 978, 983 (2008) (it is now "well established" that the FAA displaces conflicting state law). In *Casarotto* — a case cited by *Plaintiffs* — a Montana statute "directly conflict[ed] with § 2 of the FAA because [it] condition[ed] the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally." *Casarotto*, 517 U.S. at 687. The same principle would apply here: the requirement that all parties be in the securities business is "not applicable to contracts generally." *Id*. The FAA would preempt the statute if it meant what Plaintiffs say it means. *Id.*; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272 (1995)).

MORRIS PICKERING
& PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

## III.  CONCLUSION

For all the reasons stated above, the Court should compel the *Sussex* Plaintiffs to arbitration and stay these judicial proceedings.

MORRIS PICKERING & PETERSON

By:_____
Steve Morris, No. 1543
Akke Levin, No. 9102
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101

Janice Michaels, No. 6060
Wood, Smith, Henning & Berman LLP
7670 West lake Mead Blvd., Suite 250
Las Vegas, Nevada 89128-6652

Attorneys for Defendants
Turnberry/MGM Grand Towers, LLC,
MGM Grand, Inc., Turnberry/Harmon
Ave., LLC., and Turnberry Associates

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS PICKERING & PETERSON, and that the following documents were served via electronic service:

**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

TO:

Robert B. Gerard
Ricardo R. Ehmann
Gerard & Associates
2840 So, Jones Blvd. - Bldg. D, Suite 4
Las Vegas, Nevada 89146

Norman Blumenthal
Blumenthal & Nordrehaug
2255 Calle Clara
La Jolla, California 92037

Robert Fellmeth
University of San Diego Law School
5998 Alcala Park
San Diego, California 92110

Attorneys for Plaintiff

Attorneys for Plaintiff

I further certify that I am familiar with the firm's practice of collection and processing documents for mailing; that in accordance therewith, I caused the above-named document to be deposited with the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first class postage prepaid, on the date and to the addressee(s) shown below:

N/A

Dated this 14th day of August, 2008.

BY: /s/ Nickerson

MORRIS PICKERING & PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422