1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                         **DISTRICT OF NEVADA**
6

7   MARY ANN SUSSEX, et al.,                )
                                             )
8                           Plaintiffs,      )      Case No. 2:08-cv-00773-RLH-PAL
                                             )
9   vs.                                      )      **MEMORANDUM OF DECISION**
                                             )
10  TURNBERRY/MGM GRAND TOWERS, LLC,         )      (Motion to Compel - Dkt. #17)
    et al.,                                  )      (Motion to Continue - Dkt. #21)
11                                           )      (Motion to Strike - Dkt. #38)
                                             )
12                          Defendants.      )
    _____)
13

14          The Court conducted a hearing on August 26, 2008 on Defendants Turnberry/MGM Grand

15  Towers, LLC's, Turnberry/Harmon Ave., LLC's, and Turnberry Associates' (collectively, the

16  "Defendants") Motion to Compel Arbitration (Dkt. # 17), and Plaintiffs' Motion to Continue Hearing

17  on Defendants' Motion to Compel Arbitration and Allow Limited Discovery (Dkt. #21).  After the

18  hearing, the parties filed supplemental papers through December 5, 2008.  On March 31, 2009, the

19  court entered an Order (Dkt. #43) which denied defendants' Motion to Compel (Dkt. #17), denied

20  plaintiffs' Motion to Continue (Dkt. #21), and granted plaintiffs' Motion to Strike (Dkt. #38).  This

21  Memorandum of Decision explains the reasons for the order granting and denying these motions.

22                               **BACKGROUND**

23  **I.     PLAINTIFFS' MOTION TO STRIKE (DKT. #38)**

24          The court took the matter under submission after oral argument.  Thereafter, defendants filed

25  supplemental papers to which plaintiffs felt compelled to respond, and defendants felt compelled to

26  reply.  Plaintiffs correctly point out that the plethora of supplemental papers filed in this case after the

27  hearing are not authorized by the Federal Rules of Civil Procedure or Local Rules of Practice.  Advising

28  the court of new legal authority after the moving and responsive papers have been filed is authorized by

the Federal Rules of Civil Procedure and Local Rules of Practice and may be appropriate.  Filing

supplemental papers which reiterate arguments, advance additional arguments, or cite authority that

could have been cited in the original moving and responsive papers is not.  These additional filings

unreasonably burdened opposing counsel and the court and unnecessarily multiplied these proceedings.

The Plaintiff's Motion to Strike (Dkt. #38) is, therefore, granted.

## II.   DEFENDANTS' MOTION TO COMPEL ARBITRATION (DKT. #17)

The parties' disputes arise out of plaintiffs' purchase of luxury condominiums pursuant to

various Condominium Unit Purchase Sale Agreements (collectively, the "PSAs") for a project known

as the Signature at MGM Grand ("Signature"), which was developed and sold by defendant

Turnberry/MGM Grand Towers, LLC ("Turnberry").  Each PSA for the sale of a unit in the Signature

project contains identical terms and conditions.  See Motion Dkt. # 17, Duff Declaration, Exhibit "A" at

¶ 2.  However, some buyers, including plaintiff Mary Ann Sussex, negotiated amendments to their PSA.

See Riordan Declaration, Exhibit "B" at ¶ 3.  The PSAs contain an arbitration provision which requires

the parties to submit "any dispute relating to the [PSA], including, but not limited to, any dispute

related to the . . . enforceability of the [PSA] to arbitration.  See Exhibit C at ¶ 24.10.

### Procedural History

#### A.   The KJH Complaint

Plaintiffs' first amended complaint in this case is the second of three actions filed by the same

plaintiffs' attorneys.  On August 27, 2007, forty-six plaintiffs filed a complaint in the Eighth Judicial

District Court of the State of Nevada, captioned KJH & RDA Investor Group, LLC, et al. vs.

Turnberry/MGM Grand Towers, LLC, et al., Case No. A547024 ("KJH Complaint").  The KJH

complaint alleged that these plaintiffs were fraudulently induced into purchasing air rights to

condominium hotel units at the Signature at the MGM Grand.  Plaintiffs asserted claims for:

(1) unlawful sale of unregistered securities in violation of N.R.S. 90.460; (2) unlawful sale of

unregistered securities by means of a scheme to defraud in violation of N.R.S. 90.570; (3) fraudulent

misrepresentation; (4) negligent misrepresentation (fraud in the inducement); and (5) fraudulent

concealment.  Turnberry filed a motion to compel arbitration of the KJH plaintiffs' claims, and on

December 20, 2007, a state court judge granted the motion and compelled the parties to arbitrate their

disputes arising out of the purchase agreements.  The KJH plaintiffs filed a writ of mandamus with the Nevada Supreme Court to challenge the state court's order compelling arbitration.  Their petition for a writ of mandamus was pending before the Nevada Supreme Court at the time of oral arguments on these motions and has not yet been decided.

**B.      This Removed Action**

On February 22, 2008, plaintiffs' counsel filed a second action in the Eighth Judicial District Court of the State of Nevada, Sussex, et al. vs Turnberry/MGM Grand Towers, et al., Case No. A557730.  A first amended complaint was filed April 15, 2008, substituting Roe Corporations with named defendants, and on May 7, 2008, the plaintiffs filed a first amended class action complaint seeking to bring this action on behalf of themselves and hundreds of other similarly situated persons throughout the United States.  The defendants removed this action to this court June 13, 2008.  See Notice of Removal (Dkt. #1).  Plaintiffs filed an Amended Federal Class Action Complaint (Dkt. #14) July 2, 2008, which added a claim under the Securities Act of 1933 and another claim under the Securities Exchange Act of 1934 to the previously asserted seven state law claims. The Amended Federal Class Action Complaint (Dkt. #14) asserts claims for: (1) violation of the Securities Act of 1933; (2) violation of the Securities Exchange Act of 1934; (3) violation of N.R.S. 90.460; (4) violation of N.R.S. 90.570; (5) violation of N.R.S. 598, et seq.; (6) fraudulent misrepresentation; (7) negligent misrepresentation; (8) fraud in the inducement; and (9) fraudulent concealment.  The Amended Class Action Complaint seeks monetary damages, rescission of the PSAs, and restitution.  The Notice of Removal (Dkt. #1) asserts that the court has original jurisdiction over this class action under 28 U.S.C. §1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because plaintiffs claim there are more than one hundred putative class members; the matter in controversy exceeds $5,000,000; there is minimal diversity between plaintiffs and defendants; and none of the defendants are states, state officials, or government entities.

**C.      The Berkley Complaint**

After this case was removed, plaintiffs' counsel filed a third lawsuit on behalf of fifty-four plaintiffs in the Eighth Judicial District Court for the State of Nevada captioned Berkley, et al. v. Turnberry/MGM Grand Towers, LLC, et al., Case No. 8565873 ("Berkley complaint").  This third

1  complaint closely mirrors the KJH complaint, pleads nearly identical factual allegations, and raises the

2  same legal claims.

3  **DISCUSSION**

4  **I.     The Parties' Positions.**

5       **A.     Defendants' Motion to Compel.**

6       Defendants' Motion to Compel (Dkt. #17) asks the court to compel arbitration of all of the

7  parties' disputes, asserting the court has jurisdiction under both Nevada's Uniform Arbitration Act

8  ("UAA") and the Federal Arbitration Act ("FAA").  Defendants filed this motion pursuant to N.R.S.

9  38.216(1) which permits a party to file a motion to compel in the court where the "proceeding involving

10  a claim referable to arbitration under an alleged agreement to arbitrate is pending" or "in any court as

11  provided in N.R.S. 38.246."  See N.R.S. 38.221(5).

12       Defendants also contend that pursuant to 9 U.S.C. § 2, the FAA applies to arbitration clauses

13  that are part of a written contract "evidencing a transaction involving commerce."  The Supreme Court

14  has held that the words "involving commerce" should be broadly construed to cover all transactions that

15  in fact affect interstate commerce "even if the parties did not contemplate an interstate commerce

16  connection."  Allied-Bruce Terminix Company, Inc. v. Dobson, 513 U.S. 265, 282 (1995).  Because the

17  plaintiffs seek to recover on behalf of a large number of purchasers of condominium units throughout

18  the United States, the defendants assert the court has jurisdiction under the FAA to compel the parties

19  to arbitrate their disputes which arise out of a written contract "involving commerce."  Additionally,

20  defendants note that ¶ 43 of the Plaintiffs' Amended Federal Class Action Complaint (Dkt. #14) alleges

21  defendants made use of the means or instruments of interstate commerce in selling the condominium

22  units involved in the parties' disputes.

23        Although the defendants acknowledge that the FAA does not create any independent federal

24  question jurisdiction, defendants also assert the court has subject matter jurisdiction over the putative

25  class action pursuant to CAFA.  Additionally, there is minimal diversity because plaintiffs Nickol and

26  Scalise are citizens of California, and defendant Turnberry/MGM is a Nevada Limited Liability

27  Company.   Defendants argue that under the FAA, the court's role in deciding the motion to compel is

28  limited to determining whether: the parties have an agreement to arbitrate; the claims fall within the

4

1  scope of the arbitration clause of the PSAs; and the arbitration clause is valid.  If so, controlling federal

2  authority requires the court to enforce the parties' arbitration agreement.  Defendants also argue that

3  under both state and federal law, any question concerning the enforceability of the contract in which the

4  arbitration clause appears is a question for the arbitrator, rather than the court, to decide.

5       Defendants also assert that plaintiffs' state securities claims are arbitrable because the FAA

6  preempts any state statute purporting to invalidate arbitration clauses.  Defendants cite Rodriguez de

7  Quihas v. Shearson/American Express, Inc., 490 U.S. 477, 486 (1989), for the proposition that

8  agreements to arbitrate claims involving violations of the Securities Exchange Act of 1934 are

9  enforceable under the FAA.  Defendants argue the court should compel arbitration because: plaintiffs

10  do not dispute that ¶ 24.10 of the parties' contract requires disputes arising out of the purchase and sale

11  of condominium units to be arbitrated; all of the plaintiffs' claims are directly related to the PSAs the

12  parties signed; the arbitration clause itself is valid; and all of plaintiffs' claims are subject to arbitration.

13  Defendants contend that nothing in either the FAA or UAA prohibits arbitration of class action claims

14  and that the question of whether an arbitration provision permits class arbitration is a matter for the

15  arbitrator, rather than the court, to decide.  Defendants also argue that under both the FAA and UAA,

16  there is a presumption that an arbitration clause is valid.  Finally, defendants argue that § 24.10 of the

17  PSA is neither substantively nor procedurally unconscionable and that under Nevada law, the court

18  should compel arbitration unless the parties' arbitration agreement is both procedurally and

19  substantively unconscionable.

20       **B.    Plaintiffs' Opposition**

21       Plaintiffs' Opposition to the motion to compel (Dkt. #22) is supported by multiple declarations

22  of counsel and the declarations of a number of the plaintiff purchasers.  Plaintiffs' opposition initially

23  points out that the Nevada Supreme Court directed defendants to respond to the petition for writ of

24  mandamus in the related KJA action, challenging the state district judge's order compelling arbitration

25  of the parties' disputes arising out of the PSAs.  Thus, the plaintiffs ask the court to take judicial notice

26  that the propriety of the order compelling arbitration in the KJA action now pending before the Nevada

27  Supreme Court.

28  / / /

Plaintiffs also filed a Motion to Continue the Hearing on the Motion to Compel Arbitration and Allow Limited Discovery (Dkt. #21).  This motion requests that the court allow the plaintiffs to conduct limited discovery to determine whether the arbitration clause is unconscionable and, therefore, unenforceable.  Plaintiffs argue that the court must decide whether the arbitration clause is unconscionable before deciding the motion to compel arbitration and that unconscionability is a fact-bound issue which requires some discovery.

In opposing the motion to compel arbitration, plaintiffs assert that this case involves a scheme by the defendants to illegally sell 1,500 investment securities to the public in 2006 and 2007 and that the amended class action complaint does not assert any claim based on the PSAs or seek to enforce the PSAs.  Plaintiffs also contend that the court must apply Nevada law to determine whether the arbitration clause in the PSAs is unconscionable, applying ordinary state-law principles that govern the formation of contracts.  Under Nevada law, the party seeking to enforce an arbitration clause bears the burden of establishing the clause is valid.  The Nevada Supreme Court relies on California case law in determining whether an arbitration provision is valid and enforceable.  Plaintiffs assert that the court, not the arbitrator, must first determine whether the defendants have met their burden of showing an enforceable agreement to arbitrate, which includes an analysis of whether the arbitration clause is unconscionable.  Plaintiffs also contend that the United States Supreme Court and the Ninth Circuit have consistently held that unconscionability is an evidentiary issue and that the FAA does not prevent federal courts from denying enforcement of unconscionable arbitration provisions.

Plaintiffs assert that the arbitration clause in the PSAs is procedurally and substantively unconscionable and, therefore, unenforceable on several grounds.  First, it fails to disclose that plaintiffs would incur excessive arbitration fees and that they were waiving important legal rights.  Second, the arbitration clause is procedurally unconscionable because it was presented to each plaintiff on a take it or leave it basis.  Third, the clause was inconspicuously buried on page nine of a twelve page contract under a subsection labeled "Miscellaneous."  The text of the arbitration provision is in the same ten-point font size as the rest of the contract and was not emphasized in any manner to call attention to the provision.  Thus, it is unlikely that the plaintiffs read the clause, and the defendants' failure to highlight the arbitration provision while placing it in a paragraph labeled "Miscellaneous"

makes it procedurally unconscionable.  Fourth, the arbitration provision is substantively unconscionable as applied to the plaintiffs's claims and this lawsuit because it contains fee shifting provisions which benefit only the defendants.  Specifically, the arbitration clause requires the plaintiffs to pay arbitration fees and contains a provision entitling the prevailing party to be reimbursed for the expenses of arbitration, including costs and attorneys fees.  The prevailing attorneys fees and costs provision is contrary to Nevada law which permits plaintiffs to recover their attorneys fees on state securities law claims but does not permit a prevailing defendant to recover attorneys fees and costs incurred in defending these claims.  The prevailing party attorneys fees and costs provision, therefore, is contrary to Nevada public policy because it would have the effect of chilling plaintiffs from bringing statutory securities claims and only benefits the defendants.

Fifth, the arbitration clause is substantively unconscionable because it prohibits recovery of punitive damages.  Sixth, the arbitration provision is substantively unconscionable because the confidentiality provision prohibits disclosure of any information about arbitration proceedings or evidence and, therefore, benefits only the defendants.  Seventh, the arbitration provision is substantively unconscionable because it unfairly limits discovery to two individual depositions and any expert witness retained by the other party unless the party seeking discovery establishes a substantial need for further discovery.  Because this is a complicated securities fraud scheme, numerous depositions will be needed, and the discovery restriction only benefits the defendants.  This is especially true where, as here, the defendants are in possession of the vast majority of the evidence.

Eighth, the arbitration provision is substantively unconscionable because it shifts the burden of proof under Nevada securities laws.  For example, under Nevada's Uniform Securities Act, the defendants have the burden of showing that investment securities are exempted from the Uniform Securities Act or subject to an applicable exemption.  However, the arbitration clause in the PSAs would shift the burden to plaintiffs to show that investments in this case are securities which are not exempt nor exempted from registration.  Plaintiffs assert that the harsh, one-sided terms of the arbitration clause will likely cause them to abandon their state securities claims and that the arbitration provision is unenforceable as a matter of law pursuant to N.R.S. 90.840.  Finally, the plaintiffs argue

/ / /

1   they are entitled to an evidentiary hearing after an opportunity to conduct limited discovery for the court

2   to examine whether the arbitration provisions of the parties' PSAs are unconscionable.

3   **C.   Defendants' Reply**

4       Defendants dispute plaintiffs' contention that the PSAs are "illegal" because they are

5   "unregistered investment securities" and argue that this is a legal conclusion and a matter for the

6   arbitrator to decide.  Defendants also assert that if the crux of the plaintiffs' complaint in this action is a

7   challenge to the validity of the PSAs, rather than the arbitration clause of the PSAs, controlling case law

8   holds that this is an issue for the arbitrator to decide.  Defendants also dispute plaintiffs' assertion that

9   the amended complaint does not assert any claim based on the PSAs or seek to enforce the PSAs.

10  Defendants point out that plaintiffs' amended complaint seeks rescission of the PSAs based on

11  plaintiffs' claim that they would not have purchased the condominium units but for defendants'

12  material omissions and false statements.  All of the claims for relief seek to rescind or avoid the

13  contract as a whole rather than to invalidate only the arbitration clause.  The plaintiffs' claim that they

14  were fraudulently induced to enter into the purchase and sale agreements, and no plaintiff claims he or

15  she was fraudulently induced to enter into the arbitration clause of the PSAs.  Because this is an attack

16  on the entire contract, not the arbitration clause, plaintiffs' claims must be arbitrated.

17      Relying on Lifescan, Inc. v. Premier Diabetic Services, Inc., 363 Fed. 3d. 1010, 1012 (9th Cir.

18  2004), defendants also argue that where, as here, plaintiffs do not dispute that the arbitration agreement

19  exists or that their claims fall within it, this court's review is limited to determining whether the clause

20  is valid on its face.  Defendants dispute that a determination of the validity of the arbitration agreement

21  is a fact-bound evidentiary issue that requires discovery or an evidentiary hearing.  Defendants also

22  dispute that the arbitration clause is procedurally or substantively unconscionable.  Specifically,

23  defendants assert that plaintiffs' adhesion arguments fail because none of the plaintiffs claim they were

24  advised of or became aware of the existence of the arbitration provision.  Defendants reason that a

25  plaintiff who did not read a clause cannot be oppressed by it or claim a lack of bargaining power.

26  Second, none of the plaintiffs argue that the arbitration clause itself, as opposed to the PSA, was

27  presented on a take it or leave it basis.  Third, assuming without conceding that the arbitration clause

28  was offered on a take-it-or-leave-it basis, inequality of bargaining power is not sufficient in itself to

1   render the agreement unenforceable.  Fourth, defendants characterize plaintiffs as "sophisticated
2   investors" or "speculators" who were purchasing condominium units priced between $400,000 and
3   $900,000 in a project that was one of many condominium projects available in Las Vegas.  Under these
4   circumstances, the plaintiffs cannot be said to have been coerced or defrauded into agreeing to the
5   arbitration clause.

6        Defendants also dispute that the arbitration clause of the PSA was "buried to the fullest extent
7   possible" as plaintiffs assert.  Defendants note that each plaintiff initialed each page of the contract and
8   that the arbitration clause is in the same size print as all other clauses in the body of the contract and is
9   labeled and underlined in a section captioned "Arbitration."  Defendants claim that the arbitration
10  clause is clear and puts each purchaser on notice that he or she is waiving important rights under
11  Nevada law by telling them that arbitration is the exclusive means of resolving any disputes related to
12  the PSA.  Defendants argue that before an arbitration clause can be determined unconscionable, the
13  court must find it is unfairly one-sided and that only a "modicum of bilaterality" is needed under
14  Nevada and Ninth Circuit authority.  The arbitration clause at issue requires both parties to submit their
15  disputes to arbitration and does not bar the plaintiffs from pursuing any claim, including a class action
16  claim.

17       Additionally, the plaintiffs have not shown that the arbitration agreement is unconscionable with
18  respect to costs and fees.  Specifically, defendants dispute that the arbitration clause contains any fee
19  shifting provisions that are inconsistent with Nevada law.  Defendants contend that parties may
20  contractually agree to restrict recovery for punitive damages which are not awarded as a matter of right.
21  With respect to the confidentiality provision of the arbitration clause, defendants argue the provision
22  only precludes parties from disclosing evidence produced by another party in the arbitration
23  proceedings but does not prevent the plaintiffs from sharing their own evidence with others.  The
24  defendants dispute that the discovery restrictions are unfair to the plaintiffs and contend that they only
25  serve to avoid unnecessary costs and expense.  Finally, defendants assert that N.R.S. 90.840 permits
26  arbitration of plaintiffs' state securities claims.  Assuming *arguendo* N.R.S. 90.840 prohibits arbitration
27  of plaintiffs' Nevada securities claims, the defendants contend the FAA preempts the statute if it means
28  what plaintiffs say it means.

**II.    Jurisdiction.**

    **A.    Federal Arbitration Act**

       Congress enacted the FAA, 9 U.S.C. §§ 1-16, to overcome judicial resistance to arbitration. Buckeye Check Cashing, Inc. v. Cardegna, 526 U.S. 440, 441 (2006).  In general, arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation.  See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003).  The FAA, which governs agreements to arbitrate in contracts involving commerce, was intended by Congress to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate . . . and place such agreements on the same footing as other contracts."  Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Standord Jr. Univ., 489 U.S. 468, 474 (1989)) (internal citation and punctuation omitted).  Under the FAA,

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Id. at § 3.  In enacting this section, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration."  Southland Corp. v. Keating, 466 U.S. 1, 10 (1984).

       The Supreme Court has recognized only two limitations on the enforceability of arbitration provisions governed by the FAA.  First, they must be part of a written maritime contract or contract "evidencing a transaction involving commerce."  Second, arbitration clauses may be revoked only upon "grounds as exist at law or inequity for the revocation of any contract."  Id. at 11.  The FAA is based on Congress' authority to enact substantive rules under the commerce clause.  Id.  The FAA is a substantive rule applicable in state and federal courts.  Id. at 16.  In enacting the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." Id.  Moreover, while the FAA creates federal substantive law requiring parties to honor arbitration agreements, it does not confer federal subject matter jurisdiction.  Rather, there must be some

10

1   independent basis for federal jurisdiction enunciated in the complaint in order to confer jurisdiction on

2   a federal court. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 (1983)

3   (stating "Section 4 [of the FAA] provides for an order compelling arbitration only when the federal

4   district court would have jurisdiction over a suit on the underlying dispute;" hence, there must be

5   diversity of citizenship or some other independent basis for federal jurisdiction before the order can

6   issue").

7           Because the FAA creates a strong presumption in favor of enforcing arbitration agreements, the

8   Supreme Court has stated that "any doubts concerning the scope of arbitrable issues should be resolved

9   in favor of arbitration." Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226-27 (1987) (stating

10  that arbitration agreements should be rigorously enforced); Moses H. Cone Mem'l Hosp., 460 U.S. at

11  24-25 (noting that federal policy favors arbitration). Despite this federal policy in favor of arbitration,

12  parties cannot be forced into arbitration unless they have agreed to do so. See, e.g., AT&T Techs., Inc.

13  v. Comm'ns Workers, 475 U.S. 643, 648-49. Furthermore, the authority of arbitrators to decide a

14  dispute is derived exclusively from the agreement of the parties to arbitrate. See EEOC v. Waffle

15  House, Inc., 534 U.S. 279, 294 (2002). Essentially, arbitration provisions are a matter of contract

16  between parties, and it is, therefore, for the court to decide whether the parties are bound by a specific

17  arbitration provision. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (stating "a gateway

18  dispute about whether the parties are bound by a given arbitration clause raises a question of

19  arbitrability for the court to decide") (internal citation omitted). The arbitrability of a particular dispute

20  is a threshold issue to be determined by the court. Id. at 83 (stating "the question of whether the parties

21  have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for

22  judicial determination unless the parties clearly and unmistakably provide otherwise") (internal citation

23  omitted); AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

24          In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006), the Supreme Court found

25  that challenges to arbitration agreements fall within one of two categories – first, those challenging the

26  validity of the arbitration agreement itself; and second, those challenging the validity of the contract as

27  a whole (e.g., claiming that the contract was fraudulently induced). Id. at 444. The court held that

28  "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered

11

1    by the arbitrator in the first instance." Id.  In determining the type of challenge at issue in a given case,

2    the court is required to look at the allegations made in the plaintiff's complaint – that is, the court must

3    examine the "crux of the complaint" and determine whether the challenge is to the arbitration provision

4    specifically or the contract in general.  See Buckeye, 546 U.S. at 444.  So, for example, in Prima Paint

5    Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), where the plaintiff failed to include a claim

6    challenging the validity of the arbitration provision in the complaint and instead alleged the contract as

7    a whole was fraudulently induced, the court found that the dispute was properly before the arbitrator

8    and not the court.  Id. at 404.  On the other hand, in Southland Corp. v. Keating, 465 U.S. 1 (1984), the

9    plaintiff's complaint specifically challenged the validity of the agreement to arbitrate and, therefore, the

10   dispute was properly before the court rather than the arbitrator.  Id. at 4.

11        Although the Supreme Court requires an examination of the gravamen of the complaint to

12   determine the type of challenge at issue, the court does not require that the claims in the complaint

13   address the arbitration agreement alone.  See Nagrampa, 469 F.3d at 1275 (citing Buckeye, 546 U.S. at

14   444).  In fact, the Ninth Circuit stated that "it would be absurd to require that the complaint allege only

15   claims attacking the arbitration agreement and not also include any other claims related to the contract."

16   Id.; c.f. Jenkins v. First America Cash Advance of Georgia, LLC, 400 F.3d 868 (11th Cir. 2005) (court

17   found that where claims asserted that the agreement in general – including the arbitration provision – as

18   a contract of adhesion, court was not permitted to determine dispute because claims did not pertain

19   specifically and exclusively to the arbitration provision).  The Ninth Circuit has rejected the Eleventh

20   Circuit's approach in Jenkins and found that the Eleventh Circuit applied Prima Paint too broadly,

21   stating, "[w]e do not construe either Buckeye or Prima Paint to stand for the principle that if plaintiffs

22   challenge an arbitration provision as unenforceable due to unconscionability, they may not include

23   additional contractual or statutory claims in their complaint."  Nagrampa v. MailCoups, Inc., 469 F.3d

24   1257, 1276 (9th Cir. 2006) (en banc).

25        The plaintiffs do not dispute that this court has subject matter jurisdiction under the FAA.

26   Rather, the plaintiffs argue the arbitration provision is unconscionable and, therefore, unenforceable.

27   The defendants removed this case to federal court, invoking the court's original jurisdiction under

28   CAFA.  Additionally, the defendants invoke the court's jurisdiction under 28 U.S.C. §§ 1453(b),

1441(a), and 1446.  The parties filed a Joint Status Report (Dkt. #16) required by the Court's Minute

Order (Dkt. #9) noting, *inter alia*, that plaintiffs filed an Amended Federal Class Action Complaint

(Dkt. #14) alleging new causes of action under the Securities Act of 1933 and Securities Exchange Act

of 1934.  The Amended Federal Class Action Complaint (Dkt. #14) affirmatively invokes the court's

jurisdiction under § 10(b) of the Securities Exchange Act of 1934 and § 12 of the Securities Act of

1933.  Amended Federal Class Action Complaint at ¶ 24.  Plaintiffs are pursuing this as a class action

pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Id. at ¶ 37.  Additionally, plaintiffs

affirmatively allege that the sales of units in the project, which Plaintiffs characterize as a sale of

securities, (a) made use of the means or instruments of transportation or communications or of the mails

in interstate commerce, Id. at ¶ 43; (b) were carried out through the mails or in interstate commerce, Id.;

and/or (c) made use of the means or instruments of transportation or communication in interstate

commerce or of the mails to offer to sell the securities.  Id.  In short, both sides acknowledge that the

court has subject matter jurisdiction to adjudicate their disputes, and the court concludes it has

jurisdiction to decide whether to compel arbitration under the FAA.

### B.    Nevada's Uniform Arbitration Act

The defendants also assert the court has jurisdiction under Nevada's UAA.  See

generally N.R.S. 38.221.  The UAA provides that "[o]n motion of a person showing an agreement to

arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement: . . . (b) If the

refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the

parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate."  N.R.S.

38.221(1)(b).  Plaintiffs do not appear to challenge jurisdiction under the UAA.  Nevada law also

recognizes that "strong public policy favors arbitration because arbitration generally avoids the higher

costs and longer time periods associated with traditional litigation."  D.R. Horton v. Green, 120 Nev.

549, 553 (2004).

### III.    Analysis.

The parties do not dispute that the contracts in question are covered by the FAA.  Plaintiffs

characterize the PSAs as a sale of unregistered securities in violation of state and federal law.  The

defendants claim that the PSAs each involve the purchase of luxury condominium units.  The PSAs

1   contain an arbitration clause found on Page nine of a twelve page standard form contract in a section of

2   the contract, paragraph 24 labeled "Miscellaneous."  Section 24.10 is labeled "Arbitration" and

3   provides,

> The parties agree to submit to arbitration any dispute related to this
> Agreement (including, but not limited to, any dispute related to the
> interpretation or enforceability of this Agreement) and agree that the
> arbitration process shall be the exclusive means for resolving disputes
> which the parties cannot resolve.

7   Both sides agree that the PSAs involve contracts evidencing transactions in interstate commerce

8   and, as such, fall within the purview of the FAA.  The FAA provides that written agreements to

9   arbitrate controversies arising out of a contract involving interstate commerce "shall be valid,

10  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of

11  any contract." 9 U.S.C. § 2.  The plaintiffs claim that the arbitration provision of the PSAs is

12  unconscionable and, therefore, unenforceable.  The Ninth Circuit has repeatedly recognized that

13  "unconscionability is a generally applicable contract defense that may render an agreement to arbitrate

14  unenforceable."  Chalk v. T-Mobile USA, ____ F.3d ____ (9th Cir. Mar. 27, 2009) (citing Shroyer v.

15  New Singular Wireless Servs., Inc., 498 F.3d 976, 981 (9th Cir. 2007)); Nagrampa, 469 F.3d at 1280.

16  The defendants argue that the crux of the plaintiffs' complaint challenges the validity of the

17  PSAs, rather than the arbitration clause of the PSAs, and, therefore, it is for the arbitrator, rather than

18  the court, to decide whether the PSAs containing the arbitration clause are valid and enforceable.

19  Although plaintiffs' responsive papers suggest that none of their claims are based on the PSAs, the

20  court finds otherwise.  The plaintiffs' amended complaint seeks recision of the PSAs based on claims

21  the plaintiffs were fraudulently induced to purchase the condominium units by defendants' material

22  omissions and false statements.  Plaintiffs seek to rescind or avoid the contracts as a whole.  However,

23  plaintiffs also challenge the arbitration clause itself.  In the Ninth Circuit, when a plaintiff challenges

24  both the validity of the arbitration agreement itself and the validity of the contract as a whole, it is for

25  the court, rather than the arbitrator, to decide whether the arbitration clause is valid and enforceable.

26  Nagrampa, 469 F.3d at 1263-64 (holding that courts should address a procedural unconscionability

27  defense to the enforcement of an arbitration provision).  Or, as the Ninth Circuit explained in Cox v.

28  Ocean View Hotel Corp., 533 F.3d 1114, "[i]n sum, our case law makes clear that courts properly

14

1  exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of

2  (2) the arbitration clause itself." Id. at 1120.

3     Here, the plaintiffs challenge both the enforceability of the PSAs as a whole and the validity of

4  the arbitration provision in the PSAs.  Thus, under controlling Ninth Circuit authority, construing

5  Buckeye Check Cashing, "the particular contractual defenses to enforcement of the arbitration clause at

6  issue" must be decided by the court.  Id.  In enacting the FAA "Congress precluded states from singling

7  out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the

8  same footing as other contracts.'" Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)

9  (internal quotations and citations omitted).  However, § 2 of the FAA does not entirely displace state

10  law from federal arbitration analysis.  Ting v. AT&T, 319 F.3d 1126, 1147 (2003).  Rather, the Ninth

11  Circuit has recognized that "as long as state law defenses concerning the validity, revocability, and

12  enforceability of contracts are generally applied to all contracts, and not limited to arbitration clauses,

13  federal courts may enforce them under the FAA." Id. at 1148 (quoting Ticknor v. Choice Hotels Int'l.,

14  Inc., 265 F.3d 931, 937 (9th Cir. 2001)).

15     Both the plaintiffs and the defendants agree that the court should apply Nevada contract law to

16  determine whether the arbitration provision in the PSAs is unconscionable.  A federal court must

17  "approximate state law as closely as possible" and is bound by the pronouncement of the state's highest

18  court in determining whether an arbitration clause is unconscionable and, therefore, unenforceable as a

19  matter of state law.  Nagrampa, 469 F.3d at 1280 (citing Ticknor, 265 F.3d at 939).

20     **Section 24.10 and Unconscionability Analysis.**

21     Under Nevada law, a contract provision is unenforceable due to unconscionability only if it is

22  both procedurally and substantively unconscionable.  D.R. Horton v. Green, 120 Nev. 549, 553 (2004).

23  "Generally, both procedural and substantive unconscionability must be present in order for a court to

24  exercise its discretion and refuse to enforce a . . . clause as unconscionable." Id.  (quoting Burch v.

25  District Court, 118 Nev. 438, 442 (2002)).

26     In D.R. Horton, the Nevada Supreme Court relied on the Supreme Court of California's decision

27  in Armendariz v. Foundation Health Psychcare, 6 P.3d 669 (Cal. 2000), in its approach to determining

28  whether a contract is unenforceable due to unconscionability.  Relying on California law, the Nevada

15

1   Supreme Court has adopted a sliding scale approach in determining unconscionability.  Although both

2   procedural and substantive unconscionability must be present for a court to exercise its discretion to

3   refuse to enforce an unconscionable contract, "they need not be present to the same degree."

4   Armendariz, 6 P.3d at 990.  "In other words, the more substantively oppressive the contract term, the

5   less evidence of procedural unconscionability is required to come to the conclusion that the term is

6   unenforceable, and vice versa."  Id. (citing Armendariz, 6 P.3d at 690).  Additionally, under Nevada

7   law, the party moving to enforce an arbitration agreement has the burden of persuading the court that

8   the clause is valid.  Id. at 553 (citing Obstetrics and Gynecologists v. Pepper, 101 Nev. 105, 108

9   (1985)).

10                     1.       **Procedural Unconscionability**

11          The Nevada Supreme has held that "[a] clause is procedurally unconscionable when a party

12   lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power,

13   as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a

14   review of the contract."  D.R. Horton, 120 Nev. at 554.  The plaintiffs argue the PSA itself and the

15   arbitration provision in it was offered on a take-it-or-leave-it basis and is, therefore, a contract of

16   adhesion.  A number of plaintiffs submitted declarations in support of the opposition to the motion to

17   compel arbitration.  Some of the plaintiffs aver that they were told the PSA was a standard form

18   contract which was non-negotiable.  See, e.g., Declaration of Mansour Shams (Dkt. #22-4 at ¶ 3),

19   stating the plaintiff called the sales agent "and notified him I felt the contract in general was very one-

20   sided in favor of MGM and I particularly did not like the inclusion of an arbitration provision.  I

21   informed him that I would like to make some changes and delete the arbitration provision in particular.

22   Mr. Schoor responded by stating in no uncertain terms that no substantive changes whatsoever could be

23   made to the Purchase Agreement and the arbitration clause was not negotiable."  See also Declaration

24   of Hanif Hirji (Dkt. #22-5 at ¶ 3), stating he asked the sales agent "whether certain provisions of the

25   contract could be negotiated and/or modified such as the arbitration clause" and was told by the sales

26   agent "that MGM would not change a single word in the contract except for the unit address and price."

27          Other plaintiffs submitting declarations state they did not notice or understand the arbitration

28   provision in the PSA.  See, e.g., Declaration of Malcolm Nicholl (Dkt. #22-8 at ¶ 3) (stating "When I

                                                    16

reviewed the Purchase Agreement, I did not pay particular attention to the arbitration provision in the 'Miscellaneous' section on page 9 of the 12 page document and it was never discussed or identified by Turnberry/MGM"); Declaration of Sandy Scalise (Dkt. #22-9 at ¶ 3) (stating "There was no opportunity for negotiation of any of the terms of the agreement.  In fact, [the sales agent] specifically told us that 'nothing was negotiable.'  When I reviewed the Purchase Agreement, I did not notice the arbitration provision in the 'Miscellaneous' section on page 9 of the 12 page document and it was never discussed or identified by [the sales agent] or any representative of Turnberry/MGM Grand Towers, LLC").

The defendants insist that the plaintiffs' "take-it-or-leave-it" argument addresses the contract as a whole and not the arbitration clause.  The defendants also dispute that the arbitration agreement in Section 24.10 is a contract of adhesion because the plaintiffs are sophisticated investors, but they cite a number of Ninth Circuit and Supreme Court cases holding inequality of bargaining power of itself is not a sufficient reason to fail to enforce an arbitration agreement.  Applying Nevada law on procedural unconscionability, the court need not determine whether the arbitration provision is a contract of adhesion.  In D.R. Horton, the Nevada Supreme Court found the district court erred in finding the arbitration clause was unenforceable as a contract of adhesion because the record demonstrated that it was possible to negotiate a deletion of the arbitration provision.  The Nevada Supreme Court nevertheless found the arbitration provision was procedurally unconscionable because the provision was inconspicuous, downplayed by the defendants' representative, and "failed to adequately advise an average person that important rights were being waived by agreeing to arbitrate any disputes under the contract."  Id. at 557.  The Nevada Supreme Court agreed with the defendant that there was no duty to explain in detail every right that would be waived by agreeing to arbitration but held "to be enforceable, an arbitration clause must at least be conspicuous and clearly put a purchaser on notice that he or she is waiving important rights under Nevada law."  Id.  The Nevada Supreme Court cited its prior decision in Tandy Computer Leasing v. Terina's Pizza, 105 Nev. 841 (1989), which invalidated a forum selection clause in a contract in part because of the drafting party's failure to make the clause conspicuous.

The court finds the arbitration provision of the PSA is procedurally unconscionable because like the contract in D.R. Horton, there is nothing in the contract to draw the reader's attention to the importance of the arbitration provision and clearly put the purchaser on notice that he or she is waiving

17

important rights under Nevada law.  The clause was not buried on the back page of a form agreement.

However, the arbitration clause is a subparagraph of a section labeled "Miscellaneous" immediately

following subsection 24.7 labeled "Counterparts," subsection 24.8 labeled "Pronouns," and subsection

24.9 labeled "Headings."  Subsection 24.10 is in the same font size and print as these paragraphs and

indistinguishable from these and many other contractual provisions.  The clause is not in bold print or

highlighted in any manner.  As such, the significance of the provision was downplayed and insufficient

to put a purchaser on notice that he or she is waiving important rights under Nevada law.

### 2.   Substantive Unconscionability

Substantive unconscionability "focuses on the one-sidedness of the contract terms." D.R.

Horton at 554 (quoting Ting, 319 F.3d  at 1149), cert denied, 540 U.S. 811.  The Nevada Supreme

Court approved of the approach taken by the Ninth Circuit in Ting, applying California law in

examining substantive unconscionability.  The Nevada Supreme Court agreed that an arbitration

agreement is unconscionable if it lacks a "modicum of bilaterality."  The court finds that at least two

provisions of the arbitration clause are substantively unconscionable – the confidentiality provisions,

and the waiver of punitive damages.  The confidentiality clause provides that "[n]either party shall

disclose any information about the evidence produced by the other party in the arbitration proceedings."

The defendants argue the confidentiality provision of the arbitration clause only precludes parties from

disclosing evidence produced by another party and does not prevent the plaintiffs from sharing their

own evidence with other plaintiffs.  While the confidentiality provision may be facially neutral, the

court finds that in its actual effect, it is unfairly one sided.  As the Ninth Circuit recognized in Ting,

"although facially neutral, confidentiality provisions usually favor companies over individuals."

319 F.3d at 1151.  The practical and real effect of confidentiality provisions favor companies over

individuals because of the inherent advantage a company has as a result of the "repeat player effect."  A

company that continually arbitrates the same claims against individuals places itself,

> . . . in a far superior legal posture by insuring that none of its potential
> opponents have access to precedent while, at the same time [the company]
> accumulates a wealth of knowledge on how to negotiate the terms of its own
> unilaterally crafted contract.  Further, the unavailability of arbitral decisions

18

1   may prevent potential plaintiffs from obtaining the information needed to
2   build a case of intentional misconduct . . .

3   Id.  Here, the plaintiffs claim that they were fraudulently induced to enter into the PSAs based on

4   scripted sales presentations which misrepresented or concealed material facts.  The defendants

5   acknowledge that every PSA contains identical terms and conditions.  Precluding the plaintiffs from

6   disclosing information produced by the defendants in arbitration gives the defendants unfair advantage

7   by allowing defendants to accumulate a wealth of knowledge while depriving the plaintiffs of obtaining

8   information needed to establish their statutory and common law claims.

9          Second, the court finds the punitive damages waiver is substantively unconscionable.  The

10  Nevada punitive damages statute is identical to the California punitive damages statute.  The Nevada

11  Supreme Court follows "the rule of statutory interpretation that when a statute is derived from a sister

12  state, it is presumably adopted with the construction given it by the highest court of the sister state."

13  Clark v. Lubritz, 113 Nev. 1089, 1096 (1997) (quoting Craigo v. Circus-Circus Enterprises, 106 Nev. 1,

14  3 (1990)).  In Siggelkow v. Phoenix Insurance Company, 109 Nev. 42, 44 (1993), the Nevada Supreme

15  Court reiterated that punitive damages are designed to punish and deter oppressive, fraudulent, or

16  malicious conduct and not to compensate the injured party.  Although punitive damages are not

17  awarded as a matter of right to an injured litigant, they provide a means to "express community outrage

18  or distaste for the misconduct of an oppressive, fraudulent, or malicious defendant and by which others

19  may be deterred and warned that such conduct will not be tolerated."  Id. at 44-45 (quoting Ace Truck

20  and Equip. Rentals, Inc., v. Kahn, 103 Nev. 503, 506 (1987)).  In Nevada, punitive damages may be

21  awarded in an action "not arising from contract" if an injured party proves by clear and convincing

22  evidence that "the defendant has been guilty of oppression, fraud or a malice, expressed or implied."

23  N.R.S. 42.005.  Under Nevada law, an action brought by a person who is a victim of consumer fraud is

24  "not an action upon any contract underlying the original transaction."  Id.  The court finds that the

25  waiver of punitive damages in the arbitration agreement at issue is contrary to Nevada public policy

26  because it would allow a tortfeasor to escape penalties for intentional torts and avoid the statutory

27  remedies created by N.R.S. 41.600.

28  / / /

19

**CONCLUSION**

Under both the FAA and UAA, arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S. § 2; N.R.S. 38.035. Unconscionability is a generally applicable contract defense that renders an agreement to arbitrate unenforceable. Under Nevada law, unconscionability is a defense to contracts generally and does not single out arbitration agreements for special scrutiny. Therefore, unconscionability may be raised as a defense to compelling arbitration consistent with § 2 of the FAA. <u>Doctor's Associates</u>, 517 U.S. at 688. Section 24.10 of the parties' PSA is procedurally unconscionable because it is inconspicuously placed as a subparagraph in a paragraph labeled "Miscellaneous," and there is nothing to draw the reader's attention to the importance of the arbitration provision. The clause is not conspicuous and does not clearly put the purchaser on notice that he or she is waiving important rights under Nevada law. The clause is also substantively unconscionable because the confidentiality and waiver of punitive damages provisions are one-sided and favor the drafting party. The court concludes that the arbitration provision is unenforceable as a matter of Nevada state law. Accordingly,

**IT IS ORDERED:**

1.     The Motion to Strike (Dkt. #38) is GRANTED.

2.     Defendants' Motion to Compel Arbitration (Dkt. # 17) is DENIED.

3.     Plaintiffs' Motion to Continue (Dkt. #21) is DENIED.

Dated this 6th day of April, 2009.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE