MORRIS PETERSON
Steve Morris, No. 1543
Email: sm@morrislawgroup.com
Akke Levin, No. 9102
Email: al@morrislawgroup.com
Jean-Paul Hendricks, No. 10079
Email: jph@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile: (702) 474-9422

WOOD, SMITH, HENNING & BERMAN LLP
Jason C. Gless, No. 8469
Email: jgless@wshblaw.com
7670 West Lake Mead Boulevard, Suite 250
Las Vegas, Nevada 89128
Telephone: (702) 222-0625
Facsimile: (702) 253-6225

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN SUSSEX; MITCHELL PAE; MALCOLM NICHOLL and SANDY SCALISE; ERNESTO VALDEZ, SR. and ERNESTO VALDEZ, JR; JOHN HANSON and ELIZABETH HANSON, <br><br> Plaintiffs, <br><br> v. <br><br> TURNBERRY/MGM GRAND TOWERS, LLC, a Nevada LLC; MGM GRAND CONDOMINIUMS LLC, a Nevada LLC; THE SIGNATURE CONDOMINIUMS, LLC, a Nevada LLC; MGM MIRAGE, a Delaware Corporation; TURNBERRY/ HARMON AVE., LLC, a Nevada LLC; and TURNBERRY WEST REALTY, INC., a Nevada Corporation, <br><br> Defendants. | Case No. 2:08-cv-00773-RLH-PAL <br><br> **OPPOSITION TO MOTION FOR ORDER REQUIRING AAA TO SUSTAIN OBJECTION TO APPOINTMENT OF ARBITRATOR (#68)** |

## I.     INTRODUCTION

The Court should deny plaintiffs' motion because there is no legal basis for the Court to intervene and address plaintiffs' frivolous objections to the appointment of arbitrator Brendan Hare.  The AAA already dealt with and properly decided this dispute.  The plaintiffs are not entitled to a second opinion from this Court because they cannot point to a single violation, much less one that rendered the arbitrator selection process fundamentally unfair.  The AAA: (1) followed its arbitrator selection rules to the letter; (2) accommodated the parties' agreement for comprehensive pre-screening for conflicts; (3) selected various arbitrators who had the experience and qualifications requested by the plaintiffs; (4) offered to expand the pool of arbitrators by including arbitrators from outside its class action panel; and (5) repeatedly warned the plaintiffs of its power under the rules to appoint an arbitrator if the parties failed to agree on one. *See* Declaration of Akke Levin ("Levin Decl."), Exhibits 1-2, 5, 7, 9- 10, and 13.

The appointment of Arbitrator Hare has nothing to do with misconduct of the AAA.  It is the consequence of plaintiffs' refusal to accept arbitrators from outside the AAA's class action panel, their unreasonable demands for arbitrator qualifications, and their deliberate decision to strike six of the eight proposed arbitrators on the last panel.  In doing so, they rejected five highly qualified and experienced arbitrators who matched *exactly* their requested criteria and gambled on the "reserve" arbitrator they now wish to avoid.  What violates the AAA rules here is plaintiffs' request for a *third* panel of arbitrators and their opportunistic request for an arbitrator they rejected on October 15, 2009, when they denounced the panel on which she appeared as a "fraud and a sham."  The instant motion should be denied.

## II.     FACTS

The plaintiffs are parties to uniform hotel condominium purchase and sale agreements ("PSAs").  Each PSA contains a clear, enforceable arbitration

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

2

Dispute Resolution Rules of the American Arbitration Association ("AAA") as modified herein."  PSA section 24.10, Ex. C to Motion to Compel Arbitration (# 17). The AAA Commercial Arbitration Rules provide:

> (a) If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:  The AAA shall send simultaneously to each party to the dispute an identical list of 10 (*unless the AAA decides that a different number is appropriate*) names of persons chosen from the National Roster . . . .

> (b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA . . . . *If the parties fail to agree on any of the persons named . . . the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.*

R-11 (emphasis added).

The AAA Supplementary Rules for Class Arbitrations specify that for cases filed as putative class actions, like plaintiffs' arbitration demand, "at least one of the arbitrators shall be appointed from the AAA's national roster of class arbitration arbitrators."  Section 2(a), Supplementary Rules for Class Arbitrations; *see also id.* section 1(a).[1]

**A.    The October 9, 2009, Selection List of Arbitrators.**

On October 9, 2009, according to the AAA rules cited above, the AAA case administrator Jonathan Weed circulated a list of ten prospective arbitrators from the national roster of class action arbitrators together with the arbitrators' resumes.  Levin Decl., ¶ 4, Ex. 2.  The arbitrator list was accompanied by a letter in which Mr. Weed urged the parties to agree on an arbitrator and, if they couldn't, to "leave as many names on the list . . . ."  *Id.*  Mr. Weed warned that if the parties

---

[1] Excerpts of the AAA Commercial Arbitration rules and AAA Supplementary Rules for Class Arbitrations are attached as exhibit 1 to the declaration of Akke Levin. They are also available online at http://www.adr.org/sp.asp?id=22440 (AAA commercial arbitration rules) and http://www.adr.org/sp.asp?id=21936 (AAA Supplementary Rules for Class Arbitrations).

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

3

failed to agree, the AAA rules permitted the AAA to administratively appoint an arbitrator in the parties' place.  *Id.*  Mr. Weed's letter also confirmed the subjects discussed during a telephone conference with him that had taken place nine days earlier, including the parties' preferences in terms of the prospective arbitrators' qualifications and experience.  *Id.*  Mr. Weed confirmed the defendants' request for arbitrators with transactional experience and the plaintiffs' request for arbitrators with a "background in securities matters," preferably "former U.S. Attorneys or Assistant U.S. Attorneys."  *Id.*

The first two arbitrators on the list had precisely the qualifications requested by the plaintiffs:  William L. D. Barrett's resume reflected that 60% of his practice consists of securities law matters; John W. Bissell is a former assistant U.S. Attorney.  *See id.*  The other eight were equally qualified and experienced to arbitrate the dispute, which centers on plaintiffs' allegations that the hotel condominium units they purchased are unregistered securities.[2]  For example, Robert Brent had more than 20 years of experience with real estate litigation;  John Fleming had substantial experience with fraud litigations and had represented consumers in cases involving deceptive trade practices.  *Id.*

### 1.    *Plaintiffs' Request for an Entire New Panel and Pre-Screening for Conflicts.*

On October 12, 2009, Robert Gerard, counsel for plaintiffs, wrote Mr. Weed and defendants' counsel asking "that *an entire new panel* of AAA National Class Action Arbitrators be submitted . . . " because he had identified **one** proposed arbitrator whose firm "*may have* drafted the arbitration clause for the Defendants in this matter."  Levin Decl., Ex. 3 (emphasis added).  Although

---

[2] As the Court is aware, the plaintiffs have made claims under the Securities Act of 1933,  the Securities Exchange Act of 1934, and the Nevada Uniform Securities Act.  Amended Federal Class Action Complaint, # 14, at 1. They also make a deceptive trade practices claim and a number of tort claims sounding in fraud.  *Id.*

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

neither Mr. Gerard nor his co-counsel, Norman Blumenthal, had asked for a conflict screening during the September 30, 2009, administrative conference, Mr. Gerard suggested that the ten arbitrators should have been pre-screened for conflicts. *See id.* Mr. Gerard reiterated plaintiffs' request for arbitrator candidates with "background experience as U.S. Attorneys and other Governmental civil fraud and SEC prosecutions . . .," *id.* — ignoring the fact that William Barrett and John Bissell had precisely that "background experience."

Three days later, Mr. Blumenthal called Mr. Weed, *ex parte,* to voice his objections over the selection list. *Id.* Ex. 4 (confirming telephone conference in an October 15, 2009, email). Like Mr. Gerard, Mr. Blumenthal asked for a new list of arbitrators "after the AAA has conducted a conflicts check." *Id.* Based on a *potential* conflict with *one* arbitrator — Snell & Wilmer attorney Michael Zimmerman — Mr. Blumenthal objected to "**the entire list** as inherently prejudicial to Petitioners." *Id.* (emphasis added). Mr. Blumenthal then threatened the AAA administrator that, unless the proposed arbitrators were pre-screened for conflicts, the plaintiffs would:

> continue to object to the entire selection process as a **fraud and a sham** *orchestrated by AAA with full knowledge of the inherent conflict with at least one of the proposed panelists whose firm turns out to be the drafter of the contract underlying this transaction . . . . The Petitioners also object to the list as not having been prepared with an attempt to satisfy Petitioners' request to include former US Attorneys or District Attorneys as requested by the Petitioners. . . .*

*Id.* (emphasis added).

The AAA case administrator did not ignore the plaintiffs' concerns. He set up a telephone conference — now *with* the participation of defendants' counsel. *See id.,* Ex. 5. Only then did plaintiffs' counsel agree that a "new" panel could include some or all of the nine other proposed arbitrators. *Id.* The defendants and Mr. Weed agreed to plaintiffs' request that all potential arbitrators be pre-screened for conflicts. *Id.*

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

5

2.     *Plaintiffs' Request for Case-Specific Information and Former Judges.*

Four days later, on October 19, 2009, Mr. Blumenthal "upped" the plaintiffs' demands again: in addition to pre-screening, he wanted the names and resumes of all the arbitrators on the AAA class action panel. *Id.*, Ex. 6.  In addition, he requested:

> (1) a summary of *how these persons were selected for the panel,* (2) how many class actions matters each panelist has acted in the capacity of a neutral, (3) *the disposition as to certification and judgment* as to each of these matters, (4) how much time over the last 24 months they have spent working as a neutral, and (5) how many class action matters the proposed neutral worked on prior to becoming a neutral and *the percentage of class action work that was plaintiff's work versus defendant's work.*
>
> If a panelist is still with a firm in private practice as opposed to working full time as a neutral I think counsel should also be advised as to (1) the *firm's representative clients* and (2) *the percentage of the firm's work that is plaintiff's work versus defendant's work and corporate work versus individual work.*

*Id.* (emphasis added).

Mr. Blumenthal was also concerned "that there are not in fact ten (10) neutrals on the class action panel from which we can choose one (1) *and therefore the list is inherently prejudicial.*" *Id.* (emphasis added).  Thus, Mr. Blumenthal had already made up his mind on October 19, 2009, that the second arbitrator list, which would not be circulated until January 2010, was unfair.  *Id.*

On November 16, 2009, plaintiffs' counsel again called Mr. Weed — apparently to discuss Mr. Blumenthal's concern that the AAA may not be able to provide a list of ten arbitrators from the AAA class action panel that fit his criteria.  *Id.* Ex. 7 (email dated November 17, 2009, 2:41 p.m. confirming this telephone conversation).  Plaintiffs' counsel told Mr. Weed that they now agreed that "retired judges" could also be on the proposed arbitrator list, "in addition to securities

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

6

arbitrators." *Id.* Counsel for defendants was not invited to participate in this call. *Id.; see also id.* ¶ 10 and Ex. 8 thereto.

### 3.    AAA's Efforts to Meet Plaintiffs' Demands.

The AAA case administrator once more made every effort to meet plaintiffs' demands. He confirmed that the AAA "expects to provide a list of ten names without conflicts for this matter." *Id.* Ex. 7. He agreed that the AAA would: (1) do a "complete conflicts check" by sharing with proposed arbitrators the parties' pleadings, the conflict checklists, and names of the parties and their counsel, *including the "Snell and Wilmer law firm"*; (2) ask prospective arbitrators detailed information about their experience as an arbitrator, "including a list of the parties involved in each case . . . the nature of the awards . . . rendered in each matter. . . [and] the attorneys who appeared before [the arbitrator] in each case"; and (3) "potentially" include in the new list any arbitrators who were on the first list. *Id.* Ex. 9 (January 4, 2010 email).

Mr. Weed also told the parties that the AAA could "increase the pool of arbitrators from which those ten will be drawn if the parties agree to consider arbitrators who are not on the Association's Class Action Panel." *Id.* Ex. 7. He repeated that suggestion during the December 31, 2009, telephone conference. *Id.* ¶ 11. Although the defendants encouraged the inclusion of arbitrators from outside the AAA's class action panel, the plaintiffs refused to accept the proposition. *Id.*[3]

---

[3] Mr. Weed's January 4, 2010 email inaccurately summarized the parties' positions during the December 31, 2009, conference call by saying that the "*Plaintiffs* . . . would be interested in reviewing potential arbitrators who are not on the Association's Class Action Panel . . ." and that "*Respondent* was not in agreement with reviewing potential arbitrators who are not on the Class Action Panel." *Id.* ¶ 12, Ex. 8 thereto (emphasis added). The opposite was true: the plaintiffs insisted on arbitrators who were on the class action panel. *Id.* ¶ 11; *see also id.* Ex. 3 (Mr. Gerard's October 12, 2009 email) (requesting "National AAA Class Action Arbitrators"). The defendants encouraged the inclusion of arbitrators from outside the AAA class panel because, among other reasons, the putative class action may never be certified as a class. *Id.* ¶ 11; *id.*, Ex. 8

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

### B.    The January 29, 2010 Selection List of Arbitrators.

On January 29, 2010, Mr. Weed circulated a new list of eight arbitrators all from the AAA's "national roster of class action arbitrators." *Id.* Ex. 10.[4]  As requested by the plaintiffs, this list included two former judges — William Dreier and George Pratt — one former U.S. attorney — David Love —  and several proposed arbitrators with securities law experience, including Ralph Halpern, Ronald Longhofer, and George Pratt.  *Id.*  Four of the eight arbitrators — Brewer, Dreier, Pratt and Fleming — had previously handled a number of class arbitrations under the auspices of the AAA.  *Id.*  All eight prospective arbitrators had commercial litigation experience, including experience with the type of claims asserted by the plaintiffs — *i.e.*, securities fraud claims, deceptive trade practice claims, and common law fraud claims.  *Id.*  All proposed arbitrators provided disclosure forms; none had conflicts to report.  *Id.*  And although proposed arbitrator Ralph Halpern declined to disclose any prior case information, he did so due to "confidentiality restrictions," and still provided details on his prior employment history and arbitrator experience.  *Id.*  Mr. Weed again urged the parties to agree on an arbitrator, leave as many names on the list as possible, and warned the parties that the AAA could appoint an arbitrator in their place if the parties did not agree, "without the submission of an additional list."  *Id.*

#### 1.    *Plaintiffs' Objections to the Second List.*

As he had done with the first arbitrator selection list, Mr. Blumenthal immediately objected to the "*entire process.*"  *Id.* Ex. 11.  Without consultation whatsoever with defendants' counsel, and ignoring Mr. Halpern's ethical obligations, Mr. Blumenthal directed Mr. Weed to "take out Mr. Halpern as he

_____

(November 17, 2009 email of Steve Morris) ("they are not . . .  entitled to a panel made up of class arbitrators").

[4] The Plaintiffs suggest that the list only included seven proposed arbitrators.  Memorandum of Points and Authorities, # 68, at 2, 5.

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1    does not satisfy *our* agreement as to the rules of this arbitration for panel

2    selection." *Id*. (emphasis added).  Discounting Mr. Halpern, Mr. Blumenthal

3    assailed the AAA for tendering "7 instead of 10" arbitrators, arguing that a "30%

4    reduction in the panel" was *inherently prejudicial to consumers*." *Id*.  (emphasis

5    added).

6            In response to Mr. Blumenthal's email, the AAA case administrator

7    set up a telephone conference, which took place on Friday, February 5, 2010.

8    Levin Decl. ¶ 15.  Mr. Weed explained that the eight arbitrators were the result of

9    AAA's efforts to gather available arbitrators from the class action panel who met

10   the requested qualifications *and* were conflict-free.  *Id*.  Mr. Weed also explained

11   that the AAA necessarily had to "hold back" one pre-screened, conflict-free

12   arbitrator in case the parties could not come to an agreement on any of the eight

13   proposed arbitrators.  *Id*.  Indeed, the AAA rules provide that:

14           If the "parties fail to agree on any of the persons named
             . . . the AAA *shall have the power to make the appointment*
15           *from among other members of the National Roster without the*
             *submission of additional lists.*
16

17   R-11(b) (emphasis added).

18           The plaintiffs reluctantly agreed to proceed with the selection and

19   submitted their selection list with their ranks and strikes on February 19, 2010.

20   Levin Decl. ¶ 16 and Ex. 12 thereto.

21   **C.      The AAA's Appointment of Brendan Hare**

22           On Friday, February 26, 2010, Mr. Weed advised the parties that the

23   AAA had appointed arbitrator Brendan Hare.  *Id*. Ex. 13.  The appointment of

24   Mr. Hare meant that there was not one arbitrator on the second list on which the

25   parties agreed.  As the defendants would find out later, the plaintiffs had struck all

26   but two of the eight proposed arbitrators.  *See id*. ¶ 16 and Ex. 12 thereto.  The

27   plaintiffs had rejected the two former judges (Pratt and Dreier), the arbitrator with

28   the most class arbitration experience (Brewer), and two arbitrators with securities

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

9

law experience (Halpern and Longhofer), even though the qualifications and experience of these five arbitrators corresponded precisely to plaintiffs' requests and preferences. *See id.* Exs. 2, 7.

### 1. *Plaintiffs' Objections to Mr. Hare's Appointment*.

That same morning — without copying defendants' counsel — Mr. Blumenthal emailed Mr. Weed and objected to the "entire selection process as being a *sham and a fraud*." *Id.* Ex. 14 (emphasis added). Despite Mr. Weed's explanation during the February 5, 2010 telephone conference that one arbitrator was necessarily left off the second selection list in case the parties could not agree, Mr. Blumenthal asked: "Why was Mr. Hare left off the original list?" *Id.* Ignoring the fact that the AAA had included two former judges, one former U.S. attorney, and several arbitrators experienced with "securities matters," *and* that he had struck all but one of them, Mr. Blumenthal asked why was his clients' "request for a neutral with former experience as a U.S. Attorney, Judge or SEC attorney ignored?" *Id.* Mr. Blumenthal refused to proceed with Hare, and demanded that Mr. Hare be deposed to determine if he is "in fact a neutral." *Id.* Mr. Blumenthal then threatened: "If we find that he has never ruled in favor of a consumer in a class claim and *thus* is a *handpicked stooge* for MGM *we will sue AAA*." *Id.* (emphasis added). He then threatened to have AAA "*cease and desist* acting as an *alleged* neutral arbitration company. . . *as a result of this fraud*. . ." and seek discovery to determine "if *this tilt in favor of corporations* in [sic] an ongoing practice of AAA and a fraud on consumer claimants." *Id.* (Emphasis added).

### 2. *Plaintiffs' Formal Objection Letter to the AAA*.

On April 1, 2010, plaintiffs' counsel served a letter on the president, vice-president, and case manager of the AAA, objecting to the appointment of Mr. Hare and certain of Mr. Weed's alleged "acts of nonfeasance and malfeasance . . ." *Id.* Ex. 15 thereto. Plaintiffs argued that: (1) the parties had an agreement to be provided with a second list of ten proposed arbitrators; (2) four of the

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

10

arbitrators on the first list should have been included on the second list because they passed conflict screening in a different case; and (3) Mr. Weed had "unilaterally selected" Mr. Hare for their "billion dollar [consumer] case." *Id.*

The AAA invited the defendants to respond to plaintiffs' objections by letter dated April 2, 2010. *Id.* ¶ 18, Ex. 16.  The defendants submitted a response letter on April 7, 2010. *Id.* Ex. 17 (exhibits thereto omitted).  After considering both letters and the parties' positions, and noting that it could not change the AAA rules without the parties' agreement, the AAA confirmed the appointment of Mr. Hare. *Id.* Ex. 18.

By letter dated April 9, 2010, the plaintiffs asked the AAA to reconsider its appointment of Arbitrator Hare. *Id.* Ex. 19.  The plaintiffs reiterated their request for a new list of proposed arbitrators and "specifically ask[ed] that Ms. LaMothe be included on the list as she was acceptable to both parties for the Trump case . . ." *Id.*  As an alternative proposition, the plaintiffs said they "would accept Ms. LaMothe as the arbitrator in this MGM case." *Id.*  She had been previously denounced by the plaintiffs as the product of a "fraud and a sham." *Id.* Ex. 4.  Plaintiffs' motion (# 68) followed.

III.   **ARGUMENT**

   A.   **The Court Has No Jurisdiction to Countermand the AAA's Appointment of Brendan Hare.**

Where, as here, the parties agreed to arbitrate under the AAA rules and the dispute involves a AAA procedural issue, court intervention is inappropriate. *Howsam v. Reynolds*, 537 U.S. 79, 85 (2002) (questions of procedure that grow out of a dispute "are presumptively *not* for the judge, but for an arbitrator") (emphasis in the original); *Dockser v. Schwartzberg*, 433 F.3d 421, 423 (4th Cir. 2006) (holding that a dispute over the number of arbitrators to be appointed is a procedural issue reserved for the arbitral forum — the AAA); *Cohen v. Chase Bank, N.A.*, ___ F. Supp. 2d ___, 2010 WL 183542, * 11 (D. N.J.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

11

1   Jan. 20, 2010) (declining to entertain post-award argument that "the arbitration

2   was not conducted in accordance with the parties' agreement that a hearing take

3   place within the District of New Jersey by a New Jersey attorney").

4          Pre-arbitration challenges are only justified in rare instances, not

5   present here, where the arbitrator selection process itself is alleged to be

6   "fundamentally unfair." *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370,

7   385 (6th Cir. 2005).  Such challenge requires more than speculation about an

8   arbitrator's unfitness or potential bias:  Courts are not to presume that arbitration

9   forums such as the AAA are "unable or unwilling to retain competent,

10  conscientious and impartial arbitrators." *Gilmer v. Interstate/Johnson Lane Corp.*,

11  500 U.S. 20, 30 (1991).  Instead, the plaintiffs are required to demonstrate that the

12  arbitrator selection process was so basically tainted that the arbitration forum is

13  not a proper substitute for a judicial forum.  *Walker*, 400 F.3d at 385-86; *McMullen*

14  *v. Meijer, Inc.*, 355 F.3d 485, 493-94 (6th Cir. 2004).  They entirely failed to do so

15  here.

16      *1.*      *The AAA Arbitrator Selection Method is Fair.*

17          None of the cases on which the plaintiffs rely to support their

18  request for judicial relief is on point.  In *Walker*, the court found the arbitrator

19  selection process fundamentally unfair based on a number of facts, including that:

20  (1) the defendant/employer had a contract with the arbitration forum, EDSI;

21  (2) EDSI was a "for-profit" organization; (3) EDSI received an annual fee from the

22  employer, which accounted for 42% of EDSI's gross income in 2002; and (4) the

23  "symbiotic relationship" with EDSI enabled the employer to effectively change the

24  forum's rules and determine the three selection pools of arbitrators, one of which

25  included only managers of employers that had an agreement with EDSI.  400 F.3d

26  at 386.  Not one of these factors is present here.

27          In *McMullen*, the arbitrator selection process was unfair because the

28  employer had the unilateral right to select the pool of potential arbitrators, *and*

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

12

had consistently chosen the same five to seven potential arbitrators for each arbitration taking place in Michigan. 355 F.3d at 493-94. In rejecting that selection process, the *McMullen* court remarked that the employer "could easily have adopted a procedure in which *an unbiased third-party, such as the AAA* . . . selected the pool of potential arbitrators." *Id*. at 494 (emphasis added).[5] Turnberry/MGM Grand Towers did not select the pool of arbitrators here, and it has not had prior experience with any of them.

Here, the arbitration forum *is* the AAA, a not-for profit "unbiased third-party." *McMullen*, 355 F.3d at 494. None of the defendants have contracts with the AAA. The AAA — *not* the defendants — selects the pool of potential arbitrators. The AAA maintains a roster of highly qualified and experienced class action arbitrators. Levin Decl. Exs. 2, 10 (arbitrator resumes). The AAA rules require that single arbitrators be selected from that list for cases filed as putative class actions. *Id*. Ex. 1. There is nothing in the AAA rules that gives the defendants an unfair advantage.

Unlike in *McMullen* and *Walker*, plaintiffs' suspicions of impropriety have no factual basis. There is nothing "odd" about the fact that the AAA included Michael Zimmerman — a colleague of the alleged drafter of the PSA in another city at issue here — on the first arbitrator selection list. The AAA had yet to receive the parties' conflict disclosure forms. Levin Decl. Ex. 2. A conflict check would not have eliminated Mr. Zimmerman, because his law firm, Snell & Wilmer, does not represent any of the respondents in this case. How could the AAA have known that someone in Zimmerman's multi-state law firm may have drafted the PSA?

---

[5] *Thomas Kinkade Co v. Lighthouse Galleries, LLC* simply did not concern whether the arbitrator was properly appointed, but whether the arbitrator's subsequent misconduct during the arbitration proceeding justified vacatur. 2010 WL 436604 * 5 (E.D. Mich. January 27, 2010).

MORRIS PETERSON
ATTORNEYS AT LAW
00 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

13

There is also no reasonable basis for plaintiffs' assumption that the AAA "purposely" omitted four arbitrators who were on the first list — Barrett, Jefferson, Jones, and LaMothe — from the second list.  It is meaningless that these four arbitrators passed the conflict check in the Trump arbitration in which Gerard and Blumenthal are the claimants' counsel.  The Trump arbitration involves entirely different claimants and an entirely different respondent.  If the AAA omitted these four arbitrators from the second arbitrator selection list after conducting the thorough conflict screening requested by the *plaintiffs*, it necessarily follows that they *failed* the comprehensive conflict screening the plaintiffs asked for.

> ### 2. *Both Arbitrator Selection Lists Were Composed According to the AAA Rules and the Parties' Agreement.*

As a general rule, the AAA must send each party "an identical list of 10 [arbitrators]."  AAA Commercial Arbitration Rule R-11 (a).  It can deviate from the rule if a "*different number is appropriate* . . . ." *Id*. (emphasis added).  "If the parties fail to agree on any of the persons named . . . the AAA shall have the power to make the appointment from among other members of the National Roster *without the submission of additional lists*." *Id*. R-11(b) (emphasis added).  In single arbitrator cases filed as putative class actions, the arbitrators are selected "from the AAA's national roster of class arbitration arbitrators."  Supplementary Rules for Class Arbitrations, sections 1(a), 2(a).

The AAA followed these rules on October 9, 2009, when it circulated a list of ten prospective arbitrators from its national roster of class arbitration arbitrators.  Levin Decl. Ex. 2.  The AAA also followed these rules and the parties' agreement on January 29, 2010, when it circulated the second arbitrator list of eight arbitrators.  Levin Decl.  Ex. 10.  Like the first list, the second list was composed of arbitrators from the AAA's national roster of class arbitration arbitrators.  *Id*.  All eight arbitrators were pre-screened for conflicts, as agreed by the parties.  None

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

had conflicts to report.  *Id*.  All arbitrators disclosed their resumes and provided details about their expertise and experience as arbitrators and litigators.  *Id*.

The AAA did not violate the parties' agreement to be provided with a second list of ten, because there was *none*.  Jonathan Weed's October 15, 2009, email says nothing about an agreement for "a [second] *list of 10 arbitrators*," nor that such list "*would include the original 9 arbitrators without conflicts . . .*" Motion at 8 (lines 3-5) (emphasis added).  All the parties agreed to was to be provided with a second list of arbitrators — now pre-screened for conflicts.  Levin Decl. Ex. 5.  That second list could only include "the 9 original arbitrators without conflicts" if they did not have any.

The fact that one arbitrator of the eight arbitrators, Ralph Halpern, declined to disclose confidential case information did not reduce the list to "7," nor did it change the parties' agreement, as the plaintiffs contend.  Motion at 2, 5.  Mr. Halpern provided a detailed resume showing that he had ample experience with "securities matters," just as the plaintiffs had requested.  Levin Decl. Ex. 10.  The parties did not have an agreement that prospective arbitrators should disclose case information in violation of their ethical obligations.

### 3. *The AAA's Appointment of Brendan Hare Was Proper.*

Plaintiffs' argument that the AAA case manager "unilaterally" and "secretly" selected Mr. Hare is frivolous.  When appointing Mr. Hare, Mr. Weed was simply following Rule R-11(b), which gives the AAA the power to appoint an arbitrator in case the parties "are unable to agree upon an arbitrator."  R-11(b) (emphasis added).  There was nothing "secret" about Mr. Hare's appointment.  During the February 5, 2010, telephone conference, Mr. Weed "openly" told counsel that the AAA necessarily held back one pre-screened, conflict-free, arbitrator in case the parties could not come to an agreement on any of the eight proposed arbitrators.  Levin Decl. ¶ 15.  That arbitrator turned out to be Mr. Hare, which was as much a surprise to MGM as it was to the plaintiffs.

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

The parties had failed to agree on an arbitrator.  Ignoring Mr. Weed's advice "to leave as many names on the list" as possible and his warning that the AAA would appoint an arbitrator "without the submission of an additional list," *id*. Ex. 10, the plaintiffs struck **six of the eight** proposed arbitrators. *Id*. Ex. 12.  By leaving only two arbitrators on the list, the chances of the parties agreeing on one or both of these arbitrators were slim to none.  The plaintiffs make too much of Mr. Weed's alleged statement during an *ex parte* telephone conversation with plaintiffs' counsel that Mr. Hare "was not immediately desirable . . . and was intentionally held back in case there was no agreement." Blumenthal Decl. # 68-2, ¶ 16.[6]  What else should the AAA have done?  Shame on the AAA and Mr. Weed for including the most qualified and experienced arbitrators on the arbitrator selection list, as plaintiffs requested.

The plaintiffs only have themselves to blame for their gamble on eliminating six arbitrators.  They knew they could not strike the arbitrator appointed by the AAA.  R-11(b).  By asking the AAA and now this Court to ignore Rule R-11(b), and give them a *third* arbitrators list — or, alternatively, an arbitrator they now find appealing, Levin Decl. Ex. 2, the only ones who are not playing by the AAA rules and the parties' agreement are the *plaintiffs*.[7]

---

[6] Norman Blumenthal admits that the telephone conversation was just between Mr. Weed and himself. *Id*.

[7] There is no merit to plaintiffs' unsupported argument that "there are now five new parties to this arbitration as ordered by the Court." Motion at 9.  The five non-signatory defendants to which the plaintiffs presumably refer, are not "new parties" that require a new conflict screening to justify a third list of ten arbitrators. They were named in plaintiffs' initial August 31, 2009 arbitration demand and the federal class action complaint it incorporated.  Levin Decl. Ex. 20 (listing as "respondents" MGM Mirage, Turnberry/MGM Grand Towers, LLC; Turnberry/Harmon Ave., LLC; Turnberry West Realty, Inc.; MGM Grand Condominiums, LLC, and The Signature condominiums, LLC).  The demand and the complaint it incorporated were sent to the prospective arbitrators to enable the "complete conflicts' check" requested by the plaintiffs. *Id*. Ex. 8.

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1

2

> 4.   *Plaintiffs' Objection to Mr. Hare is Their Second Attempt to*
> *Avoid Their Arbitration Agreement.*

3    What is clear from the history of this arbitrator selection process that

4    if anything was a "fraud and a sham," it was the plaintiffs' participation in that

5    process.  They immediately assumed that the AAA was "unable [and] unwilling to

6    retain competent . . . and impartial arbitrators," *Gilmer*, 500 U.S. at 30, and that

7    they would be treated unfairly.  They objected to the entire first arbitrator list on

8    the basis of a suspected conflict with just *one* of the ten arbitrators.  Levin Decl.

9    ¶¶ 5-6 and Exs. 3 and 4 thereto.  They assumed that the AAA "had full knowledge"

10   **(how?)** of the alleged fact that an attorney *other* than Mr. Zimmerman had drafted

11   the PSA at issue.  *Id*. Ex. 4.  They twice made the unfounded suggestion that the

12   AAA had ignored their request for arbitrators experienced in "securities matters"

13   and former U.S. attorneys, *id*. Exs. 3 and 4, even though two of the arbitrators on

14   the first list had precisely those qualifications.  *See id*. Ex. 2 (resumes of William

15   Barrett and John W. Bissell, a former assistant U.S. Attorney).  Only later did the

16   plaintiffs withdraw their obsessive request to disqualify the "entire [first] panel,"

17   and agree to accept arbitrators from the first list if they had no conflicts, *id*. Ex. 5,

18   but not before threatening the AAA that they would oppose "any adverse ruling"

19   in court and would "name AAA as an indispensable party . . ." *Id*. Ex. 4.

20   As soon as the AAA and the defendants agreed to plaintiffs' proposed

21   comprehensive pre-screening for conflicts, the plaintiffs increased their demands

22   for preferential treatment.  They wanted to know how the AAA selected their class

23   action arbitrators, how these arbitrators had decided class certifications, what

24   judgments they had rendered, and what type of clients they represented —

25   plaintiffs or corporate defendants.  *Id*. Ex. 6.  While expressing concern that the

26   AAA could not provide a list of ten arbitrators based on their understanding that

27   the AAA class action roster included "less than 36 [arbitrators],"*id*., the plaintiffs

28   rejected the sensible solution of Mr. Weed to "increase the pool of arbitrators" by

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

17

1   including arbitrators from outside the class action panel. *Id.* ¶ 11 and Ex. 7

2   thereto.  They had already decided that the second list would be "inherently

3   prejudicial" to them. *Id.* Ex. 6.  Accepting Mr. Weed's solution would deprive

4   them of that argument.  Indeed, when the second, conflict-free, arbitrator selection

5   list arrived, composed of eight arbitrators selected solely from the AAA class

6   panel, the plaintiffs immediately called the reduced panel "inherently prejudicial

7   to consumers." *Id.* Ex. 11.

8            Plaintiffs' strikes from the last list further confirms their bad faith.

9   Although the list included two "retired judges" (Pratt and Dreier), an arbitrator

10  who had certified several classes in AAA arbitrations (Brewer), and three

11  arbitrators with extensive litigation and arbitrator experience in securities law

12  (Halpern, Longhofer, and Pratt) — corresponding *exactly* to plaintiffs' requests, *id.*

13  Exs. 2, 7 — the plaintiffs struck all five of them, in addition to Fleming.  Ex. 12.  In

14  striking 75% of the panel, they effectively ruined the likelihood of the parties

15  agreeing on the last two, and essentially gambled on an arbitrator they knew

16  nothing about.

17           Bad losers, the plaintiffs refused to accept responsibility.  It was all the

18  AAA's fault. *Id.* Ex. 14.  Upon learning that Mr. Hare was appointed, plaintiffs'

19  counsel assailed the AAA, ignoring the AAA rules ("Why was Mr. Hare left off the

20  original list?"), ignoring the qualifications of the proposed panel ( "Why was our

21  request for a neutral with former experience as a US Attorney, Judge, or SEC

22  attorney ignored?"), and ignoring that he had *eliminated* most arbitrators with

23  these qualifications. *Id.* Ex. 12.  Mr. Blumenthal's baseless demand to depose

24  Mr. Hare to determine if he is "in fact a neutral" is outrageously silly.  So was his

25  threat that "[i]f we find that he has never ruled in favor of a consumer in a class

26  claim and *thus* is a *handpicked stooge* for MGM *we will sue AAA.*" *Id.* Ex. 14

27  (emphasis added); *see also id.* (threatening that he would seek to have AAA "*cease*

28  *and desist* acting as an *alleged* neutral arbitration company. . . *as a result of this fraud* .

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

18

1  . ." and *seek discovery* to determine "if *this tilt in favor of corporations* in [sic] an

2  ongoing practice of AAA and a fraud on consumer claimants") (emphasis added).

3        Plaintiffs' aberrational obstructionist behavior displays their bad faith

4  and attempts at arbitrator shopping.  Enough already.  Plaintiffs' frivolous

5  objections were properly dealt with and rejected by the AAA.  *Id.* Exs. 16, 18.

6  Plaintiffs have not provided any legal basis for a "second opinion" from this

7  Court, nor do they deserve one.  Plaintiffs' motion should be denied.

8  **IV.   CONCLUSION**

9        For all the reasons stated above, the Court should deny the plaintiffs'

10  motion.

11

12                       MORRIS PETERSON

13

14  By:_____
                 Steve Morris, No. 1543

15                   Akke Levin, No. 9102
                 Jean-Paul Hendricks, No. 10079

16                   900 Bank of America Plaza
                 300 South Fourth Street

17                   Las Vegas, Nevada  89101

18  WOOD, SMITH, HENNING & BERMAN LLP
                 Jason C. Gless, No. 8469

19                   7670 West Lake Mead Blvd., Suite 250
                 Las Vegas, Nevada 89128

20                   Attorneys for Defendants

21

22

23

24

25

26

27

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

19

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS PETERSON, and that the following documents were served via electronic service:

**OPPOSITION TO MOTION FOR ORDER REQUIRING AAA TO SUSTAIN OBJECTION TO APPOINTMENT OF ARBITRATOR (#68)**

TO:

Robert B. Gerard
Ricardo R. Ehmann
Gerard & Associates
2840 So. Jones Blvd. - Bldg. D, Suite 4
Las Vegas, Nevada  89146
rgerard@gerardlaw.com
rehmann@gerardlaw.com

Robert Fellmeth
University of San Diego Law School
5998 Alcala Park
San Diego, California  92110
cpil@sandiego.edu

Norman Blumenthal
Blumenthal & Nordrehaug
2255 Calle Clara
La Jolla, California  92037
norm@bamlawlj.com

Burton Wiand
Wiand Guerra King
3000 Bayport Drive - Suite 600
Tampa, Florida  33607
bwiand@wiandlaw.com

Attorneys for Plaintiff

DATED this 6th day of May, 2010.

By: _____

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

20