# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARY ANN SUSSEX; MITCHELL PAE; MALCOLM NICHOLL and SANDY SCALISE; ERNESTO VALDEZ, SR. and ERNESTO VALDEZ, JR.; JOHN HANSON and ELIZABETH HANSON,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>TURNBERRY/MGM GRAND TOWERS, LLC, a Nevada LLC; MGM GRAND CONDOMINIUMS LLC, a Nevada LLC; THE SIGNATURE CONDOMINIUMS, LLC a Nevada LLC; MGM MIRAGE, a Delaware Corporation; TURNBERRY/HARMON AVE., LLC. a Nevada LLC; and TURNBERRY WEST REALTY, INC., a Nevada Corporation;<br><br>　　　　　　Defendants. | Case No.: 2:08-cv-00773-RLH-RJJ<br><br>**O R D E R**<br><br>(Motion for Order Requiring the AAA to Sustain Objection to Appointment of Arbitrator–#68) |

Before the Court is a **Motion for Order Requiring the AAA to Sustain Objection to Appointment of Abritrator** (#68), filed by all Plaintiffs on April 19, 2010. The Court has also considered Defendants' Opposition (#69), filed May 6, 2010, and Plaintiffs' Reply (#70), filed May 17, 2010.

/

/

1

AO 72
(Rev. 8/82)

**BACKGROUND**

The Court directs the reader to its order (#64) issued March 10, 2010 for general background information about this case. To those facts, the Court adds the following information relevant to the Motion now before it. On June 16, 2009, this Court ordered the parties to arbitrate their case pursuant to the arbitration agreement contained in their contract. The parties agreed that the arbitration would be conducted under the rules of the American Arbitration Association ("AAA"). *See KJH & RDA Investor Group, LLC v. Eighth Judicial Dist. Court of Nevada*, 2009 WL 1455992, *2 n.3 (Nev. 2009). After referral to the AAA, the parties began the process of choosing an arbitrator in late 2009. Plaintiffs do not dispute that the AAA's Commercial Arbitration Rules and Mediation Procedures, effective June 1, 2009, govern the arbitration selection process. R-1 of the rules states, in part, "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] ... of a domestic dispute without specifying particular rules.... The parties, by written agreement, may vary the procedures set forth in these rules." R-1 of the AAA Commercial Arbitration Rules and Mediation Procedures ("AAA Rules"), available at http://www.adr.org/sp.asp?id=22440. R-11 of the AAA Rules provides, in part, as follows:

> (a) If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner: The AAA shall send simultaneously to each party to the dispute an identical list of 10 (*unless the AAA decides that a different number is appropriate*) names of persons chosen from the National Roster....
> (b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA.... From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. *If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, ... the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists*.

*Id.*

In the process of identifying the potential arbitrator of their dispute, the parties also requested various qualifications for the arbitrators: Defendants requested arbitrators with transactional experience; Plaintiffs requested arbitrators with a "background in securities matters," preferably "former U.S. Attorneys or Assistant U.S. Attorneys." (Dkt. #69, Opp'n Ex. 2, October 9, 2009 email from Weed.) After Jonathan Weed, the AAA case administrator, submitted the first list of ten candidates to the parties, Plaintiffs learned that one of the candidates was employed by the same firm as the attorney who drafted the contract at issues in the parties' dispute. Plaintiffs viewed this as a conflict of interest and as evidence that Weed never screened the arbitrators for conflicts of interest. As reflected in an email Weed wrote, Plaintiffs, Defendants, and Weed agreed that arbitrators on the initial list would be screened for conflicts, and that a new list would be compiled in which those arbitrators on the initial list with conflicts would be "replac[ed]" by arbitrators with no conflicts. (Dkt. #68, Mot. Ex. 5, Oct. 15, 2009 email from Weed.) Plaintiffs argue, plausibly, that this agreement implies Weed would produce a new list of ten arbitrators. Weed also emailed the parties, stating that the AAA "expects to provide a list of ten names without conflicts for this matter." (Dkt. #69, Opp'n Ex. 7, Nov. 17, 2009 email from Weed.) Plaintiffs also argue this agreement amounted to a modification of the AAA rules pursuant to AAA R-1(a), which states that "[t]he parties, by written agreement, may vary the procedures set forth in these rules." (Dkt. # 68, Mot. Ex. 1.)

After other discussion between the parties and Weed concerning the parties' desired qualifications of potential arbitrators (including a request that potential arbitrators disclose information about past arbitrations), Weed submitted a second list to the parties on January 29, 2010. In an accompanying letter, Weed encouraged the parties to leave as many names as possible on the list, and warned the parties that if an arbitrator could not be appointed from the list, the AAA "shall administratively appoint the arbitrator as authorized in the Rules without the submission of an additional list." (Dkt. #69, Opp'n Ex. 10a, Jan. 29, 2010 email from Weed.) The second list had a total of eight arbitrators and included only two of the arbitrators from the first

list. One of the arbitrators did not provide information regarding his past arbitrations, allegedly because of confidentiality restrictions. In his letter, Weed explained that the AAA was "providing fewer arbitrators than originally anticipated" and that it had "exercised our best efforts to provide the parties will all of the available members of the Class Action Panel meeting the requested qualifications." (*Id.*) Weed also stated that "[i]f additional arbitrators become available," the AAA would "share their information with the parties immediately" so that the parties could "consider them as part of the selection process." (*Id.*)

That same day, Plaintiffs emailed Weed and Defendants stating that they objected "to this entire process[.]" (*Id.* Ex. 11, Jan. 29, 2010 email from Norman Blumenthal.) They complained that one of the arbitrators on the second list did not disclose information as to his past arbitrations, and that the list did not include ten names. Plaintiffs alleged these circumstances were "inherently prejudicial" and indicated they would not choose an arbitrator until they had received the names of three more arbitrators who disclosed information about previous arbitrations. (*Id.*) Despite Plaintiffs' request, no other candidates were added to the list. Plaintiffs struck six of the eight candidates from the list. Defendants presumably struck the two candidates Plaintiffs preserved, because on February 26, Weed appointed Brendan Hare, who was not previously listed as a candidate on the lists, to arbitrate the parties' dispute. Plaintiffs immediately responded to the appointment in an e-mail stating, "we object to this entire selection process as being a sham and a fraud." (Dkt. # 68, Mot. Ex. 11.) Plaintiffs allege that in subsequent communications, Weed stated that Hare "was not immediately desirable for the case and was intentionally held back in case there was no agreement." (*Id.*) Plaintiffs then attempted to strike Hare, arguing they were entitled to strike Hare because the second list included less than ten arbitrators. On April 1, 2010, Plaintiffs requested that the President and Vice President of the AAA review Moss' conduct and his appointment of Hare. The following day, Defendants responded to Plaintiffs' request. On April 9, an assistant vice president of the AAA wrote back to the parties and stated that after a review of

4

the parties' contentions, the AAA would "not issue a further arbitrator selection list" and that it had "determined that Arbitrator Hare will be reaffirmed as arbitrator" of the parties' dispute.

Plaintiffs filed the motion now before the Court, in which they allege that the AAA violated the AAA Rules and the agreement of the parties, and request that the Court "order the AAA to strike Mr. Hare as arbitrator and order the AAA to follow the AAA Rules and the agreement of the parties." (Dkt. #68, Mot. 11.) For the reasons below, the Court denies Plaintiffs' Motion.

## DISCUSSION

A court, not an arbitrator, decides questions relating to arbitration "in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the ... matter[.]" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). In contrast, questions "parties would likely expect that an arbitrator would decide" are to be decided by an arbitrator. *Id.* at 84. Consistent with that rule, "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (citation and internal quotation marks omitted; emphasis in original); *see also Dockser v. Schwartzberg*, 433 F.3d 421, 425 (4th Cir. 2005) (holding that an issue was procedural where "AAA rules, which the parties contractually agreed to employ, provide[d] specific non-judicial procedures for its resolution"). However, "procedural unfairness inherent in an arbitration agreement may be challenged before the arbitration. When the process to select the arbitrator is fundamentally unfair, ... the arbitral forum is not an effective substitute for a judicial forum[.]" *McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 n.7 (6th Cir. 2004); *see also Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 385–86 (6th Cir. 2005); *Hooters of Am. v. Phillips*, 173 F.3d 933 (4th Cir. 1999).

Plaintiffs' motion fails because nothing they complain of renders the arbitration selection process as it transpired "fundamentally unfair" within the meaning of the cases addressing the issue. In those cases, the very processes through which arbitrators were chosen were

biased in favor of one party. *Hooters*, 173 F.3d at 938 (arbitrator selection rules provided that party must select arbitrator from a list created exclusively by opposing party); *McMullen*, 355 F.3d at 493–94 (process provided one party with exclusive control over pool of potential arbitrators); *Walker*, 400 F.3d at 386 (symbiotic financial relationship between a party and for-profit arbitration organization created circumstance where the party effectively determined the pools of arbitrators). Nothing Plaintiffs have alleged legitimately places into question the neutrality of the process through which Hare was selected.

        Plaintiffs allege Weed violated R-1 of the AAA Rules, which provides that "[t]he parties, by written agreement, may vary the procedures set forth in these rules." Plaintiffs argue that Weed violated R-1 "by (i) failing to provide a full list of 10 neutral arbitrators, (ii) failing to retain on the list all 9 arbitrators without conflicts before adding others to the list, (iii) failing to place additional arbitrators on the list as they became available, and (iv) failing to accept Plaintiffs' strike of Mr. Hare." (Dkt. #86, Mot. 8.) Although Weed's emails of October 15, 2009 and November 17, 2009 certainly indicated he would provide the parties with a list of ten arbitrators, Plaintiffs have not shown the parties themselves made a "written agreement" clearly setting out to "vary the procedures set forth in these rules." (R-1 of AAA Rules.) Instead, although Plaintiffs attempt to construe Weed's emails as such an "agreement," the facts much more strongly support the conclusion that the parties were simply following the AAA Rules for arbitrator selection, which provide that the AAA's selection list will include ten arbitrators "*unless the AAA decides that a different number is appropriate*[.]" (R-11 of AAA Rules.) Weed apparently so decided, and explained his decision to the parties *before* Plaintiffs struck six of the eight arbitrators on the list, forcing Weed's hand to appoint Hare (which Weed did consistent with R-11(b)). Weed also apparently represented that he would place those conflict-free arbitrators from the first list onto the second list, and did not. To the extent this may be considered a violation of the parties' alleged "agreement" as expressed in Weed's October 15 email, it, like Weed's failure to place additional arbitrators on the second list as they might have become available and his failure to

accept Plaintiffs' "strike" of Hare, did not render the arbitration selection process fundamentally unfair.

In short, the Court concludes Plaintiffs have not sufficiently shown the parties actually made a written agreement varying the procedures set forth in the AAA Rules. Even if they did and if Weed's emails memorialize such an agreement, Plaintiffs have not shown that anything in the arbitration selection process was fundamentally unfair, or that anything about the process places its neutrality or the neutrality of Mr. Hare into doubt. The Court therefore denies Plaintiffs' Motion and orders that the arbitration proceed as the AAA directs.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Order Requiring the AAA to Sustain Objection to Appointment of Arbitrator (#68) is DENIED.

Dated: August 11, 2010.

_____
ROGER L. HUNT
**Chief United States District Judge**