MORRIS PETERSON
Steve Morris, No. 1543
Email:  sm@morrislawgroup.com
Akke Levin, No. 9102
Email:  al@morrislawgroup.com
Jean-Paul Hendricks, No. 10079
Email:  jph@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101
Telephone:  (702) 474-9400
Facsimile:    (702) 474-9422

WOOD, SMITH, HENNING & BERMAN LLP
Jason C. Gless, No. 8469
Email:   jgless@wshblaw.com
7670 West Lake Mead Boulevard, Suite 250
Las Vegas, Nevada  89128
Telephone:  (702) 222-0625
Facsimile:    (702) 253-6225

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN SUSSEX; MITCHELL PAE; MALCOLM NICHOLL and SANDY SCALISE; ERNESTO VALDEZ, SR. and ERNESTO VALDEZ, JR; JOHN HANSON and ELIZABETH HANSON,<br><br>Plaintiffs,<br><br>v.<br><br>TURNBERRY/MGM GRAND TOWERS, LLC, a Nevada LLC; MGM GRAND CONDOMINIUMS LLC, a Nevada LLC; THE SIGNATURE CONDOMINIUMS, LLC, a Nevada LLC; MGM MIRAGE, a Delaware Corporation; TURNBERRY/ HARMON AVE., LLC, a Nevada LLC; and TURNBERRY WEST REALTY, INC., a Nevada Corporation,<br><br>Defendants. | Case No. 2:08-cv-00773-RLH-PAL<br><br><br>**OPPOSITION TO MOTION FOR RECONSIDERATION OF ORDER COMPELLING ARBITRATION** |

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

## I.  INTRODUCTION

The Court should deny Plaintiffs' untimely and opportunistic motion for reconsideration.  This Court granted defendants' motion to compel arbitration on June 16, 2009 (#59).  Only now, *nearly two years later,* Plaintiffs ask the Court to reconsider its June 16, 2009, order because they received an unfavorable ruling in arbitration.  The arbitrator's clause construction award disfavoring class arbitration is not "newly discovered evidence," nor is it a basis for reconsideration.  The defendants have consistently maintained that the plaintiffs are not entitled to class arbitration.

Plaintiffs' motion is little more than a rehashing of the same old arguments on procedural and substantive unconscionability.  So they continue to argue that the arbitration agreement changes the applicable burdens of proof under NRS 90.690, which Magistrate Judge Leen rejected years ago.[1]  The recently decided *Gonski* case, which is easily distinguishable from this case, does not present an "intervening change of controlling law" that favors the plaintiffs.  It does not overrule or change the analysis of *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 96 P.3d 1159 (2004) or *KJH & RDA Investor Group v. Eighth Judicial Ct.* 2009 WL 1455992 (Nev. Apr. 22, 2009) on which this Court based its order compelling arbitration.

The only true "intervening change of controlling law" that is dispositive of both Plaintiffs' motion for reconsideration and its motion to vacate the clause construction award is *AT&T Mobility, LLC v. Concepcion*, 563 U.S. __, __ S. Ct. __, 2011 WL 1561956 *8 (U.S. April 27, 2011).  *Concepcion* abrogated the *Discover Bank* rule on which Plaintiffs rely in their renewed attempt to invalidate the arbitration provision.  Motion at 3, 5.  The *Concepcion* court held that

---

[1] *See* Transcript (excerpts), Exhibit A hereto at 29-31.  In fact, Magistrate Judge Leen got Plaintiffs' counsel to concede that Plaintiffs have the initial burden of proof under NRS chapter 90.  *Id.* at 30:17-24.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1   "[r]equiring the availability of classwide arbitration interferes with fundamental

2   attributes of arbitration and thus creates a scheme inconsistent with the FAA."

3   *Concepcion*, 563 U.S. at __, __ S. Ct. at __, 2011 WL 1561956 at *8.  Even if states have

4   a public policy favoring class actions, such as California and Nevada, "States

5   cannot require a procedure that is inconsistent with the FAA, even if it is desirable

6   for unrelated reasons." *Id*. at * 9, 13.  Even assuming Plaintiffs were right in their

7   contorted argument that the arbitrator's *interpretation* of the arbitration clause as

8   not permitting class arbitration equals a silent or express class waiver, such

9   waivers do not invalidate the arbitration provision.  *Id.*

10          This case began three years ago.  The parties have yet to reach the

11   merits of Plaintiffs' claims and Defendants' defenses.  The parties have been

12   engaged in a "procedural" food fight that is the antithesis of arbitration.  *See id*. at

13   *10.  Defendants respectfully ask the Court to deny Plaintiffs' motion and order

14   them to get on with the arbitration that should have been history by now.

15   **II.      ARGUMENT**

16          **A.      Standard for Motion for Reconsideration.**

17          Reconsideration of a court's previous order is an "*extraordinary remedy*

18   to be employed sparingly in the interests of finality and conservation of scarce

19   judicial resources." *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y.

20   2002) (emphasis added).  Motions for reconsideration are only warranted in

21   limited circumstances, such as when new evidence is discovered, an intervening

22   change in controlling law takes place, or upon a showing that "the initial decision

23   was clearly erroneous or manifestly unjust." *Nunes v. Ashcroft*, 375 F.3d 805, 807–08

24   (9th Cir. 2004).  This Court recently held that "[t]o be clearly erroneous, a decision

25   must strike [the court] as more than just maybe or probably wrong; it must, strike

26   [the court] as wrong with the force of a five-week-old unrefrigerated dead fish."

27   *Hadel v. Willis Roof Consulting, Inc.*, 2010 WL 5055776, *1 (D. Nev. Dec. 3, 2010)

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

3

1   (denying motion for reconsideration and citing *Parts & Elec. Motors, Inc. v. Sterling*

2   *Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).  Any new facts or law must be "of a

3   strongly convincing nature to induce the court to reverse its prior decision." *Stein*

4   *v. State Farm Mut. Auto. Ins. Co.*, 934 F. Supp. 1171, 1173 (D. Hawaii 1996).

5          Motions for reconsideration may not be used  as "'vehicles for

6   rehashing old arguments.'" *Hadel*, 2010 WL 5055776 at * 1 (quoting *Resolution Trust*

7   *Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994)); *see also In re AgriBio Tech.,*

8   *Inc.*, 319 B.R. 207, 209 (D. Nev. 2004) (to same effect).  Nor can such motion be used

9   to raise arguments that could and should have been made before the order was

10  entered.  *See FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986).  As discussed

11  below, Plaintiffs' untimely motion expresses only Plaintiffs' "continued belief that

12  the court's decision was erroneous." *New York v. United States*, 880 F. Supp. 37, 39

13  (D. D.C. 1995).  The motion should be denied.

14  **B.    Plaintiffs' Motion Should Be Denied as Untimely.**

15         **1.    *Motions Seeking Reconsideration Should be Timely.***

16         Motions for reconsideration of an interlocutory order, such as an

17  order compelling arbitration, should be brought within a reasonable time.  *Scurtu*

18  *v. Hospitality & Catering Mgmt. Servs.*, 2010 WL 2985894, * 4 (S.D. Ala. July 27, 2010);

19  *see also U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 2007 WL 2091020 (N.D. Ill. July 18,

20  2007) (holding that courts have discretion to deny untimely motions for

21  reconsideration of interlocutory orders); *Anderson v. Cornejo*, 199 F.R.D. 228, 252

22  (N.D. Ill. 2000) (to same effect); *cf. Owen-Williams v. BB&T Inv. Servs., Inc.*, 717 F.

23  Supp. 2d 1, 5, 9 (D.D.C. 2010) (motions for reconsideration of a final order

24  compelling arbitration must be brought within the time periods set by Fed. R. Civ.

25  P. 59(e) and 60(b)).  "What constitutes a 'reasonable time' depends upon the facts of

26  each case, taking into consideration the interest in finality, the reason for delay, the

27  practical ability of the litigant to learn earlier of the grounds relied upon, and

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

4

1  prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981).

2  Motions on the basis of "newly discovered evidence" must be brought within one

3  year.  Fed. R. Civ. P. 60(b)(2), (c)(1).  And courts have been unyielding in requiring

4  that a party show good reason for the failure to take appropriate action sooner.

5  *United States v. Martin*, 395 F. Supp. 954, 961 (S.D.N.Y. 1975) (citing 11 C. Wright &

6  A. Miller, Federal Practice and Procedure, § 2857, 160–61 (1973)); *Mut. Life*, 206

7  F.R.D. at 498 (same).

8         The *Scurtu* case is directly on point.  In *Scurtu*, as here, the defendants

9  moved for an order compelling arbitration after the plaintiffs filed suit.  2010 WL

10  2985894 at *1.  Like the plaintiffs here, the *Scurtu* plaintiffs opposed the motion

11  arguing, among other things, that the arbitration agreement was unconscionable

12  and unenforceable under state law.  *Id.*  The court granted the motion and stayed

13  the case pending the outcome of arbitration.  *Id.*  The parties spent the next 30

14  months "mired in arbitration" with no arbitration hearing being conducted, no

15  substantive issues being resolved, and interminable discovery disputes.  *Id.*  When

16  plaintiffs informed the arbitrator that they could no longer afford to pay their

17  share of his fees, the arbitrator stated that he could not proceed.  *Id.* at *2.

18  Thereafter, plaintiffs moved to withdraw reference to arbitrator based on "newly

19  discovered" evidence.  The *Scurtu* court denied plaintiffs' motion for

20  reconsideration of the order compelling arbitration because:

> Plaintiffs waited more than 30 months to seek reconsideration of the order compelling arbitration, during which time the parties had expended considerable resources in arbitration.  If plaintiffs believed the order compelling arbitration was manifestly erroneous, they should have sought reconsideration immediately rather than waiting until the arbitration process was nearly concluded.  Such delay was not reasonable, and precludes plaintiffs' efforts to relitigate mutual assent, unconscionability, and other enforceability issues pertaining to the agreements at this time.

27  *Id.* at *3 - 4.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

5

1    Similarly, in *Owen-Williams*, the plaintiffs waited more than two years
2 before moving for reconsideration of the court's order compelling arbitration.  717
3 F. Supp. 2d at 9.  There, as here, the plaintiff argued among other things that
4 "newly discovered evidence" justified reconsideration.  *Id.* at 11.  The *Owen-*
5 *Williams* court denied the motion as untimely, noting that the one-year time limit
6 under Fed. R. Civ. P. 60(b)(2) for "newly discovered evidence" is "'ironclad,' and
7 cannot be extended by the Court."  *Owen-Williams*, 717 F. Supp. 2d at 11 (internal
8 citation omitted).  The court pointed also pointed out that the plaintiff could not
9 avoid that time limit by seeking to bring its motion under the catch-all provision
10 of Fed. R. Civ. P. 60(b)(6).  *Owen-Williams*, 717 F. Supp. 2d at 11.

11    **2.    *Plaintiffs' Motion for Reconsideration—Filed 20 Months After***
    ***the Court's Order Compelling Arbitration—is Unreasonably***
12    ***Late.***

13    Here, all four *Ashford* factors weigh in favor of denying the motion as
14 untimely.  The Court entered its order compelling arbitration on June 16, 2009
15 (#59).  Plaintiffs did not move for reconsideration of the order until March 24,
16 2011—***more than twenty months later***.  (#86-1).  Plaintiffs offer no good reason for
17 the delay.  How could they?  They are by and large repeating their previously-
18 rejected arguments.  If plaintiffs really thought that the Court's order presented an
19 "extremely close issue,"[2] they should have timely moved for reconsideration two
20 years ago.  Instead, they made a deliberate choice to do nothing until they
21 obtained an unfavorable ruling, which they incredibly refer to as "new evidence."
22 "[C]alculated, deliberate choices are not to be relieved from under Fed. R. Civ. P.
23 60(b)." *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) (citing
24 *Ackermann v. United States*, 340 U.S. 193, 198 (1950)).

25    Although Plaintiffs will argue that there is no interest of finality with
26 respect to the Court's interlocutory order compelling arbitration, it would create
27

28    [2]  Mot. for Reconsideration (#86-1) at 1:6–7; 4:27–28.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

6

an "unacceptable" uncertainty if parties could endlessly postpone filing a motion for reconsideration of an order compelling arbitration until such time that "subsequent decisions in other cases render their positions viable." *Plotkin*, 688 F.2d at 1293 (discussing the uncertainty that would result if party, who foregoes right of appeal of a final order, were permitted to use Rule 60(b) to vacate the judgment on the basis of subsequent decisions in other cases). Since arbitration began in October 2009, the parties have expended a significant amount of time and money in arbitration, which included dealing with Plaintiffs' numerous and unfounded objections to the AAA arbitrator selection process, Plaintiffs' motions to disqualify the arbitrator before the AAA and this Court (# 68), and extensive briefing and argument on clause construction (# 85, # 86). *See also* Exhibits C through E hereto. To permit Plaintiffs to come back to Court eighteen months later to undo what has been done in arbitration is prejudicial to Defendants, all of whom have now accepted arbitration as the forum to decide the dispute.

Plaintiffs did not just recently learn Defendants' position on class arbitration, nor did Defendants change their position after *Stolt-Nielsen*. In their July 7, 2008, motion to compel arbitration, Defendants took the position that the "question of whether an arbitration provision *permits* class arbitration is a matter of construction of the arbitration provision. . .*for the arbitrator* to decide." Motion to Compel Arbitration at 16 (citing to *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) (emphasis added). Thus, Plaintiffs have known since July 7, 2008, that Defendants expected the arbitrator to decide this question, precisely as provided by Rule 3 of the AAA Supplementary Rules for Class Arbitrations ("Class Rules"). Plaintiffs also knew at that time—almost 3 years ago—that Defendants took the position that the case "*could not be properly maintained as a class action*." Motion to Compel at 16 n. 7 (emphasis added). Plaintiffs cannot possibly maintain that

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1  Defendants lulled them into believing they would concede clause construction in
2  arbitration.

3          Should there be any doubt as to what Plaintiffs knew and understood
4  about Defendants' position, on June 2, 2010, Defendants served Plaintiffs with a
5  Supplement to their Answering Statement in which they cited to *Stolt-Nielsen* and
6  asserted this affirmative defense:

7              The American Arbitration Association and the Arbitrator
8              lack jurisdiction over Claimants' demand for class
               arbitration *because the parties did not agree to class*
9              *arbitration in their contract, they have not otherwise*
               *agreed or stipulated to class arbitration, and none of the*
10             *Respondents has consented to class arbitration*.

11  Exhibit B hereto (emphasis added).

12          Thus, Plaintiffs knew about Defendants' alleged "change" in position
13  no later than nine months ago, they did not seek reconsideration of the Court's
14  order then, instead betting on the outcome of the arbitrator's decision on clause
15  construction.  The only reason Plaintiffs seek reconsideration now is because they
16  lost their bet and are now faced with an "extremely limited" and highly deferential
17  standard of review on their motion to vacate the clause construction award.
18  *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003).
19  Plaintiffs' motion for reconsideration is untimely and opportunistic; it should be
20  denied for those reasons alone.

21      **C.      Plaintiffs Have Not Presented *Any* "Newly Discovered" Evidence.**

22          To obtain relief from an order based on newly discovered evidence,
23  plaintiffs must show that (1) the evidence relied on in fact constitutes "newly
24  discovered evidence" within the meaning of Rule 60(b); (2) they exercised due
25  diligence to discover this evidence; and (3) the newly discovered evidence must be
26  of "such magnitude that production of it earlier would have been likely  change
27  the disposition of the case." *Feature Realty, Inc. v. City of Spokane*, 331 F.3 1082, 1093

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

8

1   (9th Cir. 2003). Evidence is something that has a tendency to prove or disprove an

2   allegation of fact. Fed. R. Evid. 401; *see also* Black's Law Dictionary 250 (2d ed.

3   2001) (same).

4          Contrary to Plaintiffs' argument, *neither* the arbitrator's ruling, *nor*

5   Defendants' alleged "new" position in arbitration qualifies as "newly discovered"

6   evidence. First of all, the arbitrator did not rule that "the agreement bars class

7   action claims," as Plaintiffs contend, but he concluded that the arbitration clause

8   did not evidence an agreement or intent to permit class arbitration. Award at 22.

9   Regardless however, the arbitrator's decision on clause construction is just that —

10  a decision construing the arbitration clause. The Award is not a new fact recently

11  discovered by Plaintiffs. Plaintiffs' contorted attempt to morph the arbitrator's

12  *interpretation* of the arbitration clause into new evidence of a "silent waiver" — a

13  contradiction in terms — and from there to argue case law on *express* class action

14  waivers — another aberrant leap — does not new evidence make.

15         Plaintiffs' argument relative to Defendants' alleged "new" position in

16  arbitration—that the parties did not agree to class arbitration— is also misguided.

17  The *Owen-Williams* court recently considered and rejected a similar argument as

18  "clearly without merit." 717 F. Supp. 2d at 12. There, as here, the plaintiff argued

19  that the defendant had made a representation in its motion to compel arbitration

20  that it supposedly changed in arbitration. *Id.* at 11. Contrary to the plaintiff's

21  "present characterization" however, the defendant had *not* argued that the plaintiff

22  was an employee of the defendant, and the decision on the motion to compel did

23  not "hinge[] upon a finding that Plaintiff had been an employee of BB & T." *Id.*

24         Similarly here, Plaintiffs contend Defendants argued in their motion

25  to compel arbitration "that class arbitration was not precluded." Motion at 4. This

26  characterization misrepresents Defendants' argument. Defendants pointed out

27  that the PSA's arbitration clause—unlike the one in *Ting*—did not have a class

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

9

action waiver, and argued that the question whether the clause "*permits*" class arbitration—*i.e.*, the clause construction issue—was not before the Court but for the arbitrator to decide.  Mot. to Compel Arbitration at 16.  As in *Owen-Williams*, the Court's decision to compel arbitration did not hinge on whether or not the clause permitted or precluded class arbitration: the Court compelled arbitration based on the Nevada Supreme Court's decision in the *KJH* action.  Order Compelling Arbitration (#59).  As Plaintiffs concede, "the class action waiver was never considered by the Nevada Supreme Court."  Motion at 5.  Indeed, the Nevada Supreme Court did not address substantive unconscionability because it found that the "total absence of procedural unconscionability" was "dispositive." *KJH & RDA Investor Group, LLC v. Eighth Judicial Dist. Ct.*, 2009 WL 1455992 * 2 (Nev. April 22, 2009).  There is no new evidence justifying reconsideration.

**D.**   **The *Gonski* Case Does Not Represent an "Intervening Change in Controlling Law" and Does not Justify Reconsideration.**

To prevail on a motion for reconsideration based on an intervening change in controlling law, Plaintiffs must put forth "facts or law of a *strongly convincing nature* to persuade the court to reverse its prior decision."  *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (emphasis added and citations omitted) (denying motion for reconsideration); *Hadel*, 2010 WL 5055776 at * 1 (holding same, citing to *Frasure*, *supra*); *see also In re Network Equip. Techs., Inc., Litig.*, 762 F. Supp. 1359, 1368 n.3 (N.D. Cal. 1991) ("A motion for reconsideration will be granted only when there is a "strongly convincing" basis for setting aside the Court's prior ruling, such as an intervening change in controlling law or the availability of new decisive evidence").

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

Contrary to plaintiffs' contention, the *Gonski* case[3] does not provide a material change in controlling law to justify reconsideration. *Gonski* follows the same analytical approach and law as *D.R. Horton*[4]—the case on which both the Court in this case and the Nevada Supreme Court in *KJH* relied in upholding the validity of section 24.10 of the PSAs.[5]  Neither *D.R. Horton* nor *KJH* was overruled by *Gonski*.  Instead, the *Gonski* case was simply decided on different facts and concerned statutory rights not present in this case.

1. ***The Facts of Gonski Are Not Comparable to the Facts in this Case.***

The main facts on which the *Gonski* Court based its finding of procedural unconscionability — *i.e.*, the nature of the parties, their relative bargaining power, and the noticeability of the arbitration clause and its effects — are absent here.  In *Gonski*, the plaintiffs were a married couple purchasing a single family home in an age-restricted subdivision; they brought claims against the developer for construction defect.  *Gonski*, 126 Nev. Adv. Op. 51, 245 P.3d at 1166. Here, by contrast, Plaintiffs are sophisticated self-described real estate investors who bought luxury condominium units at prices ranging between $425,000 and $745,000 per unit and make claims for securities fraud.

In *Gonski*, the buyers were pressed to sign numerous documents in a limited amount of time.  Specifically, the buyers paid a $10,000 deposit to join a lottery to purchase the home and when they "won," they were instructed to go to

---

[3]  *Gonski v. Second Judicial Dist. Ct.*, 126 Nev. Adv. Op. 51, 245 P.3d 1164 (2010).

[4]  *Gonski*, 126 Nev. Adv. Op. 51, 245 P.3d at 1168–73 (analyzing procedural and substantive unconscionability under *D.R. Horton* standard).

[5]  *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 96 P.3d 1159 (2004); Order (#59), June 16, 2009; *KJH & RDA Investor Group v. Eighth Judicial Ct.* 2009 WL 1455992 (Nev. Apr. 22, 2009).

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

11

the sales office to sign the purchase agreement within five days. *Gonski*, 126 Nev. Adv. Op. 51, 245 P.3d at 1167. When they arrived at the sales office, "they were handed a stack of 25 pre-printed forms, totaling over 469 pages, and told that if the documents were not signed and executed at that time 'there were several other people waiting to step in and purchase the residence.'" *Id.* No similar facts exist in this case. Plaintiffs' declarations do not say that they were hurried into signing the PSAs. Plaintiffs' belated attempt to distinguish themselves from the *KJH* plaintiffs fails. Defendants submitted unrefuted evidence that plaintiff Mary Ann Sussex successfully negotiated an assignment and assumption amendment to her PSA, *see* Ex. D to Motion to Compel Arbitration (#17) — thus disproving Plaintiffs' formulaic declarations that the PSAs were presented to them on a "take-it-or-leave-it basis." Motion at 8.

Finally, in *Gonski* there were *two* arbitration clauses, found in *separate* documents (a purchase contract and a separate limited warranty agreement), which were found to be inconspicuous and misleading because, among other things, they contradicted each other on the payment of arbitration expenses. *Id.* at 1166, 1170. Although the *Gonski* court took issue with the fact that the arbitration clauses were in the same font as other clauses and were not otherwise highlighted, the point was that nothing drew Plaintiffs' "attention to the importance of what those pages contained." *Id.* at 1170. The "importance" was that the arbitration clause in the limited warranty papers pertaining to the construction defect claims the Gonskis were making (1) was included with the stack of paperwork and was not required to be signed by the Gonskis; and (2)  provided for a mediation process that differed in important parts from the mediation process provided for in NRS Chapter 40. *Id.* As a result, the clause did not adequately put the Gonskis on notice that they were agreeing to forego important rights under NRS Chapter 40. *Id.*

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

12

Here, in contrast, there is just one arbitration clause, which appears in the main body of the PSA on page 9. PSA § 24.10. Plaintiffs were required to and did initial the page on which the arbitration clause appears. *Id.* Plaintiffs have not asserted construction defect claims or alleged that the arbitration clause waives any *statutory* rights under Nevada law. They do not claim that the terms of the arbitration clause are misleading or confusing. Instead, Plaintiffs now contend that they were not adequately notified that they were agreeing to forego their "right" to bring a class action. However, unlike the Gonski's statutory right under NRS Chapter 40 to a specific mediation process, the statutes under which Plaintiffs sue, such as NRS Chapter 90 and NRS Chapter 598, do not provide for a "right" to bring a class action.

Even under the *Gonski* facts, however, the Nevada Supreme Court found the procedural unconscionability "not overwhelming." *Id.* Considering the important factual differences between *Gonski* and this case, Plaintiffs have shown no "facts or law of a strongly convincing nature to persuade the court to reverse its prior decision" on procedural unconscionability.

> ### 2. *Gonski does not Overrule D.R. Horton or Create New Law.*

*Gonski* did not change the holding in *DR Horton* that arbitration agreements need not "explain in detail each and *every* right that [a party] would be waiving . . ." *D.R. Horton v. Green*, 120 Nev. 549, 555-57, 96 P.3d 1159, 1166 (2004) (emphasis added). For example, by signing an arbitration agreement, a party "expressly waive[s] her right to a jury trial" even if the arbitration clause may not explicitly say so. *Whitemaine v. Aniskovich*, 124 Nev. 29, __, 183 P. 3d 137, 144 n. 31 (2008). Instead, both *DR Horton* and *Gonski* were concerned with making sure that a purchaser is put on proper notice that he or she is waiving important statutory rights. To be sure, there is no statutory right to maintain an action as a class under NRS Chapter 90.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

13

1    *Gonski* especially does not stand for the proposition that a clause

2    construction award renders the arbitration agreement procedurally

3    unconscionable any time the arbitrator concludes the parties did not agree to

4    permit class arbitration: An arbitrator's interpretation of the arbitration clause as

5    not permitting class arbitration does not equal, or translate into, a "silent class

6    action waiver" of which Plaintiffs should have been made aware.  As the Award in

7    the instant case makes clear, the arbitrator saw nothing in the language of section

8    24.10 to infer that the parties either agreed or did not agree to class arbitration.

9    Award at 22.  Thus contrary to Plaintiffs' conspiracy theory, Defendants did not

10   silently impose a class action waiver on Plaintiffs.  As Defendants acknowledged

11   and maintained from day one: There is no express class action waiver in section

12   24.10, but whether section 24.10 *permits* class arbitrations is a question of *contract*

13   *interpretation*, Motion to compel arbitration at 16, which question has nothing to do

14   with procedural unconscionability.  Plaintiffs do not cite a single case holding that

15   the validity of the arbitration clause must be re-evaluated should the arbitrator

16   find that the parties did not agree to permit class arbitration. *Not one.*

17   **E.    The Arbitrator's Finding That the Parties Did Not Agree to Class
         Arbitration Does Not Make the Arbitration Agreement
18       Substantively Unconscionable.**

19         Without elaboration or citation of a single legal authority, Plaintiffs

20   argue that a clause construction award concluding the parties did *not* agree to

21   class arbitration amounts to a "silent" class action waiver which, they say, is the

22   same as an "*express*" class arbitration waiver, hence affects *substantive*

23   unconscionability, hence "renders the entire arbitration provision [substantively]

24   unconscionable" under *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal.

25   2005) and other cases.  Motion at 3:7–5:28.  Even assuming an *interpretation* of an

26   arbitration provision equals an *express* class action waiver — an aberrant leap of

27   logic — Plaintiffs' argument would fail because the Supreme Court abrogated the

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

14

1  *Discover Bank* rule in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. \_\_, \_\_ S. Ct.\_\_,

2  2011 WL 1561956 (U.S. April 27, 2011).

>              **1.     The Discover Bank Rule is Abrogated and Would not Apply in
>                       Any Event.**

5           The seminal California case on class arbitration waivers, *Discover Bank*

6  *v. Superior Court*, cited in Plaintiffs' motion, held that class action waivers are

7  unconscionable when:

> [1] the waiver is found in a ***consumer contract*** of
> adhesion [2] in a setting in which disputes between the
> contracting parties predictably involve ***small amounts of***
> ***damages***, and [3] when it is alleged that the party with
> the ***superior bargaining power*** has carried out a scheme
> to deliberately cheat large numbers of ***consumers*** out of
> individually ***small sums of money***. . .

13  113 P.3d at 1110 (emphasis added).  The Nevada Supreme Court very recently

14  adopted the *Discover Bank* rule, holding that a class action waiver in a consumer

15  contract violates Nevada's public policy when the class members' "individual

16  claims may be *too small to be economically litigated* on an individual basis." *Picardi v.*

17  *Eighth Judicial Dist. Ct.*, 127 Nev. Adv. Op. 9, 2011 WL 1205284 *1-2 (Nev. Mar. 31,

18  2011) (citing cases).

19           On April 27, 2011, however, the United States Supreme Court decided

20  *AT&T Mobility, LLC v. Concepcion*, and abrogated the *Discover Bank* rule as an

21  "obstacle" to the FAA's dual purposes of "enforcing arbitration agreements

22  according to their terms" and promoting arbitration as an "efficient, streamlined"

23  proceeding. The *Discover Bank* rule interferes with the first purpose because the

24  rule permits a consumer to demand class arbitration "*ex post*," despite the parties'

25  *ex ante* agreement to preclude it, frustrating the consensual nature of arbitration.

26  *Id.* at * 9.  The rule frustrates the FAA's second purpose because "class arbitration

27  brings about fundamental changes to the arbitration procedure." *Id.*  First, class

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

15

arbitration takes away "the principal advantage of arbitration — its informality — and makes the process slower, more costly, and more likely to *generate procedural morass* than final judgment." *Id.* at * 10 (emphasis added). Indeed, the AAA Class Rules provide for a clause construction and class certification phase, with each phase providing for judicial review. Class Rules 3-5. The *Concepcion* court pointed to empirical data from the AAA showing that while the average bilateral arbitration took three to six months to be decided, of the "283 class arbitrations" that had been opened by the AAA since September 2009, "121 remained active, 162 were settled, dismissed or withdrawn, but "[n]*ot a single one. . . had resulted in a final award on the merits.*" *Concepcion*, 563 U.S. __, __ S. Ct.__, 2011 WL 1561956 at *10 (emphasis added). Sounds like this case.

Second, in contrast with the informality envisioned in arbitration, the *Conception* court opined that class actions "*require[]*" formal procedures, and found it unlikely that Congress meant to entrust arbitrators with ensuring that the due process rights of absent class members were satisfied. *Id.* at *11 (emphasis in opinion).

Finally, the majority elaborated on the consequences of imposing class arbitrations on defendants who did not contract for it. When thousands of small value consumer claims are aggregated in one class, they can result in one very substantial award. *Id.* Given the extremely limited standard of review and the huge stakes involved, defendants are often forced to settle even if their chances of losing are small. *Id.* Congress cannot have intended for states to "*force* such a decision." *Id.* at * 12 (emphasis added). The *Discover Bank* rule is preempted by the FAA because "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at * 13.

This *Sussex* case is a fine example of the "procedural morass" described by Justice Scalia: Since the *Sussex* Plaintiffs filed their class arbitration

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

16

1    demand on August 31, 2009 — 18 months ago— the parties have yet to get to the

2    merits of Plaintiffs' claims because they have been engaged in motion practice in

3    and outside of court on "class arbitration" issues; first on Plaintiffs' motion to

4    disqualify the arbitrator based on his alleged lack of "securities class action

5    experience"; then on the issue of whether section 24.10 permits class arbitration;

6    and now on Plaintiffs' motion to vacate the clause construction award and the

7    instant motion to reconsider the order compelling arbitration in light of the alleged

8    "silent" class action waiver.

9            This case also perfectly illustrates the "fundamental changes" class

10   arbitration would bring to this case:  Plaintiffs seek to arbitrate the claims of

11   "hundreds of plaintiffs," including absent ones, who seek to rescind their purchase

12   and sale agreements for luxury condominium units priced between $425,000.00

13   and $745,000.00 *each*.  Should Plaintiffs prevail, a single award in excess of

14   **$100,000,000.00** would be subject to an extremely limited judicial review.  Under

15   *Concepcion* and *Stolt-Nielsen*, this result cannot be "force[d]" on Defendants:  Any

16   alleged class action waiver does not render section 24.10 of the PSA substantively

17   unconscionable.[6]

18

19

20

21

22

23   _____

24          [6] The *Discover Bank* rule would not apply in any event.  In arbitration,
     Plaintiffs made the same argument under *Discover Bank* in their memorandum

25   brief on clause construction. *See* Exhibit C hereto at 4, 18.  In response,
     Defendants argued that the *Discover Bank* rule did not apply because the PSAs

26   for luxury condominium units are not consumer contracts of adhesion involving
     nominal damages. Opposition, Exhibit D hereto, at 21-22.  Plaintiffs' reply brief

27   altogether failed to address or rebut Defendants' argument, thereby conceding
     that the *Discover Bank* rule had no application.  *See* Exhibit E hereto.

28

MORRIS PETERSON
ATTORNEYS AT LAW
300 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

III.    **CONCLUSION**

None of Plaintiffs' old and failed arguments deserves another look.  It is time to get on with the arbitration the Court ordered 20 months ago by denying the motion for reconsideration.

MORRIS PETERSON

By:_____
     Steve Morris, No. 1543
     Akke Levin, No. 9102
     Jean-Paul Hendricks, No. 10079
     900 Bank of America Plaza
     300 South Fourth Street
     Las Vegas, Nevada  89101

WOOD, SMITH, HENNING & BERMAN LLP
Jason C. Gless, No. 8469
7670 West Lake Mead Blvd., Suite 250
Las Vegas, Nevada 89128

Attorneys for Defendants

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

18

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS PETERSON, and that the following documents were served via electronic service: **OPPOSITION TO MOTION FOR RECONSIDERATION OF ORDER COMPELLING ARBITRATION**

TO:

Robert B. Gerard
Ricardo R. Ehmann
Gerard & Associates
2840 So. Jones Blvd. - Bldg. D, Suite 4
Las Vegas, Nevada  89146
rgerard@gerardlaw.com
rehmann@gerardlaw.com

Robert Fellmeth
University of San Diego Law School
5998 Alcala Park
San Diego, California  92110
cpil@sandiego.edu

Norman Blumenthal
Blumenthal & Nordrehaug
2255 Calle Clara
La Jolla, California  92037
norm@bamlawlj.com

Burton Wiand
Wiand Guerra King
3000 Bayport Drive - Suite 600
Tampa, Florida  33607
bwiand@wiandlaw.com

Attorneys for Plaintiff

DATED this 28th day of April, 2011.

By: _____

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

19