MORRIS PETERSON
Steve Morris, No. 1543
Email:  sm@morrislawgroup.com
Akke Levin, No. 9102
Email:  al@morrislawgroup.com
Jean-Paul Hendricks, No. 10079
Email:  jph@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101
Telephone:  (702) 474-9400
Facsimile:   (702) 474-9422

WOOD, SMITH, HENNING & BERMAN LLP
Jason C. Gless, No. 8469
Email:  jgless@wshblaw.com
7670 West Lake Mead Boulevard, Suite 250
Las Vegas, Nevada  89128
Telephone:  (702) 222-0625
Facsimile:   (702) 253-6225

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN SUSSEX; MITCHELL PAE; MALCOLM NICHOLL and SANDY SCALISE; ERNESTO VALDEZ, SR. and ERNESTO VALDEZ, JR; JOHN HANSON and ELIZABETH HANSON, <br><br> Plaintiffs, <br><br> v. <br><br> TURNBERRY/MGM GRAND TOWERS, LLC, a Nevada LLC; MGM GRAND CONDOMINIUMS LLC, a Nevada LLC; THE SIGNATURE CONDOMINIUMS, LLC, a Nevada LLC; MGM MIRAGE, a Delaware Corporation; TURNBERRY/ HARMON AVE., LLC, a Nevada LLC; and TURNBERRY WEST REALTY, INC., a Nevada Corporation, <br><br> Defendants. | Case No. 2:08-cv-00773-RLH-PAL <br><br><br><br><br> **DEFENDANTS' OPPOSITION TO MOTION TO VACATE ARBITRATION RULING** |

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

The defendants hereby submit their opposition to plaintiffs' motion to vacate the arbitrator's partial final clause construction award ("Award").  The opposition is based on the Award, attached as Exhibit A hereto, the papers and pleadings on file, the following points and authorities, and such argument that the Court may allow.

## I.     INTRODUCTION

The Court should deny Plaintiffs' motion to vacate the arbitrator's Award because it falls far short of making a showing that the Award was "completely irrational" or that the arbitrator manifestly disregarded the law. Plaintiffs have done little more than repeat the arguments they unsuccessfully made before the arbitrator in the hope that the Court will overturn him. However, Plaintiffs are not entitled to a "full-bore legal and evidentiary appeal[] . . ." *Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008).  The Court must confirm the Award, even assuming the arbitrator had made serious mistakes of fact or law. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 640 (9th Cir. 2010).

The arbitrator did not disregard the law; he correctly applied it.  He did not make public policy as the arbitrators had done in *Stolt-Nielsen*.  He considered both parties' interpretations of the arbitration provision and concluded that the provision could not be construed to permit class arbitration. Award at 23.  There is nothing "completely irrational" about the arbitrator's Award.  Even assuming there was any doubt that the arbitrator disregarded analogous Nevada law on consolidation, *AT&T Mobility, LLC v. Concepcion* puts to final permanent rest any notion that class arbitration could be imposed against Defendants' will based on a competing Nevada policy. 563 U.S. __, __ S. Ct. __, 2011 WL 1561956 (U.S. April 27, 2011).

The Award should be confirmed.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

2

## II.    ARGUMENT

### A.    Standard of Review.

A party seeking to vacate an arbitration award under 9 U.S.C. § 10(a)(4) on the ground that the arbitrator exceeded his powers "must clear a high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. ___, 130 S. Ct. 1758, 1767 (2010).  Review of an arbitration award under the grounds listed in 9 U.S.C. § 10 is *extremely* limited. . . ."  *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003); *accord Health Plan of Nevada Inc. v. Rainbow Med., LLC*, 120 Nev. 689, 699, 100 P.3d 172, 179 (2004) (interpreting the grounds for vacatur under NRS 38.241).[1]  The purpose of a limited review is to prevent informal arbitration from becoming "a prelude to a more cumbersome and time-consuming judicial review process."  *Kyocera Corp.*, 341 F.3d at 998; *see also Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008) (to same effect)(citing to *Kyocera, supra*).

Courts may vacate an arbitration award only if (1) the award constitutes "'manifest disregard of the law'"; or (2) the award is "'completely irrational.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (internal citations omitted).  To show manifest disregard of the law, it is not enough to contend that the arbitrator interpreted or applied the law incorrectly. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010); *accord Health Plan of Nevada, Inc.*, 120 Nev. at __, 100 P.3d at 178 (legal mistakes do not justify setting aside an award).  Instead, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995).

Similarly, an award is not "irrational" merely because an arbitrator made "erroneous findings of fact." *Kyocera Corp.*, 341 F.3d at 997.  Even if the court

---

[1] The grounds for vacatur listed under 9 U.S.C. § 10(a)(1)-(4) are substantially similar to those listed under NRS 38.241(1)(a)-(d).

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

is convinced that the arbitrator made a serious mistake, this is not enough to overturn his decision. *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000). The award must be confirmed as long as arbitrators "even arguably construed or applied the contract and acted within the scope of their authority," *Barnes v. Logan*, 122 F.3d 820, 822 (9th Cir. 1997), as much as courts may disagree with the decision. *Envtl. Indus. Servs. Corp. v. Souders*, 304 F. Supp. 2d 599, 601 (D. Del. 2004). Arbitrators exceed their powers only when they refrain from interpreting and applying the agreement and choose to simply impose their "own view of sound *policy* regarding class arbitration." *Stolt-Nielsen*, 130 S. Ct. at 1767-68 (emphasis added).

As discussed below, the arbitrator did not ignore the applicable law but applied it. He examined the arbitration provision but found nothing in it evidencing the parties' intention to permit class arbitration under any circumstances. Even assuming the arbitrator made legal or factual errors in the process of construing the arbitration clause, mere errors are insufficient as a matter of law to support vacatur. The Court should deny Plaintiffs' motion and confirm the Award.

**B.     There is no Question that the Arbitrator Had Jurisdiction to Decide Whether the Parties Agreed to Class Arbitration.**

As a preliminary matter, the Court should reject Plaintiffs' attempt at identifying the issue of whether the parties agreed to class arbitration as a "gateway issue" that "the *courts* have jurisdiction to *decide*." Motion at 4 (emphasis added). The arbitration provision of the purchase and sales agreement ("PSA") commits questions as to the interpretation of PSA, including its arbitration provision, to the arbitrator. PSA, section 24.10. The parties agreed to the "Dispute Resolution Rules of the American Arbitration Association ("AAA") as modified herein." PSA, section 24.10. These rules provide that "*the arbitrator* shall determine *as a threshold matter. . .whether the applicable arbitration clause permits the arbitration to*

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

4

1  *proceed on behalf of or against a class.* . . . AAA Class Rules, Rule 3 (emphasis added).

2  Thus this Court does not *decide* this gateway issue but *reviews* it and does so under

3  a highly deferential review. *Kyocera Corp.* 341 F.3d at 998; *Stolt-Nielsen*, 130 S. Ct. at

4  1767-68.

**C.    The Arbitrator Recognized and Applied *Stolt-Nielsen* to the Letter.**

**1.    *The Stolt-Nielsen Holding and Rationale.***

7         The arbitrator began his analysis by discussing *Stolt-Nielsen S.A. v.*

8  *AnimalFeeds Int'l Corp.*, 559 U.S. ___, 130 S. Ct. 1758 (2010)("*Stolt-Nielsen*"), correctly

9  noting that this recent, seminal, decision is "central to the issues raised" in his

10  award.  Award, Exhibit A hereto, at 6.  In *Stolt-Nielsen*, the Supreme Court

11  answered the question that the plurality left open in *Green Tree Fin. Corp. v. Bazzle*,

12  539 U.S. 444, 453 (2003) — *i.e.*, the applicable rule "in deciding whether class

13  arbitration is permitted." *Stolt-Nielsen*, 130 S. Ct. at 1172  To answer that question,

14  the Supreme Court began by emphasizing the consensual nature of arbitration

15  and the fundamental role of the Federal Arbitration Act ("FAA"):

> While the interpretation of an arbitration agreement is
> generally a matter of *state law . . . the FAA imposes certain*
> *rules of fundamental importance,* including the basic
> precept that arbitration '*is a matter of consent, not*
> *coercion.*'"

20  *Stolt-Nielsen*, 130 S. Ct. at 1773 (internal quotation omitted) (emphasis added).  An

21  arbitration agreement, like any other contract, must be construed to give effect to

22  the parties' "contractual rights and expectations."  *Id.* at 1773.  Because the parties

23  are free to "specify *with whom* they choose to arbitrate their disputes," it falls to the

24  courts and arbitrators to give effect to such contractual limitations.  *Id.* at 1773-74

25  (emphasis in opinion).  Based on these principles, the Supreme Court held that "a

26  party may not be compelled under the FAA to submit to class arbitration unless

27  there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at

28  1775 (emphasis in the opinion).

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

5

1    The *Stolt-Nielsen* court rejected the notion of implying an agreement

2    to arbitrate as a class, because "the differences between bilateral and class-action

3    arbitration are too great for arbitrators to presume . . . that the parties' mere

4    silence on the issue of class-action arbitration constitutes consent to resolve their

5    disputes in class proceedings." *Id.* at 1776.  In a class arbitration, an arbitrator "no

6    longer resolves a single dispute between the parties to a single agreement but

7    instead resolves many disputes between hundreds or perhaps even thousands of

8    parties." *Id.*  The presumption of confidentiality does not apply under the AAA

9    rules. *Id.*  Moreover, the commercial stakes in class arbitration are similar to those

10   in class litigation, although the arbitration award would be subject to a very

11   limited judicial review.  *Id.*  Based on these "fundamental differences," the

12   Supreme Court held that the question is not whether the parties intended to

13   *exclude* class arbitration; the question is "whether they *agreed to authorize* class

14   arbitration." *Id.* at 1776 (emphasis in opinion).

15       2.    ***The Arbitrator Adopted Plaintiffs' Reading of Stolt-Nielsen.***

16   The arbitrator interpreted the holding of *Stolt-Nielsen* narrowly, in

17   favor of *Plaintiffs*.  For example, the arbitrator agreed with Plaintiffs that the

18   holding should be considered in light of the specific circumstances of the case,

19   including the fact that the parties were "sophisticated business entities. . ." Award

20   at 9.  In fact, the arbitrator noted that "the majority did not take issue with the

21   view expressed by the dissent. . . that the decision had no application to small

22   value consumer claims arising from a contract of adhesion." *Id.* n.2 (citing to *Stolt-*

23   *Nielsen*, 130 S. Ct. at 1783 (Ginsburg, J., dissenting).[2]  The arbitrator opined that

24

25       [2] We now know that the holding of *Stolt-Nielsen* is much broader than the
26   arbitrator anticipated.  The majority in *AT&T Mobility, LLC v. Concepcion*, 563
     U.S. __, __ S. Ct. __, 2011 WL 1561956 *8 (U.S. April 27, 2011), decided just a day
27   before this Opposition is being filed, went one step further and held that class
28   arbitration cannot be imposed in the absence of the parties' agreement even in
     small-value consumer cases.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

*Stolt-Nielsen* left open the possibility to *supply* a contract term permitting class arbitration in an appropriate case, and therefore went on to determine whether Nevada had a "default rule" permitting class arbitrations, precisely as Plaintiffs had suggested he do.  To be sure, the arbitrator rejected *Defendants*' argument that the language of the arbitration provision evidenced an intent for bilateral arbitration and lacked the necessary ambiguity to justify supplementing a default rule.[3]

### 3. The Arbitrator Agreed with Plaintiffs that Nevada Has a Default Rule on Consolidation of Arbitrations.

After discussing the statutory requirements of NRS 38.224, the arbitrator concluded "that Nevada does have a default rule relating to the consolidation of arbitration."  Award at 12.  The arbitrator went one step further, stating that "[i]t is *beyond doubt* that a court's treatment of the consolidation of arbitrations *is relevant* to its analysis on the availability of class arbitrations." *Id*. at 13 (emphasis added).  Thus Plaintiffs' contention that the arbitrator "erroneously ruled that this default rule was irrelevant," Motion at 1, is wholly unsupported and in fact expressly contradicted by the Award.  *Id*. at 12-13.  He ruled that a default rule for consolidation does not reach and support class arbitration.

### 4. The Arbitrator Correctly Declined to Make Public Policy.

The arbitrator also considered, as Plaintiffs had urged him to do, the rationale of *Keating v. Superior Court*, 645 P.2d 1192, 1208 (Cal. 1982) ("*Keating I*"), *overruled on other grounds* in *Southland Corp. v. Keating*, 465 U.S. 1, 17 (1984) ("*Keating II*").  In *Keating I,* the California Supreme Court relied on California's statute on consolidation of arbitrations "along with support by other state courts and the California legislature for consolidation of arbitration proceedings . . . ." to

---

[3] Defendants argued that the provision for a single arbitrator, for limited discovery, and for confidentiality of the proceedings were all indicia that the parties intended bilateral arbitration and that such intent was controlling. Opposition brief at 5-7.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

1   determine whether class arbitration could be permitted. *Keating II*, 465 U.S. at 9

2   n.4 (emphasis added). The California Supreme Court engaged in a comparison

3   between consolidation and class arbitration and came to the conclusion that class

4   arbitration is in many ways *less intrusive* than consolidated arbitration. *Keating I*,

5   645 P.2d at 1209; Award at 13-14 (quoting portions of *Keating I*).

6           However the arbitrator declined to follow *Keating I* and *II*, observing

7   that *Keating I* "preceded Justice Alito's detailed analysis of the crucial differences

8   between bilateral and class arbitration in *Stolt-Nielsen*." Award at 14. "That

9   analysis," the arbitrator continued, "raises substantial doubts as to how much

10  weight the Nevada Supreme Court would *now* place on an analogy to *consolidated*

11  arbitration." *Id.* (emphasis added). Indeed, Judge Alito's discussion of the four

12  "fundamental differences" between class arbitration and bilateral arbitration is not

13  mere "dicta," as Plaintiffs dismissively suggest. These four differences formed the

14  central basis for the Court's conclusion that the FAA requires an agreement to

15  authorize class arbitration. *Stolt-Nielsen*, 130 S. Ct. at 1776. Given the absence of

16  guidance from the Nevada Supreme Court on the issue, the arbitrator restrained

17  himself from "assuming 'the authority of a common law court to develop what [I]

18  view as the best rule be applied.'" Award at 15-16 (quoting *Stolt-Nielsen*, at 1769);

19  Award at 16 ("I cannot, based on existing precedents, reasonably anticipate that

20  the Nevada Supreme Court would conclude the state has a default rule

21  permitting class arbitrations").

22          By declining to make public policy, the arbitrator did not ignore but

23  followed *Stolt-Nielsen* to the letter. *See Stolt-Nielsen*, 130 S. Ct. at 1769 ("the task of

24  arbitrators is . . . *not to make public policy*")(emphasis added). In fact, if the

25  arbitrator had done what Plaintiffs wanted him to do — *i.e.*, to conclude, without

26  a basis in Nevada law, that Nevada has a default rule for class arbitration — he

27  would have clearly exceeded his powers and his Award would have been subject

28  to vacatur. *See id.* (arbitrators exceed their powers when imposing their "own

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

8

1   view of sound policy regarding class arbitration").  No matter how much

2   Plaintiffs may disagree with the arbitrator's decision, it is perfectly sound as a

3   matter of Nevada and federal law.

4        **5.    *The Arbitrator Did Not Ignore Controlling Precedent.***

5        Plaintiffs' argument that the arbitrator should have followed the

6   *Keating* decisions as "controlling precedent" is flawed. First, *Keating I* is not

7   binding precedent in Nevada.  The PSA is governed by Nevada law — *not*

8   California law.  Second, *Keating II* did not hold that a state's default rule on

9   consolidation may be applied by analogy to permit class arbitrations.  The

10  Supreme Court only noted that "[t]he California Supreme Court thus ruled that

11  imposing a class-action structure on the arbitration process was permissible *as a*

12  *matter of state law*." *Keating II*, 465 U.S. at 9 n.4 (emphasis added).  The Supreme

13  Court did not thereby adopt the California Supreme Court's ruling as a holding to

14  be applied and followed in other states such as Nevada.  How could it have done

15  so?

16       As the Supreme Court observed, the California Supreme Court had

17  *not* "passed upon the question whether superimposing class-action procedures on

18  a contract arbitration was contrary to the *federal* [Arbitration] *Act*." *Id*. at 9.

19  (emphasis added).  The *Stolt-Nielsen* court indirectly passed on that question and

20  answered it in the affirmative, by holding that "a party may not be compelled

21  under the FAA to submit to class arbitration unless there is a *contractual* basis for

22  concluding the party *agreed* to do so." *Stolt-Nielsen*, 130 S. Ct. at 1775 (emphasis

23  added, in part).  In *AT&T Mobility, LLC v. Concepcion*, the Supreme Court made

24  that holding crystal clear and directly answered the question left open in *Keating*:

25  imposing class arbitration without the parties' consent "is inconsistent with the

26  FAA." *Concepcion*, 563 U.S. __, __ S. Ct. __, 2011 WL 1561956 at *10.

27

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

9

### 6.      *Stolt-Nielsen Did not Endorse Applying a State Default Rule on Consolidation By Analogy.*

*Stolt-Nielsen* did not "hold" or "rule" that arbitrators should look to the state default rule for consolidation by analogy, as Plaintiffs repeatedly and mistakenly contend.  Motion at 1, 9-11.  There is not even a hint of such a proposition in *Stolt-Nielsen*, especially not on page 1773, which page Plaintiffs cite to several times in support.[4]  There, the Supreme Court essentially rejected the notion that a state law rule could impose a procedure to which the parties did not agree:

> While the interpretation of an arbitration agreement is generally a matter of *state law . . . the [Federal Arbitration Act] FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.*'

*Stolt-Nielsen S.A.*, 130 S. Ct. at 1773 (internal quotation omitted) (emphasis added); *accord Concepcion*,  563 U.S. __, __ S. Ct.__, 2011 WL 1561956 at *13 ("States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons").

The only reference to consolidation in *Stolt-Nielsen* appears on page 1769 of the opinion.  There, the Supreme Court faulted the arbitrators for acting like a "common-law court" instead of inquiring whether the FAA or "one of the two bodies of law that *the parties claimed were governing, i.e.,* either federal maritime law or New York law. . ." provided for a "'default rule' under which an arbitration clause is construed as allowing class arbitration in the absence of express consent." *Stolt-Nielsen*, 130 S. Ct. at 1768-69 (emphasis added).  In that discussion, the Supreme Court observed that the arbitrators had ignored, among other things, three *binding* federal cases in which courts had *denied* to consolidate

---

[4] Motion at 10 (lines 15-17); 11 (lines 17-20).

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

10

1 arbitration proceedings. *Stolt-Nielsen*, 130 S. Ct. at 1769 n.5 (U.S. 2010) (citing to

2 *Gov't of United Kingdom v. Boeing Co.*, 998 F.2d 68, 71, 74 (2d Cir. 1993); *Glencore,*

3 *Ltd. v. Schnitzer Steel Prods.*, 189 F.3d 264, 268 (2d Cir. 1999); and *Champ v. Siegel*

4 *Trading Co.*, 55 F.3d 269 (7th Cir. 1995)). These three cases did not involve a state

5 law default rule for consolidation. They were decided exclusively under the *FAA*,

6 and held that district courts "cannot consolidate arbitration proceedings . . . absent

7 the parties' *agreement* to allow such consolidation." *Boeing Co.*, 998 F.2d at 74

8 (emphasis added).

9   The Supreme Court's observation that arbitrators ignored three

10 decisions *denying* consolidation under *federal* law cannot possibly be read as a

11 holding that arbitrators should apply *state* law rules on consolidation by analogy

12 as default rules to *permit* class arbitration. Notably, the court did not "direct a

13 rehearing by the arbitrators" to consider whether New York had a statute on

14 consolidation that could be applied by analogy. *Id.* at 1770. Instead, the Supreme

15 Court concluded "that there can be only one possible outcome on the facts before

16 us." *Id.* The *Stolt-Nielsen* Court came to that "one possible outcome" solely on the

17 basis of *federal* law — the FAA. *Stolt-Nielsen*, 130 S. Ct. at 1776. Without clear

18 guidance from the *Stolt-Nielsen* court or from Nevada law on whether state

19 default rules on consolidation may be applied by analogy as permitting class

20 arbitration, the arbitrator cannot have manifestly disregarded the law in deciding

21 against class arbitration.

  **D. There is Nothing Irrational About the Arbitrator's Interpretation of the Arbitration Provision.**

24   On a motion to vacate an arbitration award, the question is not

25 whether the arbitrator's contract interpretation was correct or whether his

26 findings were supported by the evidence. *Lagstein*, 607 F.3d at 642. Courts may

27 not vacate an award simply because they would have interpreted the contract

28 differently and they may not even question the sufficiency of the evidence. *Id.*

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

11

Courts only need to determine whether the arbitrator's interpretation of the contract is plausible. *Id*. at 643. There is no basis to vacate the award if the award "'is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" *Bosack*, 586 F.3d at 1106 (citations and internal quotation marks omitted). An award will only be vacated if it is "*completely irrational*." *Lagstein*, 607 F.3d at 642 (emphasis added).

Here, the arbitrator had every reason to reject Plaintiffs' argument that there was a "consensus" among the parties at the time of contracting to permit class arbitration. Award at 20-21. As the arbitrator correctly recognized, Plaintiffs provided "no support" whatsoever for their "contention that a series of interlocutory awards consistently ruling that class arbitration was allowed were issued and publicly available" at the time the PSA was drafted and offered to the Plaintiffs in 2004. *Id*. at 20. The arbitrator also correctly recognized that his role under the Class Rules was not to look at clause construction awards issued in other cases involving different arbitration provisions, but to look only to *this* arbitration clause. *Id*. at 21. Plaintiffs make no effort to show — because they can't — what makes the arbitrator's reasoning so "irrational." All they do in their motion to vacate is to stubbornly repeat the same arguments they unsuccessfully made to the arbitrator — *still* without a shred of evidentiary support for them. Motion at 17.

The arbitrator's conclusion that the arbitration provision did not reveal an intent one way or the other to permit or deny class arbitration is also plausible. The arbitrator rejected Plaintiffs' "*expressio unius est exclusio alterius*" argument because under *Stolt-Nielsen*, it is not enough that the parties did not exclude class arbitration. Award at 22. The arbitrator rejected Defendants' argument that the provision for a single arbitrator, limited discovery and confidentiality of the proceedings evidenced an intent for only bilateral

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

12

1  arbitration; observing that single arbitrators often preside over class arbitrations,

2  discovery could be expanded, and that the confidentiality provision was limited.

3  *Id*. While neither Plaintiffs nor Defendants may agree with his interpretation,

4  there is no doubt that his interpretation was "derived from the agreement" and

5  "viewed in light of the agreement's language and context. . ." *Bosack*, 586 F.3d at

6  1106.

E.     **The Arbitrator's Finding That Judicial Estoppel Had No Application is Perfectly Sound and Supported by the Evidence.**

9            Plaintiffs' three-page argument on judicial estoppel, too, utterly

10  ignores the extremely limited standard of review that governs their motion to

11  vacate.  Plaintiffs' argument merely rehash the same arguments they presented to

12  the arbitrator.  Nowhere do Plaintiffs point out where the arbitrator exceeded his

13  powers, nor could they: the arbitrator considered the elements of judicial

14  estoppel, carefully looked at all the facts, considered both parties' arguments, and

15  concluded the doctrine had no application. Award at 16-19.  This was not only a

16  credible conclusion, it was the right one.. The Defendants observed in their

17  motion to compel arbitration that section 24.10 did not include a class action

18  waiver *barring* class arbitration, but also said that the "question of whether an

19  arbitration provision *permits* class arbitration is a matter of construction of the

20  arbitration provision. . . *for the arbitrator* to decide." Motion to Compel Arbitration

21  at 16 (citing to *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003)) (emphasis

22  added).  These two statements are not inconsistent.  Award at 19.  "Respondents

23  were stating that the availability of class arbitration was an issue to be contested

24  in arbitration."  *Id*.  Moreover, Defendants noted that the case "*could not be properly*

25  *maintained as a class action*." Motion to Compel at 16 n. 7.  Thus, "[t]he message

26  delivered to the District Court was that the availability of the class mechanism

27  was to be decided in arbitration, not that it was a foregone conclusion."  Award at

28  19.

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

13

Defendants did not "mislead" Plaintiffs by "conceding" class arbitration. They always expected the arbitrator to decide this question, precisely as provided by Rule 3 of the AAA Supplementary Rules for Class Arbitrations ("Class Rules"). Award at 19. The arbitrator correctly decided that there was no basis to apply this "extraordinary remedy."

## III.   CONCLUSION

Plaintiffs' dissatisfaction with the arbitrator's interpretation of the arbitration provision is not a basis for disregarding it. *Lagstein*, 607 F.3d at 640, 642. This motion to vacate the arbitrator's award should be denied.

MORRIS PETERSON

By: _____
Steve Morris, No. 1543
Akke Levin, No. 9102
Jean-Paul Hendricks, No. 10079
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101

WOOD, SMITH, HENNING & BERMAN LLP
Jason C. Gless, No. 8469
7670 West Lake Mead Blvd., Suite 250
Las Vegas, Nevada 89128

Attorneys for Defendants

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

14

1                          **CERTIFICATE OF SERVICE**

2              Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada

3    Electronic Filing Procedures, I certify that I am an employee of MORRIS

4    PETERSON, and that the following documents were served via electronic service:

5    **OPPOSITION TO MOTION TO VACATE ARBITRATION RULING**

6    TO:

7    Robert B. Gerard
     Ricardo R. Ehmann
8    Gerard & Associates
     2840 So. Jones Blvd. - Bldg. D, Suite 4
9    Las Vegas, Nevada  89146
     rgerard@gerardlaw.com
10   rehmann@gerardlaw.com

11
     Robert Fellmeth
12   University of San Diego Law School
     5998 Alcala Park
13   San Diego, California  92110
     cpil@sandiego.edu
14

15   Norman Blumenthal
     Blumenthal & Nordrehaug
16   2255 Calle Clara
     La Jolla, California  92037
17   norm@bamlawlj.com

18   Burton Wiand
     Wiand Guerra King
19   3000 Bayport Drive - Suite 600
     Tampa, Florida  33607
20   bwiand@wiandlaw.com

21   Attorneys for Plaintiff

22              DATED this 28th day of April, 2011.

23

24

25

26              By: _____

27

28

MORRIS PETERSON
ATTORNEYS AT LAW
900 BANK OF AMERICA PLAZA
300 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101
702/474-9400
FAX 702/474-9422

15