1  Robert B. Gerard, Esq. (Nevada State Bar #005323)
   Ricardo R. Ehmann, Esq. (Nevada State Bar #010576)
2  **GERARD & ASSOCIATES**
   2840 South Jones Boulevard
3  Building D, Suite #4
   Las Vegas, Nevada 89146
4  Telephone:   (702) 251-0093
   Facsimile:   (702) 251-0094
5
   Norman Blumenthal, Esq. (California State Bar #068687)
6  **BLUMENTHAL, NORDREHAUG & BHOWMIK**
   2255 Calle Clara
7  La Jolla, California 92037
   Telephone:   (858) 551-1223
8  Facsimile:   (858) 551-1232
9  Attorneys for Plaintiffs
10
11                    **UNITED STATES DISTRICT COURT**
12                        **DISTRICT OF NEVADA**
13
14  MARY ANN SUSSEX, et al.              )   CASE NO.:  **2:08-cv-00773-MMD-PAL**
                                         )
15              Plaintiffs,              )   **PLAINTIFFS' MEMORANDUM IN**
16      vs.                              )   **OPPOSITION TO MOTION TO**
                                         )   **DISQUALIFY ARBITRATOR**
17  TURNBERRY/MGM GRAND                  )
18  TOWERS, LLC, et al.                  )   Before:          Hon. Miranda Du
                                         )   Department:      4A
19              Defendants.              )
                                         )
20                                       )
                                         )
21                                       )
                                         )
22                                       )
23
24
25
26
27
28
_____
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISQUALIFY ARBITRATOR

# **TABLE OF CONTENTS**

I.      INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      The Motion is Procedurally Defective . . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      The Motion is Legally Infirm  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        C.      The Motion Is Substantively Without Merit . . . . . . . . . . . . . . . . . . . . . 3

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Arbitrator Hare Has No Financial Interest in or Relationship With
                Any Party or Their Counsel or the Claims in this Arbitration . . . . . . . . 6

        B.      Arbitrator Hare's Experience and Practice In Representing
                Plaintiffs, Consumers and Mortgagors Was Fully Disclosed  . . . . . . . . 7

        C.      Information Concerning Bowdoin Street Capital Could Not Create
                a Reasonable Impression of Partiality . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    THE MOTION IS PROCEDURALLY DEFECTIVE . . . . . . . . . . . . . . . . . . . 10

IV.     THE MOTION IS LEGALLY INFIRM  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.      THE MOTION IS SUBSTANTIVELY WITHOUT MERIT  . . . . . . . . . . . . . 19

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## <u>TABLE OF AUTHORITIES</u>

Cases:

Page(s):

*Aerojet-General Corp. v. American Arbitration Assoc.*,
478 F.2d 248 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13, 18

*ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*,
173 F.3d 493 (4th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 20, 24

*Application of York Hannover Holding A.G. v. American Arbitration Ass'n.*,
1993 WL 159961 (S.D.N.Y. May 11, 1993) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Aviall, Inc. v. Ryder Sys., Inc.*,
110 F.3d 892 (2d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Barnes v. Logan*,
122 F.3d 820 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Benjamin, Weill & Mazer v. Kors*,
195 Cal.App.4th 40 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Blue Cross Blue Shield of Tennessee v. BCS Ins. Co.*,
517 F.Supp.2d 1050 (N.D. Ill 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*,
203 F.R.D. 677 (S.D. Fla. 2001), aff'd  312 F.3d 1349 (11th Cir. 2002) . . . . . 10

*Burlington Ins. Co. v. Trygg-Hansa Ins. Co., AB*,
2002 WL 855911 (M.D.N.C. April 19, 2002) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Central General Hosp. v. De Laurentis*,
1978 WL 1733  (E.D.N.Y. March 9, 1978) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*ChampionsWorld, LLC v. United States Soccer Fed., Inc.*,
487 F.Supp.2d 980 (N.D. Ill.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cox v. Piper, Jaffray & Hopwood, Inc.*,
848 F.2d 842 (8th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Crawford Group, Inc. v. Holekamp*,
543 F.3d 971 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Crim v. Pepperidge Farm, Inc.*,
32 F.Supp.2d 326 (D. Md.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Diemaco v. Colt's M'fring Co.*,
11 F.Supp.2d 228 (D.Conn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*Fidelity Federal Bank, FSB v. Durga Ma Corp.*,
  386 F.3d 1306 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14, 25

*French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  784 F.2d 902 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*G.C. and K.B. Inv., Inc. v.. Wilson*,
  326 F.3d 1096 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*,
  304 F.3d 376 (5th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Haworth v. Superior Court*,
  50 Cal.4th 372 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Wal-Mart Wage and Hour Employment Practices Litig.*,
  2011 WL 887556 (D. Nev. March 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kyocera Corp. v. Prudential–Bache Trade Services, Inc.*,
  341 F.3d 987 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lagstein v. Certain Underwriters at Lloyd's, London*,
  607 F .3d 634 (9th Cir.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lucile Packard Children's Hospital, Stanford Hospital Clinics v. U.S. Nursing Corp.*,
  2002 WL 1162390 (N.D. Cal. May 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Michaels v. Mariforum Shipping, S.A.*,
  624 F.2d 411 (2d Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Middlesex Mutual Ins. Co. v. Levine*,
  675 F.2d 1197 (4th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Merit Ins. Co. v. Leatherby Ins. Co.*,
  714 F.2d 673 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21, 23, 25

*Metropolitan Prop. & Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.*,
  780 F.Supp. 885 (D. Conn.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mt. Holyoke Homes L.P. v. Jeffer Mangels Butler & Mitchell*,
  2013 WL 5321158 (Cal. App. Sep. 24, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Nemecek & Cole v. Horn*,
  208 Cal.App.4th 641 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*New Regency Productions, Inc. v. Nippon Herald Films, Inc.*,
  501 F.3d 1101 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 20, 21

*Nordahl Development Corp., Inc. v. Salomon Smith Barney*,
  309 F.Supp.2d 1257 (D. Or. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Oxford Health Plans LLC v. Sutter*
  33 S.Ct. 2064 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 15, 16, 18

*Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
935 F.2d. 1019 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*,
476 F.3d 278 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 21

*Sanko S.S. Co. v. Cook Industries, Inc.*,
495 F.2d 1260 (2d Cir.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*,
668 F.3d 60 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Schmitz v. Zilveti*,
20 F.3d 1043 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Service Partners, LLC v. American Home Assur. Co.*,
2011 WL 2516411 (C.D. Cal. June 20, 2011) . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith v. Am. Arbitration Ass'n*,
233 F.3d 502 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 10, 12

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
130 S.Ct. 1758 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sussex v. Turnberry/MGM Grand Towers LLC*
2013 WL 1855797 (D. Nev. May 1, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

*Titan Pharmaceuticals and Nutrition, Inc. v. Medicine Shoppe Intern., Inc.*,
2006 WL 626051 (S.D.N.Y.  Mar 13, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Thomas v. City of North Las Vegas*,
122 Nev. 82 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Todd Shipyards Corp. v. Cunard Line, Ltd.*
943 F.2d 1056 (9th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17


Statutes:

9 U.S.C. § 10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 14, 15, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Defendants' Motion to disqualify Arbitrator Hare is procedurally defective, legally infirm, and substantively meritless.   As a result the motion most certainly must respectfully be denied.

### A.   The Motion is Procedurally Defective

Judge Du already ruled in this case that "the time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered", 2013 WL 1855797 at * 2 (D. Nev. May 1, 2013),  quoting *Smith v. Am. Arbitration Ass'n., Inc*., 233 F.3d 502, 506 (7th Cir. 2000).  Judge Du also cited 9 U.S.C. § 10(a)(2) which similarly provides that the time to seek relief from "evident partiality or corruption in the arbitrators" is after an arbitration award is rendered.

Due to the fact that no arbitration award has been issued in this case, Defendants' motion for an order disqualifying Arbitrator Hare now is  procedurally defective as this Court does not have jurisdiction at this time to even consider reviewing a claim of  evident partiality of the arbitrator before the issuance of an award as a matter of law.  There is nothing the Defendants can say or do that can change these uncontroverted facts and law.

Notably, Defendants cannot even cite to a single authority where the alleged evident partiality no matter how "extreme" would nevertheless allow the Court to entertain a challenge to the arbitrator before the arbitration is completed and an award is rendered. Such a ruling would violate the express language of 9 U.S.C. § 10(a)(2) which requires an award to be made as a prerequisite for a determination of evident partiality.

Defendants' heavy reliance on *Aerojet-General Corp. v. American Arbitration Assoc.*, 478 F.2d 248 ( 9th Cir. 1973) is completely misplaced.  *Aerojet-General* involved the venue of the proceedings and did not involve the partiality of the arbitrator. Interlocutory review was possible because denial of change of venue caused irreparable injury which could not be remedied  after the award since venue, unlike evident partiality is not a basis for vacating an award under the FAA.

Given the uncontroverted facts and law, the motion to disqualify Arbitrator Hare without there being an award is procedural defective.  As a result the motion must be denied as a matter of law.

**B.**     **The Motion is Legally Infirm**

The Motion challenges the legality of the decision of the AAA Administrative Review Council ("AAA Council") reaffirming the selection of Arbitrator Hare as the arbitrator over the objections of the Respondents based on the Arbitrators alleged failure to make required disclosures under NRS 38.227 which Defendants claim establishes his evident partiality.  The Defendants contractually agreed in the Purchase and Sale Agreement at paragraph 24.10 that "the arbitration process shall be the exclusive means for resolving disputes the parties cannot resolve"  under the Dispute Resolution Rules of the American Arbitration Association.

Importantly, the Defendants voluntarily chose to present their claim of evident partiality now rather than later and before the AAA Council and not before this Court.  In so doing the Defendants voluntarily agreed to accept the decision of the AAA Council in accordance with the AAA Rules.  AAA Rule R-17 (b) states that "Upon objection of any party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator shall be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive".  The United States Supreme Court in the unanimous decision of *Oxford Health Plans LLC v. Sutter* 133 S.Ct. 2064 (2013) held that "because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of the court's view of its (de)merits.......Only if 'the arbitrator act[s] outside the scope of his **contractually delegated authority**'...may a court overturn his determination". *Id*. at 2068.

Therefore where, as here, the AAA Council acted within the scope its contractual authority under the AAA Rules as adopted by the parties and as requested by the

Defendants, there can be no court reversal of the AAA Council's determination.  Under *Oxford Health*, this Court is without the power to reverse the AAA Council's ruling now that the AAA Council has ruled based on the request of the Defendants and the parties' agreement that the AAA Council's  ruling would be "conclusive".   As a result, any reversal of the decision of the AAA Council to reaffirm Arbitrator Hare would be contrary to the law as set forth in *Oxford Health*.  Simply stated, this Court, respectfully, as a result of the unanimous decision in  *Oxford Health*, is required to enforce the arbitration clause of the contract as written and implemented by the parties. Therefore once the Defendants sought a ruling and obtained one from the AAA Council within the scope of the AAA Council's authority under AAA Rule R-17, this Court was stripped of all its power to overturn the decision of the AAA Council under *Oxford Health* as the Defendants agreed that the decision of the Council would be "conclusive".

There is no argument here that the AAA Council is evidently partial. Therefore the analysis of the evident partiality of Arbitrator Hare begins and ends with the conclusive decision of the AAA Council, within the scope of the AAA Council's authority, as per the arbitration agreement as implemented by the Defendants.   Defendants chose to present this issue to the AAA  Council and in so doing agreed to accept the decision of the Council as "conclusive" and "conclusive" means "conclusive."

Therefore, any review by this Court of the substance of the decision of the AAA Council would, respectfully,   be legally infirm in light of *Oxford Health* and the contractual agreements of the parties because the AAA Council acted within the scope of its authority.  Accordingly, Defendants' motion to disqualify Arbitrator Hare must be denied for this additional reason.

### C.   The Motion is Substantively Meritless.

Even if this Court had the power to second guess the conclusive decision of the AAA Council, Defendants cannot show that there was any information that was not disclosed, or that if there was information that was not disclosed that the information gives rise to a

reasonable impression of partiality.  Moreover, by agreeing to the application of the AAA Rules, this Court would be required to interpret Arbitrator Hare's disclosure under AAA Rules.  This brings the substantive determination full circle and requires this Court under the applicable law to give  defererence to the decision of the AAA Council as "conclusive."

Notably, this  Court should be aware of the fact that Arbitrator Hare was not picked by the parties but rather was selected by the AAA without any input from the parties.  This occurred as a result of the parties not agreeing to the selection from any of the arbitrators offered by the AAA. As a result any alleged nondisclosure would have no bearing on his selection as  the parties were not free to strike Arbitrator Hare as the arbitrator.  Therefore the alleged nondisclosure would have to be judged based on evidence of actual bias as the alleged nondisclosure was not a part of the selection process and Arbitrator Hare's relationship with Bowdoin was in fact disclosed during the arbitration process.  As can be determined from the evidence set forth in the Statement of Facts herein there is absolutely no allegations of actual bias or any claim that the Arbitrator has any relationship whatsoever with any party to this action or their counsel.

Even if this Court were to evaluate evident partiality under the rubric of  non-disclosure, the result would be the same because the Ninth Circuit applies the same standard for evident partiality and actual bias.  *New Regency Productions, Inc. v. Nippon Herald Films, Inc*., 501 F.3d 1101, 110 (9th Cir.  2007).  As the Ninth Circuit explained in *New Regency*, nondisclosure can be the  basis for disqualification or vacatur of an arbitral award only **"if the conflict left undisclosed was real ... and 'not trivial'**." *Id*. at 1110, quoting *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc*., 173 F.3d 493 (4th Cir. 1999).[1]

_____

[1] Emphasis added unless otherwise stated.  *ANR Coal* held that disqualification requires **evidence of partiality that is "direct, definite and capable of demonstration rather than remote, uncertain or speculative**." 173 F.3d 493.  The court should consider four factors; "(**1**) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in

In *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 284 (5th Cir.2007), which the Ninth Circuit followed in *New Regency*, the Court of Appeal found that "**nondisclosure alone does not require vacatur of an arbitral award for evident partiality. An arbitrator's failure to disclose must involve a significant compromising connection to the parties**." 476 F.3d at 282-83.

In this case, Defendant  fails to show **any relationship whatsoever** between Arbitrator Hare and any of the parties or their counsel.  As a result the motion to disqualify Arbitrator Hare is meritless.  Therefore, the motion must be denied for this additional reason.

## II.   STATEMENT OF FACTS

Arbitrator Hare was appointed by AAA according to AAA policies and procedures after the parties could not agree on the selection of an arbitrator.  As such, neither Plaintiffs nor Defendants could have "stricken" Arbitrator Hare.  The AAA Council, at Defendants' request,  has already reviewed the appointment of Arbitrator Hare based on Defendants' claim of nondisclosure and "determined that the Arbitrator shall be reaffirmed in this case."  See Exhibit 1 to the Declaration of Norman B. Blumenthal ("Blum. Dec.") filed herewith.

Defendants do not claim that there is any actual bias or any relationship between Arbitrator Hare and any party or their counsel.   Defendants instead argue that the Arbitrator's experience in  a specific area of law somehow renders him partial, even where there is no relationship to the parties or the claims in dispute.  There is no evidence that Plaintiffs or their counsel have any relationship with  Bowdoin Street Capital or Arbitrator Hare or that  Bowdoin Street Capital or Arbitrator Hare have any financial interest in the

the proceeding; (**2**) the directness of the relationship between the arbitrator and the party he is alleged to favor; (**3**) the connection of that relationship to the arbitration; and (**4**) the proximity in time between the relationship and the arbitration proceeding." *Id*.  Here, Arbitrator Hare has **no** personal interest in this arbitration, pecuniary or otherwise and **no** relationship with any party.

outcome of this arbitration, or that  Plaintiffs or their counsel attended any conference at which Arbitrator Hare served as a panelist. There is simply no evidence of any compromising connection or material nondisclosure  by Arbitrator Hare, Plaintiffs or Plaintiffs' counsel in this case or of any impropriety whatsoever.      Arbitrator Hare had no obligation to make any disclosures specifically about  Bowdoin Street Capital, in that the information concerning a dormant business with no financial relations would not give rise to a reasonable impression of partiality or any compromising relationship.  Moreover, the prospective practice area of Bowdoin is included within the disclosed practice areas of Hare & Associates of evaluating litigation claims and representing the interests of plaintiffs in large class action cases.  In a February 26, 2010 email, AAA disclosed Arbitrator Hare's resume ("Hare Resume") to Defendants.  The Hare Resume disclosed in pertinent part:

> Over 30 years experience litigating the full spectrum of commercial and legal issues arising in the computer, communications, controls and alarm industries.  Prosecutes and defends claims involving hardware and software vendors. **Has assessed several hundred computer-related disputes from both plaintiff and defense standpoints**.  He acted as an adviser to multinational computer and controls companies and provided litigation management services nationally for a prominent manufacturer.  **Represents plaintiffs in a putative class action against one of the nation's largest mortgage servicers** and defendant high tech manufacturer in a putative class action brought for alleged pollution and stigma damage to real property.

See Exhibit 2 to Blum Dec.

After this disclosure, Defendants stated that they had no objection to Arbitrator Hare.  As a result, Defendants also waived their objection when they failed to object to his representation of plaintiffs in class actions after receiving the Hare Resume.

### A.    Arbitrator Hare Has No Financial Interest or Relationship With Any Party or Their Counsel or the Claims in this Arbitration

As required by the Parties' arbitration agreement, Arbitrator Hare was initially reviewed by the AAA and appointed by the AAA according to AAA policies and procedures after the parties could not agree on the selection of an arbitrator pursuant to AAA Rule R-11(b).  As such, neither Plaintiffs nor Defendants could have "stricken"

Arbitrator Hare at the time of his appointment.  The AAA, after its initial review and appointment of Arbitrator Hare, subsequently reviewed the appointment of Arbitrator Hare for a second time  and "determined that Arbitrator Hare will be reaffirmed as arbitrator" of the parties' dispute.

The undisputed facts are that there is **no** evidence of any relationship whatsoever between Arbitrator Hare and any party or their counsel, and neither Hare & Associates nor Bowdoin Street Capital have any relationship, whatsoever, with any party or their counsel. Finally, no one disputes that Hare & Associates is Arbitrator Hare's active law practice, and that Bowdoin Street Capital is a company that "has been completely dormant", has "raised no money" and has "no investments."  See <u>Exhibit 3</u> to Blum Dec.  In fact, there is **no** evidence that the Arbitrator has any direct or indirect relationship with any party or its counsel, or any interest, financial or otherwise, in the outcome of this arbitration.

### B.  <u>Arbitrator Hare's Experience and Practice In Representing Plaintiffs, Consumers and Mortgagors Was Fully Disclosed</u>

Defendants claims that they were unaware that Arbitrator Hare represented the interests of plaintiffs, "such as the [] claimaints in this arbitration," and that this knowledge creates a "reasonable impression of partiality."  What the Defendants conspicuously ignore is that in the February 26, 2010 email, the AAA fully disclosed Arbitrator Hare's Resume to Defendants.  See <u>Exhibit 2</u> to Blum. Dec.  The Hare Resume fully disclosed his active law practice as the managing partner of Hare & Associates and prior to that at Hare & Chaffin, which included representation of plaintiffs' interests in class actions.  *Id.*

The Hare Resume also reveals that for over twenty (20) years as a managing partner of Hare & Associates and Hare & Chaffin, Arbitrator Hare has "assessed several hundred computer-related disputes from both **the plaintiff** and defense stand point."  *Id*.  More particularly, the Hare Resume indicates that Mr. Hare "**[r]epresents plaintiffs in a putative class action** against one of the nation's largest mortgage servicers".  *Id*.  Thus, the Arbitrator's representation of the interests of plaintiffs, consumers, and mortgagors in

a class action against a corporate defendant, and his experience in assessing litigation "from both plaintiff and defense standpoints" was fully and expressly disclosed on February 26, 2010.

With this disclosure, the AAA instructed the parties to submit "any objections to the appointment of Arbitrator Hare by March 5, 2010." See Exhibit 2 to Blum Decl. Respondent did not object to Arbitrator Hare's appointment, even though his firm's representation of plaintiffs, consumers and mortgagors was disclosed, along with Arbitrator Hare's practice of assessing and evaluating litigation claims for plaintiffs.

Now, Defendants, after their motion to dismiss in arbitration was denied by Arbitrator Hare, disingenuously claim that they were not aware that Arbitrator Hare represents not only the interests of defendants but also the interests of plaintiffs in class actions. This simply is not true. The true facts are that Arbitrator Hare's representation of plaintiffs, consumers and mortgagors, "such as the [] claimaints in this arbitration," was fully disclosed. Defendants' contention to the contrary is belied by the specific disclosures in Arbitrator Hare's resume of his law practice covering these issues. After this disclosure, Respondent made no objection by March 5, 2010 based on the fact that Arbitrator Hare had interests aligned with plaintiffs and consumers in a class action and had assessed cases from both the plaintiff and defense standpoints.[2]

## C.   Information Concerning Bowdoin Street Capital Could Not Create a Reasonable Impression of Partiality

Notably, Defendants' contention is not that Plaintiffs or their attorneys have a relationship, financial or otherwise, with Bowdoin Street Capital. Defendants' contention is that the mere existence of a dormant company "to explore the possibility of raising a fund to provide capital for litigation" that did no business shows a bias or partiality in

---

[2] Respondent should therefore not be permitted to now object based upon these same grounds because these interests of Arbitrator Hare were fully disclosed. *Fidelity Federal Bank, FSB v. Durga Ma Corp*., 386 F.3d 1306, 1313 (9th Cir. 2004) (objection to arbitrator's evident partiality is waived where party knew or should have known facts on which objection is based but fails to timely object).

favor of plaintiffs in general because plaintiffs are usually the parties who seek litigation financing.   The problems with Defendants' attenuated and strained argument are that not only was the Arbitrator's interest in representing the interests of plaintiffs, consumers and mortgagors in litigation --  along with the Arbitrator's involvement in assessing cases -- fully disclosed on February 26, 2010 in his resume without objection from Defendants, but also that Defendants' argument is without any merit.  Practicing law for the benefit of both plaintiffs and defendants does not show partiality.  Otherwise a practitioner who represents both plaintiffs and defendants could never be an arbitrator in any case, which is simply not the law.

Indeed, a reasonable impression of partiality cannot not be created by the fact that Arbitrator Hare has represented the interests of plaintiffs and consumers, in addition to his representation of corporate defendants.  Defendants' facts set forth  nothing more than a repetition of information already disclosed in the Hare Resume.  The fact that Arbitrator Hare has "over 30 years' experience litigating the full spectrum of commercial and corporate legal issues" (Hare Resume, Exhibit 2), is not "likely to give rise to justifiable doubt as to the arbitrator's impartiality."

The undisputed facts are that Bowdoin Street Capital was a dormant entity that engaged in no business, engaged in no financing of lawsuits, and possessed no relationships with any of the parties to this arbitration. To the point, Arbitrator Hare's presentations in April 2011 and in May 2012, were made as the senior partner of "Hare & Associates" and addressed issues germane to and experienced by every law firm that represents plaintiffs and defendants or assesses the value of  cases for either or both. Thus, the substance of what Defendants' now raise as an objection was, in fact, disclosed in the  Hare Resume.  Indeed, assessing cases for potential financing is a mere subset of the practice of assessing cases for the interests of plaintiffs and defendants that was disclosed in the Hare Resume.

Defendants attack on the Arbitrator's disclosure  based upon the dormant Bowdoin

therefore presents no new material information, as Arbitrator Hare already disclosed Hare & Associates' involvement in representing the interests of plaintiffs in litigation, including litigation involving real estate on behalf of mortgagors, and assessment of disputes from a plaintiff's standpoint.  Thus, there is no new information, beyond what was presented to Defendants in the February 26, 2010 email and resume, which would give rise to Defendants' sudden objections which are now three years too late and have no substantive merit.

## III.   THE MOTION IS PROCEDURALLY DEFECTIVE

Federal case law is well-established that a party to arbitration may seek judicial review of an arbitrators' claimed bias only at the conclusion of the arbitration as a grounds for vacating an arbitral award, and only in the Court that ordered the arbitration.  *Smith v. Am. Arbitration Ass'n*, 233 F.3d 502, 506 (7th Cir. 2000); *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 376, 490 (5th Cir.2002) ( "where arbitrator bias is at issue, the FAA does not provide for removal of an arbitrator from service prior to an award, but only for potential vacatur of any award."). *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*, 173 F.3d 493, 497 (4th Cir.1999);  *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 843–44 (8th Cir.1988) ("Appellants cannot obtain judicial review of the [AAA's] decisions about the qualifications of arbitrators or other matters prior to the making of an award."); *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir.1997); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n. 4 (2d Cir.1980) ( "[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award"); *Blue Cross Blue Shield of Tennessee v. BCS Ins. Co.*, 517 F.Supp.2d 1050, 1060-1061 (N.D. Ill 2007) (**"The proper way to raise a bias objection is by challenging the arbitration award, once the arbitration is complete**."); *Titan Pharmaceuticals and Nutrition, Inc. v. Medicine Shoppe Intern., Inc*., 2006 WL 626051,

*6 and n. 68  (S.D.N.Y.  Mar 13, 2006) (This Court's authority to remedy arbitrator bias

is limited to setting aside the award after it has been rendered."); *Brandon, Jones,*

*Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677 (S.D.

Fla. 2001), aff'd  312 F.3d 1349 (11th Cir. 2002);  *Diemaco v. Colt's M'fring Co.*, 11

F.Supp.2d 228, 231–32 (D. Conn.1998); *Crim v. Pepperidge Farm, Inc.*, 32 F.Supp.2d

326, 330 (D. Md.1999).

As the district court explained in *Service Partners, LLC v. American Home Assur.*

*Co.*, 2011 WL 2516411 (C.D. Cal. June 20, 2011):

> "**It is well established** that a district court cannot entertain an attack upon
> the qualifications of or partiality of arbitrators until after the conclusion of
> the arbitration and the rendition of an award." "By its own terms, [9 U.S.C
> .] § 10 authorizes court action only after a final award is made by the
> arbitrator.". Further, "**even where arbitrator bias is at issue, the FAA
> does not provide for removal of an arbitrator from service prior to an
> award, but only for potential vacatur of any award**."

*Id.* at *5 . (citations omitted)

Section 10(a) of the Federal Arbitration Act which governs judicial review of

arbitrations give a federal court jurisdiction to review and vacate **arbitration awards** on

grounds including "**evident partiality** or corruption in the arbitrators, or either of them."

9 U.S.C.A. § 10(a)(2).  Accordingly, a claim of **evident partiality** is not subject to judicial

review until **after an award** has been entered. The argument that a party may

preemptively seek judicial review of an arbitrator's claimed **evident partiality** before an

award is issued

> **is a non-starter**, however, because ChampionsWorld fails to identify any
> jurisdictional basis on which this Court could prospectively nullify a
> potential arbitration award. The Act only provides for review of the fairness
> and procedural adequacy of an arbitration after it has occurred. **The Act's
> silence on the notion of doing so beforehand is dispositive.**

*ChampionsWorld, LLC v. United States Soccer Fed., Inc.*, 487 F.Supp.2d 980, 991 (N.D.

Ill. 2007).

This rule embodies the strong federal policy reflected in the FAA against

interlocutory meddling arbitration proceedings. **Defendants' attempt to evade this rule**

**by seeking interlocutory disqualification in state court would cause grave injury to this important federal policy**. Chief Judge Easterbrook states as follows:

> **If a party could run to court and contest every procedural ruling that it believes is erroneous and not squarely covered by the contract (which rarely tells arbitrators what procedures to use), arbitration would fail to offer an attractive alternative to litigation.** Litigation usually entails only one proceeding in the district court, followed by one appeal. **If BCS were right, however, every arbitration could be contested (with an appeal) before it begins; every supposed procedural error could be contested in a separate suit (with another appeal) in mid-arbitration; and then the outcome could be contested in a proceeding to confirm or vacate the award, with yet another appeal. That would make arbitration both interminable and impossibly expensive**.

*Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011).

Judge Du agreed that "the time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered" *Sussex v. Turnberry/MGM Grand Towers LLC* , 2013 WL 1855797 at * 2,  quoting *Smith v. Am. Arbitration Ass'n., Inc*., 233 F.3d 502, 506 (7th Cir.  2000).

None of the cases cited by Defendants in their motion to disqualify Arbitrator Hare hold to the contrary.  **Defendants has failed to cite a single case where alleged arbitrator bias or  failure to disclose provided a basis for *pre-award* disqualification.** Defendants' heavy reliance on *Aerojet-General Corp. v. American Arbitration Assoc.*, 478 F.2d 248 (9th Cir. 1973) is misplaced.  *Aerojet* addressed an action where it was alleged by one of the parties to the arbitration agreement that the AAA's reaffirmation of the arbitrator's choice of New York as **a locale** for arbitration of a contractual dispute between the parties was arbitrary and unreasonable. *Aerojet*, at 250.  After the AAA concluded that the arbitration should be held in New York, the appellee immediately sued in the district court in California and obtained an ex parte order temporarily restraining the AAA from conducting the arbitration in New York and one of the parties appealed the district court's ruling.  *Id.*  The Ninth Circuit  noted that **"[t]o permit what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate"** the fundamental purpose of

**arbitration which is "the speedy disposition of disputes without the expense and delay of extended court proceedings."** *Id.* at 251.  The court further noted that  error in failing to transfer from a bad faith choice of venue could provide a narrow exception to this rule because it could cause severe irreparable injury as "error in denying a change of **venue** cannot effectively be remedied on appeal from final judgment." *Id.*  As the *Aerojet* court explained,

> Extreme cases can be imagined in which the choice of **locale** for arbitration is not made in good faith and **severe irreparable injury** is inflicted on one or more of the parties.  In such case the courts should be free to prevent a manifest injustice.  For this reason we decline to hold that immediate judicial review of a ruling setting the place for arbitration is never justified.  *Cf. Pacific Car & Foundry, Inc. v. Pence, supra.*  **Only an extreme case could warrant such judicial review, and this is emphatically not such a case.**

*Id.*

The Ninth Circuit in fact reversed the district court's ruling and dissolved the preliminary injunction ruling that the injunction to enjoin the proceedings was not justified.  Unlike venue, an arbitrator's qualifications can be effectively challenged after a final award and indeed is only subject to judicial review at that time under the FAA.

In the forty years since *Aeroject* was decided every court that has ever applied *Aerojet* in the context of attempted interlocutory review of an arbitrators' qualifications has held that claimed arbitrator bias does not come within the narrow *Aerojet* exception to the rule against interlocutory review.  As the district court held in *Central General Hosp. v. De Laurentis*, 1978 WL 1733  (E.D.N.Y. March 9, 1978):

> There are **three important policy reasons for not permitting an arbitrator's partiality to be attacked prior to his rendering an award. First, where, as here, the arbitrator has been contractually agreed upon by the parties, the court should be reluctant to up set that contractual arrangement [aside]. Secondly, such an attack is premature since the arbitrator may act fairly and impartially in rendering his award notwithstanding the attacking party's suspicions as to his bias. Thirdly, to allow a pre-award attack on an arbitrator would be to do a disservice to the policy behind arbitration, which is to encourage the speedy disposition of disputes without the expense and delay of protracted court proceedings. See *Aerojet-General Corp. v. American Arbitration**

1  *Association*, 478 F.2d 248, 251 (9th Cir. 1973).

2  *Id.* at *8, n. 4.

3  In *Application of York Hannover Holding A.G. v. American Arbitration Ass'n.*,

4  1993 WL 159961, *5 (S.D.N.Y. May 11, 1993) the district court found that alleged

5  arbitrator bias did not come within the *Aerojet* exception because it would not cause

6  "severe irreparable injury" *Id.* at *5, quoting *Aerojet*, 478 F.2d at 252.  As the district court

7  also recognized "**where the applicable rules of arbitration require that an independent**

8  **panel or board handle and determine complaints of arbitrator bias or impartiality,**

9  **the decision of that panel 'will generally be reviewable by a district court only after**

10  **an award has been made.'**" *Id.* at *2, quoting *Sanko S.S. Co. v. Cook Industries, Inc.*, 495

11  F.2d 1260, 1264 n. 4 (2d Cir.1973).[3]

12  Defendants cite *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935

13  F.2d. 1019 (9th Cir. 1991) to argue that this Court has jurisdiction to review an arbitrators

14  qualifications before a final award.  In *Pacific Reinsurance*, however, the Ninth Circuit

15  did not address arbitrator disqualification but instead held that a temporary restraining

16  order issued by the arbitrator must be treated as a final award under the FAA.  *Pacific*

17  *Reinsurance* is inapposite because there is no temporary restraining order or final award

18  in this case.  Instead this motion involves a claim of evident partiality, which under 9 USC

19  § 10(a)(2) cannot be reviewed until after a final award.[4]

20  ─────────────────

21  [3] In *Application of York Hannover Holding*, the district court noted that New York

22  state law allowed equitable interlocutory review of arbitrators' qualifications.  As the

23  Ninth Circuit has held, however, review of arbitrator bias in federal court is governed by

24  federal law not state law.  *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306,

     1313  (9th Cir. 2004).

25  [4] Defendants' disingenuous attempt to create the impression that *Pacific*

26  *Reinsurance* actually addressed arbitrator disqualification by inserting their own bracketed

27  language into the middle of a parenthetical  quote from *Pacific Reinsurance* speaks

     volumes about the lack of any genuine legal support for their motion. See Defendants'

28  Brief page 13, n. 5.

*Metropolitan Prop. & Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.*, 780 F.Supp. 885 (D. Conn. 1991), which Defendants cite, also did not involve disqualification of an arbitrator by federal court but instead addressed the remand of a case to state court.  The court's speculation in dicta that an interlocutory injunction against an arbitration based on arbitrator misconduct might be permissible is incorrect because it  ignores the governing FAA rules and federal case law.  As another district court observed in holding that there was no jurisdiction to review an arbitrator's qualifications or conduct until after a final award, the *Metropolitan Prop*. court's  dicta **"is supported by neither the text of the FAA or the Convention Act, nor federal case law**." *Burlington Ins. Co. v. Trygg-Hansa Ins. Co., AB*,  2002 WL 855911, *2, n. 2 (M.D.N.C. April 19, 2002).  Accordingly, the motion is procedurally defective and must be denied as a matter of law.

## IV.    THE MOTION IS LEGALLY INFIRM

The AAA Rules, which the parties agreed would apply in the arbitration agreement, compel the same result.  Rule R-17(b) provides that the AAA's ruling on a claim of arbitrator bias shall be "**conclusive**."  Accordingly, by contractually agreeing to be bound by the AAA's Rules the parties have agreed that there will be no right to judicial review of the substance of the AAA Council's ruling on a motion to disqualify an arbitrator. Under Section 10(a)(2) of the FAA the alleged bias of an arbitrator can only be reviewed in a motion to vacate a final award**.  Under *Oxford Health*, the only issue subject to timely judicial review will be whether the AAA Council acted within the scope of its contractually-delegated authority.  Defendants do not dispute that the AAA Council acted within the scope of its contractually-delegated authority.  Therefore, the AAA Council's determination cannot be overturned.**

The courts have also consistently ruled that by agreeing to be bound by AAA rules the parties to an arbitration agree that the AAA's ruling on a motion to disqualify is conclusive and can only be reviewed under the deferential standard for vacatur.

---

Because the Agreement explicitly states that arbitration would be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA Rules), the parties agreed to the method provided by the rules for the resolution of disputes concerning the disqualification of arbitrators. Pursuant to Rule 17(b) of the AAA Rules, the parties designated the AAA to decide the issue in the first instance. Rule 17(b) provides that: "Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified ... which decision shall be conclusive." **The district court thus reviewed the AAA's decision under the deferential standards for vacatur of the ensuing arbitration award, and we do the same**.

*Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008); see also *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir. 1983) ("the Commercial Arbitration Rules makes the AAA itself the final arbiter of disqualification once the arbitrator has been appointed, subject only (so far as relevant here) to the limited judicial review allowed by section 10 of the Arbitration Act, 9 U.S.C. § 10, after an arbitration award is made and judicial confirmation of it sought.")[5]

When properly reviewed after an award has been issued, the decision of the AAA that an arbitrator has no evident partiality and should not be disqualified is reviewed "**under the deferential standards for vacatur of the ensuing arbitration award**." *Crawford Group, Inc. v. Holekamp*, *supra*, 543 F.3d at 976; see also *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680. Under *Oxford Health*, the AAA Council's determination that Arbitrator Hare is not evidently partial must therefore be upheld even after a final award because the AAA Council acted within the scope of its contractually-delegated authority.

Under the Federal Arbitration Act, a district court may issue "an order vacating the award upon the application of any party to the arbitration ... where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Arbitrators do not "exceed their powers" when they

---

[5] N.R.S 38.241, the Nevada statute upon which Defendants based their state court motion also does not permit interlocutory judicial review of the qualifications or conflicts of an arbitrator but only identifies "**evident partiality**" as one of the grounds under which an arbitral award can be vacated.

merely interpret or apply the governing law incorrectly, but when the award is "**completely irrational**" or **"exhibits a 'manifest disregard of the law.'** " *Kyocera Corp. v. Prudential–Bache Trade Services, Inc.*, 341 F.3d 987, 997 (9th Cir.2003) (en banc ) (citing *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir.1986) and *Todd Shipyards Corp. v. Cunard Line, Ltd.* 943 F.2d 1056, 1059–60 (9th Cir.1991)).  A district court's review of an arbitration award under 9 U.S.C. § 10 is "**extremely limited**," *G.C. and K.B. Inv., Inc. v.. Wilson*, 326 F.3d 1096, 1105 (9th Cir.2003), and, therefore, this is "**a high hurdle**" to surpass, *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1767 (2010).  The purpose of this limited review is to prevent informal arbitration from becoming "merely a prelude to a more cumbersome and time-consuming judicial review process." *Kyocera*, 341 F.3d at 998.

**Courts, then, may vacate an arbitration award only if (1) the award constitutes "manifest disregard of the law," or (2) the award is "completely irrational."** *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir.2009) (internal citations omitted). To show manifest disregard of the law, it is insufficient to merely show that the arbitrator misinterpreted or misapplied the law. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F .3d 634, 641 (9th Cir.2010).  Similarly, an award is not "irrational" merely because the arbitrator made "erroneous findings of fact." *Kyocera*, 341 F.3d at 997. The award must be confirmed as long as the arbitrator "even arguably construed or applied the contract and acted within the scope of their authority." *Barnes v. Logan*, 122 F.3d 820, 822 (9th Cir.1997).

Here, Defendants contest the AAA Council's  determination reaffirming Brendan Hare as the Arbitrator. The AAA rules clearly allow the AAA to determine whether an arbitrator should be disqualified under the grounds set forth in AAA Rule R-17(a)(i)-(iii). **Thus, this decision was within the scope of the AAA Council's powers.  AAA Rule R-17(b) makes the AAA Council's decision conclusive and there is no evidence that the decision disregarded the law or was clearly irrational.**

The AAA allowed for extensive briefing regarding Arbitrator Hare's alleged non-disclosure. The AAA Council acted rationally and did not disregard the law or the AAA's rules regarding disqualification of an arbitrator for non-disclosure. The AAA Council thoroughly considered the issues presented and made a rational decision based on the law and the facts of this case. Thus, this Court cannot reverse the AAA Council's decision to reaffirm Brendan Hare as the Arbitrator.

As the Supreme Court unanimously ruled in *Oxford Health*, the parties are strictly bound to their agreement to arbitrate and their arbitration agreement contractually limits judicial review:

> **Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits**. Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000).

133 S.Ct. 2064 at 2068.

Under *Oxford Health*, in their arbitration agreement adopting AAA rules, the parties bargained for the AAA to decide claims of arbitrator nondisclosure and agreed that AAA's decision would be conclusive. Defendants not only agreed to but drafted the arbitration agreement and relinquished any right to judicial review of the AAA' Council's determination of their claim of non-disclosure made within the scope of the contractually-delegated authority of the AAA Council because the parties agreed to be bound by Rule 17 which makes the AAA's determination conclusive.[6] As a result, this motion must also

---

[6] As the Ninth Circuit has recognized "parties to an arbitration agreement may eliminate judicial review by contract" *Aerojet*, 478 F.2d at 251. In *Aerojet*, the Ninth Circuit found that language in the arbitration agreement that the arbitrator's determination was "binding" and "non-appealable" did not eliminate judicial review of the claim that an arbitrator acted outside the scope of his contractually delegated authority. *Id.*; see also *In re Wal-Mart Wage and Hour Employment Practices Litig.*, 2011 WL 887556, *2, n. 1 (D. Nev. March 14, 2011). Here, however, where the parties agreed that any claim of arbitrator bias would be decided by the AAA Council and the AAA Council's decision would be conclusive the parties clearly intended to eliminate judicial review of the merits of the AAA Council's determination. *Diemaco v. Colt's M'fring Co.*, *supra*, 11 F.Supp.2d

---

1  be denied as legally infirm.

2

3  **V.     THE MOTION IS SUBSTANTIVELY WITHOUT MERIT**

4          Arbitrator Hare was appointed by the AAA according to AAA policies and

5  procedures after the parties could not agree on the selection of an arbitrator.  As such,

6  neither Plaintiffs nor Defendants could have "stricken" Arbitrator Hare.  The AAA

7  Council has already reviewed the appointment of Arbitrator Hare and "determined that

8  Arbitrator Hare will be reaffirmed as arbitrator" of the parties' dispute.

9          The undisputed facts are that there is no evidence of any relationship between

10  Arbitrator Hare and any party or their counsel, and neither Hare & Associates nor

11  Bowdoin have any relationship, whatsoever, with any party or their counsel.  No one

12  disputes that Hare & Associates is Arbitrator Hare's active law practice, and that Bowdoin

13  is a company that "has been completely dormant", has "raised no money" and has "no

14  investments."  As a result, there is no evidence that the Arbitrator has any direct or indirect

15  relationship with any party or its counsel, or any interest, financial or otherwise, in the

16  outcome of this arbitration.

17          Simply stated, there is no basis for Defendants' claim of "evident partiality"

18  because Arbitrator Hare had no obligation to make any disclosures specifically about

19  Bowdoin Street Capital, in that the information concerning a dormant business with no

20  financial relations can not give rise to a reasonable impression of partiality.  Moreover, the

21  prospective practice area of Bowdoin Street Capital is included within the disclosed

22  practice areas of Hare & Associates of evaluating litigation claims and representing the

23  interests of plaintiffs in large class action cases.

24          Importantly, Defendants' contention is not that Plaintiffs or their attorneys have a

25

26  ───────────────

27  at 232 ("When parties agree to arbitrate before the AAA and incorporate the Commercial

28  Arbitration Rules into their agreement, they are bound by those rules and by the AAA's
   interpretation.")

relationship, financial or otherwise, with Bowdoin Street Capital. Defendants instead argue that the existence of a dormant company to explore the possibility of raising funds to provide capital for litigation that did no business shows a bias or partiality in favor of plaintiffs in general because plaintiffs are usually the parties who seek litigation financing.[7] The problems with Defendants' strained argument are that not only was the Arbitrator's interest in representing the interests of plaintiffs, consumers and mortgagors in litigation -- along with the Arbitrator's involvement in evaluating and assesing cases -- fully disclosed on February 26, 2010 in his resume without objection from Defendants, but also that Defendants' argument is without any possible merit. Practicing law for the benefit of both plaintiffs and defendants does not show partiality. Otherwise a practitioner who represents both plaintiffs and defendants could never be an arbitrator in any case, which is simply not the law.

As the Ninth Circuit explained in *New Regency Productions, Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101 (9th Cir. 2007), nondisclosure can be the basis for disqualification or vacatur of an arbitral award only **"if the conflict left undisclosed was real ... and 'not trivial'**." *Id.* at 1110, quoting *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*, 173 F.3d 493 (4th Cir. 1999).[8]

---

[7] Defendants argument is structured on multiple false premises and unsupported assumptions. For example, there is absolutely no support for Defendants claim that litigation finance is used primarily by plaintiffs; in fact the seminar materials refer to financing intellectual property litigation where the party needing financing is equally likely to be the defendant. There is also absolutely no support for Defendants' claims that Bowdoin Street Capital ever even considered financing class actions or that class action litigation attorneys rely upon third-party financing. Defendants' challenge to Arbitrator Hare is speculative, remote and uncertain and was correctly and conclusively rejected by the AAA Council.

[8] *ANR Coal* held that disqualification requires **evidence of partiality that is "direct, definite and capable of demonstration rather than remote, uncertain or speculative."** 173 F.3d 493. The court should consider four factors; "**(1)** the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; **(2)** the directness of the relationship between the arbitrator and the party he

---

**Understandably, courts have rejected claims of evident partiality based on long past, attenuated, or insubstantial connections between a party and an arbitrator**. See, e.g., *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 284 (5th Cir.2007) (en banc) (collecting cases). As Justice White explained in his concurrence in *Commonwealth Coatings*, **it would be unrealistic to expect an arbitrator to "provide the parties with his complete and unexpurgated business biography**." *Commonwealth Coatings*, 393 U.S. at 151, 89 S.Ct. 337 (White, J., concurring).

*New Regency Productions, Inc.,* 501 F.3d at 1110.[9]

In *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 284 (5th Cir.2007), which the Ninth Circuit followed in *New Regency*, the Court of Appeal found that "**nondisclosure alone does not require vacatur of an arbitral award for evident partiality. An arbitrator's failure to disclose must involve a significant compromising connection to the parties**." 476 F.3d at 282-83.

Awarding vacatur in situations such as this would seriously jeopardize the finality of arbitration. Just as happened here, losing parties would have an incentive to conduct intensive, after-the-fact investigations to discover the most trivial of relationships, most of which they likely would not have objected to if disclosure had been made. Expensive satellite litigation over nondisclosure of an arbitrator's "complete and unexpurgated business biography" will proliferate. Ironically, the "mere appearance" standard would make it easier for a losing party to challenge an arbitration award for nondisclosure than for actual bias....**While it is true that disclosure of prior significant contacts and business dealings between a prospective arbitrator and the parties furthers informed selection, it is not true, as Justice White's opinion perceptively explains, that "the best informed and most capable potential arbitrators" should be automatically disqualified (and their awards nullified) by failure to inform the parties of trivial relationships.** *Commonwealth Coatings*, 393 U.S. at 150, 89 S.Ct. at 340.

_____

is alleged to favor; **(3)** the connection of that relationship to the arbitration; and **(4)** the proximity in time between the relationship and the arbitration proceeding." *Id*. Here, Arbitrator Hare has **no** personal interest in this arbitration, pecuniary or otherwise and **no** relationship with any party.

[9] "A relationship between an arbitrator and a party creates a real conflict only where it is 'so intimate—personally, socially, professionally, or financially—as to cast serious doubt' on the arbitrator's impartiality." *Northwest Direct Teleservices, Inc. v. Zweizig*, 2011 WL 7331297, at *11 (D. Or. Nov. 18, 2011), citing *New Regency Productions, Inc.,* and quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir. 1983).

1    *Id*. at 283.

2        In this case, Defendants fail to show **any relationship whatsoever** between

3    Arbitrator Hare and any of the parties or their counsel.

4        In *Apusento Garden (Guam) Inc. v. Superior Court of Guam*, 94 F.3d 1346 (9th

5    Cir. 1996), the Ninth Circuit reversed the disqualification of an arbitrator in an arbitration

6    concerning ownership of an apartment building where the arbitrator failed to disclose that

7    he and claimant's expert witness were both limited partners in a partnership that owned

8    an  apartment building.  The Ninth Circuit held that the arbitrators failure to disclose his

9    limited partnership investment could not support vacatur because it did not create an

10   impression of possible bias.

11       **Without this basis for finding an "impression of possible bias,"** the
         remaining indicia of possible bias alluded to by the superior court in its
12       analysis, including **the fact that the subject of the arbitration was an
         apartment complex and that the limited partnership owned an**
13       **apartment complex, also fail to create a reasonable impression of
         possible bias**.
14

15   *Id.*, 94 F.3d at 1353.

16       In *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*

17   668 F.3d 60 (2d Cir. 2012), the Second Circuit recently held that under the evident

18   partiality standard for arbitrator disqualification:

19       [W]e think that a court must focus on the question of how strongly that
         **relationship** [between the arbitrator and a party] tends to indicate the
20       possibility of bias in favor of or against one party, and not on how closely
         that relationship appears to relate to the facts of the arbitration. In other
21       words, even if a particular relationship might be thought to be relevant "to
         the arbitration at issue," **that relationship will nevertheless not constitute**
22       **a material conflict of interest if it does not itself tend to show that the
         arbitrator might be predisposed in favor of one (or more) of the parties**.
23       As we put it in *Applied Industrial*, for a relationship to be material, and
         therefore require disclosure, it must be such that "[a] reasonable person
24       would have to conclude that an arbitrator who failed to disclose [it] ... was
         partial to one side."

25   *Id*. at 75-76, quoting *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi,*

26   *A.S.*, 492 F.3d 132, 137 (2d Cir. 2007).  Defendants fail to show that the facts upon which

27   they seek disqualification could support a  reasonable belief that Arbitrator Hare would

28

be partial to either side in this arbitration.

In *Lucile Packard Children's Hospital, Stanford Hospital Clinics v. U.S. Nursing Corp.*, 2002 WL 1162390 (N.D. Cal. May 29, 2002), Judge Maxine Chesney explained that "Vacatur of an arbitration award for 'evident partiality' is appropriate where 'the possibility of bias [is] direct, definite and capable of demonstration rather than remote, uncertain and speculative.'" *Id.* at *6, quoting *Middlesex Mutual Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (4th Cir.1982).[10]   The court held that an arbitrator could not be disqualified based on failure to disclose her involvement with several non-profit groups benefitting children, holding that "Any possibility of bias capable of being inferred from these activities is simply too 'remote, uncertain and speculative' to warrant vacatur." Id.

In *Nordahl Development Corp., Inc. v. Salomon Smith Barney*, 309 F.Supp.2d 1257 (D. Or. 2004) the court held that

> **Plaintiff does not allege that an arbitrator failed to disclose any relevant relationship with either defendant before the arbitration began. Nor does he assert that an arbitrator failed to disclose any conflict of interest such as having a stake in the arbitration's outcome.** Instead plaintiff's allegations essentially attack the integrity of the arbitration decision itself. Therefore the stricter standard governing actual bias cases applies to plaintiff's claim of partiality. Plaintiff has failed to allege sufficient facts to support a claim under that standard.

*Id.* at 1266-67. (internal citation omitted)

In *Merit Insurance Company v. Leatherby Insurance Company*, *supra*, 714 F.2d 673 (7th Cir 1983), the Seventh Circuit reversed a district court order vacating an arbitration award based on failure to disclose.  Judge Posner stated:

> [N]o one supposes that either the Commercial Arbitration Rules or the Code of Ethics for Arbitrators requires disclosure of every former social or financial relationship with a party or a party's principals. . . . The test . . . is whether, having due regard for the different expectations regarding impartiality that parties bring to arbitration than to litigation, **the relationship between [the arbitrator and the party's president] was so intimate-personally, socially, professionally, or financially-as to cast serious doubt on [the arbitrator's] impartiality**.

---

[10] As Judge Chesney observed, *Middlesex Mutual* was cited with approval by the Ninth Circuit in *Schmitz v. Zilveti*, 20 F.3d 1043, 1046 (9th Cir. 1994).

1    *Id.* at 678-80.

2          Here, Defendants do not contend that there is any relationship between the

3    Arbitrator and the parties, financial or otherwise.  Rather, what Defendant argues is that

4    the Arbitrator's experience in  a specific area of law somehow renders him partial, even

5    where there is no relationship to the parties and claims in dispute.  This is simply not the

6    test for evident partiality.  The erroneous standard urged by Defendants would result in

7    the wholesale disqualification of competent arbitrators.  In this case, Defendants explicitly

8    requested arbitrators with transactional experience, and yet the fact that Arbitrator Hare

9    possesses transactional experience which includes real estate is now inexplicably the basis

10   of Defendants' belated challenge.

11         Indeed, a reasonable impression of partiality cannot not be created by the fact that

12   Arbitrator Hare has represented the interests of plaintiffs and consumers, in addition to his

13   representation of corporate defendants.  Defendants' allegations set forth  nothing more

14   than a repetition of information already disclosed in the Hare Resume.  The fact that

15   Arbitrator Hare has "over 30 years' experience litigating the full spectrum of commercial

16   and corporate legal issues" (Hare Resume, <u>Exhibit 2</u>), is not "likely to give rise to

17   justifiable doubt as to the arbitrator's impartiality." Far from creating an impression of

18   partiality, as explained by the Court of Appeals in *ANR Coal Co. v. Cogentrix of N.C.,*

19   *Inc.*, 173 F.3d 493, 500 ( 4th Cir. 1999), the best and most impartial arbitrators would be

20   those with broad knowledge of the legal issues with a view from both sides of the aisle.

21            **Not only does precedent thus compel our rejection of ANR's contention,**
              **but sound policy also counsels this result**. Parties value commercial
22        arbitration, at least in part, because they "prefer a tribunal knowledgeable
          about the subject matter of their dispute to a generalist court with its austere
23        impartiality but limited knowledge of subject matter." *Merit*, 714 F.2d at
          679; see also *Morelite Constr. Corp. v. New York City Dist. Council*
24        *Carpenters Benefit Funds*, 748 F.2d 79, 83 (2d Cir. 1984) ("**parties agree**
          **to arbitrate precisely because they prefer a tribunal with expertise**
25        **regarding the particular subject matter of their dispute**").

26   *Id*. at 500.

27         The *ANR* court explained that trivial facts need not be disclosed.

28

**The approach proposed by ANR would permit a "disgruntled party" to seize upon an undisclosed relationship "as a pretext for invalidating the award."** *In re Andros Compania Maritima, S.A.*, 579 F.2d 691, 700 (2d Cir. 1978). Under such a rule, an arbitration award could be vacated due to an arbitrator's failure to disclose a trivial fact **even though that fact, if known prior to the arbitration, would not have enabled the losing party to have the arbitrator removed for cause.** Such a system would undermine the parties faith in commercial arbitration and make the task of finding qualified arbitrators "exceedingly burdensome." *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993).

*Id.*

The AAA's Cannon II, although complied with in this case, was likewise rejected as a basis for disqualification:

Respondent's rely on Canon II of the AAA Code of Ethics for Arbitrators in Commercial Disputes. Canon II states that "arbitrators should disclose the existence of interests or relationships that are likely to affect their impartiality or that might reasonably create an appearance that they are biased against one party" and should "make a reasonable effort to inform themselves of any interests or relationships described in the preceding paragraph." Even if Brewer violated Cannon II (and it is not at all clear that he did), the Code of Ethics itself forecloses any use of such a violation as a basis for vacatur. **The Preamble of the Code specifically states that "it does not form part of the arbitration rules of the [AAA]" and "does not establish new or additional grounds for judicial review of arbitration awards."**

*Id.* at 497.

Finally, the Court noted that the type of issues argued by Defendants here, even if they should have been disclosed, nevertheless do not give rise to disqualification:

"**Failure to disclose the sort of attenuated, nonsubstantial relationships at issue here violates neither the teaching of Commonwealth Coatings nor AAA Rule 19.** As Judge Posner (citing Justice White's concurrence) observed in a similar situation, to hold that Rule 19 "requires disclosure of every former social or financial relationship with a party or a party's principals" would make it "impractical for persons in the business world to be arbitrators, thereby depriving the parties of the services of those who might be best informed and qualified to decide particular types of cases." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 677 (7th Cir. 1983)."

*Id.* at 499.

In federal court, evident partiality claims are governed by federal law not state law.

*Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004).

("**We look to the FAA and federal law to determine whether Arbitrator Leib was**

**evidently partial**, whether vacation of the arbitration award was required and whether Fidelity's evident partiality challenge is waived.")  As the Ninth Circuit explained, federal law governs evident partiality even where the arbitration agreement calls for state law to be applied because issues about arbitrator bias relate to the process of arbitration rather than the substance of the underlying dispute.  *Id*.

Nevertheless, Defendants virtually ignore federal law and instead rely  heavily on a state law decision by a California court *Benjamin, Weill & Mazer v. Kors*,  195 Cal.App.4th 40 (2011).  *Benjamin* addressed an action to collect legal fees arbitrated as part of the local bar association's Mandatory Fee Arbitration Program where the arbitrator at the time of the arbitration, was primarily engaged in the defense of attorneys and law firms in cases involving professional responsibility and was actively representing a law firm in a case before the California Supreme Court involving a legal dispute over legal fees.  *Id*. at  72.  The *Benjamin* court found that these facts should have been disclosed because a reasonable person would doubt whether the arbitrator's "dependence on business from lawyers and law firms sued by former clients would prevent him from taking the side of a client in a fee dispute with a former law firm, because doing so might "put at risk" his ability to secure business from the lawyers and law firms whose business he solicits."  *Id*. at 71.

Defendants try to liken this case to *Benjamin* by arguing that "evident partiality" exists because Bowdoin Street Capital's stillborn and dormant efforts to raise money to fund plaintiffs' litigation would lead a reasonable person to doubt Arbitrator Hare's his independence and impartiality because for his litigation funding business to succeed, Mr. Hare would need to have a good reputation among plaintiffs' counsel.  Defendants' disqualification argument thus depends on their imaginary premise that  Arbitrator Hare is dependent on business from plaintiffs' law firms to such an extent that his partiality should be in doubt.  Arbitrator Hare's supplemental disclosure that Bowdoin Street Capital has never financed any litigation or even raised any investment capital, however, belies

Defendant's Alice-in-Wonderland accusation that he depends on business from plaintiffs' law firms that hire him to find financing, as he has never had any revenue from Bowdoin Street Capital.

As the California state court stated in *Benjamin*, "'**ordinary and insubstantial business dealings'** arising from participation in the business or legal community" need **not** be disclosed and that **disclosure is required only of** "**relationships [that] are substantial and involve financial considerations creating an impression of possible bias**." *Id*. at 72. Bowdoin Street Capital, which has never done any business at all and never received or generated any revenue, does not evidence any dependence on business from plaintiffs' law firms or any other financial consideration that could create any reasonable impression of bias. See *Nemecek & Cole v. Horn*, 208 Cal.App.4th 641, 649-50 (2012) (distinguishing *Benjamin*). Like the arbitrator in *Nemecek & Cole*, Arbitrator Hare represents the interests of both defendants and plaintiffs and therefore "[t]his matter is nothing like the *Benjamin* case." 208 Cal.App.4th at 649. Moreover, Arbitrator Hare's representation of plaintiffs' as well as defendants' interests in class action litigation was fully disclosed.[11]

Defendants also cite *Thomas v. City of North Las Vegas*, 122 Nev. 82 (2006) to

---

[11] The California appellate court decision in *Mt. Holyoke Homes L.P. v. Jeffer Mangels Butler & Mitchell*, 2013 WL 5321158 (Cal. App. Sep. 24, 2013) also does not help Defendants. In that case, the arbitrator who was selected by the parties in a legal malpractice case failed to disclose that he had used one of the partners in defendant law firm as a reference on his resume. The Court vacated the final award finding that "An objective observer could reasonably conclude that an arbitrator listing a prominent litigator as a reference on his resume would be reluctant to rule against the law firm in which that attorney is a partner in a malpractice case." *Id*. at *8. *Mt. Holyoke Homes* exemplifies the nondisclosure of a relationship between the arbitrator and a party that must be disclosed because it creates the reasonable appearance of partiality. By contrast, the alleged nondisclosure here could not possibly support disqualification because an "arbitrator cannot reasonably be expected to disclose all events in the arbitrator's past, including those not connected with the parties, the facts and the issues in controversy, that conceivably might cause a party to prefer another arbitrator. *Id*. at *7, quoting *Haworth v. Superior Court*, 50 Cal.4th 372, 395 (2010).

argue that nondisclosure itself requires disqualification regardless of whether there is any evident partiality or bias.  The *Thomas* court, however, found that an arbitrator's failure to disclose a conflict may establish bias only if there is an actual conflict to disclose, and the undisclosed relationship gives rise to a "reasonable impression of partiality." *Id*. at 99. Defendant simply cannot meet that test.  Moreover, Defendant neglects to mention that in *Thomas*, the Nevada Supreme **reversed** the trial court's vacatur of an arbitration decision and held that an arbitrator's membership on a rotating panel of arbitrators for city and police unions did not give rise to a reasonable impression of partiality in arbitration of dispute over termination of police officers, and,  the arbitrator therefore owed no duty to disclose his membership. *Id*. at 102.[12]

None of the cases cited by Defendants hold to the contrary.  Defendants have failed to cite a single case where the failure to disclose information which does not give rise to a reasonable impression of partiality, would nevertheless provide a basis for disqualification.  Therefore, the information that has now been disclosed and ruled on by the AAA Council concerning Bowdoin Street Capital does not indicate any partiality or lack of independence or support disqualification under Rule R-17.

Because there are  no facts showing any "evident partiality", Defendants' motion to disqualify Arbitrator Hare is also substantively meritless and would have to be denied even if this Court had jurisdiction to hear this motion, and the legal authority to decide this issue.

---

[12] In *Fong v. MGM Mirage International Marketing, Inc*., the Nevada Supreme Court held in an unpublished decision that "The appearance of impropriety, standing alone, is insufficient to establish evident partiality in an actual bias case...because a reasonable impression of partiality does not necessarily mean that the  arbitration award was the product of impropriety."  *Id*. at 7.  See Exhibit 4  to Blum Dec. This case, like *Fong*, is not a nondisclosure case because full disclosure has been made before any final award has issued and, since Arbitrator Hare was appointed by the AAA and not selected by the parties, the AAA Council would have upheld Arbitrator Hare's appointment because he has no bias, even if Defendants had challenged his appointment earlier in the arbitration.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that Defendants' motion to disqualify Arbitrator Hare must be denied.


Respectfully submitted,

Dated: September 27, 2013                BLUMENTHAL, NORDREHAUG & BHOWMIK

                               By:     _/s/ Norman B. Blumenthal_____
                                       Norman B. Blumenthal

                                       2255 Calle Clara
                                       La Jolla, California 92037
                                       Telephone:   (858) 551-1223
                                       Facsimile:    (858) 551-1232

                                       Gerard & Associates
                                       2840 South Jones Blvd.
                                       Building D, Unit 4
                                       Las Vegas, Nevada  89146
                                       Telephone: (702) 251-0093
                                       Facsimile: (702) 251-0094

                                       Burt Wiand
                                       Florida State Bar #407690
                                       Wiand Guerra King
                                       3000 Bay Port Drive, Suite 600
                                       Tampa, FL 33607
                                       Telephone:   (813) 347-5100
                                       Facsimile:    (813) 347-5199

                                       ***Attorneys For The Plaintiffs***