MORRIS LAW GROUP
Steve Morris, Bar No. 1543
Email:  sm@morrislawgroup.com
Akke Levin, Bar No. 9102
Email:  al@morrislawgroup.com
Jean-Paul Hendricks, No. 10079
Email:  jph@morrislawgroup.com
300 South Fourth Street - Suite 900
Las Vegas, Nevada 89101
Telephone: (702) 474-9400
Facsimile:   (702) 474-9422

SNELL & WILMER L.L.P.
Alex Fugazzi, Bar No. 9022
Email:  afugazzi@swlaw.com
Justin Carley, Bar No. 9994
Email:  jcarley@swlaw.com
3883 Howard Hughes Parkway, #1100
Las Vegas, NV  89169
Telephone:  (702) 784-5200
Facsimile:   (702) 784-5252

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN SUSSEX; et al., | Case No.: 2:08-cv-00773-MMD-PAL |
| Plaintiffs, | **REPLY TO OPPOSITION TO DISQUALIFICATION OF ARBITRATOR BRENDAN HARE** |
| v. | |
| TURNBERRY/MGM GRAND TOWERS, LLC, et al., | |
| Defendants. | |

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1  I.     INTRODUCTION

2          For the most part, the plaintiffs' cited authority and arguments

3  do not address the issue presented by defendants' motion to disqualify

4  Brendan Hare *before* arbitration under him for 545 claimants:  Does the

5  Federal Arbitration Act *prohibit* removal of Arbitrator Hare under the

6  equitable authority of the Court for failing to make material disclosures at

7  the time of his appointment by the AAA—*i.e.*, that he had "refocused his

8  practice" to found Bowdoin Street Capital and promote his personal

9  business of financing "claimholders and their counsel" in the "advancement

10 and resolution of claims and litigations" against corporations, such as the

11 defendants in this case?  *See* TMGM at 168–70; 171–72.  The answer to this

12 question is "no," as *Aerojet-General v. Am. Arbitration Assoc., infra,* confirms.

13         A.     The Purpose of This Motion.

14         This motion to disqualify arbitrator Brendan Hare does not seek

15 to delay arbitration to a final award; the motion seeks to *expedite* arbitration

16 to a final award that can be *confirmed*.  The present arbitration under

17 Arbitrator Hare will not achieve that goal because any award he may enter

18 will not be confirmed; it will be vacated, for his established "evident

19 partiality."  As a matter of fact, the plaintiffs acknowledge Arbitrator Hare's

20 disability.  They have asked the AAA to *remove* 160 of their clients, known as

21 the *KJH* claimants, from the consolidated arbitration, TMGM 401–10, which

22 they obtained over Turnberry/MGM's objection from the arbitrator on

23 December 31, 2012.  TMGM 149–66.  For this reason, Turnberry/MGM seeks

24 the Court's equitable assistance now to ensure arbitration on the merits

25 before a neutral, unbiased arbitrator whose award would not be subject to

26 vacatur for partiality, to be followed by a second "do-over" arbitration before

27 a qualified arbitrator.

28

### B.      Procedure and Equity.

The plaintiffs' claim that this motion is "procedurally defective" overlooks this fundamental point:  no federal case has addressed the novel disqualification question presented by this motion—that is, does § 10(a)(2) of the Federal Arbitration Act *prohibit* pre-award equitable relief to remove an arbitrator whose award-impeaching partiality has been established as a matter of law prior to commencement of arbitration on the merits?[1]  Section 10(a) does *not* address or deny equitable power to the Court to remove a disqualified arbitrator *before* arbitration gets underway and culminates in an award that must be vacated.  Nev. Rev. Stat. 38.241.1(b)(1); 9 U.S.C. § 10(a)(2).  For this reason, *Aerojet-General Corp. v. Am. Arbitration Ass'n*, 478, 251 (9th Cir. 1973) continues to have vitality—certainly in this 9th Circuit.

---

[1] This question substantively distinguishes the cases cited by the plaintiffs; for example, *Smith v. Am. Arb. Ass'n*, 233 F.3d 502, 506 (7th Cir. 2006) (cited by Judge Du) and *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 678-80 (7th Cir. 1983).  Neither case supports their conclusion that § 10(a)(2) *requires* completion of an arbitration before a disqualified arbitrator may be removed.

In *Smith* the plaintiff sought to enjoin an arbitration before a qualified panel of male arbitrators.  The plaintiff claimed at least one woman should have been on the panel.  The district court declined to enjoin arbitration on the merits.  In this *Abraham* case—and in Judge Du's *Sussex* case—arbitration on the merits has not commenced.

*Merit Ins. Co.* addressed the grounds for setting aside an award under section 10 of the FAA and concluded that a "technical violation" of "current ethical norms" would not be sufficient to vacate the award.

Here, however, we address this fact of Arbitrator Hare's conduct, not disclosed by him, while he was holding himself out to Turnberry/MGM as an unbiased, neutral arbitrator:  He "*refocused his practice*" to pursue *financing for profit* mass litigation by plaintiffs against corporations, and in doing so with potential investors, he touted his status as a "neutral" arbitrator.  These are material facts that Turnberry/MGM was entitled to know at the outset, and it would have justified disqualifying Brendan Hare *before* he took office as the arbitrator.  Nev. Rev. Stat. 38.227.1.

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1  This case recognizes a limited pre-award application of equity to an

2  "extreme" case of arbitral proceedings to ensure that the AAA's

3  determination to reaffirm Arbitrator Hare "was made in accordance with a

4  minimum standard of fair dealing." 478 F.2d at 251.  Put another way, "if

5  temporary equitable relief is to have any meaning"—such as a pause in

6  arbitration to permit appointment of a neutral, unbiased arbitrator—"the

7  relief must be enforceable at the time it is granted, not after an arbitrator's

8  final decision on the merits." *Pacific Reinsurance v. Ohio Reinsurance*, 935 F.2d

9  1019, 1023 (9th Cir. 1991).

10  Nothing in the *Aerojet-General* opinion suggests that its holding

11  is limited to venue cases.  Even the cases cited by Plaintiffs confirm that.

12  *Application of York Hannover Holding v. Am. Arbitration Ass'n* ("*York*"), for

13  example, does not stop with the general rule that a determination in

14  arbitration on a complaint of arbitrator partiality is "generally. . . reviewable

15  by a district court only after an award has been made."  1993 WL 159961 *3

16  (S.D.N.Y. May 11, 1993) (citing to 65 A.L.R.2d 755, 756 (1959)).  *York* goes on

17  to say that a court may nevertheless intervene pre-award "where

18  intervention has been sought under the general equity powers of [the] court.

19  . . ."  *Id*. (emphasis added), citing to *Aerojet-General* to support pre-award

20  intervention in extreme cases.  The court then declares that "[u]nder New

21  York law, it is clear that the court has the equitable power to intervene

22  before a final arbitration award is made."  *Id*. (emphasis added).

23  **C.   Substantive Merits and the Facts.**

24  The plaintiffs tell the Court that by "agreeing to the application

25  of the AAA Rules," the AAA's decision to do nothing to deal with the

26  arbitrator's established partiality is "conclusive" and binding on this Court.

27  Opp. at 4.  Not only is this contention untenable in this extreme case, *Aerojet*

28  *General*, 478 F.2d at 251, 252, it does not reflect the law.  *Id*. ("language to the

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

4

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

effect that the decisions of the arbitrator shall be 'final and binding' has been held *not* to preclude some judicial review") (emphasis added); *accord, Merit Ins. Co.*, 714 F.3d at 680–81 ("The arbitration rules and code [of ethics for arbitrators] do not have the force of law").

### 1.   *Oxford Health* Does Not Address the Evident Partiality Standard of Review in This Case.

*Oxford Health* has nothing to do with any of the issues before the Court.  Plaintiffs confuse the "exceeded-their-powers" standard of review under 9 U.S.C. § 10(a)(4)—which *Oxford Health* merely reconfirmed—with the "evident partiality" standard of review under 9 U.S.C. § 10(a)(2) that was *not at issue* in *Oxford Health*.  The question here is not whether the AAA "exceeded" its powers or "acted within the scope of its contractually-delegated duties" when reaffirming the arbitrator; the question under 9 U.S.C. § 10(a)(2) is whether the "undisclosed facts show a reasonable impression of partiality."  *Schmitz v. Zilveti*, 20 F.3d 1043, 1046 (9th Cir. 1994).

Thus where, as here, the Court is presented with a pre-award challenge of an arbitrator based on evident partiality, the court may review the AAA's decision even if the AAA Rules say its determination is "final and binding." [2]  In doing so the Court must look at the "evident partiality" standard of review.  *Aerojet-General*, 478 F.2d at 251–52.  The "manifest disregard of the law" standard argued by the Plaintiffs as the standard of review has nothing to do with the evident partiality question presented to the Court here.

---

[2] Moreover, the AAA has said in this case that it will "abide by an order of the courts regarding the continued administration of the arbitration and the parties are requested to keep the AAA informed of the outcome." TMGM 455.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

Plaintiffs are also wrong when arguing that the Federal Arbitration Act ("FAA") governs review of arbitrator bias in federal court to the exclusion of Nevada arbitration law.  Opp'n at 14 n. 3 (citing *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) ("*Fidelity*"). Unlike the arbitration clause in *Fidelity*, the arbitration clause in the PSA in this case evidences "a clear intent to incorporate state law rules for arbitration."  *Id.* (internal citation omitted).  The PSA does not merely stipulate that Nevada substantive law applies to the disputes, as was the agreement in *Fidelity*; the Signature PSA provides that the "laws of the State of Nevada *shall* apply *to this Agreement*."  PSA § 24.10 (emphasis added).[3]

Nevada statutory arbitration law applies in this case to the extent that it does not frustrate the policy of the FAA.  *See Volt Info. Scis., Inc., v. Bd. of Trs.*, 489 U.S. 468, 479 (1989) (so holding in a case involving a similar arbitration clause which provided that "*the Contract* shall be governed by the law of the place where the Project is located," and that disputes would be decided "in accordance with the . . . Rules of the American Arbitration Association") (emphasis added).

### 2. The "Facts" Submitted by the Plaintiffs to Support Their Analysis of Arbitrator Bias Are Inaccurate and Thus Unreliable.

The plaintiffs also fail on the facts, or at least on the accurate reporting of them.  For example, they tell the Court "the Ninth Circuit applies the same standard for evident partiality and actual bias," citing *New*

---

[3] The arbitration clause also provides that its "provisions . . . shall not prevent any party from obtaining injunctive relief from a court of competent jurisdiction to enforce the obligations for which such party may obtain provisional relief pending a decision on the merits by the arbitrator.  PSA § 24.10.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

*Regency Productions*, 501 F.3d 1101, 110[*sic*] (9th Cir. 2007).  Here is what the Court said, contrary to what the plaintiffs say:  "*Evident partiality is distinct from actual bias.*"  501 F.3d at 1105.  As its authority, the Court turned to *Commonwealth Coatings v. Con'l Cas. Co.*, 393 U.S. 145, 149 (1968) to say that failure to "disclose to the parties any dealings that might create an impression of possible bias is sufficient to support vacatur."  The *New Regency Court* then concluded,

> **while we are cognizant of the public interest in efficient and final arbitration, we believe a rule that encourages 'arbitrators [to err] on the side of disclosure' is consistent with that interest.**

501 F.3d at 1111 (internal quotation from *Commonwealth Coatings*, 393 U.S. at 152) (emphasis added).  Why then, under *Aerojet-General*, should Brendan Hare not be disqualified *now* under the Court's equitable powers for failing to disclose his partisan "refocused practice" while purportedly serving as a "neutral arbitrator" in this case?

The plaintiffs go on to mis-state other facts in an effort to trivialize this motion.  They say, "Defendants after their motion to dismiss was denied by Arbitrator Hare, disingenuously claim that they were not aware that Arbitrator Hare represents not only the interests of defendants but also the interests of plaintiffs in class actions."  Opp. at 8.[4]  They then say

---

[4] Even if the defendants had not discovered the evidence of Arbitrator Hare's bias until after he had ruled, that would not affect this motion. *Mt. Holyoke Homes v. Jeffers Mangels Butler & Mitchell*, 2013 WL 5321158 (Cal. App. Sept. 24, 2013) *3 ("The arbitration award prompted Jones to search the Internet for evidence of the arbitrator's bias.  She discovered for the first time a previously undisclosed resume" that led to an arbitrator's disqualification for not having disclosed the resume, which a reasonable person could conclude raises "a doubt that the proposed arbitrator would be impartial.") *Id.* *6.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

the arbitrator's "resumé of his law practice cover[ed] these issues." *Id*. This outburst of mis-information does not account for—or mention—these unarguable facts:

- The defendants learned that Arbitrator Hare's resume was inaccurate and that he had "refocused" his practice in December 2012 –January 2013, *BEFORE* he denied defendants' motion to dismiss.

- On January 18, 2013, defendants informed the AAA that they would be challenging the arbitrator's failure to disclose Bowdoin Street Capital as the core of his refocused practice.

- On January 25, the defendants submitted their papers to the AAA proving his refocused practice from materials and advertisements *he authorized* but failed to disclose to the parties (or the AAA).

- The order denying defendants' motion to dismiss was filed the following day, on January 26.

*See* TMGM at 509–12 for timeline of the Arbitrator's appointment and his multiple failures to disclose.  *See also* Declaration of Steve Morris, filed concurrently herewith and the exhibits thereto, for proof of the latter two points.[5]

   This is not, as plaintiffs suggest in their opposition (pp. 5–6), an issue of "his experience in a specific area of law" that Arbitrator Hare disclosed.  We are concerned with what he did *not* disclose—Bowdoin Street

---

   [5] These facts demonstrate that the Plaintiffs are wrong again: Turnberry/MGM's objection to Arbitrator Hare was not prompted by his order denying the Defendants' motion to dismiss, although his order is contrary to Nevada law, as declared by Judge Mahan and the Nevada Supreme Court in *Rd. & Highway Builders v. N. Nev. Rebar*, 128 Nev. ___, 284 P.3d 377, 381 (2012) and *Soffer v. Five Mile Capital Partners, LLC*, 2:12-cv-1407 JCM (GWF) (D. Nev. Feb. 19, 2013) ("a fraudulent inducement claim fails as a matter of law where it directly contradicts the terms of an express written contract") (citing to *N. Nev. Rebar, supra*).

Capital and his interest in supporting and profiting from mass claims arbitrations, such as he is now presiding over.  When presented to Clark County District Judge Mark Denton this material omission drew this response:

> [T]he Court discerns nothing concrete in Plaintiffs' Opposition to the effect that attending to the disqualification issue now, before an arbitrator with 'evident partiality' undertakes hearing an enormous, multi-party case, will cause actual prejudice to Plaintiffs that would outweigh Defendant's right to be assured of a neutral arbitrator going into the proceedings. [] In this regard, why does it make any sense if the failure to disclose is manifest, and if its legal effect is made clear by Nevada law, for Defendant to have to go through lengthy and expensive proceedings when, at the outset, it has raised and intends to preserve the non-disclosure issue?

Decision and Order dated May 10, 2013 at 7:3–15, TMGM 251 (emphasis added).

The plaintiffs dismiss Bowdoin Street Capital as "stillborn" and "dormant," which they also posited to Judge Denton, whose response was:

> On this point, even if, as contended by Plaintiffs, there was disclosure of the type of parties that the Arbitrator represents and the types of cases he handles, there was not a disclosure of the litigation funding aspect; and, the fact that there may not have been as of yet any business generated by that aspect does not negate the fact that the Arbitrator has put himself in the market to generate that type of business.

*Id*. at 4:8–15, TMGM 248 (emphasis added).

## II.   CONCLUSION.

In 2011 Brendan Hare founded Bowdoin Street Capital and refocused his law practice to use Bowdoin as a vehicle to pursue financing and profit participation in mass claimants litigation against corporate defendants, such as this case represents.  He did not disclose these facts when he was appointed by the AAA as the arbitrator in this—and other now-consolidated cases—in February 2012 or thereafter, nor did Mr. Hare

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1   revise his resume to reflect these facts.  In no manner did he disclose to

2   Turnberry/MGM that he had refocused his law practice to side with

3   plaintiffs seeking to recover tens of millions of dollars against corporate

4   defendants such as the 545 claimants in this consolidated arbitration seek

5   against the corporate defendants here.

6         These undisclosed facts establish an irreconcilable *actual*

7   positional conflict, as the Clark County District Court found.  The facts are

8   conclusively disqualifying to Mr. Hare.  The Court should exercise its

9   equitable powers to remove him *now* to save the parties years of time and

10  millions of dollars that will be invested in a doomed arbitration whose final

11  award years in the future will surely be vacated because of a disqualifying

12  partiality that is evident today.

13

14        MORRIS LAW GROUP

15

16        By: /s/ STEVE MORRIS
            Steve Morris, No. 1543

17          Akke Levin, No. 9102
            Jean-Paul Hendricks, No. 10079

18          900 Bank of America Plaza
            300 South Fourth Street

19          Las Vegas, Nevada  89101

20        SNELL & WILMER L.L.P.

21        Alex Fugazzi, Bar No. 9022

22        Justin Carley, Bar No. 9994
          3883 Howard Hughes Parkway, #1100

23        Las Vegas, NV  89169

24        Attorneys for Defendant
          Turnberry/MGM Grand Towers, LLC

25

26

27

28

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1

**CERTIFICATE OF SERVICE**

2          Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of

3   Nevada Electronic Filing Procedures, I certify that I am an employee of

4   MORRIS LAW GROUP, and that the following documents were served via

5   electronic service: **REPLY TO OPPOSITION TO DISQUALIFICATION**

6   **OF ARBITRATOR BRENDAN HARE**

7

8   Attorneys for Plaintiffs:

9   Robert B. Gerard
    Ricardo R. Ehmann
10  Gerard & Associates
    2840 South Jones Blvd.
11  Bldg. D, Suite 4
    Las Vegas, Nevada  89146
12  *rgerard@gerardlaw.com*
    *Rehmann@gerardlaw.com*
13

14  Norman Blumenthal
    Kyle Nordrehaug
15  Blumenthal Nordrehaug & Bhowmik
    2255 Calle Clara
16  San Diego, California  92037
17  *norm@bamlawca.com*
    *kyle@bamlawca.com*
18

19  Burton Wiand
    Wiand Guerra King, P.L.
20  5505 w. Gray Street
    Tampa, FL  33609
21  *bwiand@wiandlaw.com*
22
         DATED this 4th day of October, 2013.
23

24                            By: /s/ VICKIE NICKERSON
25

26

27

28

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422