# EXHIBIT A

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STAR INSURANCE COMPANY,
SAVERS PROPERTY & CASUALTY
INSURANCE COMPANY, AMERITRUST
INSURANCE CORPORATION, and
WILLIAMSBURG NATIONAL INSURANCE
COMPANY,

                Plaintiffs,          CASE NUMBER: 13-13807
                                          HONORABLE VICTORIA A. ROBERTS

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

                Defendant.
_____/

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

      It is well established that courts generally lack jurisdiction to review arbitration proceedings until a final award has been issued. *Vestax Secs. Corp. v. Desmond*, 919 F. Supp. 1061 ( E.D. Mich. 1995).  There is an exception.  This request for injunctive relief implicates that exception and raises serious questions concerning a potential breach of a provision in the reinsurance contract (the "Treaty") between the parties; that provision requires that disputes be submitted to three arbitrators who are not under the control of any party to the Treaty.

      Plaintiffs contend this provision was breached when prohibited *ex parte* communications occurred between a member of the arbitration panel and counsel for National Union Fire Insurance Company of Pittsburgh ("National Union").  Secondly,

1

Plaintiffs maintain this provision has been breached because two orders, which adversely affect substantial issues, were issued by a two party panel, not the three party panel as contracted.

For the allegations of impropriety framed as breaches of contract, the Court has jurisdiction in this diversity action.

Star Insurance Company, Savers Property & Casualty Insurance Company, Ameritrust Insurance Corporation, and Williamsburg National Insurance Company (collectively "Plaintiffs") seek to enjoin further arbitration proceedings. The Court finds that Plaintiffs are entitled to the relief sought. Because of the strong evidence of *ex parte* communications between Arbitrator Rosen and Attorney Moglin, Plaintiffs raise credible issues concerning the: (1) fundamental fairness of the proceedings to date, and (2) integrity of the arbitration proceeding going forward. Just the fact of the *ex parte* communications looms large, even if the evidence ultimately shows that Arbitrator Rosen was not improperly influenced in any of his decisions.

The Court also finds that Plaintiffs will suffer irreparable harm if the pause button is not hit long enough to permit an examination into these allegations of *ex parte* communications, among others.

Finally, the balance of equities favors Plaintiffs, and the public will be served by upholding the agreement between the parties that all disputes be submitted to a tripartite panel, composed of disinterested individuals who are not under the control of either party.

Plaintiffs' Motion for temporary restraining order and for preliminary injunction is **GRANTED**.

## II.   BACKGROUND

The underlying dispute -- not an important consideration in this Court's decision -- arises from the Treaty between National Union and Plaintiffs covering Plaintiffs' workers' compensation business.

The Treaty's arbitration provision says that all disputes are to be decided by "active or retired disinterested officials" of insurance or reinsurance companies "not under the control of either party to this Agreement." Treaty, Article 21. The parties also agreed that the arbitration panel would "make its decision with regard to the custom and usage of the insurance and reinsurance business" with the understanding that "the majority decision of the board shall be final and binding upon all parties to the proceeding," subject to the laws of Michigan. *Id.* The Treaty specifically says "[a]ll provisions, including arbitration, of this Agreement are subject to the laws of the State of Michigan." *Id.*

The Treaty specifies that the parties were to select a tripartite panel; each party would select its own arbitrator and the two selected arbitrators would choose an umpire. If the two arbitrators fail to agree on the appointment of an umpire "each of them shall name three, of who the other shall decline two and the decision shall be made by drawing lots." *Id.* The Treaty also stated that any dispute, "shall be submitted to the decision of the board of arbitration, composed of two arbitrators and an umpire." *Id.*

National Union named Jonathan Rosen to serve as its arbitrator. Plaintiffs named Rex Schlaybaugh. These two could not agree on an umpire; after "casting lots," Thomas Greene -- who disclosed that he had a close friendship with Rosen -- was named umpire. These three gentlemen constitute the Arbitration Panel (the "Panel").

3

The Panel considered the parties' written submissions and other input, and issued a Scheduling Order months prior to the hearing. It said that "[e]x parte communications with any member of the panel shall cease upon the filing of the parties' initial pre-hearing briefs."

The Panel held a hearing. On July 23, 2013, it issued an Interim Final Award addressing liability; questions regarding damages were left open. In their Reply Brief, Plaintiffs contend that complex, substantial liability issues remain for decision, as well as issues of damages. Indeed, Plaintiffs believe they face as much as a $25 million dollar arbitration award against them before September 20, 2013, which would negatively impact their goodwill, stock value, standing in the reinsurance industry and ratings with agencies.

Beginning that same day, Attorney Moglin spoke with Arbitrator Rosen -- *ex parte* -- about the Interim Final Award; this is evidenced by his time entries:

> 1. 07-23-13 - N. Moglin - Review interim award and confer with J. Rosen regarding same (.7);
>
> 2. 07-25-13 - N. Moglin - Correspondence from D. Young requesting modification of time frame for compliance with Panel order (.30); email from Panel denying request (.10); call with D. Young regarding same (.20); call with J. Rosen regarding same (.30); prepare response to D. Young and Panel setting forth National Union's position regarding final order (1.10); begin preparing bill of costs per Panel order.

The Interim Final Award required Plaintiffs to provide certain documentation. Plaintiffs did that on Tuesday, August 6, 2013. Attorney Moglin again had *ex parte* communications with Arbitrator Rosen on August 7th:

> 1. 08-07-13 - K. Wilde - Meet with client to discuss [Redacted] (4.90); participate in telephone conference with J. Rosen

4

regarding same (1.50).

2. 08-07-13 - N. Moglin - Prepare for and meet with P. Fox, D. Beauchamp, W. Collier and K. Wilde to discuss [Redacted] (4.50); extended telephone conference with J. Rosen regarding same (1.60); review transcript for Day 1 of hearing and note statements inconsistent with Meadowbrook supplemental brief (2.10); confer with K. Wilde regarding all of the above (AO).

Following those *ex parte* communications with Rosen, Attorney Moglin filed a motion to strike Plaintiffs' submission, saying that Plaintiffs' documentation was insufficient. Arbitrators Rosen and Greene granted this motion to strike on August 12, 2013. Plaintiffs say this was done without the knowledge or participation of Arbitrator Schlaybaugh.

These telling time entries were discovered by Plaintiffs after August 12, 2013, when they examined them in connection with National Union's attorneys' fee and cost petition.

On August 13, 2013, Plaintiffs filed an emergency motion for clarification and asked for additional time to file replacement submissions. The Panel -- again without the input of Arbitrator Schlaybaugh say Plaintiffs -- granted the request for additional time to replace the stricken submission and clarified what documentation must be submitted.

Aside from these time entries, Plaintiffs submit that Attorney Moglin and Arbitrator Rosen sat together on a panel funded by Moglin's law firm and scheduled a second panel discussion during the course of these arbitration proceedings. Two National Union representatives, one of whom is the Associate General Counsel in charge of this matter for National Union, also presented.

5

In addition to filing the August 13 emergency motion, Plaintiffs filed a Complaint in the Oakland County Circuit Court seeking to vacate, correct and/or modify the Panel's Award.

On August 21, Plaintiffs filed an "Emergency Motion to Stay All Proceedings" with the Panel. A majority of the Panel denied this motion. Arbitrator Schlaybaugh filed a dissent. In his dissent, Arbitrator Schlaybaugh said "[b]oth these orders were made without my participation, consultation or input and had the effect of disenfranchising me from participation in decisions on very important issues in this arbitration."

After denial of its Emergency Motion to Stay, Plaintiffs filed a motion with the Oakland County Circuit Court seeking review and appeal of the Panel's Final Interim Award Order. Two days later, National Union removed the case to this Court based on diversity jurisdiction. On September 10, Plaintiffs filed this motion for injunctive relief. It is fully briefed. This Court waives oral argument pursuant to L.R. 7.1(e)(2).

### III.   LEGAL STANDARD

Under Fed. R. Civ. P. 65(a), a court may issue a preliminary injunction on notice to the adverse party. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *United States v. Edward & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) ("The purpose of a preliminary injunction is simply to preserve the status quo."). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Camenisch*, 451 U.S. at 395. The movant need not prove its case in

6

full at a preliminary injunction hearing, and the findings of fact and conclusions of law made at this stage are not binding at trial on the merits. *Id.*

When a party moves for preliminary injunction, district courts consider four factors in determining whether relief should be granted: (1) the likelihood of success on the merits; (2) the irreparable harm which could result without the requested relief; (3) the possibility of substantial harm to others; and (4) the impact on the public interest. *Christian Schmidt Brewing Co. v. G. Heilman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir. 1985). No single factor is dispositive; rather, the court must balance them and determine if they weigh in favor of an injunction. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997).

## IV.   ANALYSIS

### A. The Court Has Jurisdiction Over Plaintiffs' Challenge

National Union says this Court does not have jurisdiction to entertain Plaintiffs' request. It says, according to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., a court's pre-award jurisdiction is limited to determinations of contract validity and determining whether arbitration is required. National Union argues that Plaintiffs' request for injunctive relief is an interlocutory appeal of the Panel's Order denying Plaintiffs' request to stay arbitration.

Both parties acknowledge that unless an award is final, a district court generally does not have jurisdiction. *Vestax,* 919 F. Supp. at 1075; *see also Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n.4 (2d Cir. 1980) ("It is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award.").

Under the Treaty, the parties agreed that Michigan law applies: "[a]ll provisions, including arbitration, of this Agreement are subject to the laws of the State of Michigan." Treaty, Article 21; *see generally PK Time Group, LLC v. Robert*, No. 12 Civ. 8200 (PAC), 2013 U.S. Dist. LEXIS 104449 (S.D.N.Y. July 23, 2013); *see generally, PK Time Group, LLC v. Robert*, No. 12 Civ. 8200 (PAC), 2013 U.S. Dist. Lexis 104449.

Even if the FAA did preempt the parties' selected law, this dispute surrounds a contract provision in the Treaty establishing the rules under which the arbitration is to proceed; namely, all disputes are to be decided by a three party panel composed of disinterested arbitrators who are not under the control of any party. Whether that contract provision has been breached is at issue. And, under the FAA, a court "may intervene [after the commencement of any arbitration proceedings] if the agreement is 'subject to attack under general contract principles 'as exist at law or in equity.'" *Porter v. City of Flint,* 736 F. Supp. 2d 1095, 1098 ( E.D. Mich. 2010)(citing *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) (quoting 9 U.S.C. § 2)).

Plaintiffs ask the Court to stay arbitration so that they may investigate whether the *ex parte* communications between Attorney Moglin and Arbitrator Rosen constitute a breach of the Treaty, which "requires arbitration of disputes before a tripartite panel. It does not permit – or require – Plaintiffs to submit to arbitration before a two person panel, one of whom is actively assisting the Defendant (all in direct derogation of the ARIAS Code of Conduct)." Reply Br. for Plaintiffs, Doc. 9, at 6.

Secondly, Plaintiffs do not ask, at this juncture, that the Court vacate or disturb the award of $1.6 million already made by the Panel as its Interim Final Award.

Plaintiffs' claim is grounded in a contract dispute; no Plaintiff is a citizen of the

8

state of the National Union. Millions of dollars are at issue. The Court has diversity subject matter jurisdiction. 28 U.S.C. §1332.

### B. Injunctive Relief

#### 1. Plaintiffs Will Suffer Irreparable Harm If An Injunction Does Not Enter

National Union's primary argument for denying injunctive relief is that Plaintiffs cannot establish harm for which there is no legal remedy. It contends any damage Plaintiffs might suffer is purely monetary and of their own making. This is not true. The Affidavit of Robert Collins demonstrates that an anticipated award of $25 Million Dollars will injure Plaintiffs' reputation, goodwill, and standing in the insurance industry because it could attack Plaintiffs':

> (1) [] agent relationships, having long term effects; (2) potential future agents and customers who are considering doing business with Plaintiffs; (3) reputation and customer good will; (4) [] financial strength rating(s) . . . with applicable rating agencies; and (5) regulatory relationships with various state insurance departments, including their states of domicile (Michigan, Ohio, Missouri and Texas), possibly causing restrictions on Plaintiffs' business operations.

Affidavit of Robert Collins, ¶ 7.

Courts hold that harm to business reputation and goodwill is an irreparable injury. *Beztak Co. v. Bank One Columbus*, N.A, 811 F. Supp. 274 ( E.D. Mich. 1992)("Harm to business reputation and good will may constitute irreparable harm for the purpose of an injunction.").

This factor weights in favor of Plaintiffs.

#### 2. Plaintiffs are Likely to Succeed on the Merits

9

While the underlying Complaint seeks to vacate, modify or correct the Interim Final Award already entered, in this request for injunctive relief, Plaintiffs ask the Court to halt further proceedings until the nature of the relationship between Arbitrator Rosen and Attorney Moglin can be sorted out.

The purpose of this request for injunctive relief is to allow Plaintiffs additional time to investigate the relationship between Attorney Moglin and Arbitrator Rosen, and determine whether it is in violation of the arbitration provision of the parties' Treaty, thereby preventing further injury to Plaintiffs.

Tellingly, National Union in its brief failed to meaningfully address what is at the heart of Plaintiffs' request for injunctive relief: the alleged *ex parte* communications between Attorney Moglin and Arbitrator Rosen; but, National Union seems not to dispute the fact of the communications. The best that National Union does say is that the Panel entered a scheduling order on August 29 which attempted to clarify when *ex parte* communications could be engaged in. Importantly, this Amended Scheduling Order was entered after the *ex parte* communications occurred, and was purportedly intended to clarify a perfectly clear prior order which said there were to be no *ex parte* communications after a certain date.

Much of National Union's brief is devoted to the substance of the arbitration proceedings and various discovery disputes - none of which is important to the Court for purposes of determining whether equitable relief should be granted.

The *Porter* court said, a "district court does not have jurisdiction over disputes involving allegations of bias until after the arbitration proceedings have come to a close and the party claiming bias has received an award." *Porter,* 736 F. Supp. 2d at 1098

10

(quoting *Vestax*, 919 F.Supp. at 1075)); see also *Aviall*, 110 F.3d at 895. The *Porter* court also acknowledged that the arbitration agreement between the parties was governed by the FAA. *Porter,* 736 F. Supp. 2d at 1098.

Nonetheless, the court in *Porter* concluded that there was a justiciable claim warranting application of the exception to the general rule, that exception being that a court may intervene in an arbitration if the agreement is subject to attack under general contract principles, and particularly where prior to commencement of any arbitration proceeding, the plaintiff alleges specific instances of actual misconduct on the part of the arbitrator. *Id.*

The *Porter* court also concluded that a court has authority to remove an arbitrator before arbitration proceedings have ended where 'the arbitrator's relationship to one party [is] undisclosed, or unanticipated and unintended, thereby invalidating the contract.'" *Id.* (quoting *Aviall*, 110 F.3d at 896)(discussing cases where arbitrators were removed because they concealed relationships)).

In their Reply brief, Plaintiffs say they learned just yesterday that Arbitrator Rosen sits on a six person Executive Committee with an official of National Union's. Documentation shows that Arbitrator Rosen and Attorney Moglin presented on panels together during the course of arbitration. And, undisputedly, these two have engaged in *ex parte* communications. Combined, these allegations call into question whether the true nature of the relationship between the two was hidden.

Plaintiffs and National Union entered into a contract requiring that disinterested officials, not under the control of any party, serve as arbitrators. Plaintiffs raise substantial questions going to the heart of this contract. Their success on the merits will

turn on whether National Union violated the terms of the Treaty Agreement through *ex parte* communications with Arbitrator Rosen. Several Michigan cases have held that the failure to disclose facts that might reasonably lead to an appearance of bias constitutes grounds for vacating an arbitration award. *Cipriano v Cipriano,* 289 Mich App 361, 370; 808 NW2d 230 (2010); *Albion Public Schools v Albion Ed Ass'n/MEA/NEA,* 130 Mich App 698, 701; 344 NW2d 55 (1983);. *Hewitt v Village of Reed City,* 124 Mich 6, 8-9; 82 N.W. 616 (1900).

Further, the *Hewitt* court went on to hold that the rule is very strict, and "the safer rule is for the court to enter into no examination as to whether the arbitrator is in any way influenced by *ex parte* communications." *Hewitt,* 124 Mich at 8-9; 82 N.W. at 617.

Under the limited exception recognized in *Vestex, Aviall, Porter* and cases decided by state of Michigan courts, it appears that Plaintiffs need only prove the fact of the *ex parte* communications to prevail on the merits of a request to remove a panel member, which would in effect vacate an arbitration award.

Secondly, Plaintiffs are likely to prevail on their breach of contract claim for the failure to submit disputes before a three party panel. The Treaty says that any dispute, "shall be submitted to the decision of the board of arbitration, composed of two arbitrators and an umpire." Treaty, Article 21. Yet, Plaintiffs' arbitrator, Arbitrator Schlaybaugh, was not involved in two major decisions which impact whether Plaintiffs will be liable for over $25 million dollars. Arbitrator Schlaybaugh says that one of the issued orders changed the language of the Final Interim Award to Plaintiffs' detriment.

National Union's argument that Plaintiffs cannot prevail on this argument because Schlaybaugh was copied on all emails, and Umpire Greene, a neutral

12

arbitrator, participated in the process, is unavailing. In his dissent, Arbitrator Schlaybaugh says that there was no urgency to these decisions; these decisions were made while he was on a two day vacation; and Arbitrator Rosen and Umpire Greene knew that he would have no or limited ability to communicate while on vacation.

The Court finds that this factor weighs in favor of Plaintiffs; they are likely to prevail on the merits in a breach of contract action.

### 3. Substantial Harm to Others

Plaintiffs say that no harm would come to National Union if the arbitration proceedings are stayed.

While National Union does cite to case law which says that the inability to collect a money judgment is harm, *Tri-State Generation v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986), Plaintiffs persuasively argue that no award, even if issued, could be confirmed and reduced to judgment until these issues are resolved.

This factor favors Plaintiffs.

### 4. Public Policy

Although there is a strong federal policy favoring arbitration, the public interest lies in the integrity of the arbitration process and in upholding arms length, negotiated contracts.

The public interest favors the issuance of an injunction of the arbitration proceedings, to probe further and to preserve the status quo.

## IV. CONCLUSION

Plaintiffs' Motion for Preliminary Injunction is **GRANTED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 12, 2013

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 12, 2013.

S/Linda Vertriest
Deputy Clerk

---