Robert B. Gerard, Esq. (Nevada State Bar #005323)
Ricardo R. Ehmann, Esq. (Nevada State Bar #010576)
**GERARD & ASSOCIATES**
2840 South Jones Boulevard
Building D, Suite #4
Las Vegas, Nevada 89146
Telephone:    (702) 251-0093
Facsimile:    (702) 251-0094

Norman Blumenthal, Esq. (California State Bar #068687)
**BLUMENTHAL, NORDREHAUG & BHOWMIK**
2255 Calle Clara
La Jolla, California 92037
Telephone:    (858) 551-1223
Facsimile:    (858) 551-1232

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF  NEVADA

| | |
|---|---|
| MARY ANN SUSSEX, et al.<br><br>       Plaintiffs,<br><br>    vs.<br><br>TURNBERRY/MGM GRAND<br>TOWERS, LLC, et al.<br><br>      Defendants.<br><br>_(Consolidated With)_<br><br>GEORGE ABRAHAM, et al.,<br>      Plaintiffs,<br>v.<br>TURNBERRY/MGM GRAND<br>TOWERS, LLC, a Nevada LLC, et al.<br>      Defendants. | CASE NO.:  **2:08-cv-00773-MMD-PAL**<br>(Consolidated with Case No.<br>2:11-cv-01007-MMD-PAL)<br><br>**PLAINTIFFS' SUPPLEMENTAL**<br>**MEMORANDUM IN OPPOSITION**<br>**TO MOTION TO DISQUALIFY**<br>**ARBITRATOR**<br><br>Before:       Hon. Miranda  Du<br>Department:    4A<br>Date:        December 3, 2013<br>Time:        10:00 a.m. |

# **TABLE OF CONTENTS**

I.      INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATE OF THE EVIDENCE REGARDING DEFENDANTS' EVIDENT
        PARTIALITY CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    CASES WHERE AN ARBITRATOR WOULD RECEIVE AN  INDIRECT
        BENEFIT FROM AN AWARD THAT WOULD FAVOR ONE PARTY
        DO NOT  SUPPORT A FINDING OF EVIDENT PARTIALITY
        IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.     Pre-award Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.     Pre-award Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

               1.     *Apusento Garden (Guam) Inc. v. Superior Court of Guam*,
                      94 F.3d 1346 (9th Cir. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

               2.     *In re Wal-Mart Wage and Hour Employment Practices Litig.*,
                      2011 WL 4809046 (D. Nev. Oct. 11, 2011) . . . . . . . . . . . . . . . . . 6

               3.     *Lucile Packard Children's Hospital, Stanford Hospital Clinics v.
                      U.S. Nursing Corp.*,  2002 WL 1162390
                      (N.D. Cal. May 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

               4.     *Specialized Distribution Management, Inc. v. Brotherhood of
                      Teamsters*, 1995 WL 688662 (N.D. Cal. Nov. 13 1995)  . . . . . . . 8

               5.     *Hernandez v. Smart & Final, Inc.*,
                      2010 WL 2505683 (S.D.Cal. June 17, 2010 )  . . . . . . . . . . . . . . . 9

               6.     *Northwestern Nat. Ins. Co. v. Allstate Ins. Co.*,
                      832 F.Supp. 1280, 1284-85 (E.D. Wis. 1993)  . . . . . . . . . . . . . . 9

               7.     *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*,
                      173 F.3d 493 (4th Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

               8.     *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*,
                      476 F.3d 278 (5th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

               9.     *In Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and
                      Marine Ins. Co.*, 668 F.3d 60 (2d Cir. 2012)  . . . . . . . . . . . . . . . 14

               10.    *Benjamin, Weill & Mazer v. Kors*,
                      195 Cal.App.4th 40 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.   THE CASE LAW ON RECUSAL OF FEDERAL JUDGES PROVES THAT
      RECUSAL IS ONLY APPROPRIATE WHERE A JUDGE HAS A DIRECT
      PERSONAL, SUBSTANTIAL PECUNIARY INTEREST IN THE
      OUTCOME OF THE CASE AND AN ARBITRATOR CANNOT BE HELD
      TO A HIGHER STANDARD  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.    AS JUDGE HUNT RULED IN REJECTING AN EARLIER CHALLENGE
      TO ARBITRATOR HARE IN THIS CASE, REVIEW IS LIMITED TO
      THE ISSUE OF WHETHER THE AAA'S PROCEDURE WAS
      FUNDAMENTALLY UNFAIR OR BIASED IN FAVOR OF
      ONE OF THE PARTIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Cases**:

Page(s):

*Aerojet-General Corp. v. American Arbitration Assoc.*,
   478 F.2d 248 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*,
   173 F.3d 493 (4th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10, 11, 12

*Benjamin, Weill & Mazer v. Kors*,
   195 Cal.App.4th 40 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Commonwealth Coatings Corp. v. Continental Cas. Co.*,
   393 U.S. 145 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Consolidation Coal Co. v. Local 1643*,
   48 F.3d 125 (4th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Crater v. Galaza*,
   491 F.3d 1119 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Crawford Group, Inc. v. Holekamp*,
   543 F.3d 971 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19

*David v. GMAC Mortg., LLC*,
   2011 WL 6078272 (N.D. Cal. Dec. 6, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fidelity Federal Bank, FSB v. Durga Ma Corp.*,
   386 F.3d 1306 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Hernandez v. Smart & Final, Inc.*,
   2010 WL 2505683  (S.D.Cal. June 17, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Hurles v. Ryan*,
   706 F.3d 1021(9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Wal-Mart Wage and Hour Employment Practices Litig.*,
   2011 WL 887556 (D. Nev. March 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

*Lucile Packard Children's Hospital, Stanford Hospital Clinics v. U.S. Nursing Corp.*,
   2002 WL 1162390 (N.D. Cal. May 29, 2002) . . . . . . . . . . . . . . . . . . . . . 1, 2, 7

*Middlesex Mutual Ins. Co. v. Levine*,
   675 F.2d 1197 (4th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

*M2 Software Inc. v. M2 Communications*,
   L.L.C., 463 F.3d 868 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Merit Ins. Co. v. Leatherby Ins. Co.*,
   714 F.2d 673 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 19

*New Regency Productions, Inc. v. Nippon Herald Films, Inc.*,
  501 F.3d 1101 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 12, 14

*Northwestern Nat. Ins. Co. v. Allstate Ins. Co.*,
  832 F.Supp.1280 (E.D. Wis. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*,
  476 F.3d 278 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 12, 13,14

*Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*,
  668 F.3d 60 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 15

*Specialized Distribution Management, Inc. v. Brotherhood of Teamsters*,
  1995 WL 688662 (N.D. Cal. Nov. 13 1995) . . . . . . . . . . . . . . . . . . . . . 1, 2, 8

*Sussex v. Turnberry/MGM Grand Towers LLC*
  2010 WL 3171121, at *3 (D. Nev August 11, 2010) . . . . . . . . . . . . . . 3, 18, 19

*Toyota of Berkeley v. Automobile Salesman's Union, Local 1095*,
  834 F.2d 751 (9th Cir.1987)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

**Statutes:**

9 U.S.C. § 10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 9

1    **I.**    **INTRODUCTION**

2        As the case law indicates herein, an arbitrator's failure to disclose to rise to the level

3 of evident partiality requiring vacatur of an arbitral award "must involve a significant

4 compromising connection to the parties". *Positive Software Solutions, Inc. v New Century*

5 *Mortgage Corp.*, 476 F.3d 278, 283-83, cited with approval in *New Regency Productions,*

6 *Inc. v. Nippon Herald Films, Inc.* 501 F3d 1101,1110 (9th Cir. 2007).

7        Moreover, "a party seeking vacatur must put forward facts that objectively

8 demonstrate such a degree of partiality that a reasonable person could assume that the

9 arbitrator had an improper motive. The movant carries a 'heavy' burden, in order to meet

10 this 'onerous' standard." *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*, 173

11 F.3d 493, 502 (4th Cir. 1999); cited with approval in *New Regency Productions*, 501 F3d

12 at 1110. Here there is no evidence presented by Defendants that satisfies their heavy

13 burden or meets this onerous standard of proving the existence of an improper motive.

14        Consistent with the case law cited herein, to establish a "reasonable impression of

15 possible bias" the evidence must show that the arbitrator has a direct interest in the

16 outcome of the arbitration or a significant compromising relationship with one of the

17 parties or their counsel. The case law requires more than evidence of common ownership

18 in a apartment complex by the arbitrator and the claimant's expert in an arbitration

19 concerning ownership of another apartment building -- *Apusento (Guam) Inc. v. Superior*

20 *Court of Guam*, 94 F.3d  1346 (9th Cir. 1996); more than evidence that the arbitrator

21 earned substantial fees from a prior mediation involving a party's counsel -- *In re*

22 *Wal-Mart Wage and Hour Employment Practices Litig.*, 2011 WL 4809046 (D. Nev. Oct.

23 11, 2011); more than evidence of the arbitrator's involvement in non-profit groups

24 benefitting children in a suit involving a non-profit children's hospital -- *Lucile Packard*

25 *Children's Hospital, Stanford Hospital Clinics v. U.S. Nursing Corp.*, 2002 WL 1162390

26 (N.D. Cal. May 29, 2002); more than evidence of the arbitrator's expectation of repeat

27 business from a party in whose favor he rules -- *Specialized Distribution Management,*

28

*Inc. v. Brotherhood of Teamsters*, 1995 WL 688662 (N.D. Cal. Nov. 13 1995); more than evidence of the arbitrator's relationship with a partner in a firm representing a party through service on the same board of directors -- *Hernandez v. Smart & Final, Inc.*, 2010 WL 2505683 (S.D.Cal. June 17, 2010); more than evidence of an enhanced "reputational" status in an industry from ruling in favor of a member of that industry -- *Northwestern Nat. Ins. Co. v. Allstate Ins. Co.*, 832 F.Supp.1280 (E.D. Wis. 1993); more than the arbitrator's representation of the sole customer of a party which might have to pay the award if the party did not prevail -- *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*, 173 F.3d 493 (4th Cir. 1999); more than the arbitrator having served as co-counsel with one of the parties' counsel in a prior arbitration -- *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278 (5th Cir.2007); and more than having ruled in favor of one of the parties in another similar arbitration – *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60 (2d Cir. 2012).

**At bottom, to find evident partiality under 9 U.S.C. §10(a), the law requires evidence of partiality that is "direct, definite and capable of demonstration rather than remote, uncertain and speculative."** *Hernandez*, 2010 WL 2505683 at *7; *Lucile Packard Children's Hospital*, 2002 WL 1162390 at *6; *Specialized Distribution Management, Inc. v. Brotherhood of Teamsters*, 1995 WL 688662 at *9; *ANR Coal*, 173 F.3d at 500.[1]

To be clear, as set forth in the Declaration of Norman B. Blumenthal (Blum Dec) filed herewith, there is no relationship direct or indirect with Arbitrator Hare or his firm or Bowdoin Street Capital LLC and any Plaintiff or any of Plaintiffs counsel or their firms. Moreover, none of the Plaintiffs or their counsel have ever obtained capital from any fund at any time for litigation. Therefore, as the case law demonstrates, there is no direct or indirect benefit that Arbitrator Hare could possibly receive from an award in favor Plaintiffs that would require vacatur for evident partiality under the applicable case law.

---

[1]Emphasis added unless otherwise stated.

Importantly, the "conclusive" decision of the AAA Council that Arbitrator Hare would not be removed as arbitrator for evident partiality is entitled to great deference. *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008); *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir. 1983).[2]

Defendants fail to offer any evidence of any benefit that Arbitrator Hare would enjoy as a result of an award in favor of Plaintiffs. Accordingly, Plaintiffs respectfully submit that Defendants' motion to disqualify Arbitrator Hare must be denied.

## II.   STATE OF THE EVIDENCE REGARDING DEFENDANTS' EVIDENT PARTIALITY CLAIM

The totality of the evidence that Defendants have proffered to claim evident partiality is set forth in the following five (5) exhibits, which are attached to the Declaration of Norman B. Blumenthal filed herewith

Exhibit 1:      Brendan Hare Resume

Exhibit 2:      Bowdoin Street Capital Website Excerpts

Exhibit 3:      Commercial Litigation Funding and Investmens Advertising and Scheduling

Exhibit 4:      Email from Arbitrator Hare to AAA

Exhibit 5:      Ruling of AAA Administrative Review Council

An examination of the evidence in the context of the applicable law cited herein reveals the complete absence of any evidence of a direct or indirect connection between Arbitrator Hare and the Plaintiffs or their counsel, or any evidence of any bias of the AAA Council in favor of the Plaintiffs or their counsel. Defendants hypothesize, without any evidence, that due to the fact that Arbitrator Hare gave seminars in investing in litigation

---

[2] Indeed, Judge Hunt noted in his decision of August 11, 2010 in this case [Doc. 71], that in order for this Court to overturn the decision of the AAA applying AAA rules, the acts complained of must "render the arbitration selection process as it transpired 'fundamentally unfair' within the meaning of the cases addressing the issue" such that the very process through which the arbitrator was chosen was "biased in favor of one party". *Sussex v. Turnberry/MGM Grand Towers, LLC*, 2010 WL 3171121, at *3 (D. Nev August 11, 2010). Defendants make no such showing that the AAA rules governing arbitrator disqualification are fundamentally unfair or biased against them.

and legal finance companies and formed a still born company for the purpose of investing in litigation, Arbitrator Hare must have a compromising connection with Plaintiffs. Defendants, however, fail to produce any evidence that even remotely ties in his scholarly work or still born company to any investment in Plaintiffs case or other cases dealing with hotel condominium litigation, securities litigation, or any other type of litigation from which Arbitrator Hare could directly or indirectly benefit from a decision in favor of the Plaintiffs.  Indeed, the Defendants do not even present any evidence of the type of cases Arbitrator Hare considered appropriate for investment.  Given Arbitrator Hares substantial experience as associate general counsel for Honeywell for 12 years and his experience involving computer hardware and software, the only area one could safely assume that his investment strategy would include would be investments in both defendants' and plaintiffs' intellectual property cases as his area of expertise. See Hare Resume, attached as Exhibit 1 to Blum Dec.

Therefore, as set forth in the cases cited herein, there is simply no evidence upon which this Court could possibly overturn the "conclusive" decision of the neutral AAA Council confirming Arbitrator Hare as exceeding the AAA Council's contractual authority or finding the AAA process as being biased in favor of the Plaintiffs. Moreover, there is no evidence of any compromising connection between Arbitrator Hare or the Plaintiffs or their counsels that would allow this Court to remove Arbitrator Hare in light of the deference this Court must give to the decision of the AAA Council.

At bottom, there is no evidence of any possible bias that "is direct, definite and capable of demonstration."  Defendants fall woefully short of carrying their heavy burden of objectively demonstrating such a degree of partiality that a reasonable person could assume that the Arbitrator has improper motives in his rulings in this arbitration.  The bias claimed by Defendants is nothing more than the product of "remote, uncertain and speculative" conjecture, which cannot support disqualification for evident partiality under the applicable case law.

Defendants have failed to produce any evidence of any direct or indirect benefit that Arbitrator Hare would enjoy as the result of an award in favor of Plaintiffs and aslo failed to produce any evidence of any relationship between Arbitrator Hare and any Plaintiff or Plaintiffs' counsel.  There is also no evidence that Arbitrator Hare had any clients in other cases or any investors who could benefit from the outcome of this arbitration or that Bowdoin Capital would benefit from an award in favor of Plaintiffs. Under these facts, Plaintiffs respectfully submit that the state of the evidence is such that Defendants have failed to meet their burden of proving evident partiality. As a result, Defendants' motion must be denied.

### III. CASES WHERE AN ARBITRATOR WOULD RECEIVE AN  INDIRECT BENEFIT FROM AN AWARD THAT WOULD FAVOR ONE PARTY DO NOT SUPPORT A FINDING OF EVIDENT PARTIALITY IN THIS CASE

#### A. Pre-award Cases

Defendants have failed to cite any cases where a federal court has ever decided a claim of evident partiality prior to an arbitral award based on an arbitrator's alleged indirect or direct interest in the outcome or relationship to the parties, and Plaintiffs' research reveals none. Every federal court that has ever considered the issue has held that, under the FAA, a claim of evident partiality may only be reviewed after an award in the context of a motion to vacate the award under 9 U.S.C. §10(a). See Plaintiffs' Opposition Brief at pp. 11-16.  No court has ever allowed interlocutory review of an arbitrator's alleged partiality under *Aerojet-General Corp. v. American Arbitration Assoc.*, 478 F.2d 248 (9th Cir. 1973).

#### B. Post-award Cases

The cases where federal courts have considered the issue of evident partiality in the context of motions to vacate arbitration awards establish that evidence of an arbitrator's indirect interest in the outcome of an arbitration or indirect relationship with a party is insufficient to vacate an arbitral award.  Where, as here, Defendants have failed to present any evidence that Arbitrator Hare would receive any benefit from the outcome

of this arbitration, either direct or indirect or that he has any direct or indirect relationship with any party of their counsel, disqualification must be denied under this governing case law as set forth below.

### 1. *Apusento Garden (Guam) Inc. v. Superior Court of Guam*, 94 F.3d 1346 (9th Cir. 1996)

In *Apusento(Guam) Inc. v. Superior Court of Guam*, 94 F.3d 1346 (9th Cir. 1996), the Ninth Circuit held that it was reversible error to disqualify an arbitrator in an arbitration concerning ownership of an apartment building where the arbitrator failed to disclose that he and the claimant's expert witness were both limited partners in the same partnership that owned an apartment building. The Ninth Circuit held that the arbitrator's alleged indirect interest in the outcome of the case based on his apartment building investment with claimant's expert was insufficient to create a reasonable impression of possible bias:

> Without this basis for finding an "impression of possible bias," the remaining indicia of possible bias alluded to by the superior court in its analysis, including the fact that the subject of the arbitration was an apartment complex and that the limited partnership owned an apartment complex, also fail to create a reasonable impression of possible bias.

*Id.* at 1353.

### 2. *In re Wal-Mart Wage and Hour Employment Practices Litig.*, 2011 WL 4809046 (D. Nev. Oct. 11, 2011)

In *In re Wal-Mart Wage and Hour Employment Practices Litig.*, 2011 WL 4809046 (D. Nev. Oct. 11, 2011), Judge Pro held that there was no basis to disqualify an arbitrator who failed to disclose that he had earned substantial fees from a prior mediation involving one of the attorneys in an attorney fee arbitration and therefore inclined to favor that attorney. As Judge Pro explained:

> "**[V]acatur is appropriate only if the undisclosed facts amount to a real, non-trivial conflict. [C]laims of evident partiality based on long past, attenuated, or insubstantial connections between a party and an arbitrator" will not support vacatur**.

*Id.* at *3, quoting *New Regency Productions, Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1110 (9th Cir. 2007).

The Burton Group contends Phillips did not disclose business relationships he had with the Bonsignore Group. Specifically, the Burton Group contends Phillips did not disclose he was the mediator and future arbitrator in the mediation in Salvas or that he was the mediator in the Smokeless Tobacco cases....**Even if Phillips failed to disclose the Smokeless Tobacco cases, the Burton Group has failed to establish that this non-disclosure creates a reasonable impression of partiality**. The Burton Group does not explain how Phillips' participation in the Smokeless Tobacco cases is a real, nontrivial conflict. Phillips mediated Smokeless Tobacco in early 2008, nearly one year before the parties in this case settled with Walmart. The Smokeless Tobacco cases have no connection to this matter, and the Burton Group has not identified what information Phillips may have obtained from Bonsignore in that matter that would have any impact on a fee dispute in unrelated cases nearly two years later. Although the Burton Group suggests Phillips obtained substantial financial rewards for being named the arbitrator in the Smokeless Tobacco settlement, and therefore **may be more inclined to favor Bonsignore as a repeat customer of sorts**, the Burton Group presents no evidence Phillips reaped any financial benefit from being named the arbitrator in the Smokeless Tobacco settlement. **Phillips' role as the arbitrator in Smokeless Tobacco is too remote and attenuated from his role as arbitrator in the present dispute to create a reasonable impression of partiality sufficient to support vacatur**.

*Id.* at *6-7.

### 3. *Lucile Packard Children's Hospital, Stanford Hospital Clinics v. U.S. Nursing Corp.*, 2002 WL 1162390 (N.D. Cal. May 29, 2002)

In *Lucile Packard Children's Hospital, Stanford Hospital Clinics v. U.S. Nursing Corp.*, 2002 WL 1162390 (N.D. Cal. May 29, 2002), the court held that an arbitrator in an arbitration where one of the parties was a children's hospital benefitting children could not be disqualified based on failure to disclose her involvement with several non-profit groups benefitting children.  Judge Maxine Chesney held "**Any possibility of bias capable of being inferred from these activities is simply too 'remote, uncertain and speculative' to warrant vacatur.**" *Id.*   Judge Maxine Chesney explained that "Vacatur of an arbitration award for 'evident partiality' is appropriate where '**the possibility of bias [is] direct, definite and capable of demonstration rather than remote, uncertain and speculative.**'" *Id.* at *6, quoting *Middlesex Mutual Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (4th Cir.1982).[3]

_____

[3]As Judge Chesney observed, *Middlesex Mutual* was cited with approval by the Ninth Circuit in *Schmitz v. Zilveti*, 20 F.3d 1043, 1046 (9th Cir. 1994).

### 4.  *Specialized Distribution Management, Inc. v. Brotherhood of Teamsters*, 1995 WL 688662 (N.D. Cal. Nov. 13 1995)

In *Specialized Distribution Management, Inc. v. Brotherhood of Teamsters*, 1995 WL 688662 (N.D. Cal. Nov. 13 1995), the Court rejected a motion to vacate an arbitration award based on alleged partiality in favor of the Teamsters Union, based on the claim of an implied threat that the Teamsters would not hire the arbitrator for future arbitrations if he ruled against them. **As Judge Wilken explained, an arbitrator's indirect interest in the outcome of an arbitration of obtaining repeat business from the party in whose favor he rules is not grounds for disqualification**:

> No doubt Plaintiff is correct that arbitrators are aware, each time they render a decision, that the party against whom they rule may feel less inclined to hire them for future arbitrations. Indeed, no arbitrator could be unaware of such an obvious fact, or would need a party to call attention to that fact in order to be aware of it. The fact that all arbitrators are subject to that awareness indicates that the Court should exercise extreme caution in inferring that an arbitrator was influenced by such awareness. Instead, **the Court should and does presume that an arbitrator will try in each case to render a fair and honest opinion.**

*Id.* at *8.

As Judge Wilken held, to justify disqualification, [t]he alleged bias must be "**direct, definite and capable of demonstration rather than remote, uncertain or speculative**." Id. at *9, quoting *Consolidation Coal Co. v. Local 1643,* 48 F.3d at 129.

> The party seeking to vacate an award must "establish specific facts that indicate improper motives on the part of the arbitrator." Id. The court set forth four factors to use in analyzing whether there is bias: (**1**) any personal interest the arbitrator has in the proceeding; (**2**) the directness of the relationship between the arbitrator and the allegedly favored party; (**3**) the connection of that relation to the arbitration; and (**4**) the proximity in time between the relationship and the arbitration proceeding.

*Id.*

### 5.  *Hernandez v. Smart & Final, Inc.*,  2010 WL 2505683  (S.D.Cal. June 17, 2010 )

In *Hernandez v. Smart & Final, Inc.*, 2010 WL 2505683 (S.D.Cal. June 17, 2010), the court denied a motion to vacate an arbitration award based on the arbitrator's failure

to disclose that he was the U.S. Chair of the U.S.-Mexico Bar Association at the same time a partner at one of the law firms representing defendant in the arbitrtion, served as the U.S. Vice–Chair of the U.S.-Mexico Bar Association.   As the district court observed "[a]lthough disclosure enables parties to select an arbitrator intelligently, courts are reluctant to set aside awards on the basis of nondisclosure alone." *Id.* at *7, citing *Toyota of Berkeley v. Automobile Salesman's Union, Local 1095*, 834 F.2d 751, 755 (9th Cir.1987).   "[T]he **possibility of bias [must be] direct, definite and capable of demonstration rather than remote, uncertain and speculative**." *Id.*, quoting *Middlesex Mutual Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (4th Cir.1982).

> Situations involving "evident partiality" for purposes of 9 U.S.C. § 10(a) include an arbitrator's financial interest in the outcome of the arbitration, an arbitrator's failure to disclose prior consulting work for a party, a family relationship that made the arbitrator's impartiality suspect, an arbitrator's former employment by one of the parties, and an arbitrator's employment by an entity represented by one of the parties' law firms.

> Those facts are not present here. Tre–Her does not cite any financial or personal relationship between Arbitrator Fagan, the partner at Haynes Boone, or the outcome of the arbitration. There is also no evidence of an employment or familial relationship between Arbitrator Fagan, the partner at Haynes Boone, or any other party to the arbitration. At most, the evidence shows a passive relationship between Arbitrator Fagan and one who is only indirectly, if at all, associated with the case. These circumstances are not sufficient to justify vacatur.

*Id.* at *7 (citations omitted).

### 6.   *Northwestern Nat. Ins. Co. v. Allstate Ins. Co.*, 832 F.Supp. 1280, 1284-85 (E.D. Wis. 1993)

In *Northwestern Nat. Ins. Co. v. Allstate Ins. Co.*, 832 F.Supp. 1280, 1284-85 (E.D. Wis. 1993), the court ruled that the indirect benefit an arbitrator allegedly received as the result of the outcome of the arbitration was insufficient to justify vacatur of the arbitral award.

> Adams' evident partiality is allegedly established by the benefit that he could expect to receive from the Panel's ruling. The nature of the benefit, as argued by NNIC, was an "**enhanced**" status in the industry or an "**enhanced**" position with his former and current employers. In essence he had a "**reputational**" interest in the ruling. In turn, this benefit or reputational enhancement would accrue because the ruling might result in

a favorable outcome for his ex-employer in a possible future dispute. **For reasons subsequently discussed, such a benefit is so minor (if not non-existent) and evinces so little tendency to bias that "evident partiality" is not shown.**

NNIC not only argues that Adams had a "stake in the outcome of that dispute" (NNIC's Memo. at 24–25) but "an incalculable personal stake" in the resolution of the Admiral dispute: "If Admiral's reinsurers were held liable for a monumental share of the liability on a failed program ... Skandia and International Credit (along with countless others in the tightly knit reinsurance industry) would surely remember for a long, long time that it was Adams who had personally committed Skandia's assets to that program in the first place. Conversely, if the reinsurers were absolved of liability on the Admiral Treaties, it is somewhat of an understatement to suggest that Adams' status within that family of insurance companies—and his reputation generally—would "be enhanced" by that result." ( *Id*.)

What NNIC has shown is nothing more than what the Court has characterized as a "reputational" interest in the outcome of the arbitration.... **Adams' reputational interest is inherently insubstantial, and the fact that it is merely a potential and future benefit, makes it "remote, uncertain, and speculative".**

*Id*. at 1184-85.

The district court concluded that there was no duty to disclose this indirect interest in the outcome of the arbitration:

[T]he arbitrator's inducement to bias had to be substantial and not merely remote, before the requirement of notice arose. "... [T]he circumstances must be powerfully suggestive of bias ...". *Id*. Adams' inducement to bias was minimal, and therefore there was no "substantial danger of an unjust result".

*Id*. at 1286, quoting *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir. 1983).

> 7.    ***ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc*., 173 F.3d 493 (4th Cir. 1999)**

In *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc*., 173 F.3d 493 (4th Cir. 1999), the Court of Appeals rejected the claim that an arbitrator should be disqualified for failing to disclose that his firm represented the sole customer of a party. "ANR maintains that if the arbitrators had determined that Cogentrix breached the coal sales contract, then Cogentrix would have passed the costs of this breach on to its sole customer, Carolina Power. **Brewer, according to ANR, thus had a 'personal interest' in finding no**

**breach, i.e., protecting his firm's client, Carolina Power, from incurring these costs**."

*Id*. at  .  The Fourth Circuit held that this claimed interest in the outcome was too indirect and attenuated to require disclosure or support disqualification:

> ANR has not demonstrated that Nexsen Pruet's representation of Carolina Power evidences any **"direct" relationship** between Brewer and Cogentrix. Nor can ANR point to any real "connection" between that relationship and the arbitration. Carolina Power was not a party to the arbitration; Nexsen Pruet's representation of the utility is thus a step removed from the arbitration proceeding. In *United States Wrestling Fed'n v. Wrestling Division of AAU, Inc.*, 605 F.2d 313 (7th Cir.1979), the court held that an arbitrator's connection with a non-party did not constitute evident partiality even though the non-party had a relationship with a party to the arbitration. Here the connection between Brewer, the arbitrator, and the party he is alleged to favor, Cogentrix, is even more attenuated. Brewer himself never personally represented Carolina Power. Thus, the "connection" between Brewer and Cogentrix is virtually nonexistent. The final Consolidation Coal factor, proximity in time, does favor ANR because at the time of the arbitration Nexsen Pruet represented Carolina Power. But this factor is of little significance in view of ANR's lack of proof as to the other factors.

*Id*. at 501-02.

Disqualification is proper only when the asserted bias is "**direct, definite and capable of demonstration rather than remote, uncertain or speculative**" and the facts are sufficient to indicate "**improper motives on the part of the arbitrator**." *Id*. at 500, quoting *Consolidation Coal Co. v. Local 1643*, 48 F.3d 125, 129 (4th Cir.1995)

As the Fourth Circuit stated:

> **a party seeking vacatur must put forward facts that objectively demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives. The movant carries a "heavy" burden, in order to meet this "onerous" standard**.

*Id*. at 501 (citations omitted).[4]

---

[4] The *ANR* court set forth the following four-part test to determine whether an arbitrator's interest in the outcome or  relationship to the parties or is sufficiently direct to warrant disqualification:

> (**1**) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; (**2**) the directness of the relationship between the arbitrator and the party he is alleged to favor; (**3**) the connection of that relationship to the arbitration; and (**4**) the proximity in time between the relationship and the arbitration proceeding.

Like Defendants in this case, the defendant in ANR failed to carry their "heavy burden":

> **ANR has not carried its burden of proffering facts that, alone or taken together, would permit a reasonable person to assume that Brewer was partial to Cogentrix. A trivial relationship, even if undisclosed, will not justify vacatur of an arbitration award.**

*Id*. at 502.[5]

### 8.  *Positive Software Solutions, Inc. v. New Century Mortgage Corp*., 476 F.3d 278, 284 (5th Cir.2007)

In *Positive Software Solutions, Inc. v. New Century Mortgage Corp*., 476 F.3d 278 (5th Cir.2007), the Fifth Circuit reversed an order vacating an arbitration award for evident partiality based on nondisclosure of an indirect relationship between an arbitrator and counsel for one of the parties in arbitration. The claim was based on the undisclosed fact that the arbitrator had served as co-counsel with one of the parties' counsel in earlier litigation.  The district court held that the arbitrator's failed to disclose "a significant prior relationship with New Century's counsel," which created an appearance of partiality requiring vacatur.  *Id*. at 280.

The Fifth Circuit held that this indirect relationship with counsel for one of the parties did not constitute evident partiality. As the Court explained the plain language of the evident partiality standard required reversal:

> **On its face, "evident partiality" conveys a stern standard**. Partiality means bias, while "evident" is defined as "clear to the vision or understanding" and is synonymous with manifest, obvious, and apparent. Webster's Ninth New Collegiate Dictionary 430 (1985). The statutory language, with which we always begin, seems to **require upholding arbitral awards unless bias was clearly evident in the decisionmakers**.

The Fifth Circuit held that the indirect connection between the arbitrator and one

---

*Id*. at 500.

[5] In *New Regency Productions*, the Ninth Circuit quoted *ANR* for its holding that nondisclosure can be the basis for disqualification or vacatur of an arbitral award only "if the conflict left undisclosed was real ... and 'not trivial'." 501 F.3d at 1110, quoting *ANR*, 173 F.3d at 499 n. 4.

parties counsel fell far short of the evident partiality standard articulated by the Supreme

Court in *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145 (1968) and

the cases applying *Commonwealth Coatings*

> **No case we have discovered in research or briefs has come close to vacating an arbitration award for nondisclosure of such a slender connection between the arbitrator and a party's counsel**. In fact, courts have refused vacatur where the undisclosed connections are much stronger. See, e.g., *Montez v. Prudential Sec., Inc.*, 260 F.3d 980, 982, 984 (8th Cir.2001) (no vacatur; as general counsel for a company, arbitrator had employed sixty-eight attorneys, paying them $2.8 million in fees, from the law firm representing one of the parties in the arbitration); *ANR Coal*, 173 F.3d at 495-96 (no vacatur; arbitrator's law firm represented company that indirectly caused the dispute in the arbitration by buying less from the defendant, who in turn sought to buy less from the plaintiff); *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C.Cir.1996) (no vacatur where arbitrator's former law firm represented party to the arbitration on unrelated matters); *Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 429, 432-34 & n. 3 (11th Cir.1995) (no vacatur where arbitrator had memorialized prior scheduling dispute with an attorney from the law firm representing one of the parties and mentioned it eighteen months later at the arbitration; arbitrator also failed to disclose that he became "of counsel" to a law firm the prevailing party had interviewed for the purpose of obtaining representation in the instant dispute and that had reviewed the contract involved in the case two years prior; court found this, at best, showed a "remote, uncertain, and speculative partiality"); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1255, 1264 (7th Cir.1992) (arbitrator knew one of the parties, had worked in the same office with him twenty years ago, and saw him about once a year since; the court found this relationship "minimal" and insufficient to vacate); *Merit Ins.*, 714 F.2d at 677, 680 (no vacatur; arbitrator had worked directly under the president and principal stockholder of one of the parties for three years, ending fourteen years prior to the arbitration; the Seventh Circuit noted that "[t]ime cools emotions, whether of gratitude or resentment"); *Ormsbee Dev. Co.*, 668 F.2d at 1149-50 (no vacatur where arbitrator and law firm representing a party had clients in common; requiring vacatur under such facts would "request that potential neutral arbitrators sever all their ties with the business world" (internal quotation omitted)).

The Court of Appeal concluded that "nondisclosure alone does not require vacatur

of an arbitral award for evident partiality. **An arbitrator's failure to disclose must**

**involve a significant compromising connection to the parties**." 476 F.3d at 282-83.

As the Fifth Circuit explained requiring vacatur based on a mere appearance of bias

arising from an indirect relationship **"would hold arbitrators to a higher ethical**

**standard than federal Article III judges"** contrary to the concurring opinion of Justice

White in *Commonwealth Coating*. *Id*. at 285.

Like the indirect, attenuated relationship that was insufficient to support vacatur in *Positive Software*, Arbitrator Hare's nonexistent interest in the outcome of this arbitration and nonexistent relationship with the parties and counsel "pales in comparison to those in which courts have granted vacatur." *Id*. at 284.

In *New Regency Productions*, the Ninth Circuit cited *Positive Software* with approval observing that "Understandably, courts have rejected claims of evident partiality based on long past, attenuated, or insubstantial connections between a party and an arbitrator." 501 F.3d at 1110.

### 9.   *In Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60 (2d Cir. 2012)

In *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60 (2d Cir. 2012), the Second Circuit reversed a district court order vacating an arbitral award based on alleged evident partiality involving the arbitrators' failure to disclose that they were simultaneously serving as arbitrators in another similar arbitration in which one of the parties was also a party and ruled in favor of that party in the other arbitration. *Id*. at 75.

The Second Circuit held the "nondisclosure does not by itself constitute evident partiality. **The question is whether the facts that were not disclosed suggest a material conflict of interest**" *Id*. at 77.

> [W]e think that a court must focus on the question of how strongly that relationship [between the arbitrator and a party] tends to indicate the possibility of bias in favor of or against one party, and not on how closely that relationship appears to relate to the facts of the arbitration. In other words, even if a particular relationship might be thought to be relevant "to the arbitration at issue," that relationship will nevertheless not constitute a material conflict of interest if it does not itself tend to show that the arbitrator might be predisposed in favor of one (or more) of the parties. **As we put it in Applied Industrial, for a relationship to be material, and therefore require disclosure, it must be such that "[a] reasonable person would have to conclude that an arbitrator who failed to disclose [it] ... was partial to one side.**"

*Id*. at 75-76, quoting *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007).

1

**10.     *Benjamin, Weill & Mazer v. Kors*,  195 Cal.App.4th 40 (2011).**

2

The California intermediate appellate decision in *Benjamin, Weill & Mazer v.*

3

*Kors*,  195 Cal.App.4th 40 (2011) is the only case Defendants cite where an arbitrator has

4

been disqualified in the absence of a direct interest in the outcome of the case or a direct

5

relationship with the parties or their counsel.   The California statute governing

6

disqualification, however, is different from the FAA and **in federal court, evident**

7

**partiality claims are  governed by federal law not state law**.   *Fidelity Federal Bank,*

8

*FSB v. Durga Ma Corp*., 386 F.3d 1306, 1313  (9th Cir. 2004) ("We look to the FAA and

9

federal law to determine whether Arbitrator Leib was evidently partial, whether vacation

10

of the arbitration award was required and whether Fidelity's evident partiality challenge

11

is waived.").

12

Moreover, *Benjamin* is factually inapposite.  *Benjamin* addressed an action to

13

collect legal fees arbitrated as part of the local bar association's Mandatory Fee Arbitration

14

Program where the arbitrator at the time of the arbitration, was contemporaneously

15

engaged in the private representation of lawyers and law firms on issues of professional

16

responsibility which involved the same subject matter as the ongoing arbitration.  195

17

Cal.App.4th at  66.  The *Benjamin* court found that

18

19

20

21

22

23

24

> **In the present case, the arbitrator was contemporaneously engaged in the private representation of lawyers and law firms on issues of professional responsibility and representing a law firm in a case involving an attorney fee dispute**. Neither Haworth nor any of the other cases BWM relies upon involve anything like this **simultaneous representation of clients in the same position as one of the parties to the current arbitration in matters involving the same subject matter**. The disclosure Kors sought relates to substantial business relationships and economic interests not at issue in Haworth or BWM's other cases. **Unlike those cases, the disclosure at issue here was of matters that clearly could create a reasonable belief that the arbitrator " 'was biased for or against a party for a particular reason**.

25

*Id*.

26

Here there is no evidence of any clients of Arbitrator Hare or investors waiting in

27

the wings to reward Arbitrator Hare for an award in favor of Plaintiffs or that he represents

28

any clients who would benefit from such a result.  As a result, *Benjamin* would be of no

1    help to Defendants, even if this Court were to apply California law.[6]

2

3    **IV.   THE CASE LAW ON RECUSAL OF FEDERAL JUDGES PROVES THAT RECUSAL IS ONLY APPROPRIATE WHERE A JUDGE HAS A DIRECT PERSONAL, SUBSTANTIAL PECUNIARY INTEREST IN THE OUTCOME OF THE CASE AND AN ARBITRATOR CANNOT BE HELD TO A HIGHER STANDARD**

4

5

6        The case law governing recusal of federal judges also shows that a decision-

7    maker's indirect interest in the outcome of a case is insufficient to justify recusal.  As the

8    Ninth Circuit has ruled in assessing evident partiality, federal judges must adhere to a

9    more stringent standard of impartiality than arbitrators.  *Toyota of Berkeley v. Local 1095*,

10   834 F.2d 751, 755 (9th Cir.1987) (holding that the district court erred in holding that

11   "arbitrators are held to the same high standards of impartiality as judges.")  These cases

12   are also applicable here because like the assignment of a case to a federal judge, here the

13   parties were not involved in the selection of Arbitrator Hare.

14       Recusal by federal judges is denied where the judge has only an indirect interest

15   in the outcome of the case and, absent evidence of actual bias, is appropriate only if the

16   judge has a "**direct, personal, substantial pecuniary interest**" in the outcome.  *Hurles*

17   *v. Ryan*, 706 F.3d 1021(9th Cir. 2013); *Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir.

18   2007).

19       Thus,  in *M2 Software Inc. v. M2 Communications, L.L.C.*, 463 F.3d 868 (9th Cir.

20   2006)  the Ninth Circuit held there was no basis for recusal where the judge owned no

21   stock  in any party but owned stock in a company that had an option to buy an interest in

22   a company that had an exclusive distribution contract with one of the parties. *Id*. at 869.

23   _____

24       [6] While the issue of evident partiality is governed by federal law (*Fidelity Federal*,
25   386 F.3d at 1313) if the Court were to look towards any state law it would have to be
     Nevada law, which the parties chose in their arbitration agreement.  Unlike California law,
26   the Nevada statute limits the interest in the outcome of the arbitration that an arbitrator
     must disclose to "**[a] financial or personal interest in the outcome of the arbitral**
27   **proceeding**."  N.R.S. 38.227(a).  Arbitrator Hare has no financial or personal interest in
28   the outcome of this arbitration.

1

2

3

4

5

> In sum, then, I had no interest "however small" in the subject matter in controversy. Instead, I had an interest in a company (a) that had an option to purchase 19.9% of a company (b) that owned a company (c) that contracted with a party to this suit. **Such an indirect interest does not require recusal**. See United States v. Bayless, 201 F.3d 116, 127 (2d Cir.2000) ("Disqualification is not required on the basis of remote, contingent, indirect or speculative interests.")

6

*Id.*

7

8

9

10

11

12

13

These cases inform us that where a federal judge owns stock in one of the parties, the judge should recuse as a result of the potential compromising connection from an award in favor of the company in which the judge owns stock. No case can be found however where the judge should recuse because of ownership of stock in the industry in which a party is a participant i.e. the judge owns stock in Chevron and is the judge in a case against Exxon. *C.f.*, *David v. GMAC Mortg., LLC*, 2011 WL 6078272, *1 (N.D. Cal. Dec. 6, 2011).

14

15

16

17

18

19

20

21

22

Taken one step further, where as here Arbitrator Hare merely created Bowdoin Street Capital LLC, as "an entity to explore the possibility of raising a fund to provide capital for litigation, but raised no money and made no investments", and "except for a vestigial web presence, the company has been completely dormant", there is no investment in any industry in which Arbitrator Hare could even remotely benefit from an award in favor of Plaintiffs.  See Email from Arbitrator Hare, attached to Blum Dec. as Exhibit 4. Using the Exxon/Chevron example, this would be like recusal of a judge in the case against Exxon because the judge opened an account in which he could invest in Chevron but never made the investment.

23

24

25

26

27

28

As the examination of the case law provided herein both as to recusal of federal judges and vacatur of arbitrators for evident partiality reveals, there is no case that even comes close to a finding of recusal or vacatur for opening an account for the purpose of making investments in unknown companies where the account was not funded and the account was unrelated in any way to the parties or their counsel. If such a tangential,

1    remote and hypothetical indirect benefit were to be grounds for recusal or vacatur for

2    evident partiality the courts would be full of claims for removal of judges and arbitrators

3    by losing parties.  This is simply not the law.

4
5    **V.    AS JUDGE HUNT RULED IN REJECTING AN EARLIER CHALLENGE
         TO ARBITRATOR HARE IN THIS CASE, REVIEW IS LIMITED TO THE
6        ISSUE   OF   WHETHER   THE   AAA'S   PROCEDURE   WAS
         FUNDAMENTALLY UNFAIR OR BIASED IN FAVOR OF ONE OF THE
7        PARTIES**

8        When Plaintiffs challenged the initial appointment of Arbitrator Hare in 2010,

9    Judge Hunt ruled that the challenge could not succeed because the AAA process under

10   which Arbitrator Hare was appointed was not fundamentally unfair and was not biased in

11   favor of any party.  *Sussex v. Turnberry/MGM Grand Towers, LLC*, 2010 WL 3171121,

12   at *3 (D. Nev August 11, 2010).

13       First Judge Hunt ruled that the issue was procedural because "**AAA rules, which**

14   **the  parties  contractually  agreed  to  employ,  provide[d]  specific  nonjudicial**

15   **procedures for its resolution**".  *Id*. at *3, quoting *Dockser v. Schwartzberg*, 433 F.3d

16   421, 425 (4th Cir. 2005).  Because the AAA procedures for appointment of arbitrators are

17   procedural, Judge Hunt ruled that they were only subject to judicial review if "'**the**

18   **process to select the arbitrator is fundamentally unfair'" or... "the very processes**

19   **through which arbitrators were chosen were biased in favor of one party**." *Id*.,

20   quoting  *McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 n. 7 (6th Cir.2004).

21       The AAA's process for disqualification of an arbitrator is also a procedural matter.

22   *Fidelity Federal Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1312  (9th Cir. 2004)

23   ("Rules relating to disclosure by an arbitrator and remedies for arbitrator bias or

24   misconduct relate to the process of the arbitration rather than the substance of the

25   dispute.") Like the appointment of an arbitrator, a motion to disqualify is subject to "AAA

26   rules, which the parties contractually agreed to employ, provide[d] specific nonjudicial

27   procedures for its resolution." *Sussex*, 2010 WL 3171121, at *3.  Absent evidence that the

28   AAA's  procedure  for  deciding  Defendants'  claim  that  Arbitrator  Hare  should  be

disqualified was fundamentally unfair or biased against Defendants, this Court should defer to the AAA's determination that "the arbitrator shall be reaffirmed in this case."  See Exhibit 5 to Blum Dec.

Other courts agree that where, as here, the parties agree to be bound by AAA rules that provide that any motion to disqualify an arbitrator will be decided by the AAA whose determination will be conclusive, the AAA's determination is entitled to great deference. *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008);  *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir. 1983).

## VI.   CONCLUSION

Plaintiffs have spent more than three (3) years and incurred substantial fees and costs to reach the point that this case is now ready for discovery and the first trial in arbitration.  Plaintiffs expect to have a final award withing a year, absent any further delays of the AAA proceedings.  Therefore for the reasons stated herein, Plaintiffs respectfully request that Defendants' meritless, legally deficient and procedurally infirm motion to remove Arbitrator Hare for evident partiality be denied and the stay lifted so that Plaintiffs can proceed with discovery and the first trial in arbitration forthwith.

Respectfully submitted,

Dated: November 21, 2013          BLUMENTHAL, NORDREHAUG & BHOWMIK

By:     */s/ Norman B. Blumenthal*
            Norman B. Blumenthal

2255 Calle Clara
La Jolla, California 92037
Telephone:    (858) 551-1223
Facsimile:     (858) 551-1232

Gerard & Associates
2840 South Jones Blvd.
Building D, Unit 4
Las Vegas, Nevada  89146
Telephone: (702) 251-0093

Facsimile: (702) 251-0094

Burt Wiand
Florida State Bar #407690
Wiand Guerra King
3000 Bay Port Drive, Suite 600
Tampa, FL 33607
Telephone:    (813) 347-5100
Facsimile:    (813) 347-5199

***Attorneys For The Plaintiffs***