Robert B. Gerard, Esq. (Nevada State Bar #005323)
Ricardo R. Ehmann, Esq. (Nevada State Bar #010576)
**GERARD & ASSOCIATES**
2840 South Jones Boulevard
Building D, Suite #4
Las Vegas, Nevada 89146
Telephone:   (702) 251-0093
Facsimile:   (702) 251-0094

Norman Blumenthal, Esq. (California State Bar #068687)
**BLUMENTHAL, NORDREHAUG & BHOWMIK**
2255 Calle Clara
La Jolla, California 92037
Telephone:   (858) 551-1223
Facsimile:   (858) 551-1232

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARY ANN SUSSEX, et al. <br><br> Plaintiffs, <br><br> vs. <br><br> TURNBERRY/MGM GRAND TOWERS, LLC, et al. <br><br> Defendants. <br><br> *(Consolidated With)* <br><br> GEORGE ABRAHAM, et al., <br> Plaintiffs, <br> v. <br> TURNBERRY/MGM GRAND TOWERS, LLC, a Nevada LLC, et al. <br> Defendants. | CASE NO.: **2:08-cv-00773-MMD-PAL** (Consolidated with Case No. 2:11-cv-01007-MMD-PAL) <br><br> DECLARATION OF NORMAN BLUMENTHAL IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION TO DISQUALIFY ARBITRATOR <br><br> Before: Hon. Miranda Du <br> Department: 4A <br> Hearing Date: December 3, 2013 <br> Hearing Time: 10:00 a.m. |

I, Norman Blumenthal, declare:

1.     I am an attorney licensed to practice in the State of California and an attorney of record for the Plaintiffs in the above entitled action.  I have personal knowledge as to the facts stated in this declaration.  If called as a witness, I could and would competently testify to the truth of the facts stated in this declaration.  I make this declaration in support of Plaintiffs' supplemental memorandum in opposition to motion to disqualify Arbitrator.

2.     There is no relationship direct or indirect with Arbitrator Hare or his firm or Bowdoin Street Capital LLC and any Plaintiff or any of Plaintiffs' counsel or firms. Moreover, none of the Plaintiffs or their counsel have ever obtained capital from any fund at any time for litigation.  Therefore, as the case law demonstrates, there is no direct or indirect benefit that Arbitrator Hare could possibly receive from an award in favor of Plaintiffs that would require vacatur for evident partiality under the applicable case law.

3.     The totality of the evidence that Defendants have proffered to claim evident partiality is set forth in the following five (5) exhibits, which are attached to this Declaration.

4.     Attached hereto as Exhibit #1 is a true and correct copy of Arbitrator Brendan M. Hare's Resume.

5.     Attached hereto as Exhibit #2 is a true and correct copy of Bowdoin Street Capital's website excerpts.

6.     Attached hereto as Exhibit #3 is a true and correct copy of the Commercial Litigation Funding and Investments Advertising and Scheduling.

7.     Attached hereto as Exhibit #4 is a true and correct copy of the Supplemental Disclosure email submitted by Arbitrator Brendan Hare to the AAA on February 13, 2013.

8.     Attached hereto as Exhibit #5 is a true and correct copy of the September 4, 2013 ruling of AAA Administrative Review Council.

9.     An examination of the evidence in the context of the applicable law reveals the complete absence of any evidence of a direct or indirect connection between  Arbitrator Hare and the Plaintiffs or their counsel, or any evidence of any bias of the AAA Council in favor

DECLARATION OF NORMAN BLUMENTHAL IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION TO DISQUALIFY ARBITRATOR

-1-

of the Plaintiffs or their counsel. Defendants hypothesize, without any evidence, that due to the fact that Arbitrator Hare gave seminars in investing in litigation and legal finance companies and formed a still born company for the purpose of investing in litigation, Arbitrator Hare must have a compromising connection with Plaintiffs. Defendants, however, fail to produce any evidence that even remotely tie in Arbitrator Hare's scholarly work or still born company to any investment in Plaintiffs case or other cases dealing with hotel condominium litigation, securities litigation, or any other type of litigation from which Arbitrator Hare could even tangentially benefit from a decision in favor of the Plaintiffs. Indeed the Defendants do not present any evidence of the type of cases Arbitrator Hare considered appropriate for investment. Given Arbitrator Hares substantial experience as associate general counsel for Honeywell for 12 years and his experience involving computer hardware and software, the only area one could safely assume that his investment strategy would include would be investments in both defendants' and plaintiffs' intellectual property cases as his area of expertise.

Therefore as set forth in the cases, there is simply no evidence upon which this Court could possibly overturn the "conclusive" decision of the neutral AAA Council confirming Arbitrator Hare as exceeding the AAA Council's contractual authority or finding the AAA process as being biased in favor of the Plaintiffs. Moreover, there is no evidence of any compromising connection between Arbitrator Hare or the Plaintiffs or their counsels that would allow this Court to remove Arbitrator Hare in light of the deference this Court must give to the decision of the AAA Council. At bottom, there is no evidence of any possible bias that is direct, definite and capable of demonstration. The bias claimed by Defendants is nothing more than the product of remote and uncertain speculation and conjecture, which currently cannot support disqualification for evident partiality under applicable case law.

I declare under penalty of perjury under the laws of the United States and of the State of Nevada that the foregoing is true and correct. Executed this 21st day of November, 2013

1  at San Diego, California.

2

3                              _/s/ Norman B. Blumenthal_____

4                              Norman Blumenthal, Esq.

5  K:\D\Dropbox\Pending Litigation\MGM\Sussex - class action\p-Dec-Blumenthal Support of Supp Memom In Opp-FINAL.wpd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT #1

**Contact** American Arbitration Association
950 Warren Avenue
East Providence, RI 02914
**telephone: 866-293-4053   facsimile: 401-435-6529**

**Brendan M. Hare, Esq.**

**Current Employer-Title**   Hare & Associates - Managing Partner

**Profession**   Attorney - Commercial Litigation, including Class Actions and Technology Litigation

**Work History**   Managing Partner, Hare & Associates, 2009-present; Managing Partner, Hare & Chaffin, 1990-09; Partner, Wickens, Hare, Koches & Brooks, 1988-90; Associate General Counsel, Honeywell, Inc., 1976-88; Associate, Lyne, Woodworth & Evarts, 1974-76; Staff Attorney, Office of Executive Secretary, Supreme Judicial Court, 1973-74; Instructor of Economics, Merrimack College, 1967-69.

**Experience**   Over 30 years' experience litigating the full spectrum of commercial and corporate legal issues arising in the computer, communications, controls and alarm industries. Prosecutes and defends claims involving hardware and software vendors. Has assessed several hundred computer-related disputes from both plaintiff and defense standpoints. Has acted as advisor to multinational computer and controls companies and provided litigation management services nationally for a prominent manufacturer. Represents plaintiffs in a putative class action against one of the nation's largest mortgage servicers and defendant high tech manufacturer in putative class action brought for alleged pollution and stigma damages to real property.

**Alternative Dispute Resolution Experience**   Since 1989, neutral arbitrator in: a putative class action by truckers related to tier contractual entitlement to freight charges from a shipping company; one of Boston's largest law firm breakups; a class action by pharmacies claiming breach of contract, fraud, breach of fiduciary duty, and unjust enrichment against one of the largest pharmacy benefits manager arising from its use of audits as to compounded drugs; a $240 million dispute against a major ERP software vendor by one of the country's largest wholesaler and distributor of electrical products, which dispute raised issues of copyright ownership, theft of trade secrets and system performance; an $83 million dispute against a software developer relating to an enterprise wide system for a major Massachusetts based insurer; a multimillion-dollar computer performance dispute between a large software distributor and a banking/thrift institution; a dispute involving a large software supplier and an insurance company; a $25 million claim against a software developer relating to a process control system for a plastics company; a $23 million claim against software developer relating to an enterprise wide system for a large multi-store retailer of both soft

*Brendan M. Hare, Esq.*
*98052*

goods and big ticket items; an $8 million dispute centering on the development and marketing of a web browser; a multimillion dollar dispute involving the development of software for the telecommunications industry; a post acquisition dispute arising from the sale of a software business devoted to the legal marketplace; and numerous software development/royalty disputes. Served as arbitrator in class action involving marketing practices of Prudential Life Insurance Co.

Advocate in numerous arbitrations and mediations such as: a $150 million ERP dispute between a major consulting house and a large manufacturer; $50 million contract dispute between a major government vendor and a subcontracting computer company; and a $12 million dispute involving the development of an infrared imaging system for the firefighting market place.

## Alternative Dispute Resolution Training   AAA Webinar, Current Issues in Employment Arbitration: The Arbitration Fairness Act of 2009 Legislation and Recent Court Decisions, 2009; AAA Webinar, Arbitrator Boundaries: What are the Limits of Arbitrator Authority?, 2009; AAA Chairing an Arbitration Panel: Managing Procedures, Process & Dynamics (ACE005), 2008, 2005; AAA Arbitrator Ethics & Disclosure (ACE003), 2007; ICDR, The International Arbitration's Deliberations and Determinations, 2006; AAA Dealing With Delay Tactics in Arbitration (ACE004), 2006, 2004; Attended AAA Neutrals Conference, 2004; AAA Commercial Arbitrator II Training: Advanced Case Management Issues, 2002; AAA Arbitrator Update, 2001; Certified Massachusetts Mediator Training, 2000; faculty, AAA Commercial Train the Trainer Course, 1998.

## Professional Licenses   Admitted to the Bar:  Massachusetts, 1973; New York, 1988; U.S. District Court, District of Massachusetts, 1974.

## Professional Associations   American Bar Association; Boston Bar Association (Computer Law Committee, Past Co-chair); American Arbitration Association (Computer Disputes Advisory Committee; Subcommittee on Class Actions).

## Education   Merrimack College (BA, cum laude-1967); Syracuse University (MA, Economics-1969); Suffolk University (JD, cum laude-1973).

## Publications and Speaking Engagements   Past member of Editorial Board, INSIDE LITIGATION.

## Compensation                        $325.00 Per Hour
Hourly rate applies to hearings and study time.  Electronic research fees will be charged.

*Brendan M. Hare, Esq.*
*98052*

**Citizenship** United States of America

**Locale** Boston, MA

*Brendan M. Hare, Esq.*
*98052*

EXHIBIT #2

About Us    Contact Us    Client Log-in

# BOWDOIN STREET
## CAPITAL

## About Us

**Bowdoin Street Capital** introduces the concept of private equity principles to investments in legal claims.

Our firm's goal is to provide assistance to claimholders and their lawfirms in the resolution of disputes more efficiently, economically, and predictably.

Bowdoin Street Capital provides financial support to fund business expenses during litigation, mitigate and manage risk and provide liquidity to hedge against loss. We believe our unique paradigm will generate significant returns for our investors.

Our Founder, Brendan Hare, has over 30 years of experience in a full spectrum of commercial and legal issues including performance disputes, antitrust, trade secrets, copyright and environmental law.

He was responsible, while in-house counsel for Honeywell, Inc, for the defense of cases aggregating more than $2 billion in claims. During his tenure, Mr. Hare pioneered effective litigation management and cost control procedures.

In adition to his role as an advocate, Mr. Hare has served as a neutral in many large complex commercial arbitrations with claims ranging from $20 to $200 million, and the dissolution of a major Boston law firm.

160 Federal Street, 23rd Floor
Boston, Massachusetts 02110
617.330.5000  617.330.1996 fax

Mr. Hare holds a masters degree in economics from Syracuse University and is a 1973 cum laude graduate of Suffolk University Law School.

Contact Brendan Hare:  bhare@bowdoinstreetcapital.com

Content copyright 2012-2013. Bowdoin Street Capital, LLC. All rights reserved.
Bowdoin Street Capital, LLC is not a law firm and is not engaged in the practice of law in any jurisdiction.

# BOWDOIN STREET CAPITAL, LLC

About                    Contact                    Log-In

**Bowdoin Street Capital, LLC** invests in high-value, high-probability legal claims and litigations.

We provide investers with exposure to our portfolio of claims and litigations, which is diversified and uncorrelated to other asset classes.  We believe that this approach will generate significant returns.

In addition, we assist claimholders and their counsel in the advancement and resolution of claims and litigations.  In this regard, we provide financial support to fund expenses, to mitigate and manage risk, and to hedge against loss.  In each instance, we seek to devise flexible deal structures tailored to the individual case.  These may include loans (full and limited recourse) and equity-like advances, to be repaid only if the litigation proves successful.

Our minimum case investment is $250,000.  Above this threshold, we consider investment in all manner of meritorious claims and litigations in which the financial incentives of all stakeholders are aligned.

© 2012 BOWDOIN STREET CAPITAL, LLC
BOWDOIN STREET CAPITAL, LLC IS NOT A LAW FIRM, DOES NOT ENGAGE IN THE PRACTICE OF LAW, AND DOES NOT OFFER LEGAL ADVICE OR SUPPORT.

# Possible Uses of U.S. Litigation Funding

- Plaintiffs
  - Those who are short of capital
  - Those who are well capitalized, but wish to reduce or limit cost exposure while retaining an economic interest
  - Exposure for costs (not including fees) can be quite large, e.g., experts, e-discovery, etc.
- Defendants
  - Corporation seeking to hedge risk can pay premium for funder to take risk above stated levels
  - Corporate law departments seeking to smooth out litigation expenditures to meet annual budgets
  - Corporation seeking assistance in defending meritless intellectual property suit in exchange for future revenues from the challenged intellectual property

## Possible Uses of U.S. Litigation Funding

- Contingency Fee Lawyers
  - Seeking to free up capital invested in clients' cases by shifting responsibility to clients
  - Advances directly to law firm tied to group of cases
  - Funding enables firm to expand and take new initiatives

- Direct purchase of ownership interest in intellectual property and pursue as real party in interest

- Additional Opportunities
  - As market matures and interests in litigation become more tradeable, additional opportunities for monetizing those opportunities will develop

24

EXHIBIT #3



April 28, 2011

| | |
|---|---|
| 8:00-9:00 | Registration and Continental Breakfast |
| 9:00-9:15 | Administrative announcements and opening remarks by the Conference Chair, **Christopher Bogart**, *Chief Executive Officer*, Burford Group |

---

Session 1: Commercial Litigation Finance in the United States—Status and Outlook

---

9:15-10:30     Panel Discussion: **Commercial Litigation Finance—Business Models, Deal Structures and Underwriting Principles**

Third Party Litigation Finance is a relatively new phenomenon in the US having migrated from its origins in Australia and continued evolution in the UK. Major corporate plaintiffs and their law firms are now turning to commercial litigation funders as a way to offload litigation risk while shifting corporate resources. Litigation funding takes various forms from non-recourse financing secured solely by the claim to recourse law firm lending secured by the firm's assets inclusive of its claims. This panel of leading commercial litigation finance entities will share their current approaches to litigation funding, discuss existing funding models and opportunities for the development of new funding models, and reveal their growth predictions for this fairly nascent industry.

Moderator:
**Christopher Bogart**, *Chief Executive Officer*, Burford Group

Panelists:
**David Desser**, *Managing Director*, Juris Capital
**Richard W. Fields**, *Chairman and Chief Executive Officer*, Juridica Capital Management Ltd.
**Aaron Katz, Esq.**, *Director*, Credit Suisse Securities

10:30-11:30     Panel Discussion: **Role of Loans and Lines of Credit for Law Firms in Today's Legal Economy**

The great recession hit the legal economy hard: many firms have had to look to outside sources of finance to maintain or expand their litigation and dispute resolution practices. This panel will explore the means that law firms can find financing to meet their capital demands, including providing liquidity for working capital or expenses, partial or full alternatives to contingency fee arrangements, and risk hedges. The panelists will discuss typical recourse/non-recourse loan arrangements to law firms, and potential future directions.

Moderator:
**Alan Zimmerman**, *Attorney, CEO*, LawFinanceGroup

Panelists:
**Ray Chan**, *Partner*, TTM Capital, LLC
**John Fernando**, *President*, Boston Finance Group
**Howard Liberson**, *President*, Trial & Appellate Resources, LLC

11:30-12:00     Networking break

| Session 2: Practioners' Perspectives on Using Third-party Finance |
| --- |

12:00-1:00     Panel Discussion: **Perspectives on the Utility of Third Party Financing in Today's Legal Economy**

Law firms are facing a perfect storm for litigation finance—clients are challenging the billable hour model, while high expenses coupled with low revenues are limiting the budget for affirmative litigation. This panel will discuss the use of third party financing of commercial litigation by clients, and the potential use of outside finance by law firms to facilitate the ability to invest time/overhead without adding the risk and cash drain of funding the hard costs associated with litigation. They will also discuss what they might consider to be a credible profile for a third-party funder.

Moderator:
**Michael Ford**, *Executive Vice President*, UnitedLex

Panelists:
**Deborah E. Greenspan**, *Partner*, Dickstein Shapiro LLP
**Reed Oslan**, *Partner*, Kirkland & Ellis LLP
**Michael Sherman**, *Partner*, Bingham McCutchen LLP
**Paul J. Skiermont**, *Partner*, Bartlit Beck Herman Palenchar & Scott LLP
**Gregory Wallance, Esq.**, *Partner*, Kaye Scholer LLP

1:00-2:30        Group Luncheon

2:30-3:30        Panel Discussion: **Corporate General Counsels' Perspectives on the Utility of Third Party Financing for Risk Mitigation and Legal Cost Containment**

A decrease in the amount of corporate funding available for patent enforcement and litigation claims has squeezed the ability of general counsels to protect their companies' interests.  This panel will discuss the issues involved in using outside financing as a way of achieving greater cost efficiencies, lowering transaction costs and providing better predictability.

Moderator:
**Aviva Will**, *Managing Director*, Burford Group and *Former Assistant General Counsel*, Time Warner Inc.

Panelists:
**Paul Lippe**, *CEO*, OnRamp Systems
**Charlie Mullin**, Bates White, LLC
**Aviva Will**, *Managing Director*, Burford Group and *Former Assistant General Counsel*, Time Warner Inc.

| Session 3: Litigation Finance in the United States—Current and Potential Issues |
| --- |

3:30-4:00        Networking Break

4:00-5:00        Panel Discussion: **Perspectives on Ethical, Social, and Moral Issues in Financing Litigation**

This panel of legal experts and scholars will examine the use of litigation finance in the U.S. legal system, weighing its benefits such as increased access to justice and risk-sharing, with perceived risks of violating principles of champerty and maintenance, introducing conflicts of interest and confidentiality in the lawyer-client relationship, and its potential to encourage/ discourage settlements.

Moderator:
**Alan Zimmerman**, *Attorney, CEO*, LawFinanceGroup

Panelists:
**Gary Chodes**, *CEO*, Oasis Legal Finance
**Geoffrey J. Lysaught**, *Director, Searle Civil Justice Institute and Director, Congressional Civil Justice Caucus Academy*, George Mason University Law & Economics Center
**Jonathan Molot**, *Chief Investment Officer*, Burford Group

**Anthony Sebok**, *Professor, Benjamin N. Cardozo School of Law*, Yeshiva University

5:00-6:00   Presentation: **How do Current Commercial Litigation Finance Arrangements address existing and potential issues?**

The leading litigation finance entities will discuss the various processes in place that have enabled them to complete a number of varied funding deals with sufficient ethical clearance. Two of them are publicly traded companies whose disclosure requirements allow for substantial operational transparency. Whether the incentive is financial, reputational or some combination, ethical compliance is a high priority for these firms.

**Ralph J. Sutton**, *Managing Director*, Validity Capital Partners, LLC, New York, NY

April 29, 2011

7:30-8:30   Continental Breakfast

| Session 4: Consumer Legal Funding |
|---|

8:30-9:15   Presentation: **Consumer Legal Funding—An Overview of Best Practices and Financing Models**

This presentation will provide an overview of the retail end of litigation finance, where individual plaintiffs are provided funds directly for pre-settlement funding, structured annuities, and lien resolution. It will review the prevalent business models, methods of funding, and best practices being developed in the industry. It will also discuss progress being made in working with legislatures and attorney generals in numerous jurisdictions to establish guidelines for the industry.

Presenter:
**Amy M. Au, Esq.**, *President*, Alliance for Responsible Consumer Legal Funding (ARC)

| Session 5: Litigation Finance as an Investment |
|---|

9:15-10:15   Panel Discussion: **Structuring an Investment Fund Investing in Litigation Finance**

- Certain commercial considerations for structuring a litigation finance fund: Private Equity Funds vs. Hedge Fund models:

- Structuring a litigation finance fund in light of: maturity and liquidity of specific underlying asset and realism of managing liquidity for redemptions
- Realistic and robust NAV calculations that satisfy both investment community and US GAAP
- Marketing considerations for structuring a litigation finance fund
- Institutional vs. high net worth and retail style investors
- Investing international/offshore capital in litigation finance: strong tax challenges, and some solutions
- Treatment of litigation finance from the standpoint of US tax and the terms of investment vehicles to hold them

Moderator:
**Steven Huttler**, *Partner*, Sadis & Goldberg LLP

Panelists:
**Peter Blanton**, *Managing Director*, Macquarie Capital (USA) Inc.
**Marshall Sterman**, *Partner,* Weiser Mazars LLP
**Edward Stone**, President, Stone Capital Assets
**Kirk Van Brunt**, *Partner*, Locke Lord Bissell & Liddell LLP

10:15-10:45   Networking Break

10:45-11:45   Panel Discussion: **Perspectives on Investing in Litigation and Legal Finance Companies**

This panel of funds, institutional investors and other potential investors will discuss the drivers for investing in litigation finance, including expected returns, assembling a portfolio, and risk assessment/risk mitigation.

Moderator:
**Juan Pablo Reyes**, *Chief Financial Officer*, Oasis Legal Finance, LLC

Panelists:
**Brendan M. Hare, Esq.,** *Partner,* Hare & Associates
**Joel Liberson**, *CEO*, Trial & Appellate Resources, LLC
**Wayne Rubin, CPA**, *Managing Partner*, 5 Star Legal Funding
**Jeffrey Shachat**, ARCA Capital
**Bill Tilley**, *President and CEO*, Amicus Capital Services LLC

---

Session 6: Litigation Finance in the US—Regulatory and Policy Considerations

11:45-12:45   Panel Discussion: **Are Additional Protections and Policy Changes Needed—And Likely?**

Litigation finance has generated criticism from business groups and consumer advocates, who have called for policy changes that might have a chilling effect on investment. What functions might require additional regulation? Should such regulation be provided through financial services regulation, legal services regulation, consumer protection regulation, or a combination thereof? And if regulation is increased in either commercial or consumer litigation finance or both, how can it be designed so that it accomplishes its specific purpose without engendering unanticipated consequences?

Moderator:
**Wayne Rubin, CPA**, *Managing Partner*, 5 Star Legal Funding

Panelists:
**Amy M. Au, Esq.**, *President*, Alliance for Responsible Consumer Legal Funding (ARC)
**David A. Felice**, *Associate*, Ballard Spahr LLP
**Irene C. Warshauer**, *Attorney\*Mediator\*Arbitrator*, Law Office of Irene C. Warshauer

*The only event focused on this new asset class!*

Registration Code: LF1B12

# COMMERCIAL LITIGATION FUNDING & INVESTMENT 2012

March 14-16, 2012 | Digital Sandbox 55 Broad Street | New York, NY

An Infocast Deal Working Event

## Join the financial managers, hedge funds, private equity, litigators and general counsels who are building a new legal finance community

Litigators: Come and gain the latest information on how outside finance of commercial litigation works and ethics guidance for its use

Investors: Learn how to evaluate potential investments and financial managers

Financial Managers: Explore the potential risks and rewards of potential business models and investments

### Meet Industry Leaders in this Dynamic Market:

Benjamin N. Cardozo School of Law
Bentham Capital LLC
BlackRobe Capital Partners, LCC
Burford Group LLC
Counsel Financial Services
Fulbrook Management
Hare & Associates
Hinshaw & Culbertson LLP
Juridica Capital Management Ltd (US)
Juris Capital LLC
Kaye Scholer LLP
Kirkland & Ellis LLP
Law Finance Group
Law Office of Irene C. Warshauer
LawWithoutWalls

Linzer & Associates, P.C.
Locke Lord LLP
Marshall Sterman, CPA, CFF
Miami Law
Patton Boggs LLP
Pluritas, LLC
Robins, Kaplan, Miller & Ciresi LLP
Sadis & Goldberg LLP
Seyfarth Shaw, LLP
SFC Associates, LLC (Invited)
Sklemont Puckett LLP
Snell & Wilmer LLP
Stone Capital Assets
The Marcus Letter
Thomson Reuters
Trial & Appellate Resources, LLC
United Technologies Corporation

### Luncheon Sponsor:



### Supporting Organization:



### Media Partners:

 Balkans.com
 etfexpress
 globalfundwire
 hedgeweek
 privateequitywire
 propertyfundsworld
 wealthadviser

HEDGECONNECTION
❖ HedgeCo.Net



### 3 DYNAMIC EVENTS!



>> **Doing Business in the Legal Space — A Primer on Litigation and Legal Finance**
March 14, 2012



>> **Alternative Fee Arrangements**
March 14, 2012



>> **Commercial Litigation Funding & Investment 2012**
March 15-16, 2012

www.infocastinc.com/litigation12

### Produced by:


INFOCAST.
The Leading Source



## Set Up Meetings With Other Participants Before the Event Through Our Exclusive Event Contact System

As a confirmed attendee, one week prior to the event you will receive an email with a password that will provide you with exclusive access to other attendees so you can set up meetings before the event.

## Infocast Deal Working Events

Infocast Deal Working Events facilitate dealmaking by providing up-to-the-minute market intelligence and valuable insight from leading players on conditions in the current market. The events are powerful networking gatherings that put active market deal-makers face-to-face, providing a robust environment for establishing the valuable relationships that can result in successful deals.

# About Commercial Litigation Funding & Investment 2012

Commercial litigation finance is an emerging multi-billion dollar market in the US where the level of current investment is outstripped by potential needs of litigators, SMEs and corporations involved in lawsuits. This asset class is yielding highly attractive returns for pioneering investors, and new funds are emerging seeking investments from institutional investors, family offices and other prospects. However, most lawyers do not know the sources for third party finance, how it can be ethically employed, and how to communicate its risks and benefits to clients. Likewise, most potential investors do not fully understand how to assess the outcome of litigation, or the business models of litigation funds. Only those investors and lawyers who fully understand commercial litigation finance can successfully navigate through the legal and financial complexities to profit.

Infocast's **Commercial Litigation Funding & Investment Summit 2012** provides an unprecedented opportunity to meet the most experienced commercial litigation fund managers, investors and litigators, and gain an invaluable introduction to this emerging asset class. Major law firms and corporate counsels will discuss the use of third party capital in commercial litigation and how outside funding can help with alternative billing and customer retention in today's legal economy. Leading litigation investment managers will explore the potential risks and rewards of various business models and investments in this asset class. Finally, investors will give their perspectives on the risk and reward profiles they find attractive. Attend to learn how you can profit from commercial litigation funding.



*Don't Miss Our Pre-Summit Workshops:*

**» Doing Business in the Legal Space — A Primer on Litigation and Legal Finance**
March 14, 2012

**» Alternative Fee Arrangements**
March 14, 2012

# Commercial Litigation Funding & Investment 2012

## Thursday, March 15, 2012

### Session 1: Commercial Litigation Finance in the United States—Status and Outlook

#### Commercial Litigation Finance—Business Models, Deal Structures and Underwriting Principles

Third party litigation finance is a relatively new phenomenon in the US, having migrated from its origins in Australia and continued evolution in the UK. Major corporate plaintiffs and their law firms are now turning to commercial litigation funders as a way to offload litigation risk while shifting corporate resources. Litigation funding takes various forms, from non-recourse financing secured solely by the claim to recourse law firm lending secured by the firm's assets inclusive of its claims. This panel of leading commercial litigation finance entities will share their current approaches to litigation funding, discuss existing funding models and opportunities for the development of new funding models and reveal their growth predictions for this fairly nascent industry.

Moderator:
**Ralph Sutton,** *Chief Investment Officer,* BENTHAM CAPITAL LLC

Panelists:
**David Desser,** *Managing Director,* JURIS CAPITAL LLC
**Joseph DiNardo Esq.,** *Founder & CEO,* COUNSEL FINANCIAL SERVICES
**Kenneth L. Doroshow,** *Managing Director,* BURFORD GROUP LLC
**Richard Fields,** *Chairman and CEO,*
    JURIDICA CAPITAL MANAGEMENT LTD (US)
**Alan L. Zimmerman,** *President and Founder,* LAW FINANCE GROUP

 **Morning Networking Break**

#### Role of Loans and Lines of Credit for Law Firms in Today's Legal Economy

The great recession hit the legal economy hard. Many firms have had to look to outside sources of finance to maintain or expand their litigation and dispute resolution practices. This panel will explore the means whereby law firms can find financing to meet their capital demands, including providing liquidity for working capital or expenses, partial or full alternatives to contingency fee arrangements and risk hedges. The panelists will discuss typical recourse/non-recourse loan arrangements to law firms and potential future directions.

Panelists:
**Joseph DiNardo Esq.,** *Founder & CEO,* COUNSEL FINANCIAL SERVICES
**Jonathan D. Petrus,** *Partner,* PLURITAS, LLC
Additional Panelist to be Announced

 **Group Luncheon Sponsored by:** 

### Session 2: Practitioners' Perspectives on Using Third Party Finance

#### Perspectives on the Utility of Third Party Financing in Today's Legal Economy

Law firms are facing a perfect storm for litigation finance—clients are challenging the billable hour model, while high expenses coupled with low revenues are limiting the budget for affirmative litigation. This panel will discuss the use of third party financing of commercial litigation by clients and the potential use of outside finance by law firms to facilitate the ability to invest time/overhead without adding the risk and cash drain of funding the hard costs associated with litigation. They will also discuss what they might consider to be a credible profile for a third party funder.

Moderator:
**Michael Ford,** *Director,* THOMSON REUTERS

Panelists:
**Reed Oslan,** *Partner,* KIRKLAND & ELLIS LLP
**Timothy Scrantom,** *Executive Managing Director,*
    BLACKROBE CAPITAL PARTNERS, LCC
**Paul J. Skiermont,** *Partner,* SKIERMONT PUCKETT LLP
**Emily Slater,** *Vice President,* BURFORD GROUP LLC
**James Tyrrell, Jr.,** *Partner,* PATTON BOGGS LLP
**Gregory J. Wallance,** *Partner,* KAYE SCHOLER LLP

#### Perspectives on Ethical, Social, and Moral Issues in Financing Litigation

This panel of legal experts and scholars will examine the use of litigation finance in the US legal system, weighing its benefits such as increased access to justice and risk-sharing, against perceived risks of violating principles of champerty and maintenance, introducing conflicts of interest and confidentiality in the lawyer-client relationship and its potential to encourage/discourage settlements.

Panelists:
**Michele M. DeStefano,** *Compliance and Ethics Advisor,* BLACKROBE CAPITAL PARTNERS, LCC; *Founder,* LAWWITHOUTWALLS; *and Associate Professor of Law,* MIAMI LAW
**Katie M. Lachter,** *Associate,* HINSHAW & CULBERTSON LLP
**Anthony Sebok,** *Professor,* BENJAMIN N. CARDOZO SCHOOL OF LAW

 **Afternoon Networking Break**

### Session 3: Litigation Finance in the United States—Current and Potential Issues

#### Evaluating Litigation Finance Investments— Important Due Diligence Guidelines for Investors

For potential investors, litigation finance can be a difficult asset class to understand and evaluate. What should investors do pre-funding to understand the potential risks and rewards? How should investments be monitored once funded? Using experience gained "in the trenches" this presentation will give investors an invaluable perspective on how to make robust investments.

Co-Presenters:
**Steven Huttler,** *Partner,* SADIS & GOLDBERG LLP
**Edward Stone,** *President,* STONE CAPITAL ASSETS

## Friday, March 16, 2012

### Session 4:
### Litigation Finance as an Investment

### Structuring an Investment Fund—Investing in Litigation Finance

- » Certain commercial considerations for structuring a litigation finance fund: private equity funds vs. hedge fund models
- » Structuring a litigation finance fund in light of maturity and liquidity of specific underlying asset and realism of managing liquidity for redemptions
- » Realistic and robust NAV calculations that satisfy both investment community and US GAAP
- » Marketing considerations for structuring a litigation finance fund
- » Institutional vs. high net worth and retail style investors
- » Investing international/offshore capital in litigation finance – strong tax challenges and solutions
- » Treatment of litigation finance from the standpoint of US tax and the terms of investment vehicles to hold them

Panelists:
**Kirk Van Brunt,** *Partner,* LOCKE LORD LLP
**Steven Huttler,** *Partner,* SADIS & GOLDBERG LLP
**Selvyn Seidel,** *Founder and Chairman,* FULBROOK MANAGEMENT
**Marshall Sterman,** *CPA, CFF*
**Edward Stone,** *President,* STONE CAPITAL ASSETS

 **Morning Networking Break**

### Perspectives on Investing in Litigation and Legal Finance Companies

This panel of funds, institutional investors and other potential investors will discuss the drivers for investing in litigation finance, including expected returns, assembling a portfolio and risk assessment/risk mitigation.

Panelists:
**Brendan M. Hare, Esq.,** *Senior Partner,* HARE & ASSOCIATES
**Kenneth A. Linzer, Esq.,** *Managing Partner,* LINZER & ASSOCIATES, P.C.
**Ezra Zask,** *Founder and President,* SFC ASSOCIATES, LLC (INVITED)

### Session 5: Litigation Finance in the US— Regulatory and Policy Considerations

### Are Additional Protections and Policy Changes Needed—And Likely?

Litigation finance has generated criticism from business groups and consumer advocates who have called for policy changes that might have a chilling effect on investment. What functions might require additional regulation? Should such regulation be provided through financial services regulation, legal services regulation, consumer protection regulation or a combination thereof? If regulation is increased in commercial, consumer litigation finance or both, how can it be designed so that it accomplishes its specific purpose without engendering unanticipated consequences?

Presenter:
**Irene C. Warshauer,** *Attorney,* LAW OFFICE OF IRENE C. WARSHAUER

# Pre-Summit Workshop

# Alternative Fee Arrangements
## Wednesday, March 14, 2012 | 9:00 AM – 12:00 PM

### Using Value-Based Fee Structures for Litigation

This presentation will identify fee structure options and illustrate practical application through business case analysis using real-life litigation scenarios. The presenter will focus on providing viable solutions for both small and large law departments.

Presenter:
**Bruce Marcus,** *Editor & Publisher,* THE MARCUS LETTER

### Making the Most of Your Reduced Litigation Budget – Role of Alternative Fee Arrangements in Litigation Management

Often, corporate counsel with budget pressures feel that the solutions that are most often suggested really don't match the realities of litigation practice. This session will discuss how AFA can be used to manage litigation budgets while maintaining effectiveness.

Co-Presenters:
**Steven M. Greenspan,** *Associate General Counsel, Litigation,* UNITED TECHNOLOGIES CORPORATION
**Katherine E. Perrelli,** *Partner,* SEYFARTH SHAW, LLP

### Using AFA for Cost Effective Management of Patent Litigation

This session will focus on the challenges companies face with patent litigations, including:

- » How to manage a patent case as one of a large number of defendants
- » Joint Defense Agreements and Cost Sharing Agreements
- » Strategies for early case resolution
- » Making the most of early case mediation
- » The importance of venue

Presenter:
**Ronald J. Schutz,** *Chair, Intellectual Property Litigation Group,* ROBINS, KAPLAN, MILLER & CIRESI LLP

### Alternative Fee Arrangements: Perspectives of Litigators on Toolkits, Implementation and Impacts on Firms

This session will cover the evolution of alternative fee arrangements (AFAs), strategies and tools to implement and support AFA programs, the impacts AFAs have on the counsel/client relationship and real-world advice about how each use AFAs today.

Presenter:
**Barb Dawson,** *Partner,* SNELL & WILMER LLP

## Pre-Summit Workshop

# Doing Business in the Legal Space—A Primer on Litigation and Legal Finance

## Wednesday, March 14, 2012 | 1:00 – 5:00 PM

**Using Value-Based Fee Structures for Litigation**

- » Main types of financing
  - » Consumer/plaintiff funding
  - » Commercial litigation finance
  - » Financing law firms
- » Legal economics and third party financing
- » How transactions work
- » How to build transactions that meet everyone's needs without overstepping bounds
- » Underwriting principles
- » Emerging possibilities: risk mitigation and liability limitation in alternative dispute resolution
- » Nuts and bolts of building a hedge fund

- » Applicable laws
- » Different structures for different kinds of investors
- » Offshore investment vehicles
- » Publicity for offering that is compliant with rules
- » Compensation for investment managers; trying to capture tax efficiencies
- » When registration is required for investment managers
- » Importance of ERISA rules: special fiduciary rules applicable to pension/qualified money
- » Private equity vs. "classic" hedge fund models

Faculty:
**Brendan M. Hare, Esq.,** *Senior Partner,* HARE & ASSOCIATES
**Joel Liberson,** *CEO, TRIAL & APPELLATE RESOURCES, LLC*
**Jonathan D. Petrus,** *Partner,* PLURITAS, LLC
**Elisha E. Weiner, Esq.,** *Associate,* LINZER & ASSOCIATES, P.C.

For speaking and sponsorship opportunities, please contact Erin Dolleris at
erind@infocastevents.com or 818-888-4445, x48

## Five Easy Ways to Register:

**❶ Web**
www.infocastinc.com/
litigation12

**❷ Phone**
(818) 888-4444

**❸ Fax**
(818) 888-4440

**❹ Email**
mail@infocastevents.com

**❺ Mail**
20931 Burbank Blvd.
Suite B
Woodland Hills, CA 91367

**Risk Free Early Bird Rate!**
Register by February 10, 2012 to receive the Early Bird Rate risk free! If an Early Bird registration is later cancelled, an administrative charge will not be charged and the full tuition amount will be refunded. All Early Bird Rates will be adjusted downward if Information Forecast Inc. publishes a discounted tuition special offer that would result in tuition rates lower than that published Early Bird Rate amounts to the right.

**Discounts:**
Team Discounts for teams of three or more from the same organization, the third and subsequent registrations qualify for a 50% discount. Discounts are subject to verification and approval. Discounts cannot be combined.

**Venue:**
Digital Sandbox
55 Broad Street
4th Floor
New York, NY 10004
Phone: 212.482.0851
For a list of nearby hotels, please visit the event website at www.infocastinc.com/litigation12

**Website:**
http://www.infocastinc.com/litigation12

**Continuing Education Credits:**
Infocast certifies that this activity has been approved for Continuing Education credit by the State of California in the amount of 3.5 hours for Workshop: Doing Business in the Legal Space - A Primer on Litigation and Legal Finance, March 14, 2012 AM, 2.75 hours for Workshop: Alternative Fee Arrangements, March 14, 2012 PM and an additional 8.25 hours for Commercial Litigation Funding & Investment 2012, March 15–16, 2012. Continuing Education credit hours are subject to change.

**Cancellation, Refunds & Credits:**
Should you be unable to attend, a refund will be made for cancellations received via letter or fax at least 10 business days before the start of the meeting. We will be pleased to transfer your registration to another member of your organization, or credit the registration fee to another Infocast conference if you register within 6 months from the date of this conference.

A $195 administrative charge will be applied to refunds of registrations received after the expiration of the Early Bird Rate.

In the event an event is cancelled, Information Forecast, Inc.'s liability is limited to a refund or transfer of the registration fee only.

**On-Site Materials:**
Flashdrives with materials to be provided on-site. Please bring your laptop if you'd like to follow along.

Infocast is a division of Information Forecast, Inc., a California Corporation.

# Registration Form

Please make checks payable to: "Infocast"

Registration Code: LF1B12

**Commercial Litigation Funding & Investment Summit 2012**
March 14-16, 2012 | Digital Sandbox 55 Broad Street | New York, NY

Please check one or more of the following:
☐ I would like to take advantage of the team discount (see left)
☐ I can't attend, but put me on your mailing list for future programs

| | | Standard | |
| --- | --- | --- | --- |
| Tuition | | Early Bird (by 2/10/12) | Regular (after 2/10/12) |
| Workshop: Alternative Fee Arrangements, March 14, 2012 AM | | $395.00 | $595.00 |
| Workshop: Doing Business in the Legal Space – A Primer on Litigation and Legal Finance, March 14, 2012 PM | | $395.00 | $595.00 |
| Commercial Litigation Funding & Investment 2012, March 15–16, 2012 | | $1,295.00 | $1,695.00 |
| | | Total: | |

*Subject to verification by Information Forecast, Inc.

Name: _____

Position: _____

Organization: _____

Address: _____

City:_____ State: _____ Zip:_____

Phone: _____ Fax: _____

Email: _____

Main Supervisor: _____

Credit Card: _____Visa _____Mastercard _____American Express

Card #: _____ Exp. Date: _____

Card Holder Name:_____

Signature: _____

An Infocast Deal Working Event


COMMERCIAL LITIGATION
FUNDING & INVESTMENT 2012

**March 14-16, 2012**
**Digital Sandbox 55 Broad Street**
**New York, NY**

PRSRT STD
U.S. POSTAGE
PAID
PERMIT #100
CLAREMONT, CA

Infocast
20931 Burbank Blvd.
Suite B
Woodland Hills, CA 91367

Scan W/
Smartphone

*Follow Us On:*

  


INFOCAST.
The Leading Source

COMMERCIAL LITIGATION
FUNDING & INVESTMENT 2012

Rave Reviews from the 2011 Infocast Litigation Finance & Investment Summit:

66 The right discussion, the right topic, at the right time. As courts get more crowded and cases become more time intensive, clients and attorneys must consider alternative sources of capital to maintain their claims and cases. This summit was absolutely critical and needed. 99
— Kenneth A. Linzer, Esq., Managing Partner, LINZER & ASSOCIATES, P.C.

66 Great chance to meet with folks operating in this new and emerging industry. Great speakers and program. 99
— Gene Rachmansky, President, RACHMANSKY LAW GROUP

66 Great networking opportunity – diverse set of speakers and attendees. 99
— Katie Develvis, Manager, THE CLARO GROUP

# COMMERCIAL LITIGATION FUNDING & INVESTMENT 2012

March 14-16, 2012 | Digital Sandbox 55 Broad Street | New York, NY

**Wednesday, March 14, 2012 | 1:00 – 5:00 PM**

**Pre-Summit Workshop: Doing Business in the Legal Space—A Primer on Litigation and Legal Finance**

Using Value-Based Fee Structures for Litigation
- Main types of financing
  - o Consumer/plaintiff funding
  - o Commercial litigation finance
  - o Financing law firms
- Legal economics and third party financing
- How transactions work
- How to build transactions that meet everyone's needs without overstepping bounds
- Underwriting principles
- Emerging possibilities: risk mitigation and liability limitation in alternative dispute resolution
- Nuts and bolts of building a hedge fund
  - Applicable laws
  - Different structures for different kinds of investors
  - Offshore investment vehicles
  - Publicity for offering that is compliant with rules
  - Compensation for investment managers; trying to capture tax efficiencies
  - When registration is required for investment managers
  - Importance of ERISA rules: special fiduciary rules applicable to pension/qualified money
  - Private equity vs. "classic" hedge fund models

| | |
|---|---|
| 12:00 – 1:00 PM | Registration |
| 1:00 – 1:05 PM | Introduction by Workshop Chair<br>**Brian Spira**, *Managing Member*, OXBRIDGE FINANCIAL GROUP |
| 1:05 – 1:30 PM | **Brendan M. Hare, Esq.**, *Senior Partner*, Hare & Associates |

| | |
|---|---|
| 1:30 – 2:00 PM | **Brian Spira,** *Managing Member,* OXBRIDGE FINANCIAL GROUP |
| 2:00 – 2:30 PM | **Joel Liberson,** *CEO,* Trial & Appellate Resources, LLC |
| 2:30 – 3:00 PM | Afternoon Networking Break |
| 3:00 – 3:30 PM | **Elisha E. Weiner, Esq.,** *Associate,* Linzer & Associates, P.C. |
| 3:30 – 4:30 PM | Wrap-up Panel Discussion |

Panelists:
**Brendan M. Hare, Esq.,** *Senior Partner,* Hare & Associates
**Joel Liberson,** *CEO,* Trial & Appellate Resources, LLC
**Brian Spira,** *Managing Member,* OXBRIDGE FINANCIAL GROUP
**Elisha E. Weiner, Esq.,** *Associate,* Linzer & Associates, P.C.

EXHIBIT #4

**Nicholas De Blouw**

| | |
|---|---|
| **Subject:** | FW: Setting conference call and transmitting supplemental disclosure - AAA Arbitration 11 115 Y 264 12 - Sussex et al. v. Turnberry/MGM et al. |

From: Brendan Hare [mailto:dunnab3@comcast.net]
Sent: Wednesday, February 13, 2013 4:42 PM
To: AAA Jonathan Weed
Cc: Brendan Hare; bmhare@comcast.net; Brendan Hare
Subject: sussex turn berry inquiry re bowdoin street capital,llc

Hi Jonathan,
Bowdoin Street Capital, LLC is an entity I created to explore the possibility of raising a fund to provide capital for litigation.
I have raised no money, and made no investments. Except for a vestigal web presence, the company has been completely dormant.
If you have any questions or wish further information, please do not hesitate to call.
Thank you.
Brendan Hare

From: AAA Jonathan Weed [mailto:JonathanWeed@adr.org]
Sent: Thursday, February 14, 2013 8:15 AM
To: sm@morrislawgroup.com; AL@morrislawgroup.com; jph@morrislawgroup.com; Robert Gerard; norm@bamlawca.com; bwiand@wiandlaw.com; Ricardo Ehmann; 'Kevin Hernandez'; cpil@sandiego.edu
Cc: paf@morrislawgroup.com; vln@morrislawgroup.com
Subject: Setting conference call and transmitting supplemental disclosure - AAA Arbitration 11 115 Y 264 12 - Sussex et al. v. Turnberry/MGM et al.

Dear Counsel,

This will confirm that a conference call with the arbitrator has been scheduled for March 6, 2013 at 11:00 AM PST (2:00 PM EST).  Please dial in to the conference call by using the following telephone number and security code:

Telephone: (888) 537-7715
Security Code: 43775158#

Please note that the Case Administrator will not initiate the conference call.  All participants are requested to dial in at the above time in order to ensure that the call may begin promptly.

Arbitrator Hare has made a supplemental disclosure, as detailed below.

Please advise the Association of any objections to the appointment of Arbitrator Hare or any comments regarding this information by February 20, 2013, copying the other side.  The arbitrator shall not be copied on any responses related to the disclosure.

If any objections or comments are received, the other party may respond within three business days.  The AAA will make a determination regarding the arbitrator's continued service, in accordance with the Rules.

As requested by the neutral, if either party or their counsel knows of any contact or conflict that may be relevant, they are to communicate this information to the Association within ten days

Please do not hesitate to contact me with any questions and/or concerns.


Sincerely,


 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

**Jonathan Weed, Manager of ADR Services**
Tel: 401 431 4721
Fax: 866 644 0234
E-mail: JonathanWeed@adr.org
950 Warren Ave.
Providence, RI 02914-1414

Yvonne L. Baglini, Director
Northeast Case Management Center
www.adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.


-----Original Message-----


From: Brendan Hare [mailto:dunnab3@comcast.net]
Sent: Wednesday, February 13, 2013 4:42 PM
To: AAA Jonathan Weed
Cc: Brendan Hare; bmhare@comcast.net; Brendan Hare
Subject: sussex turn berry inquiry re bowdoin street capital,llc

Hi Jonathan,
Bowdoin Street Capital, LLC is an entity I created to explore the possibility of raising a fund to provide capital for litigation.
I have raised no money, and made no investments. Except for a vestigal web presence, the company has been completely dormant.
If you have any questions or wish further information, please do not hesitate to call.
Thank you.
Brendan Hare

EXHIBIT #5

**Nicholas De Blouw**

**Importance:** High

**From:** AAA Yvonne Baglini [mailto:Yvonnebaglini@adr.org]
**Sent:** Wednesday, September 04, 2013 2:11 PM
**To:** 'Steve Morris'; 'Norm Blumenthal'; 'Robert Velevis'; 'Yvette Ostolaza'; rgerard@gerardlaw.com;
rehmann@gerardlaw.com; bwiand@wiandlaw.com; 'Alex Fugazzi'; 'Justin L. Carley'; 'JP Hendricks'; 'Akke Levin'; 'Kyle
Nordrehaug'
**Cc:** 'Yolanda Garcia'; 'Patricia Ferrugia'; 'Vickie L. Nickerson'; 'Fiona M. Ingalls'; 'Scott Macrae'
**Subject:** AAA Determination - AAA Arbitration 11 115 Y 264 12 - Sussex et al. v. Turnberry/MGM Grand Towers et al.
**Importance:** High

Dear Counsel,

The issue previously raised by Respondents regarding the objection to the continued service of Arbitrator Hare and any
response received was considered by the AAA's Administrative Review Council ("Council"). After careful consideration of
the parties' contentions, the ARC has determined that the arbitrator shall be reaffirmed in this case. This decision will be
made a part of our administrative file.

The AAA's rule on disqualification provides that an arbitrator shall be subject to disqualification for partiality or lack of
independence, inability or refusal to perform his or her duties with diligence and in good faith, and any grounds for
disqualification provided by applicable law. The Council has carefully reviewed and considered the parties' submissions
in this matter, and based upon the ARC Review Standards available at www.adr.org/arc, the Council has determined that
the arbitrator shall be reaffirmed in this case.

Under the Rules, the AAA's decision regarding the objection to the arbitrator is conclusive. Any additional objection to the
continued service of the arbitrator must be based on new grounds.

The Council also considered the request of Respondents to require that filing requirements were met for each of the
individual Claimants. Under the Rules, the arbitrator has the power to determine the extent of their own jurisdiction,
including any objections with respect to the existence, scope or validity of the arbitration agreement and the existence or
validity of a contract of which an arbitration clause forms a part. Referring to the arbitrator's Order No. 9: Consolidation
dated December 31, 2012, as a neutral administrative agency, it would be inappropriate for the AAA to disregard an order
of the arbitrator.
The Association is in the process of contacting Arbitrator Hare and will notify the parties as to how he wishes to proceed.
Should you have any questions or concerns, please do not hesitate to contact the undersigned.

Sincerely,



**Yvonne Baglini**
**Director**
American Arbitration Association
950 Warren Ave.
East Providence, RI 02914-1414
**T:**401 431 4784
**F:**866 644 0234
**E:**Yvonnebaglini@adr.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any
review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal
in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.