# EXHIBIT A

EXHIBIT A

Westlaw.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal D.A.R. 3148
**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

**H**

Court of Appeal, Fourth District, Division 3, California.
ADVANTAGE MEDICAL SERVICES, LLC, et al., Plaintiffs and Appellants,
v.
Deborah HOFFMAN et al., Defendants and Respondents.

No. G037634.
March 3, 2008.
Rehearing Denied March 20, 2008.
Review Denied June 11, 2008.

**Background:** Limited liability company (LLC) brought conversion, breach of fiduciary duty, fraud, unjust enrichment and breach of contract action against one of its founding members. After the claims were referred to arbitration, arbitrator issued an interim award for the LLC, and refused to disqualify himself after founding member discovered that arbitrator represented marine entities which procured reinsurance from the London insurance market association that LLC's insurer belonged to. Founding member filed petition to vacate the interim award. After a hearing, the Superior Court of Orange County, No. 05CC07459,Gregory Munoz, J., granted the petition, and LLC appealed.

**Holdings:** The Court of Appeal, Fybel, J., held that:
(1) evidence was sufficient to establish that the arbitrator refused to disclose to founding member facts that could cause a person to reasonably entertain doubts that the arbitrator would be able to be impartial, and
(2) founding member had a statutory right to seek to disqualify arbitrator, though she only sought to do so after arbitrator had issued an interim award for LLC.

Affirmed as modified.

West Headnotes

**[1] Alternative Dispute Resolution 25T ⚖222**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(E) Arbitrators
            25Tk222 k. Competency. Most Cited Cases

**Alternative Dispute Resolution 25T ⚖363(6)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(H) Review, Conclusiveness, and Enforcement of Award
            25Tk360 Impeachment or Vacation
                25Tk363 Motion to Set Aside or Vacate
                    25Tk363(6) k. Scope of inquiry in general. Most Cited Cases
    The issue whether arbitrators had a duty to disclose information which might indicate bias, is a question of fact, and on appeal review as to that issue is deferential.

**[2] Alternative Dispute Resolution 25T ⚖335**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(G) Award
            25Tk331 Fraud, Partiality, or Misconduct
                25Tk335 k. Prejudice or partiality and interest in subject matter. Most Cited Cases
    Evidence was sufficient to establish, in hearing on petition to vacate interim arbitration award in arbitration proceeding between limited liability company (LLC) and one of its founding members, that the arbitrator refused to disclose to founding member facts that could cause a person to reasonably entertain doubts that the arbitrator would be able to be impartial; arbitrator was an attorney who represented marine entities which procured reinsurance from London insurance market association, arbitrator allowed representative of LLC's insurer to attend the arbitration and denied founding member's re-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal D.A.R. 3148
(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)

quest that the representative disclose the insurer's identity, when representative disclosed that she represented insurance syndicates belonging to the London insurance market association arbitrator did not disclose his representation of the marine entities, and when founding member discovered arbitrator's representation of the entities arbitrator refused to disqualify himself. West's Ann.Cal.C.C.P. §§ 1281.85(a), 1281.9.

**[3] Alternative Dispute Resolution 25T ☞222**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(E) Arbitrators
            25Tk222 k. Competency. Most Cited Cases
    Founding member of limited liability company (LLC) had a statutory right to disqualify arbitrator, who presided over arbitration of disputes between the LLC and founding member, for repeatedly and utterly failing to disclose his connection to London insurance market association that also provided insurance to the LLC, though founding member failed to investigate and only sought to disqualify arbitrator based on his connection to the insurance market association after the arbitrator issued an interim award for the LLC and the arbitration association refused to disqualify arbitrator after founding member learned of the connection; statutory provisions for disqualifying arbitrators were enacted primarily for a public purpose, state retained ultimate control over the structural aspects of the arbitration process, and the neutrality of an arbitrator was of such crucial importance that it was not delegable to the unfettered discretion of a private business. West's Ann.Cal.C.C.P. §§ 1281.9(a), 1281.91(c), 1286.2 (a)(6).

**936** Patrick K. Moore Law Corporation, Patrick K. Moore; Snell & Wilmer and Richard A. Derevan, Costa Mesa, for Plaintiffs and Appellants.

Cummins & White and Annabelle M. Harris, Newport Beach, for Defendants and Respondents.

**809** OPINION

FYBEL, J.

INTRODUCTION

Advantage Medical Services, LLC (AMS), Glenn Weissman, Elliot Lander, and Scott Yun's (collectively plaintiffs) and Deborah Hoffman and Detech Medical Project Management, LLC's (collectively defendants) claims against each other were referred to binding arbitration through the American Arbitration Association (AAA) and a hearing was held. The arbitrator **937** issued an interim award in favor of plaintiffs.

Shortly thereafter, Hoffman learned that the arbitrator and his law firm represented several protection and indemnity clubs (P & I Clubs) which provided insurance and other business services to shipowners and others involved in the maritime industry. The P & I Clubs procured reinsurance support from syndicates of Lloyd's of London (Lloyd's). AMS was insured through Lloyd's syndicates, and a representative from Lloyd's was present throughout the arbitration.

The AAA rejected Hoffman's requests to disqualify the arbitrator. Hoffman filed a petition in trial court seeking an order (1) disqualifying the arbitrator for his failure to disclose his and his law firm's ties to Lloyd's, and (2) vacating the interim award, under provisions of the California Arbitration Act (the Act), codified at Code of Civil Procedure section 1280 et seq. (All further statutory references are to the Code of Civil Procedure.) The trial court granted the petition.

First, we hold substantial evidence supports the trial court's finding that disclosure of the arbitrator's and his law firm's ties to AMS's insurer "could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial" within the meaning of section 1281.9, subdivision (a). The trial court therefore did not err by vacating the interim award under section 1286.2.

Second, we also hold the statutory right to peti-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal D.A.R. 3148
**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

tion a trial court to vacate an arbitration award based on an arbitrator's failure to make required disclosures cannot be waived by the AAA rule stating its determinations regarding disqualification are conclusive. Our holding is consistent with the decision by the Third District Court of Appeal in *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 18 Cal.Rptr.3d 142 ( *Azteca* ).

We modify the portion of the trial court's order to delete any reference to disqualification of the arbitrator under section 1281.91, subdivision (a) because the Act does not provide for the disqualification of an arbitrator after **\*810** the arbitrator has ruled on an issue of contested fact. Here, the arbitrator had issued the interim award before defendants discovered the arbitrator's failure to make disclosures required by the Act.

We otherwise affirm the order vacating the interim award.

## BACKGROUND

### I.

### HOFFMAN'S CLAIMS AGAINST PLAINTIFFS

In May 2005, Hoffman demanded arbitration under the Employment Arbitration Rules of the AAA regarding her claims against plaintiffs. She claimed, inter alia, AMS failed to pay her accrued wages of $250,000 plus interest and penalties, retaliated against her for asserting a wage claim and other public policy violations, breached an operating agreement, breached fiduciary responsibilities, and inflicted emotional distress. Hoffman sought an accounting of books and records of AMS, declaratory relief, attorney fees, indemnity, and exemplary damages.

### II.

### PLAINTIFFS' CLAIMS AGAINST DEFENDANTS

In June 2005, AMS filed a complaint in Orange County Superior Court against Hoffman. The complaint alleged Hoffman was a founding member of AMS, a limited liability company in the business of providing high technology surgical equipment and technicians' services. The complaint **\*\*938** further alleged that for over a three-year period, Hoffman "intentionally misappropriated assets of AMS and the services of AMS personnel." The complaint contained claims for breach of a written contract, breach of fiduciary duty, conversion, money had and received, unjust enrichment, intentional fraud and deceit, accounting, and imposition of construction trust. AMS filed a first amended complaint in which it alleged the same claims, but added as an additional defendant Detech Medical Project Management, LLC (Detech), which AMS alleged was owned and controlled by Hoffman.

### III.

### THE PARTIES SUBMIT CLAIMS TO BINDING ARBITRATION BEFORE THE AAA

The trial court referred AMS's claims against defendants to binding arbitration before the AAA pursuant to an arbitration provision contained in **\*811** the parties' operating agreement. After the parties were unable to agree on the appointment of an arbitrator from the list provided by the AAA, the AAA designated William J. Tucker of the San Diego law firm, Kaye, Rose & Partners, LLP (Kaye Rose), as arbitrator; the AAA distributed Tucker's resume and additional disclosures to the parties' counsel.

### IV.

### ARBITRATION PROCEEDING

Before the arbitration began, AMS's counsel asked defendants' counsel whether defendants would object to the presence of a representative of AMS's insurer at the arbitration. Defendants' counsel refused to agree to the presence of such a representative without first knowing the insurer's identity, including the representative's name, the name of the insurer, the policy number, the named insureds, and the mailing address of the insurer. AMS's counsel sent a letter to Tucker requesting that he permit the attendance of a representative of AMS's insurer (who is not identified in the letter) to attend the arbitration.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal D.A.R. 3148
**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

Following a hearing, Tucker ruled that "[c]overage counsel for AMS's insurer may attend the hearing on the motion for summary judgment and the arbitration." He also ruled, "AMS need not provide [defendants' counsel] with the information relating to AMS's insurer which he requested of AMS as a precondition to such attendance."

At the hearing before Tucker on AMS's motion for summary judgment which Tucker denied, Cynthia Mitchell appeared as AMS's insurer's representative. She introduced herself as " ' coverage counsel for Lloyds of London.' " Mitchell also attended each of the nine days of evidentiary hearing.

Tucker did not inquire into the identity of the Lloyd's syndicates Mitchell was representing, and he made no disclosures regarding any past or present ties he or Kaye Rose had with Mitchell's firm or with Lloyd's.

## V.
### INTERIM AWARD

Following the arbitration, Tucker issued the interim award of arbitrator (the interim award) in April 2006. In the interim award, Tucker rejected each of Hoffman's claims. He found in favor of AMS on its claims for breach of the operating agreement, breach of fiduciary duty, conversion, money had and received, unjust enrichment, fraud and deceit, and accounting. He awarded **\*812** AMS damages in the amount of $247,569 against Hoffman and $19,381.25 against Detech. Tucker also awarded AMS its attorney fees pursuant to the prevailing-party attorney fees provision**\*\*939** in the operating agreement and punitive damages that were to be determined in subsequent proceedings.

## VI.
### REBECCA CALLAHAN IS RETAINED BY HOFFMAN; CALLAHAN DISCOVERS A CONNECTION BETWEEN TUCKER, HIS LAW FIRM AND LLOYD'S; AAA TWICE DENIES DEFENDANTS' REQUEST TO DISQUALIFY TUCKER

Defendants consulted with a bankruptcy attorney, Rebecca Callahan, in early May 2006, and notified plaintiffs that Callahan was associated in as counsel for defendants. Callahan "undertook a review of the AAA Action, beginning with the relationship, if any, between Tucker, the arbitration participants and their counsel." Upon learning that coverage counsel representing AMS's insurer, Lloyd's, was present throughout the arbitration, Callahan "look[ed] into any relationship the arbitrator or his law firm might have, directly or indirectly, with Lloyds of London." She learned that Kaye Rose and Tucker represented " 'major marine insurers.' " She also learned that "Tucker himself is extremely involved in the maritime/insurance defense aspects of his law firm's practice by acting as 'correspondent counsel' for P & I Clubs that serve as the vehicle for providing insurance and other services to various types of shipowners." The P & I Clubs are directly tied to Lloyd's through maritime syndicates that provide the bulk of the insurance and reinsurance for shipowners around the world.

Callahan "alerted the AAA to the apparent disclosure problem through a notice letter calling for Tucker's disqualification." In a letter addressed to the AAA, dated May 19, 2006, Tucker refused to disqualify himself from the case because he did not believe a conflict existed. In his letter, Tucker stated Kaye Rose "has represented some maritime clients who may have been insured by one or more syndicates who occupy space within the Lloyds of London Building, who underwrite maritime risks.' " He added, "no syndicate at Lloyds has ever been a client of [Kaye Rose] or of any firm with which I have ever been associated." On May 25, the AAA confirmed Tucker's appointment.

On June 1, 2006, Callahan sent a second notice to the AAA seeking Tucker's disqualification. On June 15, Callahan sent a letter to Tucker requesting that he provide disclosures related to his and Kaye Rose's connections to Lloyd's. On June 21, Callahan sent Tucker a letter requesting **\*813** information regarding his and Kaye Rose's " 'correspondent' counsel" relationship with certain P & I Clubs. Tucker did not respond to Callahan's in-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal D.A.R. 3148
**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

quiries. On July 11, the AAA reaffirmed Tucker as the arbitrator in the case.

VII.

A PETITION IS FILED IN THE TRIAL COURT, SEEKING AN ORDER DISQUALIFYING THE ARBITRATOR AND VACATING THE INTERIM AWARD

Hoffman filed a petition for an order disqualifying the arbitrator under section 1281.91, subdivision (a)(1) and (2), and vacating the interim award under sections 1286 and 1286.2, subdivision (a)(6) (the petition). FN1

> FN1. The trial court granted Detech's request to join the petition.

In support of the petition, defendants submitted, inter alia, the declaration of George J. Biehl, Jr., an expert in the insurance and reinsurance industry. Biehl's declaration provided a detailed explanation of the relationship of Lloyd's to AMS, the P & I Clubs, and to Tucker and provided the foundation for the court's order vacating**940 the interim award. We quote Biehl's explanation of these relationships in detail because it provides the principal substantial evidence warranting affirmance of the trial court's order vacating the interim award.

In his declaration, Biehl explained that Lloyd's "is an insurance and reinsurance market" and also a "legal entity that essentially markets its tradename and franchises its memberships." He further stated, "Lloyds is like a club in the sense that it has 'members' who provide capital (dues) that is used to finance the underwriting of insurance risk in many forms. Many members also act as the syndicates who actually insure and reinsure risk.... [T]here are 62 active syndicates writing business in 200 territories.... [M]any of those are involved in underwriting insurance and reinsurance to P & I Clubs and the International Group [an organization comprised of 13 P & I Clubs], including Hiscox and Brit—the syndicates who underwrote 75% of the risk insured under AMS's Policy."

Biehl further stated, "[w]hile P & I Clubs offer insurance and related services to their members, they are not just an insurance company. Rather, they operate as a mixture of an insurance company, a law firm and a loss adjuster. This means that the P & I Clubs try to assist their shipowner members with *every* aspect of a claim from finding experts and contractors to dealing with the immediate claim through assisting them in obtaining competent legal representation in defending against claims. [¶] *The P & I Clubs have access to *814 a high quality network of technical advisors, including but not limited to maritime lawyers (e.g. Kaye Rose and William Tucker) and other local expert correspondents around the world. Five P & I Clubs are listed as 'representative clients' of Kaye Rose per its Martindale & Hubbell listing and 7 P & I Clubs ... show Tucker as being their correspondent counsel in San Diego, California (i.e., the person their members should call for legal services)."*

Biehl opined, "*[c]learly Tucker and Kaye Rose have a significant commercial and public relationships with the aforementioned P & I Clubs and the International Group and are heavily involved with 'major marine insurers' in the Lloyds market.*" He added, "Lloyds is the major insurance/reinsurance support for the P & I Clubs." He explained: "The International Group of P & I Clubs ... is comprised of 13 P & I Clubs as its members, eight of which have relationships with Tucker and Kaye Rose.... The P & I Clubs provide the basic layer of insurance (currently $5,000,000), and above that layer the P & I Clubs formed the International Group have set up an insurance pool to cover claims in layers above that. This insurance pool covers liability between $5,000,000 and $30,000,000. *For liabilities above $30,000,000, the International Group has one of the world's largest reinsurance contracts; and it is placed with Lloyds.*" Citing the Lloyd's annual report, Biehl asserted the International Group is "a significant portion of Lloyds' Marine business."

Biehl further opined, "[t]here is a meaningful

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal
D.A.R. 3148
**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

and significant business relationship between Tucker and Kaye Rose, on the one hand, and Lloyds by virtue of their correspondent and client relationships with the 8 P & I Clubs and the International Group.... That is because the P & I Clubs are reinsured by various Lloyds syndicates—including the two syndicates who are named in the AMS Policy for Employment Practices Liability Insurance, HISCOX (50%) and BRIT (25%). The International Group ... is also deeply involved with Lloyds through its significant **941 reinsurance relationship which is one of the largest reinsurance contracts currently in place in the world's reinsurance market." He stated, "in addition to providing insurance for their members, the P & I Clubs arrange for adjustment of claims and legal counsel. 'Correspondent counsel' for a P & I Club is preapproved legal counsel that the Clubs or their shipowner members can engage for representation in a potential loss matter. Pursuant to their duty to cooperate in the defense of an insured claim, shipowner members are expected to engage 'correspondent counsel' approved by that P & I Club. As discussed above, the website for Kaye Rose advertises that it is approved 'correspondent counsel' for *several P & I Clubs* and the websites for several of the P & I Clubs reveal that Tucker is *the contact person* at the firm for matters in the San Diego area."

Finally, Biehl stated, "[f]or participants in the maritime industry, which include vessel owners, cruise lines, brokers, underwriters *and correspondent *815 counsel,* they are all very much aware of each other, of their respective ties to marine insurers and the predominant role Lloyds and its syndicates play with respect to loss prevention and indemnification. It would be incompatible for anyone approved as a 'correspondent' for a P & I Club to take actions contrary to other participants; to do so would most certainly put at risk their status as approved 'correspondent' counsel or otherwise."

Plaintiffs submitted Mitchell's declaration in opposition to the petition. In her declaration, Mitchell, who attended the arbitration, stated, "[a]s part of my practice, I represent insurers who provide coverage through Lloyd's of London, commonly referred to as 'underwriters' or 'syndicate members[.']" She stated there are three syndicates that severally subscribe to the AMS employment practices liability policy through Lloyd's—the Hiscox Syndicate 33 (50 percent), the Brit Syndicate 2987 (25 percent), and the Harrington Syndicate 2000 (10 percent). Defendants produced evidence that none of these three syndicates ever retained Kaye Rose's legal services on any matter.

### VIII.
### THE TRIAL COURT GRANTS THE PETITION; PLAINTIFFS APPEAL

The trial court issued the following tentative ruling on the petition, stating in relevant part: "Motion to disqualify arbitrator and vacate interim arbitration award is granted.... The arbitrator had a duty under Ethics Standard 7 [of the Ethics Standards for Neutral Arbitrators in Contractual Arbitration] and [section] 1281.9 to disclose his and his firm's professional relationship with Lloyds syndicates or underwriters once Ms. Mitchell appeared at the arbitration hearing and advised the parties that she represented insurers who provided coverage through Lloyds and that she was there in that capacity because AMS had made a claim for coverage. At this point it was incumbent on the arbitrator to inquire of Ms. Mitchell concerning the identities of the insurers that she represented so that he could make a determination of the possible need for further disclosure. Because of the arbitrator and his firm's involvement with Lloyd's syndicates/underwriters and the fact that AMS is insured through several Lloyd'[s] syndicates or underwriters and a representative of several of those firms was present at all time[s] during the arbitration, a person aware of these facts could reasonably entertain a doubt that the arbitrator would be able to be impartial."

**816** Following argument on the tentative ruling, the trial court made the tentative ruling its final ruling. The court also **942 ruled on the parties'

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal D.A.R. 3148

**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

various evidentiary objections.[FN2]

FN2. In the opening brief, plaintiffs challenge some of the trial court's rulings whereby the court overruled certain of plaintiffs' evidentiary objections. We do not need to further address plaintiffs' arguments in this regard because our opinion does not rely on the evidence at issue in those challenges.

Plaintiffs appealed from the order under section 1294, subdivision (c). Hoffman filed a motion to dismiss the appeal, and plaintiffs filed a writ petition "as a protective measure from the order vacating the interim award, just in case this court were to grant the motion to dismiss." This court denied Hoffman's motion, and dismissed plaintiffs' writ petition as moot.

DISCUSSION

I.

THE RECORD SUPPORTS THE TRIAL COURT'S DECISION TO VACATE THE INTERIM AWARD.

A.

*Standard of Review*

[1] " '[T]he issue whether the arbitrators had a duty to disclose information ... which might indicate bias, is a question of fact. Our review as to that issue is deferential. [Citation.]' [Citations.]" (*Guseinov v. Burns* (2006) 145 Cal.App.4th 944, 957, 51 Cal.Rptr.3d 903; see *Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925, 933, 106 Cal.Rptr.2d 240 ["The trier of fact determines the factual question whether a particular relationship requires disclosure in each case. [Citations.] This court reviews the trial court's factual findings relating to its vacation of the award according to the substantial evidence rule"].)

B.

*Relevant Provisions of the Act and the Ethics Standards*

We begin our consideration of the trial court's order granting the petition by reviewing the relev-

ant provisions of the Act.

**\*817** Section 1281.9, subdivision (a) states in relevant part: "In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including all of the following: [¶] ... [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. [¶] ... [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator ... has or has had with any party to the arbitration proceeding or lawyer for a party."

Standard 7(d)(14)(A) of the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Standards),[FN3] referenced in section 1281.9, subdivision (a), requires a person who is appointed as an arbitrator to disclose any matter even if it is not specifically enumerated in the standard, if it "[m]ight cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial." Pursuant to standard 7(f), the arbitrator's duty to disclose "is a continuing duty, applying from service of the notice of the arbitrator's proposed nomination or appointment until **\*\*943** the conclusion of the arbitration proceeding."

FN3. "Pursuant to section 1281.85, subdivision (a), the Judicial Council adopted Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Standards) effective July 1, 2002." (*Guseinov v. Burns, supra,* 145 Cal.App.4th 944, 956, 51 Cal.Rptr.3d 903.)

With regard to the disqualification of an arbitrator, section 1281.91, subdivision (a) provides, "[a] proposed neutral arbitrator shall be disqualified if he or she fails to comply with Section 1281.9 and any party entitled to receive the disclosure serves a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal
D.A.R. 3148
**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

notice of disqualification within 15 calendar days after the proposed nominee or appointee fails to comply with Section 1281.9." As to the vacatur of an arbitrator's award, under section 1286.2, subdivision (a)(6), the court "shall vacate" an arbitrator's award if the court determines the arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware." (See *Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 845, 35 Cal.Rptr.3d 117 ["On its face, the statute leaves no room for discretion. If a statutory ground for vacating the award exists, the trial court must vacate the award"].)

### C.

#### *Substantial Evidence Supports the Trial Court's Order Vacating the Interim Award*

[2] With the standard of review and these authorities in mind, we analyze the key issue presented in this case—whether substantial evidence supports the **\*818** trial court's finding that Tucker had a duty to disclose his and his firm's ties to Lloyd's upon learning AMS was insured through syndicates of Lloyd's. For the reasons we explain, *post,* we hold substantial evidence supports the trial court's finding that a person aware of the circumstances could reasonably entertain a doubt Tucker would be able to be impartial within the meaning of section 1281.9, subdivision (a)(6) and Standards, standard 7(d)(14).

We begin our explanation by highlighting the unusual and striking circumstances triggering defendants' argument Tucker violated his disclosure obligations. The record shows Tucker granted AMS's request to permit a representative of its insurer to attend the arbitration without requiring AMS to disclose to defendants, or apparently even to the arbitrator, the identity of such representative or the insurer itself. Tucker ruled defendants were not entitled to any specific information regarding AMS's insurer after defendants refused to agree to the presence of the insurer's representative without their first being provided identifying information. Then, at the hearing on AMS's motion for summary

judgment, Mitchell stated her appearance as coverage counsel for Lloyd's. Standard 9(a) of the Standards clearly states: "A person who is nominated or appointed as an arbitrator must make a reasonable effort to inform himself or herself of matters that must be disclosed under standards 7 and 8." Nevertheless, the record shows absolutely no inquiry by Tucker about the identity of the Lloyd's syndicates being represented by Mitchell. Conspicuously absent from the record is evidence of any disclosure by Tucker regarding his or Kaye Rose's involvement with Lloyd's in representing P & I Club clients.

Callahan's research led her to the conclusion that Tucker and Kaye Rose represented " 'major marine insurers' " and that "Tucker himself is extremely involved in the maritime/insurance defense aspects of his law firm's practice by acting as 'correspondent counsel' for P & I Clubs that serve as the vehicle for providing insurance and other services to various types of shipowners." She concluded, "[s]ince Lloyds of London is *the* premiere marine insurer," it was "inconceivable that an attorney and firm with such a robust maritime**\*\*944** practice could *not* have ties of some sort to Lloyds."

Callahan wrote letters to the AAA to request Tucker's disqualification based on his failure to disclose his and Kaye Rose's connections to Lloyd's. In Tucker's May 19, 2006 letter responding to Callahan's initial request for disqualification, he stated his belief that no conflict existed, and denied that he or Kaye Rose ever represented a syndicate of Lloyd's. He did not address whether he or Kaye Rose had any other business relationship with or connection to Lloyd's members or syndicates outside the context of an attorney-client relationship. In June 2006, Callahan twice wrote letters to Tucker "requesting that he provide affirmative disclosures" relating to what Callahan had discovered. Tucker did not respond to those letters.

**\*819** With regard to Tucker's and Kaye Rose's involvement with Lloyd's, substantial evidence was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal
D.A.R. 3148
(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)

produced, principally in the Biehl declaration, showing: (1) two syndicates of Lloyd's, Hiscox and Brit, underwrote 75 percent of the AMS employment practices liability insurance policy; (2) Mitchell, who described herself as coverage counsel for Lloyd's, represented, inter alia, Hiscox and Brit's interests in attending the arbitration; (3) Hiscox and Brit are involved in underwriting insurance and reinsurance to the P & I Clubs and the International Group; (4) eight of the 13 P & I Clubs that comprise the International Group have a relationship with Tucker and Kaye Rose; (5) the International Group "remains a significant portion of Lloyds' Marine business" and is "deeply involved with Lloyds through its significant reinsurance relationship which is one of the largest reinsurance contracts currently in place in the world's reinsurance market"; (6) Kaye Rose advertises that it is approved correspondent counsel for several P & I Clubs and Tucker is the contact person for matters in the San Diego area; (7) participants in the maritime industry "are all very much aware of each other, of their respective ties to marine insurers and the predominant role Lloyds and its syndicates play with respect to loss prevention and indemnification"; and (8) "[i]t would be incompatible for anyone approved as a 'correspondent' for a P & I Club to take actions contrary to other participants; to do so would most certainly put at risk their status as approved 'correspondent' counsel or otherwise."

The record shows none of the above important information was disclosed by Tucker at any time. Significantly, none of the information was disclosed by him despite specific requests to identify Mitchell and Tucker's duty of inquiry mandated by section 1281.85, subdivision (a), through its incorporation of standard 9(a) of the Standards discussed, *ante.* Because the substantial evidence catalogued, *ante,* "could cause a person aware of the facts to reasonably entertain a doubt that [Tucker] would be able to be impartial," Tucker was required to disclose such information under section 1281.9. He did not. The trial court, therefore, did not err by vacating the interim award.

II.

THE TRIAL COURT ERRED BY GRANTING
THE PETITION AS TO ITS REQUEST THAT
THE COURT ORDER TUCKER DISQUALIFIED
UNDER SECTION 1281.91.

Citing section 1281.91, subdivision (c), plaintiffs argue, "since Hoffman did not seek to disqualify the arbitrator before he ruled on a contested fact or made a decision, she was not entitled as a matter of right to disqualify him. She had to prove that a ground for disqualification existed. She did not do so." Section 1281.91, subdivision (c) states: "The right of a party to disqualify a proposed neutral arbitrator **945 pursuant to this section shall be waived *820 if the party fails to serve the notice pursuant to the times set forth in this section, unless the proposed nominee or appointee makes a material omission or material misrepresentation in his or her disclosure. Except as provided in subdivision (d), *in no event may a notice of disqualification be given after a hearing of any contested issue of fact relating to the merits of the claim or after any ruling by the arbitrator regarding any contested matter.* Nothing in this subdivision shall limit the right of a party to vacate an award pursuant to Section 1286.2, or to disqualify an arbitrator pursuant to any other law or statute." (Italics added.)

Standard 10(a)(4) of the Standards "clarif[ies] the requirements relating to disqualification based on disclosure made by the arbitrator after appointment or based on the discovery by the party of a material omission or misrepresentation in the arbitrator's disclosure." (Standards, com. to std. 10.) But standard 10(a)(4) does not provide for disqualification after any ruling by the arbitrator regarding any contested matter. Instead, it states that an arbitrator is disqualified if "[a] party becomes aware that an arbitrator has made a material omission or material misrepresentation in his or her disclosure and, within 15 days after becoming aware of the omission or misrepresentation and *within the time specified in Code of Civil Procedure section 1281.91(c),* the party serves a notice of disqualification that clearly describes the material omission or material misrep-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal
D.A.R. 3148
**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

resentation and how and when the party became aware of this omission or misrepresentation." (Standards, std.10(a)(4), italics added.)

Callahan did not investigate Tucker's connections to Lloyd's until after Tucker issued the interim award. Therefore, the trial court erred by granting the petition to the extent it sought an order disqualifying Tucker under section 1281.91, subdivision (c); we modify the order accordingly.

### III.
### DEFENDANTS COULD NOT WAIVE THEIR STATUTORY RIGHTS UNDER THE ACT TO PETITION TO VACATE THE INTERIM AWARD BY AGREEING TO SUBMIT CLAIMS TO BINDING ARBITRATION BEFORE THE AAA.

[3] Plaintiffs argue, "[b]ecause the American Arbitration Rules Provide that Its Disqualification Decisions Are Conclusive, the Trial Court Could Not Disqualify the Arbitrator." In support of their argument, plaintiffs cite the AAA's Commercial Arbitration Rules, rule R–17, which states in part: "(b) Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive." Plaintiffs contend that after the *821 AAA refused Hoffman's requests to disqualify Tucker, "[t]hat should have been the end of the matter."

As discussed, *ante,* the petition to disqualify Tucker under section 1281.91 was not viable because he had already issued the interim award before defendants discovered Tucker's failure to disclose his connections to Lloyd's. Instead, defendants' recourse was to seek vacatur of the interim award based on Tucker's failure to comply with disclosure requirements.

Does the AAA's Commercial Arbitration Rules, rule R–17, bar defendants from seeking the vacatur of the interim award under the Act? We conclude the answer to this question is no. We agree with the

analysis of the court in *Azteca, supra,* 121 Cal.App.4th 1156, 18 Cal.Rptr.3d 142, and **946 its sound reliance on the public policies expressed by statute.

In *Azteca, supra,* 121 Cal.App.4th 1156, 1161, 18 Cal.Rptr.3d 142, the AAA rejected the plaintiff's objection to the proposed arbitrator, based on a disclosed relationship he had with the defendant's counsel; the arbitration thereafter proceeded before that arbitrator. The plaintiff filed a petition to vacate the arbitrator's award on the ground the arbitrator was required to disqualify himself under section 1281.91, subdivisions (b)(1) and (d) and the Standards. (*Azteca, supra,* 121 Cal.App.4th at p. 1162, 18 Cal.Rptr.3d 142.) The trial court denied the petition on the ground the plaintiff had waived the right to disqualify the arbitrator under the Act by agreeing to arbitration in conformance with the AAA rules and, in particular, a rule in effect at the time, which stated, " '[u]pon objection of a party to the continued service of a neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.' " (*Azteca, supra,* 121 Cal.App.4th at pp. 1161, 1162, 18 Cal.Rptr.3d 142.)

The appellate court reversed, stating, "[w]e conclude [the plaintiff] could not, by agreeing to submit to arbitration before the AAA, waive its statutory rights to disqualify an arbitrator under the methods set forth by the Act." (*Azteca, supra,* 121 Cal.App.4th at p. 1168, 18 Cal.Rptr.3d 142.) The court cited several reasons in support of its decision. (*Id.* at pp. 1167–1168, 18 Cal.Rptr.3d 142.)

First, the court noted the disqualification scheme set forth in sections 1281.9 and 1281.91 was enacted "primarily for a public purpose" to regulate in the area of arbitrator neutrality. (*Azteca, supra,* 121 Cal.App.4th at p. 1167, 18 Cal.Rptr.3d 142.) The court noted, "the Legislature has gone out of its way, particularly in recent years, to regulate in the area of arbitrator neutrality by revising the procedures relating to the disqualification of

160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal D.A.R. 3148
**(Cite as: 160 Cal.App.4th 806, 72 Cal.Rptr.3d 935)**

private arbitrators and by adding, as a penalty for noncompliance, judicial vacation of the arbitration award." (*Ibid.*)

**\*822** Second, the *Azteca* court stated, "there is a ' "fundamental distinction between contractual rights, which are created, defined, and subject to modification by the same private parties participating in arbitration, and statutory rights, which are created, defined, and subject to modification only by [the Legislature] and the courts...." ' [Citation.] While the parties may be free to contract among themselves for alternative methods of dispute resolution, such contracts would be valueless without the state's blessing. Because it imbues private arbitration with legal vitality by sanctioning judicial enforcement of awards, the state retains ultimate control over the 'structural aspect[s] of the arbitration' process. [Citation.] The critical subject of arbitrator neutrality is a structural aspect of the arbitration and falls within the Legislature's supreme authority." (*Azteca, supra,* 121 Cal.App.4th at p. 1167, 18 Cal.Rptr.3d 142.)

Finally, the *Azteca* court reasoned, "the neutrality of the arbitrator is of such crucial importance that the Legislature cannot have intended that its regulation be delegable to the unfettered discretion of a private business.... Only by adherence to the Act's prophylactic remedies can the parties have confidence that neutrality has not taken a back seat to expediency." (*Azteca, supra,* 121 Cal.App.4th at p. 1168, 18 Cal.Rptr.3d 142.)

Plaintiffs attempt to distinguish *Azteca* by arguing that case involved "the AAA's refusal to grant a *peremptory* challenge to an arbitrator at the commencement of the arbitration," while here defendants did not contend they were entitled to automatically**\*\*947** disqualify the arbitrator. Instead, defendants argued Tucker "should be disqualified because a reasonable person would have doubts about his ability to be impartial," which, plaintiffs contend, is "the type of determination that should be left to the parties' arbitration agreement and be deemed conclusive as a ruling of fact and law."

Plaintiffs' proposed distinction does not withstand analysis. As discussed, *ante,* section 1286.2, subdivision (a)(6)(A) mandates that a court must vacate an arbitrator's award if the arbitrator making the award "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware." Tucker was on notice as of the hearing on the motion for summary judgment that AMS was insured through Lloyd's syndicates. As discussed, *ante,* he repeatedly and utterly failed to make disclosures required under section 1281.9 and standard 7 of the Standards. Thus, defendants had a statutory right to vacatur of the interim award. The statutory rule and policies underlying it, discussed in *Azteca, supra,* 121 Cal.App.4th 1156, 18 Cal.Rptr.3d 142, apply equally and forcefully here and will be enforced.

**\*823** DISPOSITION
We modify the order by deleting the portion of the order granting the petition to disqualify the arbitrator under section 1281.91, subdivision (a). In all other respects, the order is affirmed. Respondents shall recover costs on appeal.

WE CONCUR: SILLS, P.J., and RYLAARSDAM, J.

Cal.App. 4 Dist.,2008.
Advantage Medical Services, LLC v. Hoffman
160 Cal.App.4th 806, 72 Cal.Rptr.3d 935, 28 IER Cases 79, 08 Cal. Daily Op. Serv. 2617, 2008 Daily Journal D.A.R. 3148

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.