# EXHIBIT R

# EXHIBIT R

Westlaw.

127 P.3d 1057                                                        Page 1
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
(Cite as: 122 Nev. 82, 127 P.3d 1057)

H

Supreme Court of Nevada.
Michael THOMAS and John Armstrong, Appellants,
v.
THE CITY OF NORTH LAS VEGAS and The North
Las Vegas Police Officers Association, Inc., Re-
spondents.
City of North Las Vegas, Appellant,
v.
Michael Thomas, Respondent.
City of North Las Vegas, Appellant,
v.
John Armstrong, Respondent.

No. 39639, 42148, 42641.
Feb. 9, 2006.

**Background:** Discharged police officers sued city
and police union to compel arbitration of disputes. The
Eighth Judicial District Court, Clark County, Gene T.
Porter, J., compelled arbitration, but denied motion for
attorney fees. Officers filed motions to vacate awards.
The District Court, Michelle Leavitt and Jessie Eliz-
abeth Walsh, JJ., vacated awards. Officers and city
appealed.

**Holdings:** The Supreme Court, Rose, C.J., held that:
(1) substantial benefit exception to the American rule
against recovery of attorney fees was inapplicable to
officers' suit against city to compel arbitration;
(2) sanction of $1000 was justified by egregious and
improper appellate conduct of officers' attorney;
(3) as a matter of first impression, standard of review
for district court orders vacating or confirming an
arbitration award for evident partiality is de novo;
(4) as a matter of first impression, the standard of
evident partiality is a reasonable impression of par-
tiality; and

(5) arbitrator was not required to disclose service on
neutral, rotating panel of arbitrators for city and police
unions.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Costs 102 ☞194.42**

102 Costs
    102VIII Attorney Fees
        102k194.42 k. Public Interest and Substantial
Benefit Doctrine; Private Attorney General. Most
Cited Cases

    To qualify for the substantial benefit exception to
the American rule that parties generally must bear
their own attorney fees, the prevailing party must
show that the losing party has received a benefit from
the litigation.

**[2] Appeal and Error 30 ☞119**

30 Appeal and Error
    30III Decisions Reviewable
        30III(E) Nature, Scope, and Effect of Decision
            30k119 k. Relating to Costs. Most Cited
Cases

    An order granting attorney fees is appealable as a
special order made after final judgment. Rules
App.Proc., Rule 3A(b)(2).

**[3] Appeal and Error 30 ☞893(1)**

30 Appeal and Error
    30XVI Review

127 P.3d 1057                                                              Page 2
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

30XVI(F) Trial De Novo
  30k892 Trial De Novo
    30k893 Cases Triable in Appellate
Court
      30k893(1) k. In General. Most Cited
Cases

**Appeal and Error 30 ☜984(5)**

30 Appeal and Error
  30XVI Review
    30XVI(H) Discretion of Lower Court
      30k984 Costs and Allowances
        30k984(5) k. Attorney Fees. Most Cited
Cases

Generally, the Supreme Court reviews decisions awarding or denying attorney fees for a manifest abuse of discretion; but when the attorney fees matter implicates questions of law, the proper review is de novo.

**[4] Costs 102 ☜194.16**

102 Costs
  102VIII Attorney Fees
    102k194.16 k. American Rule; Necessity of Contractual or Statutory Authorization or Grounds in Equity. Most Cited Cases

Attorney fees may not be awarded absent a statute, rule, or contract authorizing such award.

**[5] Costs 102 ☜194.42**

102 Costs
  102VIII Attorney Fees
    102k194.42 k. Public Interest and Substantial Benefit Doctrine; Private Attorney General. Most Cited Cases

The "substantial benefit doctrine" allows recov-

ery of attorney fees when a successful party confers a substantial benefit on the members of an ascertainable class and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.

**[6] Costs 102 ☜194.42**

102 Costs
  102VIII Attorney Fees
    102k194.42 k. Public Interest and Substantial Benefit Doctrine; Private Attorney General. Most Cited Cases

To recover fees under the substantial benefit doctrine, a successful party must demonstrate that: (1) the class of beneficiaries is small in number and easily identifiable; (2) the benefit can be traced with some accuracy; and (3) the costs can be shifted with some exactitude to those benefiting.

**[7] Costs 102 ☜194.42**

102 Costs
  102VIII Attorney Fees
    102k194.42 k. Public Interest and Substantial Benefit Doctrine; Private Attorney General. Most Cited Cases

Class of beneficiaries, city taxpayers, was sufficiently small in number and easily identifiable for purposes of the substantial benefit exception to the American rule against recovery of attorney fees.

**[8] Costs 102 ☜194.42**

102 Costs
  102VIII Attorney Fees
    102k194.42 k. Public Interest and Substantial Benefit Doctrine; Private Attorney General. Most

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057                                                                   Page 3
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

Cited Cases

Changes in the way that union authorized arbitration of grievances as result of discharged police officers' suit to compel arbitration provided a substantial benefit and satisfied a requirement of substantial benefit exception to the American rule against recovery of attorney fees.

**[9] Costs 102 ☞194.42**

102 Costs
   102VIII Attorney Fees
      102k194.42 k. Public Interest and Substantial Benefit Doctrine; Private Attorney General. Most Cited Cases

Substantial benefit exception to the American rule against recovery of attorney fees was inapplicable to discharged police officers' suit against city employer to compel arbitration; the litigation changed grievance and arbitration procedures and conferred benefit on union members and police officers, and shifting attorney fees to city taxpayers would not shift the costs to those benefiting.

**[10] Costs 102 ☞194.14**

102 Costs
   102VIII Attorney Fees
      102k194.14 k. Prevailing Party. Most Cited Cases

Money judgment is prerequisite to recovery of attorney fees under statute permitting court to make an allowance of attorney fees to a prevailing party when he has not recovered more than $20,000. West's NRSA 18.010(2)(a).

**[11] Attorney and Client 45 ☞24**

45 Attorney and Client
   451 The Office of Attorney
      451(B) Privileges, Disabilities, and Liabilities
         45k24 k. Liability for Costs; Sanctions. Most Cited Cases

Sanction of $1000 was justified by egregious and improper appellate conduct of appellants' attorney in filing briefs that advanced arguments without citation to legal authority, were replete with assertions that lacked citation to the appendix, and contained factual misrepresentation that city abandoned allegedly frivolous appeal to avoid sanctions. Rules App.Proc., Rule 28(a)(4), (e); Sup.Ct.Rules, Rule 172(1)(a).

**[12] Appeal and Error 30 ☞760(1)**

30 Appeal and Error
   30XII Briefs
      30k760 References to Record
         30k760(1) k. In General. Most Cited Cases

Appellate brief citations to memoranda of law filed in the district court violated requirement to support assertions regarding matters in record by reference to the page of the transcript or appendix where the matter relied on is to be found. Rules App.Proc., Rule 28(a)(4).

**[13] Attorney and Client 45 ☞32(4)**

45 Attorney and Client
   451 The Office of Attorney
      451(B) Privileges, Disabilities, and Liabilities
         45k32 Regulation of Professional Conduct, in General
            45k32(4) k. Attorney's Conduct and Position in General. Most Cited Cases

**Attorney and Client 45 ☞32(14)**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057                                                                  Page 4
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

45 Attorney and Client
   45I The Office of Attorney
     45I(B) Privileges, Disabilities, and Liabilities
      45k32 Regulation of Professional Conduct, in General
        45k32(14) k. Candor, and Disclosure to Opponent or Court. Most Cited Cases

An attorney's zeal cannot give way to unprofessionalism, noncompliance with court rules, or violations of the ethical duties of candor to the courts and to opposing counsel. Sup.Ct.Rules, Rule 172(1)(a).

**[14] Alternative Dispute Resolution 25T ☞374(1)**

25T Alternative Dispute Resolution
   25TII Arbitration
     25TII(H) Review, Conclusiveness, and Enforcement of Award
      25Tk366 Appeal or Other Proceedings for Review
        25Tk374 Scope and Standards of Review
          25Tk374(1) k. In General. Most Cited Cases
    (Formerly 33k73.7(4) Arbitration)

A de novo standard of review applies to a district court order vacating or confirming an arbitration award for exceeding the arbitrator's authority or for manifest disregard of the law under the common law. West's NRSA 38.145(1)(c).

**[15] Alternative Dispute Resolution 25T ☞374(1)**

25T Alternative Dispute Resolution
   25TII Arbitration
     25TII(H) Review, Conclusiveness, and Enforcement of Award
      25Tk366 Appeal or Other Proceedings for Review
        25Tk374 Scope and Standards of Review
          25Tk374(1) k. In General. Most Cited Cases
    (Formerly 33k73.7(4) Arbitration)

The standard of review for district court orders vacating or confirming an arbitration award for evident partiality is de novo. West's NRSA 38.145(1)(b).

**[16] Appeal and Error 30 ☞893(1)**

30 Appeal and Error
   30XVI Review
     30XVI(F) Trial De Novo
      30k892 Trial De Novo
        30k893 Cases Triable in Appellate Court
          30k893(1) k. In General. Most Cited Cases

Statutes are construed de novo.

**[17] Alternative Dispute Resolution 25T ☞335**

25T Alternative Dispute Resolution
   25TII Arbitration
     25TII(G) Award
      25Tk331 Fraud, Partiality, or Misconduct
        25Tk335 k. Prejudice or Partiality and Interest in Subject Matter. Most Cited Cases
    (Formerly 33k64.3 Arbitration)

Reasonable impression of partiality, rather than an appearance of impropriety, determines when an arbitrator has a duty to disclose a relationship under statute requiring court to vacate award for evident partiality by an arbitrator appointed as a neutral. West's NRSA 38.145(1)(b).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057                                                    Page 5
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

[18] Alternative Dispute Resolution 25T <span>&#128273;</span>335

25T Alternative Dispute Resolution
   25TII Arbitration
     25TII(G) Award
      25Tk331 Fraud, Partiality, or Misconduct
       25Tk335 k. Prejudice or Partiality and
Interest in Subject Matter. Most Cited Cases
    (Formerly 33k64.3 Arbitration)

In nondisclosure cases, evident partiality of an arbitrator appointed as a neutral is established from the nondisclosure itself, regardless of whether the undisclosed information actually establishes evident partiality or bias. West's NRSA 38.145(1)(b).

[19] Alternative Dispute Resolution 25T <span>&#128273;</span>340

25T Alternative Dispute Resolution
   25TII Arbitration
     25TII(G) Award
      25Tk337 Presumptions and Burden of Proof
       25Tk340 k. Burden of Showing Error or
Invalidity. Most Cited Cases
    (Formerly 33k66.2 Arbitration)

The burden of proving evident partiality of an arbitrator appointed as a neutral is on the party challenging the arbitration award. West's NRSA 38.145(1)(b).

[20] Alternative Dispute Resolution 25T <span>&#128273;</span>335

25T Alternative Dispute Resolution
   25TII Arbitration
     25TII(G) Award
      25Tk331 Fraud, Partiality, or Misconduct
       25Tk335 k. Prejudice or Partiality and
Interest in Subject Matter. Most Cited Cases
    (Formerly 33k64.3 Arbitration)

The proper standard for determining whether a party has demonstrated evident partiality by the arbitrator's nondisclosure of a relationship is whether the undisclosed relationship gives rise to a reasonable impression of partiality. West's NRSA 38.145(1)(b).

[21] Alternative Dispute Resolution 25T <span>&#128273;</span>222

25T Alternative Dispute Resolution
   25TII Arbitration
     25TII(E) Arbitrators
      25Tk222 k. Competency. Most Cited Cases
    (Formerly 33k27 Arbitration)

Arbitrator's service on neutral, rotating panel of arbitrators for city and police unions would not give rise to a reasonable impression of partiality in arbitration of dispute over termination of police officers, and, thus, the arbitrator owed no duty to disclose his membership; the membership on the arbitration panel was not a managerial, representational, or consultative relationship. West's NRSA 38.145(1)(b).

**\*\*1059** Muije & Varricchio and John W. Muije and Philip T. Varricchio, Las Vegas, for Appellants and Respondents Michael Thomas and John Armstrong.

Carie A. Torrence, Acting City Attorney, North Las Vegas, for Respondent City of North Las Vegas.

Kamer Zucker & Abbott and Jody M. Florence and Gregory J. Kamer, Las Vegas, for Appellant City of North Las Vegas.

John R. Hawley, Henderson; George R. Fleischli, Madison, Wisconsin; Calvin William Sharpe, Cleveland, Ohio, for Amicus Curiae National Academy of Arbitrators.

Before the Court En Banc.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057                                                                                               Page 6
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
(Cite as: 122 Nev. 82, 127 P.3d 1057)

*85 OPINION

ROSE, C.J.

Michael Thomas and John Armstrong were formerly employed with the North Las Vegas Police Department (NLVPD). Thomas and Armstrong were terminated from their positions as police officers. Under their union's collective bargaining agreement, they were entitled to arbitrate their grievances regarding their terminations with the City of North Las Vegas. However, the City and NLVPD's union, the North Las Vegas Police Officers Association, Inc. (NLVPOA), denied Thomas and Armstrong arbitration. Thomas and Armstrong sued both the City and the NLVPOA, and the district court compelled arbitration. Thomas and Armstrong then filed a motion for attorney fees and costs, arguing that they were entitled to attorney fees under the substantial benefit doctrine, NRS 18.010(2)(a) (recovery under $20,000), and NRS 18.010(2)(b) (groundless defenses).[FN1] The district court denied their motion in its entirety, and Thomas and Armstrong appeal that determination in Docket No. 39639.

> FN1. The NLVPOA is not involved in this appeal, and Thomas and Armstrong presently seek attorney fees only from the City.

Thomas and Armstrong then arbitrated their grievances with the City. In each arbitration, the arbitrator found that the City had grounds for discharge and upheld the terminations. Thomas and Armstrong each filed a motion to vacate the arbitration award **1060 under NRS 38.145 [FN2] and manifest disregard of the law. The City filed motions to confirm the arbitration awards. The district courts found in favor of Thomas and Armstrong and vacated both arbitration awards. The City appeals these decisions in Docket Nos. 42148 and 42641.

> FN2. NRS 38.145 was repealed in 2001, but from October 1, 2001, until October 1, 2003, it still applied to agreements to arbitrate made before October 1, 2001. NRS 38.017

(expired October 1, 2003); NRS 38.216(3). Because the agreement to arbitrate here was entered into before October 1, 2001, and this action commenced before October 1, 2003, NRS 38.145 applies in this appeal. NRS 38.241 replaced NRS 38.145, and consistent with NRS 38.216(3), as of October 1, 2003, that statute applies to an agreement to arbitrate "whenever made." The language in NRS 38.241 is essentially the same as that in NRS 38.145.

[1] We conclude that Thomas and Armstrong's argument regarding attorney fees is without merit. First, to qualify for the substantial benefit exception to the American rule that parties generally must bear their own attorney fees, the prevailing party must show that the losing party has received a benefit from the litigation. Thomas *86 and Armstrong have not shown that the City received a benefit from their litigation. Second, under NRS 18.010(2)(a), it is well settled that a money judgment is a prerequisite to recovery of attorney fees, and Thomas and Armstrong have not presented a compelling argument to support their request that we abrogate that requirement. We also conclude that their argument under NRS 18.010(2)(b) is without merit. Accordingly, we affirm the decision of the district court. Additionally, we impose sanctions in the amount of $1000 on attorney John Benedict of Ashworth & Benedict for improper and egregious appellate conduct.[FN3]

> FN3. Benedict was Thomas and Armstrong's counsel in Docket No. 39639 and prepared Thomas and Armstrong's opening and reply briefs. John Muije has since substituted in as counsel for Thomas and Armstrong. Muije is not in any way connected with Benedict's sanctionable conduct and is not responsible for the monetary sanction against Benedict.

We further conclude that the City is correct that the arbitration awards should not have been vacated.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057                                                                    Page 7
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

Thomas's and Armstrong's challenges to the arbitration awards under NRS 38.145 and manifest disregard of the law are without merit. Thus, we reverse the decisions of the district courts vacating the arbitration awards and remand to the district courts to confirm the arbitration awards.

*FACTS*

This dispute centers around the employment termination of two NLVPD officers, Michael Thomas and John Armstrong. Thomas began employment with the NLVPD in 1993. In August 1999, following an Internal Affairs investigation and a pretermination hearing, Thomas was terminated from the NLVPD for associating with known offenders, unprofessional conduct, noncompliance with orders, public statements, and media releases. The City informed Thomas that he had acted in "an untruthful, disruptive and insubordinate manner, and ha[d] further brought [his] department and the City into disrepute by [his] unprofessional conduct."

Armstrong began employment with the NLVPD in 1991. In May 1999, following a predisciplinary hearing, Armstrong was terminated from the NLVPD for alleged sexual harassment. The City met with Armstrong and his accusers in separate meetings and concluded that Armstrong's conduct in the workplace toward his coworkers was "inappropriate, demeaning, intimidating and abusive to such an extent that it would be unreasonable to return him to the workplace." [FN4]

> FN4. Both Thomas and Armstrong had previously been terminated from the NLVPD, for reasons other than those involved in the instant case, and both were reinstated following arbitration hearings.

Throughout Thomas's and Armstrong's employment with the NLVPD, their union, the NLVPOA, was the exclusive bargaining representative for commissioned officers at the NLVPD. The City *87 and the NLVPOA negotiated a collective bargaining agreement, which governed the terms and conditions of employment for all commissioned officers. Both Thomas and Armstrong were civil service employees in a classified or tenured **1061 position and, as such, under the collective bargaining agreement could not be terminated other than for cause.

The collective bargaining agreement contained a grievance and arbitration procedure, which was the exclusive remedy for any dispute regarding the terms of the collective bargaining agreement. Under the grievance and arbitration procedure, the NLVPOA's grievance committee was responsible for reviewing all employee grievances. If the grievance committee determined that a grievance existed, the NLVPOA would submit the grievance to the City.

Under the 1995–98 collective bargaining agreement (CBA), if the City and the NLVPOA were unable to reach an agreement concerning the grievance, the employee had the right to submit the matter to arbitration. Further, under the NLVPOA's 1995 Constitution and Bylaws, union members were permitted to employ a legal representative of their choice and at their own expense to process a grievance under the 1995–98 CBA.

The 1995–98 CBA was replaced by the 1998–01 CBA. Notably, the grievance and arbitration clause had been amended to provide that if a settlement could not be reached between the City Manager and the NLVPOA, the NLVPOA had the right to submit the matter to arbitration. Thus, the CBA no longer permitted an employee to submit a grievance to arbitration. The NLVPOA's Constitution and Bylaws were also amended in 1998 but still contained the same provision as the 1995 Constitution and Bylaws allowing a union member to employ a legal representative of their choice and expense to process a grievance action in accordance with the CBA.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057

122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

Page 8

Following his termination, Thomas retained counsel at his own expense and sent a letter to the NLVPOA, the NLVPD, and the City appealing his termination and requesting arbitration and NLVPOA representation. The NLVPOA denied his request for representation, stating that the NLVPOA's Constitution and Bylaws prohibited representation. Thomas once more asked the City and the NLVPOA for arbitration and representation and was again denied.

After Armstrong was terminated, he also retained his own counsel without aid of the NLVPOA and notified the City of his intended grievance. The City informed Armstrong that he must comply with the provisions of the CBA's grievance and arbitration procedure. Thus, Armstrong had to first submit his grievance to the NLVPOA grievance committee and not to the City. Armstrong submitted his grievance to the NLVPOA and requested that the NLVPOA participate in arbitration with the City. The NLVPOA *88 denied Armstrong's request for representation, stating that the NLVPOA's Constitution prohibited it from representing him.

Both Thomas and Armstrong unsuccessfully appealed to the North Las Vegas Civil Service Board and then filed petitions to compel arbitration in the district court. Thomas's and Armstrong's petitions to compel arbitration were consolidated, and the district court granted their petitions.

*Thomas and Armstrong's motion for attorney fees*

After the district court compelled arbitration, the NLVPOA issued a position statement in which it said that it had reexamined the arbitration situation, specifically as it related to Thomas and Armstrong. The NLVPOA said that it believed that its initial position was erroneous and its new position was that Thomas and Armstrong were entitled to arbitrate their grievances. It also stated that, had it taken that position from the inception of their grievances and requests for

arbitration, the arbitration "would have occurred as a matter of course" and the "entire litigation would have been avoided. Under the terms of the CBA, the City would not have [had] any option but to arbitrate their terminations if arbitration had been requested by the [NLVPOA]."

Thomas and Armstrong then moved for attorney fees, arguing that they were entitled to attorney fees under the substantial benefit exception to the American rule, NRS 18.010(2)(a) (recovery under $20,000), and NRS 18.010(2)(b) (groundless defenses). The district court denied their motion, and **1062 Thomas and Armstrong appealed that order to this court.

*The arbitrations*

Under the CBA, arbitrations were to be conducted by the Federal Mediation and Conciliation Services (FMCS). As such, the arbitrations would be governed by FMCS rules, and the City and the NLVPOA were to select a mutually-agreed-upon arbitrator from a panel provided by the FMCS. The parties mutually selected Matthew Goldberg for Armstrong's arbitration. However, the parties disagreed on an arbitrator for Thomas's arbitration, and eventually the district court ordered the parties to use Goldberg for Thomas's arbitration as well.

In November 2001, Goldberg had a teleconference with the parties to schedule the arbitrations. Thomas's arbitration was scheduled for seven days in May 2002, and Armstrong's arbitration was scheduled for eight days in June 2002. During the teleconference, the parties asked Goldberg to provide them with a sample of discharge decisions he had written. Goldberg then informed the parties that he had arbitrated a case for the Las Vegas Metropolitan Police Department (Metro) the previous year. A few days after *89 the teleconference, per Thomas and Armstrong's request, Goldberg sent copies of the two decisions he had issued in law enforcement cases, which included the arbitration he referenced during the teleconference. That arbitration was between Metro and its un-

127 P.3d 1057                                                                                          Page 9
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

ion, the Las Vegas Metropolitan Police Department Police Protective Association (PPA). Goldberg had found in favor of Metro, determining that Metro had just cause to terminate the officer.

A few months later, Goldberg held a discovery conference with the parties. During this conference, Goldberg again referenced his arbitration work with Metro, stating that he was familiar with the location of the City's counsel's office because he had recently been in the area arbitrating for Metro.

Thomas's arbitration hearing was conducted in May 2002 and consisted of twenty-eight witnesses and six volumes of exhibits. In January 2003, Goldberg issued a 101–page Arbitrator's Opinion and Award, where he concluded that the City had just cause to terminate Thomas and that Thomas's grievance was denied. Armstrong's arbitration hearing was conducted in June 2002 and consisted of twenty-one witnesses and one volume of exhibits. In June 2003, Goldberg issued an 86–page Arbitrator's Opinion and Award, where he concluded that the City had just cause to terminate Armstrong and that Armstrong's grievance was denied.

In March 2003, Thomas called the FMCS to complain about Goldberg's service as his arbitrator. The FMCS then informed Thomas that Goldberg served as a neutral arbitrator on a permanent panel (Metro/PPA/PMSA panel) of arbitrators for Metro and its unions, the PPA, and the Las Vegas Metropolitan Police Manager's and Supervisor's Association (PMSA). Goldberg was appointed as a neutral arbitrator to the Metro/PPA/PMSA panel in January 2002. However, the version of Goldberg's résumé Thomas and Armstrong received did not disclose the panel membership, and Goldberg did not otherwise disclose his panel membership to the parties. In fact, Goldberg had three versions of his résumé—one for the FMCS, one for the American Arbitration Association, and one for the National Mediation Board. Only the National Mediation Board résumé disclosed any panel mem-

berships.

Thomas and Armstrong moved separately to vacate their arbitration awards. Thomas and Armstrong argued essentially the same grounds for vacatur, arguing that under NRS 38.145 the arbitration awards should be vacated because: (1) Goldberg failed to disclose his membership as a permanent arbitrator on Metro's labor arbitration panels thus demonstrating evident partiality, (2) Goldberg was unprofessional and coercive in his handling of payment of arbitration fees, (3) Goldberg engaged in ex-parte contact with the City's attorney, and (4) there were numerous procedural and evidentiary errors. They also argued that the awards should be vacated for manifest disregard of the law.

**\*90** The district court granted Thomas's motion to vacate and denied the City's motion to confirm the arbitration award without making any specific findings of fact or conclusions**\*\*1063** of law. Prior to his motion hearing, Armstrong's case was transferred to a different district court judge. The second district court judge vacated Armstrong's award, determining that Goldberg had a duty to disclose the panel membership. The City appealed.

*DISCUSSION*

Docket No. 39639 [FN5]

> FN5. An order granting attorney fees is appealable "as a special order made after final judgment." *Lee v. GNLV Corp.,* 116 Nev. 424, 426, 996 P.2d 416, 417 (2000); *see also* NRAP 3A(b)(2) (permitting an appeal from any special order made after final judgment). Generally an order compelling arbitration is interlocutory, thus precluding an appeal from an order denying attorney fees based on success in compelling arbitration. However, in the instant case, the sole issue before the district court was whether Thomas and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

Armstrong were entitled to arbitrate their grievances. As such, the order compelling arbitration was a final judgment in the matter and the attorney fees order was a special order made after final judgment. We therefore have jurisdiction over Thomas and Armstrong's appeal.

[2][3] "The decision whether to award attorney's fees is within the sound discretion of the district court." [FN6] Generally, we review decisions awarding or denying attorney fees for "a manifest abuse of discretion." [FN7] But when the attorney fees matter implicates questions of law, the proper review is de novo.[FN8] Here, we address two questions of law: whether the substantial benefit exception applies to a municipality and whether we should overrule our decision in *Smith v. Crown Financial Services.*[FN9] Therefore, we review the decision regarding fees de novo.

FN6. *Allianz Ins. Co. v. Gagnon,* 109 Nev. 990, 995, 860 P.2d 720, 724 (1993).

FN7. *Frantz v. Johnson,* 116 Nev. 455, 471, 999 P.2d 351, 361 (2000).

FN8. *Valley Elec. Ass'n v. Overfield,* 121 Nev. 7, ——, 106 P.3d 1198, 1199 (2005) (citing *Trustees v. Developers Surety,* 120 Nev. 56, 59, 84 P.3d 59, 61 (2004)).

FN9. 111 Nev. 277, 890 P.2d 769 (1995).

*Substantial benefit doctrine*

[4][5] Nevada follows the American rule that attorney fees may not be awarded absent a statute, rule, or contract authorizing such award. [FN10] A judicially created exception to the American rule is the substantial*91 benefit doctrine.[FN11] This doctrine allows recovery of attorney fees when a successful party confers " ' "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction

over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." ' " [FN12]

FN10. *Bobby Berosini, Ltd. v. PETA,* 114 Nev. 1348, 1356, 971 P.2d 383, 388 (1998); *Consumers League v. Southwest Gas,* 94 Nev. 153, 156, 576 P.2d 737, 738 (1978).

FN11. *Polonski v. Trump Taj Mahal Associates,* 137 F.3d 139, 145 (3d Cir.1998); *see Guild v. First Nat'l Bank of Nev.,* 95 Nev. 621, 624, 600 P.2d 238, 239 (1979).

FN12. *Polonski,* 137 F.3d at 145 (quoting *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) (quoting *Mills v. Electric Auto–Lite,* 396 U.S. 375, 393–94, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970))).

Typically, the substantial benefit exception is applied in cases involving shareholders or unions.[FN13] In those actions, the successful plaintiff confers a benefit on all shareholders or union members, and thus, attorney fees assessed against the corporation or union are easily and equitably spread among the shareholders or members who are the beneficiaries of the litigation. [FN14] What is important in those instances is that " 'the class of beneficiaries is before the court in fact or in some representative form.' " [FN15]

FN13. *Johnson v. U.S. Dept. of Housing & Urban Dev.,* 939 F.2d 586, 590 (8th Cir.1991).

FN14. *Id.* at 590–91.

FN15. *See id.* at 591 (quoting 1 M. Derfner & A. Wolf, *Court Awarded Attorney Fees* ¶ 3.05[1], at 3–28 (1991) (footnote omitted)).

[6][7][8][9] To recover fees under the substantial

127 P.3d 1057                                                          Page 11
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

benefit doctrine, a successful party must demonstrate that: "(1) the class of beneficiaries [is] 'small in number and easily identifiable'; (2) 'the benefit [can] be traced with some accuracy'; and (3) 'the costs [can] ... be shifted with some exactitude to those benefiting.'**1064**" [FN16] Regarding the first factor, we conclude that the class of beneficiaries, the City of North Las Vegas taxpayers, is sufficiently small in number and easily identifiable for purposes of the substantial benefit exception.[FN17] As to the second factor, the substantial benefit of Thomas and Armstrong's litigation is that their case brought about changes in how the City and the NLVPOA authorize grievances to be arbitrated.[FN18] The NLVPOA position statement, issued after Thomas and *92 Armstrong won their suit to compel arbitration, stated that the NLVPOA's position prior to their suit was erroneous. And, because of Thomas's and Armstrong's lawsuits, the NLVPOA changed the way that it authorizes grievances to be arbitrated. However, although Thomas and Armstrong have met the first two factors, they have not met the third factor required for relief because they have not demonstrated that the costs will be shifted to those benefiting. This is determinative, and we therefore conclude that the substantial benefit exception is inapplicable.

FN16. *Kinney v. International Broth. of Elec. Workers,* 939 F.2d 690, 692 n. 1 (9th Cir.1991) (quoting *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 265 n. 39, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

FN17. *See Jordan v. Heckler,* 744 F.2d 1397, 1400 (10th Cir.1984) (analyzing the substantial benefit exception where the benefited class numbered four million).

FN18. Thomas and Armstrong also argued that they provided a substantial benefit by vindicating free speech rights and "expos[ing] and forc[ing] illegal conduct to be corrected." We conclude that these argu-

ments are without merit, as Thomas and Armstrong did not cite to the record to support these assertions, and no evidence in the record supports these assertions.

Thomas and Armstrong seek attorney fees from the City and not from the NLVPOA. They argue that because all NLVPOA members are City employees, all City employees governed by a collective bargaining agreement benefited, including police officers, corrections personnel, and firefighters. The City argues that because City of North Las Vegas citizens did not benefit from the order compelling arbitration, the municipality as a whole cannot be forced to bear the cost of litigation. We agree with the City.[FN19]

FN19. The City also argued that any error with respect to the denial of attorney fees was harmless because the district court lacked jurisdiction to award fees because the fees were incurred on appeal, and the fee requests were insufficient to support an award of fees. As we conclude that Thomas and Armstrong are not entitled to attorney fees, we do not address this issue.

Whether the substantial benefit exception applies to a municipality is an issue of first impression for this court. Generally, in actions against municipalities, states, and the United States, courts conclude that all citizen taxpayers of the municipality, state, or United States usually cannot share the benefit conferred, and therefore, the costs cannot be shifted with some exactitude to those benefiting. Thus, the substantial benefit doctrine does not apply.[FN20]

FN20. *E.g., Linquist v. Bowen,* 839 F.2d 1321, 1326–27 (8th Cir.1988) (declining to extend the substantial benefit theory in an action against the United States); *Grace v. Burger,* 763 F.2d 457, 459–60 (D.C.Cir.1985) (declining to apply the doc-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057                                                                                                          Page 12
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

trine in actions against the United States, stating that to apply the exception in such situations would "detach [the theory] from its moorings"); *Jordan v. Heckler,* 744 F.2d 1397, 1400–01 (10th Cir.1984) (declining to apply the doctrine to the United States); *Stevens v. Municipal Court, Etc.,* 603 F.2d 111, 113 (9th Cir.1979) (declining to extend the doctrine to a municipality, stating that the theory "has no application to a benefit to all citizens of a county ... for such a broad class would merge the exception into the private-attorney-general concept rejected in *Alyeska* ").

However, there have been instances where courts have held that the substantial benefit exception applies to a municipality, and Thomas and Armstrong rely on this line of authority. In *Ex parte Horn,*[FN21] the plaintiffs successfully prevented the operation of a garbage transfer station in their neighborhood. As a result of the large public interest caused by the plaintiffs' efforts, the City of Birmingham passed a new ordinance regulating and licensing all *93 solid waste facilities in Birmingham. Therefore, the plaintiffs' efforts resulted in a benefit to all residents of the City of Birmingham, and the costs of litigation could **1065 be spread accordingly.[FN22]

    FN21. 718 So.2d 694 (Ala.1998).

    FN22. *Id.* at 702–06.

Here, distinguishable from *Ex parte Horn,* City of North Las Vegas citizen taxpayers are not before the court in a representative form and will receive no benefit from this litigation. The benefit conferred by this litigation, the change in NLVPOA grievance and arbitration procedures, was conferred on NLVPOA members and NLVPD officers governed by the CBA. Thus, shifting attorney fees to City of North Las Vegas citizen taxpayers would not shift the costs to those

benefiting. We therefore conclude that the substantial benefit exception cannot be extended to the municipality under these circumstances and Thomas and Armstrong are not entitled to attorney fees under this exception.[FN23] Accordingly, the district court properly denied Armstrong's and Thomas's motions for attorney fees.

    FN23. This is not to say that we hold that municipalities are immune from this doctrine. There may be instances analogous to *Ex parte Horn,* where a successful plaintiff confers a benefit on the municipality as a whole, wherein this doctrine could possibly be extended to the municipality and attorney fees shifted accordingly. However, we leave that issue for future determination.

*NRS 18.010(2)(a)*

[10] Thomas and Armstrong also urge us to reexamine the conditions precedent for recovery of attorney fees under NRS 18.010(2)(a) and to overrule our decision in *Smith v. Crown Financial Services.*[FN24] They argue that under the plain language of NRS 18.010(2)(a), they are entitled to recover attorney fees because they did not recover more than $20,000, even though they did not recover a money judgment. They assert that this court erroneously held in *Crown Financial* that a money judgment is a prerequisite to recover under NRS 18.010(2)(a). According to Thomas and Armstrong, NRS 18.010(2)(a) clearly and unmistakably does not require a money judgment as a prerequisite. They further argue, without citation, that NRS 18.010(2)(a)'s legislative history supports that attorney fees may be awarded in the absence of a money judgment. We conclude that their arguments are unpersuasive, and we decline to overrule *Crown Financial.*

    FN24. 111 Nev. 277, 890 P.2d 769 (1995).

NRS 18.010(2)(a) provides that "[i]n addition to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057

122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152

(Cite as: 122 Nev. 82, 127 P.3d 1057)

the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney's fees to a prevailing party: (a) [w]hen he has not recovered more than $20,000." This court *94 has always interpreted this provision as requiring a money judgment as a prerequisite to recovering attorney fees, [FN25] and contrary to Thomas and Armstrong's assertions, our decision in *Crown Financial* did not depart from our prior holdings or announce a new rule. In *Crown Financial,* after we meticulously examined the legislative history of NRS 18.010(2)(a), we merely clarified that the money judgment prerequisite also applies to prevailing defendants.[FN26]

> FN25. *E.g., Woods v. Label Investment Corp.,* 107 Nev. 419, 427, 812 P.2d 1293, 1299 (1991) ("[A] money judgment is a prerequisite to an award of attorney's fees under [NRS 18.010(2)(a) ]."); *Key Bank v. Donnels,* 106 Nev. 49, 53, 787 P.2d 382, 385 (1990) (holding that "[b]ecause respondents did not recover a money judgment below," they cannot recover attorney fees under NRS 18.010(2)(a)); *McCracken v. Cory,* 99 Nev. 471, 473, 664 P.2d 349, 350 (1983) (holding that because the plaintiff did not request money damages, the district court had no authority to award attorney fees under NRS 18.010(2)(a)); *City of Las Vegas v. Cragin Industries,* 86 Nev. 933, 940, 478 P.2d 585, 590 (1970) (declining to award plaintiff attorney fees under NRS 18.010(2)(a) because plaintiff did not recover a money judgment and "that statute as a condition precedent requires the award of a money judgment"), *disapproved of on other grounds by Sandy Valley Assocs. v. Sky Ranch Estates,* 117 Nev. 948, 35 P.3d 964 (2001).

> FN26. 111 Nev. at 286, 890 P.2d at 775.

There are cases, such as the case before us, where meritorious suits neither seek nor recover a monetary

judgment. Nonetheless, NRS 18.010(2)(a) does not allow successful parties to recover attorney fees. Attorney fees are provided for by statute, rule, or contract,[FN27] and unless our Legislature statutorily **1066 permits awards of attorney fees to meritorious, non-monetary actions, we cannot provide otherwise. *Crown Financial* was announced more than ten years ago, and our Legislature has had ample opportunity to amend this statute to expressly remove this requirement but has consistently chosen not to. Thomas and Armstrong have demonstrated no compelling reason to overrule *Crown Financial*, and because they did not recover a monetary judgment, they are not entitled to attorney fees under NRS 18.010(2)(a).

> FN27. *Bobby Berosini, Ltd. v. PETA,* 114 Nev. 1348, 1356, 971 P.2d 383, 388 (1998); *Consumers League v. Southwest Gas,* 94 Nev. 153, 156, 576 P.2d 737, 738 (1978).

*NRS 18.010(2)(b)*

Thomas and Armstrong also sought attorney fees under NRS 18.010(2)(b), which allows a party to recover attorney fees when the opposing party's defense was "brought or maintained without reasonable ground or to harass the prevailing party." Thomas and Armstrong assert, without citation to the record, many factual bases to demonstrate that the City's defenses were groundless and that the City engaged in procedural tactics for the purposes of delaying*95 litigation and harassing Thomas and Armstrong. Not only do Thomas and Armstrong fail to cite to the record to support their statements, their argument regarding the City's procedural tactics is misleading and drastically misrepresents the facts. Further, the record itself does not support their factual assertions, and thus, we conclude that their arguments are utterly without merit. Accordingly, we affirm the district court's order denying their requests for attorney fees under NRS 18.010(2)(b).

*Sanctions for appellate misconduct*

[11] John Benedict, of Ashworth & Benedict, was

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
(Cite as: 122 Nev. 82, 127 P.3d 1057)

Thomas and Armstrong's counsel during the under-lying proceedings before the district court, and he also prepared the opening and reply briefs in the attorney fees appeal. Thomas and Armstrong's briefs in that case advance arguments without citation to legal authority, in violation of NRAP 28(a)(4); are replete with assertions that lack citation to the appendix, in violation of NRAP 28(e); and contain factual misrepresentations, in violation of SCR 172(1)(a). Accordingly, sanctions are appropriate.

Under NRAP 28(a)(4), an appellant's brief shall contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Under NRAP 28(e),

Every assertion in briefs regarding matters in the record shall be supported by a reference to the page of the transcript or appendix where the matter relied on is to be found....

Briefs or memoranda of law filed in district courts shall not be incorporated by reference in briefs submitted to the Supreme Court.

We have held that sanctions are appropriate when counsel merely cites to memoranda of law filed in the district court in support of claims and when briefs prepared by an attorney make assertions that are not supported by citations to the record.[FN28] Finally, under SCR 172(1)(a), "[a] lawyer shall not knowingly ... [m]ake a false statement of material fact or law to a tribunal."

FN28. *Barry v. Lindner,* 119 Nev. 661, 671–72, 81 P.3d 537, 543–44 (2003); *Allianz Ins. Co. v. Gagnon,* 109 Nev. 990, 996–97, 860 P.2d 720, 725 (1993).

[12] Here, the appendix in the attorney fees appeal was lengthy, 1407 pages, and spanned seven volumes. However, Benedict rarely cited to the appendix in either the opening brief's statement of facts or the opening and reply brief's discussion sections, in violation of NRAP 28(a) and (e). Further, where citations did exist, the majority*96 of the citations were to memoranda of law Benedict filed in the district court, which violates NRAP 28(e). Nonetheless, we thoroughly reviewed the record, and most of Benedict's factual assertions remained unfounded. Most egregious is that the opening brief accused the City and the NLVPOA of conspiracy, fabricating the charges against Armstrong, retaliation, harassment, racial and ethnic slurs, physical assault, and attempted vehicular homicide. None of those accusations were supported by citation to the record, and nothing in the record supports those assertions.

**1067 Finally, in seeking attorney fees under NRS 18.010(2)(b), Benedict stated more than once that the City filed a frivolous appeal of the order compelling arbitration and that the City "[s]eeing the proverbial 'writing on the wall,' and realizing its position on appeal was frivolous ... abandoned its appeal rather than face a Rule 11 violation." Benedict did not cite to the record to support this statement, and nothing in the record supports that the City abandoned its appeal rather than "face a Rule 11 violation." Instead, the record demonstrates that the district court, in issuing its order compelling arbitration, noted that the City's argument had merit and thus stayed its order to allow the City and the NLVPOA to appeal its decision. When the City appealed the decision to this court, we also noted that the City's position on appeal appeared to have merit. By asserting that the City abandoned its appeal rather than "face a Rule 11 violation," Benedict has made a gross misrepresentation that merits sanctions under SCR 172(1)(a).

[13] Zealous advocacy is the cornerstone of good lawyering and the bedrock of a just legal system. However, zeal cannot give way to unprofessionalism, noncompliance with court rules, or, most importantly, to violations of the ethical duties of candor to the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

127 P.3d 1057                                                                                         Page 15
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

courts and to opposing counsel. Thus, we sanction Benedict $1000 for egregious and improper appellate conduct and remind him of his duty to practice law in a professional and honest manner. Benedict shall remit this sum within 30 days of the filing of this opinion to the Supreme Court of Nevada Law Library and shall file written proof of payment with the clerk of this court within the same time frame.

*Docket Nos. 42148 and 42641—vacatur of the arbitration awards*

Thomas and Armstrong argued before the district court that the arbitration awards should be vacated for numerous grounds under NRS 38.145 and for manifest disregard of the law, and the district court vacated the awards. On appeal, the City challenged all grounds for vacatur, but Thomas and Armstrong's answering brief only addressed the issues of evident partiality, improper ex parte contact, and fee coercion with any detail. We have nonetheless **\*97** considered all of the challenges to the arbitration award Thomas and Armstrong raised before the district courts. We conclude that Thomas and Armstrong's challenges are without merit and that the district court erred by vacating the arbitration awards. Only the issue of Goldberg's alleged evident partiality under NRS 38.145(1)(b) for failure to disclose his Metro/PPA/PMSA panel membership merits discussion.

*Standard of review under NRS 38.145(1)(b) (evident partiality)*

[14][15][16] The standard of review of a district court order confirming or vacating an arbitration award under NRS 38.145(1)(b) for evident partiality is an issue of first impression for this court. When reviewing a district court order vacating or confirming an arbitration award for exceeding the arbitrator's authority under NRS 38.145(1)(c) or for "manifest disregard of the law" under the common law, this court applies a de novo standard of review.[FN29] Thus, we conclude that the proper standard of review for district court orders vacating or confirming an arbitration award for evident partiality is also de novo.[FN30]

FN29. *Health Plan of Nevada v. Rainbow Med.,* 120 Nev. 689, 695, 100 P.3d 172, 177 (2004); *Clark County Sch. Dist. v. Rolling Plains,* 117 Nev. 101, 104, 16 P.3d 1079, 1081 (2001), *disapproved of on other grounds by Sandy Valley Assocs. v. Sky Ranch Estates,* 117 Nev. 948, 35 P.3d 964 (2001).

FN30. Additionally, we construe statutes de novo. *Valley Elec. Ass'n v. Overfield,* 121 Nev. 7, ——, 106 P.3d 1198, 1199 (2005) (citing *Trustees v. Developers Surety,* 120 Nev. 56, 59, 84 P.3d 59, 61 (2004)). Here, we interpret the evident partiality standard under NRS 38.145(1)(b), and thus, de novo review is proper.

*Evident partiality standard*

[17] This court has never interpreted NRS 38.145(1)(b)'s evident partiality grounds for vacating an arbitration award. NRS 38.145(1)(b) (repealed 2001) states that "the court shall vacate an award where: ... (b) There was evident partiality by an arbitrator appointed as a neutral." The threshold determination**1068 is the standard of evident partiality that applies. The City and amicus urge us to adopt the "reasonable impression of partiality" standard set forth by the Supreme Court in *Commonwealth Corp. v. Casualty Co.*[FN31] and adopted by the United Stated Court of Appeals for the Ninth Circuit in *Schmitz v. Zilveti.* [FN32] Thomas and Armstrong also urge this court to adopt the *Commonwealth Corp.* and *Schmitz* standard, but they argue that the standard under these cases is an "appearance of impropriety" standard instead of a "reasonable **\*98** impression of partiality" standard. We agree with the City and amicus and adopt the "reasonable impression of partiality" standard for determining when an arbitrator has a duty to disclose a relationship under NRS 38.145(1)(b).

127 P.3d 1057

122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152

(Cite as: 122 Nev. 82, 127 P.3d 1057)

Page 16

FN31. 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

FN32. 20 F.3d 1043 (9th Cir.1994).

[18][19] Claims of evident partiality fall into two categories: (1) actual bias and (2) nondisclosure of information.[FN33] Here, we are presented with the second category, nondisclosure of information.[FN34] In nondisclosure cases, "evident partiality is established from the *nondisclosure itself,* regardless of whether the [un]disclosed information [actually] establishes [evident] partiality or bias."[FN35] The burden of proving evident partiality is on the party challenging the arbitration award.[FN36]

FN33. *Woods v. Saturn Distribution Corp.,* 78 F.3d 424, 427 (9th Cir.1996).

FN34. We do not address the standard of partiality that applies to actual bias claims.

FN35. *Burlington Northern Ry. Co. v. TUCO Inc.,* 960 S.W.2d 629, 636 (Tex.1997).

FN36. *Wages v. Smith Barney Harris Upham & Co.,* 188 Ariz. 525, 937 P.2d 715, 720 (Ariz.Ct.App.1997).

The seminal case on nondisclosure claims and evident partiality is *Commonwealth Corp.*[FN37] In *Commonwealth Corp.,* the United States Supreme Court determined that the proper standard for nondisclosure claims of evident partiality is that an arbitrator "not only must be unbiased but also must avoid even the appearance of bias."[FN38] However, Justice White's concurring opinion stated that arbitrators are "men of affairs, not apart from but of the marketplace,"[FN39] and intimated that a more lenient standard of disclosure might be appropriate. He stated that although the judiciary must not overlook "outright chicanery" in the arbitrator's awards, "arbitrators are not automati-

cally disqualified by a business relationship with the parties before them" if the arbitrator informs the parties of the relationship or if that relationship is trivial.[FN40] Justice White observed that an arbitrator cannot be expected to "provide the parties with his complete and unexpurgated business biography," but in instances where the arbitrator has a substantial interest in an entity doing more than trivial business with a party, the arbitrator must disclose that fact.[FN41]

FN37. 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301.

FN38. *Id.* at 150, 89 S.Ct. 337.

FN39. *Id.* (White, J., concurring).

FN40. *Id.*

FN41. *Id.* at 151–52, 89 S.Ct. 337.

[20] *99 Since *Commonwealth Corp.,* courts have struggled with the evident partiality standard.[FN42] The United States Court of Appeals for the Ninth Circuit first addressed this issue in *Schmitz v. Zilveti.*[FN43] It concluded that although Justice White's concurring opinion did not render *Commonwealth Corp.* a plurality, the majority opinion did not articulate a succinct standard. Other courts adopting *Commonwealth Corp.* applied a "reasonable impression of partiality" standard, and the Ninth Circuit held that this standard was "the best expression of the *Commonwealth [Corp.]* court's holding."[FN44] We agree and hold that the proper standard for determining whether a party has demonstrated evident partiality by the arbitrator's **1069 nondisclosure of a relationship, is whether the undisclosed relationship gives rise to a "reasonable impression of partiality."[FN45]

FN42. *E.g., Wages v. Smith Barney Harris Upham & Co.,* 188 Ariz. 525, 937 P.2d 715, 721 (Ariz.Ct.App.1997) ("The various fed-

127 P.3d 1057                                                                  Page 17
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

eral and state courts that have addressed 'evident partiality' have struggled with the concept.").

FN43. 20 F.3d 1043 (9th Cir.1994).

FN44. *Id.* at 1047.

FN45. The City argues that the reasonable impression of partiality standard requires reference to "a well-informed thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious" party alleging evident partiality. Other courts do not find such a need for this "well-informed thoughtful and objective observer" standard and instead discuss the reasonable impression of partiality standard, "pragmatically, employing a case-by-case approach in preference to dogmatic rigidity." *In re Andros Compania Maritima and Marc Rich & Co., A.G.,* 579 F.2d 691, 700 (2d Cir.1978). The concept of objectiveness is implied in the "reasonable" language of the standard, and thus, we conclude that it is not necessary to adopt or further discuss a "well-informed thoughtful and objective observer" requirement.

[21] Next, we must determine whether Goldberg's Metro/PPA/PMSA panel membership is a relationship that gives rise to a reasonable impression of partiality, thereby giving Goldberg a duty to disclose his Metro/PPA/PMSA panel membership. The City and amicus argue that Goldberg's duty to disclose must be interpreted under the parties' chosen method of dispute resolution, here the FMCS. The City and amicus argue that Goldberg's service on the Metro/PPA/PMSA panel is not a relationship requiring disclosure. Thomas and Armstrong do not dispute that FMCS disclosure requirements apply but argue that the duty to disclose must be interpreted under NRS

38.145(1)(b). They argue that regardless of whether FMCS guidelines or NRS 38.145(1)(b) applies, Goldberg had a duty to disclose his panel membership and his failure to do so demonstrated evident partiality.

**\*100** The arbitration in this case arose under Thomas's and Armstrong's right to arbitrate under the CBA. Under the CBA, arbitration of grievances must be conducted according to FMCS guidelines. Therefore, the parties have bound themselves to FMCS guidelines. As such, we do not interpret Goldberg's duty to disclose under NRS 38.145(1)(b), but instead, we analyze his duty under FMCS guidelines.

*FMCS guidelines*

The FMCS utilizes the "Code of Professional Responsibility for Arbitrators of Labor–Management Disputes" (the Code) for its arbitrators.[FN46] The Code is a set of standards and guidelines for professional behavior developed by the FMCS. Amicus, the National Academy of Arbitrators, states that "one of the primary purposes of the drafters [of the Code] was flexibility," and therefore, "the *Code* does not have any bright line rules for disclosure." Instead, the facts and circumstances of each case must be weighted when determining whether the standards have been violated.

FN46. Code of Prof'l Responsibility for Arbitrators of Labor–Management Disputes, [Awards] Lab. Arb. Awards (CCH) 9351–63.

Under section 2(B)(1) of the Code, an arbitrator must disclose any "current or past managerial, representational, or consultative relationship with any company or union involved in a proceeding in which the arbitrator is being considered for appointment or has been tentatively designated to serve. Disclosure must also be made of any pertinent pecuniary interest." An explanation following the rule states:

127 P.3d 1057                                                              Page 18
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

The duty to disclose includes membership on a Board of Directors, full-time or part-time service as a representative or advocate, consultation work for a fee, current stock or bond ownership (other than mutual fund shares or appropriate trust arrangements) or any other pertinent form of managerial, financial or immediate family interest in the company or union involved.

Thomas and Armstrong argue that Goldberg had a duty to disclose his panel membership under the "[d]isclosure must also be made of any pertinent pecuniary interest" language. They argue that Goldberg was required to disclose his panel appointment because he had an ongoing pecuniary interest in doing work with Metro and the PPA/PMSA.[FN47] Further, Thomas and Armstrong assert that *101 **1070 Goldberg's interest was pertinent to this case because Metro and the NLVPD's health insurance was interrelated and because the two departments worked closely together. We do not agree.

> FN47. Thomas and Armstrong also argued that Goldberg's interest was pertinent because Metro's and the NLVPD's health insurance was interrelated and the two entities were allegedly involved in a health insurance scam and also because Metro and the NLVPD worked closely together. They did not provide support from the record for these assertions. We nonetheless diligently searched the record for support but found nothing that supports these assertions. Therefore, we do not consider them in this discussion.

Goldberg's membership on the arbitration panel was not a "managerial, representational, or consultative" relationship. The comment following the disclosure requirement outlines the types of disclosures that must be made, and none are applicable to this situation. Further, the "disclosure of pertinent pecuniary interest" language must be read in context with the "managerial, representational, or consultative relationship" language. Goldberg has no such relationship with Metro and the PPA/PMSA. Thus, under section 2(B)(1), Goldberg's panel membership did not give rise to a reasonable impression of partiality, and he had no duty to disclose it.

Under section 2(B)(3) of the Code, an arbitrator must disclose "any close personal relationship or other circumstance ... which might reasonably raise a question as to the arbitrator's impartiality." Under subsections 4 and 5 of the Code, the arbitrator has a continuing burden of disclosure and must withdraw if the arbitrator discovers a conflict of interest.

The National Academy of Arbitrators has previously interpreted the disclosure provisions of section 2(B)(3)-(5) of the Code. In *Opinion No. 22,* an arbitrator had been appointed to an administrative agency to hear a discharge case in which the parties were employer and Union A.[FN48] Before and during that matter, the arbitrator regularly served as an expedited arbitrator in cases between the same employer and Union B. The biographical material provided by the arbitrator to the appointing agency and by the appointing agency to Union A did not reference the arbitrator's position as a regular expedited arbitrator for the employer and Union B. The National Academy of Arbitrators held:

> FN48. Nat'l Acad. of Arb., Advisory Op. No. 22, [Awards] Lab. Arb. Awards (CCH) 9436 (May 26, 1991).

Previous or current service as a neutral arbitrator for a particular employer and/or union is not a relationship requiring disclosure under the Code. Absent some personal relationship or other special circumstance mandating disclosure, such service is not a "circumstance ... which might reasonably raise a question as to the arbitrator's impartiality."[FN49]

122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152
**(Cite as: 122 Nev. 82, 127 P.3d 1057)**

FN49. *Id.* at 9437.

We give deference to administrative interpretations.[FN50] *Opinion No. 22* is the equivalent of an agency interpretation of the FMCS guidelines, and it holds that there is no duty to disclose the arbitration relationship in situations analogous to that before us. Additionally,*102 we too conclude that under the FMCS guidelines, service on a neutral, rotating arbitration panel does not give rise to a reasonable impression of partiality. Thus, Goldberg did not have a duty to disclose his Metro/PPA/PMSA panel membership, and his nondisclosure did not demonstrate evident partiality. The district court erred by vacating the arbitration awards.

FN50. *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

*CONCLUSION*

For the above-stated reasons, we conclude that Thomas and Armstrong were not entitled to attorney fees and that Goldberg did not have a duty to disclose his panel membership. Accordingly, we affirm the district court's decision denying Thomas's and Armstrong's motion for attorney fees (Docket No. 39639), and we reverse the district court decisions vacating the arbitration awards (Docket Nos. 42148 and 42641) and remand to the district courts to confirm the arbitration awards. Finally, we sanction attorney John Benedict $1000 for improper appellate conduct.

BECKER, GIBBONS, HARDESTY, MAUPIN, DOUGLAS and PARRAGUIRRE, JJ., concur.

Nev.,2006.
Thomas v. City of North Las Vegas
122 Nev. 82, 127 P.3d 1057, 179 L.R.R.M. (BNA) 2117, 152 Lab.Cas. P 60,152

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.