UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARY ANN SUSSEX, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TURNBERRY/MGM GRAND TOWERS, LLC, et al., <br><br> Defendants. | Case No. 2:08-cv-00773-MMD-PAL <br><br> ORDER <br><br> (Defs' Motion to Disqualify – dkt. no. 114) |

I.  **SUMMARY**

Defendants seek judicial intervention mid-arbitration to remove an arbitrator based on a claim of evident partiality as a result of the arbitrator's failure to disclose his business pursuit. Because the Court finds that exceptional circumstances warrant court intervention to advance the purposes of arbitration, Defendants' motions to disqualify arbitrator Brendan Hare (dkt. no. 114 in case no. 2-08-cv-00773; dkt. no. 61 in case no. 2-11-cv-01107) are granted.[1]

II.  **BACKGROUND**

This matter arises from a long-standing dispute brought by purchasers of condominium units developed and sold by Defendant Turnberry/MGM Grand Towers, LLC ("Turnberry/MGM"). The factual background of this case is summarized in the

---

[1]Though this Order only refers to 2:08-cv-00773 and associated docket citations, it resolves both pending motions to disqualify.

Court's March 2, 2010, Order. (Dkt. no. 63.) There are several arbitration procedures currently ongoing. They involve plaintiffs in a consolidated state court proceeding ("*KJH*") and plaintiffs in the federal proceedings.[2] On December 31, 2012, all of the arbitrations proceeding against Turnberry/MGM were consolidated by Arbitrator Brendan Hare for the purposes of coordinated discovery, motion practice and ruling on common issues. (Dkt. no. 114-5, Appendix Vol. 1 at TMGM 166.)

The American Arbitration Association ("AAA") appointed Hare as arbitrator in the *Sussex* arbitration on February 26, 2010.[3] Approximately one month later, he founded and incorporated Bowdoin Street Capital, LLC ("Bowdoin"). (Dkt. no. 114-1, Appendix Vol. 1 at TMGM 42.) Bowdoin's website stated that the company's goal "is to provide assistance to claimholders and their lawfirms in the resolution of disputes more efficiently, economically, and predictably." (Dkt. no. 130-1, Ex. 2.) The website touts Hare's experience as a "neutral in many large complex commercial arbitrations with claims ranging from $20 to $200 million . . . ." (*Id.*) In April, 2011, Hare participated in a panel discussion during a "Litigation Finance & Investment Summit" in New York. (*Id.*, Ex. 3.) On February 23, 2012, the parties received a Notice of Appointment, signed by Hare, which stated that Hare had checked for conflicts and had nothing to disclose. (Dkt. no. 114-2, Appendix Vol. 1 at TMGM 92–94.) Hare participated in another litigation finance summit in New York in March, 2012. (Dkt. no. 130-1, Ex. 3.) He also updated his LinkedIn profile to announce that he "has recently refocused his practice to concentrate

---

[2]The federal proceedings include the instant case, *Sussex v. Turnberry/MGM Grand Towers, LLC, et al.* (2:08-cv-00773) ("*Sussex*") and *Abraham et al v. Turnberry/MGM Grand Towers, LLC et al,* (2:11-cv-01007) ("*Abraham*"). The Court consolidated these actions under 2:08-cv-00773. (Dkt. no. 127.)

[3]After Hare was selected by the AAA to preside over the *Sussex* arbitration, Plaintiffs sought to remove him. Plaintiffs argued that, had he been on the list of arbitrators provided by the AAA, Hare would have been stricken, or would have been subject to being stricken, because of his corporate counsel background, lack of judicial or government experience and lack of experience in securities class action. (*See* dkt. no. 68.) Plaintiffs now take the position that Hare should remain as arbitrator.

on the emerging field of Litigation Finance and Funding." (Dkt. no. 114-5, Appendix Vol. 1 at TMGM 171.)

Defendants asked the AAA to review the appointment of Hare based on his failure to disclose his creation of Bowdoin and his pursuit of investment opportunities in litigation finance. (Dkt. no. 115 at 5.) On February 13, 2013, in response to an AAA inquiry, Hare emailed the AAA case administrator, "Hi Jonathan, Bowdoin Street Capital, LLC is an entity I created to explore the possibility of raising a fund to provide capital for litigation. I have raised no money, and made no investments. Except for a vestigial web presence, the company has been completely dormant." (Dkt. no. 130-1, Ex. 4.) The AAA case manager referred to Hare's email as a "supplemental disclosure." (*Id.*)

On March 6, 2013, the AAA denied Defendants' request to remove Hare from the *Sussex* arbitration, and reaffirmed him as the designated arbitrator. (Dkt. no. 114-5, Appendix Vol. 1 at TMGM 175.) The AAA informed the parties that "[a]fter careful consideration of the parties' contention, the Association has determined that Mr. Hare will be reaffirmed as the arbitrator." (*Id.*) It did not provide a reason for its decision.

On April 24, 2013, Turnberry/MGM filed a motion to disqualify Hare in the *KJH* case. (Dkt. no. 114 at 9.) The Clark County District Court denied the motion to disqualify and found there is no legal authority that permits judicial, pre-award disqualification where the parties agreed that the AAA's decision on disqualification shall be conclusive for purposes of allowing the proceedings to proceed to an award. (*Id.* at 10–11.) In response, Turnberry/MGM filed a writ with the Nevada Supreme Court. (*Id.* at 11.) *KJH* plaintiffs filed an emergency motion with the Nevada Supreme Court in which they asked that the state plaintiffs be allowed to move forward in a separate arbitration without Hare and that the federal plaintiffs be allowed to move forward with Hare. (*Id.*) On June 27, 2013, the Nevada Supreme Court dismissed Turnberry/MGM's writ on account of *KJH* plaintiffs' emergency motion because *KJH* plaintiffs "agreed to proceed in the underlying arbitration without [Hare]" and consequently "[Turnberry/MGM] has effectively obtained the relief it seeks." (*Id.* at 11-12; dkt. no. 114-8, Appendix Vol. 2 at TMGM 389.)

Turnberry/MGM petitioned for reconsideration of the Nevada Supreme Court's dismissal order. (Dkt. no. 114 at 12; dkt. no. 114-8, Appendix Vol. 2 at TMGM 417-20.) The petition for reconsideration is still pending.

On September 11, 2013, Defendants filed the instant motion to disqualify Hare from the arbitration proceedings ("Motion") in this case and in the *Abraham* case. (*See* dkt. no. 114 in *Sussex*; dkt. no. 61 in *Abraham*.) The Court subsequently granted an emergency request to stay the arbitration pending resolution of the Motion. (Dkt. no. 129.) The Court held hearings on the Motion on December 3, 2013, and December 12, 2013. (Dkt. nos. 133, 139.)

## III. DISCUSSION

### A. Authority to Address Disqualification Pre-Arbitration Award

The arbitration proceedings against Turnberry/MGM have been consolidated but have not yet proceeded to discovery. The initial question is thus whether the Court can intervene to disqualify Hare for evident partiality at this stage of the arbitration. The Court finds that it has equitable authority to intervene and this case presents the type of extreme case that compels the Court to exercise its equitable authority.

Section 10 of the Federal Arbitration Act ("FAA") sets forth grounds on which an arbitral award may be vacated. It provides that a district court "may make an order vacating [an] [arbitration] award upon the application of any party to the arbitration" where, among other things, "there was evident partiality or corruption in the arbitrators[.]" 9 U.S.C. § 10(a)(2). It does not expressly address a district court's ability to remove an arbitrator for evident partiality *prior* to the entry of a final award. However, in *Aerojet-General Corp. v. American Arbitration Ass'n*, 478 F.2d 248 (9th Cir. 1973), the Ninth Circuit left open the possibility that a district court may consider challenges to an arbitrator's impartiality prior to a final award in "extreme cases." 478 F.2d at 251. Other federal courts have found that a district court may intervene in an ongoing arbitration proceeding under its powers of equity. *See Application of York Hannover Holding A.G. v. American Arbitration Ass'n.*, 92 Civ. 1643, 1993 WL 159961 (S.D.N.Y. May 11, 1993);

*Metropolitan Property and Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.*, 780 F. Supp. 885 (D. Conn. 1991). As the court in *Metropolitan Property* recognized, "it simply does not follow that the policy objective of an expeditious and just arbitration with minimal judicial interference is furthered by categorically prohibiting a court from disqualifying an arbitrator prior to arbitration." 780 F. Supp. at 894.

The goal of an expeditious and just arbitration in this case would be furthered by the Court's intervention at this pre-award stage. Hare is serving as arbitrator for consolidated arbitration proceedings that involve 545 claimants, or 385 claimants if the parties proceed with a separate arbitrator for the state plaintiffs as the *KJH* plaintiffs have proposed. (*See* dkt. no. 114 at 8, 11–12.) Five years after this case was initiated and four years after the *Sussex* plaintiffs commenced arbitration,[4] the parties have only progressed through the early phases of selecting the arbitrator and resolving preliminary issues. Discovery has not yet commenced in the consolidated arbitration proceedings, and the parties have to go through the process of selecting another arbitrator to replace Hare in the state plaintiff arbitration proceedings, assuming the Nevada Supreme Court declines to reconsider its June 27, 2013, decision.

The Court is presented with two options. One option is to decline to determine whether there is evident partiality with regard to Hare and let the arbitrations proceed to final award. With the large number of claimants in the arbitration proceedings, as well as the delay and complications associated with Hare being removed as arbitrator for the state plaintiffs if the Nevada Supreme Court declines to reconsider its decision, the arbitration proceedings may take years to conclude. (*See* dkt. no. 118 at 10.) The parties may then seek to vacate the award. If evident partiality is found and the award is vacated, the parties will have to go through the arbitration process again, resulting in greater delay and waste in time and resources. The Court's other option is to assess

---

[4](*See* dkt. no. 114-1, Appendix Vol. 1 at TMGM 33 (*Sussex* demand for arbitration, signed August 31, 2009).)

whether there is evident partiality now, before discovery commences. The Court can assess whether the evidence points to the eventual vacation of Hare's arbitration awards and thus ensure that the arbitrations proceed without waste and in a just manner.

The latter course is appropriate. Given the size of the consolidated arbitrations, the early stage of the proceedings, the fact that Hare is being replaced in arbitration proceedings involving the state plaintiffs (assuming the Nevada Supreme Court declines to reconsider its decision), and the likelihood that a final award will be vacated, the Court finds it should exercise its equitable authority to address Hare's disqualification pre-award.

### B.     Evident Partiality

#### 1.     Legal Standard

Section 10 of the FAA provides four grounds on which an arbitral award may be vacated. *See* 9 U.S.C. §§ 10(a)(1)–10(a)(4). Defendants seek to disqualify Hare based on a claim of evident partiality under 9 U.S.C. § 10(a)(2). "Evident partiality" may be shown to be present where an arbitrator fails to disclose information that creates a "reasonable impression of bias." *Langstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645–46 (9th Cir. 2010) (*citing Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir.1996); *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145 (1968)). An arbitrator "must avoid even the appearance of bias" as it is not "the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." *Commonwealth Coatings*, 393 U.S. at 150. While the Supreme Court recognized "that arbitrators cannot sever all their ties with the business world," it emphasized that because arbitrators "have completely free rein to decide the law as well as the facts and are not subject to appellate review," courts must be "scrupulous" and "safeguard the[ir] impartiality." *Id.* at 148–49.

The AAA's determination that Hare should not be disqualified, pursuant to R-17 of the AAA Commercial Arbitration Rules to which the parties agreed, does not strip the

Court of its ability to vacate an award for evident partiality. *See Aerojet-General*, 478 F.2d at 252 ("An arbitration award must be upheld unless it be shown that there was partiality on the part of an arbitrator[.]") Even where the AAA has explicitly decided not to disqualify an arbitrator, a district court may still vacate an arbitration award under Section 10 of the FAA if it finds "evident partiality." *See NGC Network Asia, LLC v. PAC Pacific Group Intern., Inc.*, 09 Civ. 8684, 2012 WL 377995 (S.D.N.Y. Feb. 3, 2012). The reasoning of the AAA's decision may be entitled to some deference or may be persuasive in helping a Court determine that an award is not likely to be vacated at the conclusion of the arbitration.

Plaintiffs contend that the AAA's decision is entitled to substantial deference because the parties have agreed that the AAA's decision "shall be conclusive." (Dkt. no. 115 at 15.) In support of this argument, Plaintiffs rely on cases such as *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064 (2013) and *Campbell v. Nevada Property 1 LLC*, 2:10-cv-02169, 2013 WL 6118622 (D. Nev. Nov. 20, 2013). *Oxford Health* and *Campbell* are not relevant to the Court's consideration of the Motion. The parties in *Oxford Health* and *Campbell* challenged arbitral awards under 9 U.S.C § 10(a)(4), which allows a district court to vacate an award "where the arbitrators exceeded their powers." *See Oxford Health*, 133 S.Ct. at 2066 ("The question presented is whether . . . . [the arbitrator] 'exceeded [his] powers' under § 10(a)(4) of the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 et seq."); *Campbell*, 2013 WL 6118622 at *3 ("[Plaintiff] contends that the Arbitrator exceeded his power under 9 U.S.C. § 10(a)(4) by exercising an authority reserved only to the courts under the Contract—the authority to modify a contract term.") *Oxford Health* and *Campbell* did not involve challenges to an arbitrator's "evident partiality" under 9 U.S.C. § 10(a)(2) and contain no discussion on the "evident partiality" standard at issue in the Motion.

Where, as here, the AAA has not provided any reasoning for its decision, the Court agrees with Defendants that it should review the AAA's "evident partiality" determination *de novo*. Not only did the AAA fail to provide a reason for its decision, its

handling of Hare's failure to disclose leads to more questions. The Case Manager characterized Hare's email relating to Bowdoin as a "supplemental disclosure," which suggests that an initial disclosure should have been made. Because the AAA did not explain its decision for denying Defendants' request to disqualify Hare, the Court cannot determine whether its decision meets the minimum standard of fairness.[5]

### 2.  Analysis

There is no dispute that Hare failed to disclose information about Bowdoin prior to his "supplemental disclosure," but the parties dispute whether the failure to disclose constitutes evident partiality. Under R-16(a) of the AAA rules to which the parties agreed, Hare had an ongoing duty to "disclose to the AAA any circumstance likely to give rise to justifiable doubt as to [his] impartiality or independence, including any bias or financial or personal interest in the result of the arbitration . . . ." (Dkt. no. 114-9, Appendix Vol. 2 at TMGM 460 (R-16(a) of AAA's Commercial Arbitration Rules).) In the midst of presiding over a massive arbitration, Hare announced in his LinkedIn profile he "has recently refocused his practice to concentrate on the emerging field of Litigation Finance and Funding," (dkt. no. 114-5, Appendix Vol. 1 at TMGM 171) and created a company to "explore the possibility of raising capital for litigation" (dkt. no. 130-1, Ex. 4). Hare's founding of a company that intends to profit from funding large, potentially profitable litigations of the kind that Hare is currently overseeing is likely to give rise to justifiable doubt regarding his impartiality, particularly where he failed to disclose his new pursuit.

Plaintiffs argue that the undisclosed facts in this case do not indicate that Hare might be biased against one litigant and favorable to another. While some of Hare's panel discussion materials raise the possibility of funding both plaintiffs and defendants,

---

[5]At the December 12, 2013, hearing, Plaintiffs' counsel argued that the AAA panel did not need to give a reason for its decision because a reasoned decision was not requested by the parties under R-42(b). That rule, however, explicitly relates to "a reasoned award" and does not apply to the AAA's decision to reaffirm Hare. (See dkt. no. 114-9, Appendix Vol. 2 at TMGM 467 (R-42(b) of AAA's Commercial Arbitration Rules).)

the Court finds that the materials on Bowdoin's website describe a model for funding plaintiffs. The website states that Bowdoin's goal is to fund "claimholders" and stresses investment in "high-value, and high-probability legal claims and litigations." (Dkt. no. 130-1, Ex. 2.) This language indicates that Bowdoin's goal is to fund plaintiffs in actions with high potential damages where the claims are likely to succeed. Hare's failure to disclose the founding of Bowdoin and the refocusing of his practice thus gives the reasonable impression of bias towards the Plaintiffs, because Hare stands to profit from a business that funds plaintiffs in high-value cases such as this.[6] Moreover, whether Bowdoin's aim was to fund plaintiffs or defendants, the potential for partiality, and Hare's duty to disclose, exists. Thus, the business pursuit that Hare failed to disclose is substantial and his failure to disclose creates a reasonable impression of partiality.

Plaintiffs argue that an actual relationship between the arbitrator and the parties is absent in this case because Bowdoin is not funding Plaintiffs' counsel and neither Hare nor Bowdoin has any relationship with Plaintiffs' counsel or Plaintiffs. As the Ninth Circuit most recently stated in *Langstein*, "[t]o show 'evident partiality' in an arbitrator, [movant] *either* must establish specific facts indicating actual bias toward or against a party *or* show that [arbitrator] failed to disclose to the parties information that creates '[a] reasonable impression of bias.'" 607 F.3d at 645-46 (emphasis added).[7] An actual relationship between the parties and the arbitrator is not required. Here, a reasonable

---

[6]There are eight (8) named plaintiffs in the *Sussex* case that purchased five (5) condominium units in the range of $425,000 to $745,000 and ask for the return of all money or property, interest on damages, a civil penalty and punitive damages. (*See* Dkt. no. 14.) They are only a small portion of the 385 claimants listed in Plaintiffs' Fourth Amended Complaint in Arbitration filed in both the *Sussex* and *Abraham* arbitration proceedings. (Dkt. no. 114-8, Appendix Vol. 2 at TMG 391-410.)

[7]Plaintiffs are thus incorrect in asserting that "the Ninth Circuit applies the same standard for evident partiality and actual bias." (Dkt. no. 115 at 4.) The Ninth Circuit in *New Regency* cited to *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*, 173 F.3d 493 (4th Cir. 1999) to support its finding that, in the context of an arbitrator's failure to investigate undisclosed conflicts of which the arbitrator was unaware, the undisclosed conflicts must be "not trivial." *New Regency*, 501 F.3d at 1110. The Ninth Circuit did not adopt *ANR Coal*'s standard for disqualification.

impression of bias exists because Hare failed to disclose facts that suggest he has a financial interest in the outcome of the arbitrations. A victory for Plaintiffs and a high award would help Hare promote his understanding of profitable, high-probability litigations for investment.

Requiring arbitrators to "err on the side of disclosure" is consistent with "the public interest in efficient and final arbitration." *New Regency*, 501 F.3d at 1111. While arbitrators are not required to disclose their every business dealing, arbitrators should be particularly mindful of disclosing business activities that occur during the course of the arbitration if they may give rise to an impression of bias. Such mid-arbitration disclosures are particularly important because they occur after the initial selection process and are easier for an arbitrator to hide or sweep under the rug. *See Thomas Kincaid Co. v. Lighthouse Galleries, LLC*, 2010 WL 436604, at *7 (E.D. Mich. Jan. 27, 2010) ("[A] party that seeks to disqualify an arbitrator after commencement of the hearings faces an uphill battle.")

Hare should have disclosed his creation of Bowdoin and pursuit of mass litigation finance. His failure to do so gives rise to a reasonable impression of bias. The Court finds that the standard for evident partiality has been met. Hare should therefore be disqualified now to avoid waste and delay and ensure that the arbitration proceedings are just.

## IV.   CONCLUSION

It is therefore ordered that Defendants' motions to disqualify (2:08-cv-00773 dkt. no. 114; 2:11-cv-01007, dkt. no. 61) are granted. Arbitrator Brendan Hare is disqualified from presiding over arbitrations involving plaintiffs in the *Sussex* and *Abraham* actions.

Dated this 31st day of December 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE